# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> PAMELA BONDI, in her official capacity as United States Attorney General, *et al.* <br><br> *Defendants*. | Case No. 1:25-cv-00279 |

### DECLARATION OF KIRSTEN FAISAL

I, Kirsten Faisal, declare as follows:

**I.  Background**

1. I am Director of Training and Technical Assistance at the Iowa Coalition Against Domestic Violence ("Iowa Coalition"), Iowa's federally designated domestic violence coalition.

2. The Iowa Coalition was founded in 1985 and is headquartered in Des Moines, Iowa. Through a network of 23 statewide victim service programs, the Iowa Coalition provides comprehensive services to survivors of violent crimes, by taking a survivor-centered approach to victim services and supporting programs providing services to underserved populations, and providing member organizations with training, technical assistance, and other resources. The Iowa Coalition also serves as a direct service provider offering a legal program, financial literacy, educational scholarships, and emergency client assistance.

3. The Iowa Coalition has a forty-year history of advancing best practices and engaging systems that respond to domestic violence, providing training and technical assistance, and lifting survivors' voices.

1

4. The Iowa Coalition creates statewide standards of service. It first created these standards in the early 1990s. The standards have gone through several iterations since then, with the biggest overhaul taking place in 2012. They were recently updated with minor revisions and ratified by the Iowa Coalition's member organizations in 2024. The standards of service are detailed and informative. They include, for example, the requirement that members provide evidence-based best practices on emergency and long-term housing, non-judgmental victim-centered interventions and supports, and non-discriminatory and voluntary accessible services that meet the distinct needs of all people. They require that services to victims not be restricted based on race, ethnicity, religion, gender, age, sexual orientation, substance use or abuse outside of shelter, disabilities, income, country of origin, immigration status, or English proficiency.

5. The Iowa Coalition plays a central and official role in Iowa's comprehensive response to domestic abuse. Under Iowa law, in order for victim advocates to have victim-counselor privilege, they must complete twenty hours of victim counselor training provided by the Iowa Coalition, the state's sexual assault coalition, one of either coalition's member programs, or the Iowa Organization for Victim Assistance.

6. The Victims Assistance Section of the Iowa Attorney General's Office requires that all domestic abuse advocates who work in domestic violence shelters be certified by the Iowa Coalition and that all programs operate according to the standards of service developed by the Iowa Coalition in order to be eligible for funding.

7. The Iowa Coalition provides member organizations and the public with a variety of other resources to advance quality and necessary services to victims of domestic abuse. These include best practice documents to aid in: supporting immigrant victims of crime; providing

affirming and safe services to LGBTQ+ identifying individuals; making decisions around child abuse reporting; and addressing confidentiality when law enforcement comes to a shelter. They also include providing direct resources for victims of crimes, including financial literacy classes, support groups for non-English speaking victims, outreach and engagement in rural communities, and housing and economic empowerment resources.

8. In fiscal year 2024, the Iowa Coalition responded to 1,075 technical assistance requests, providing critical support to advocates, organizations, and leaders serving victims across Iowa. The same year, the Iowa Coalition organized and completed 708 training, equipping 1,184 advocates and community members with tools to address domestic violence and foster prevention efforts. The Iowa Coalition held twenty-four community engagement events, including an annual Dia de los Muertos Tribute for Domestic Violence Awareness Month and Advocacy Day, raising awareness on the root causes of violence and amplifying the voices of survivors of violence and the crime victim service providers that assist them. Fifty-two students were awarded scholarships for college or any other Iowa accredited educational platform through the Iowa Coalition's Alice Barton Scholarship Program, empowering survivors to pursue education and economic independence.

9. The Iowa Coalition has an annual budget of roughly $1.3 million. Of that total amount, roughly $114,533 comes from Office on Violence Against Women (OVW) grants.

**II. The Iowa Coalition Member Organizations**

10. The Iowa Coalition is a membership organization with 23 member agencies. To be a member, an organization must have, as its primary focus, crisis response services to crime victims and their families through crisis intervention, accompaniment during medical and legal proceedings, and follow-up counseling. Members must also provide only voluntary-based

3

services, ensure confidentiality in services, and comply with our standards of service, our code of ethics, federal funding certified assurances of the Family Violence Prevention and Services Act, and the Violence Against Women Act. Members pay a portion of their domestic violence services budget in dues.

11. The Iowa Coalition's membership includes a member that is being identified for purposes of this lawsuit as "Iowa Coalition Member Doe," which provides services to victims of domestic abuse, sexual assault, and other violent crimes for one of Iowa's major cities, including to historically underserved communities. Iowa Coalition member Doe applied to the transitional housing grant and had to certify the new out of scope activities because there was no other option for ensuring the opportunity to seek housing dollars for crime victims in their service area.

12. Iowa Coalition member Crisis Intervention & Advocacy Center serves crime victims in parts of the Des Moines metro area and ten rural counties. It has been a Rural Program Grant recipient in the past and used the funding for mobile advocacy to meet survivors in their own communities and assist with housing stability, legal advocacy, interpretation and other individualized needs. It will continue to seek Rural Program Grant dollars to sustain this work. The Crisis Intervention & Advocacy Center has explored alternative ways of engaging victims in healing such as equine therapy, walking groups, and yoga.

### III. Grants The Iowa Coalition Has or Has Intended to Apply For

13. The Iowa Coalition has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year since the mid- to late-1990s.

14. Most recently, OVW awarded the Iowa Coalition a total of $114,533 through the Coalition Grant in FY24. The grant has a period of performance and a budget period of October 1, 2024, through September 30, 2025.

15. The Iowa Coalition has used Coalition Grant funds to support its training and technical assistance to advocates on child welfare, child abuse, confidentiality when it comes to child welfare, batterers as parents, and child advocacy more generally. This includes a monthly child protective services tipsheet and close collaborative work with Iowa's Department of Health and Human Services, such as providing case consultation on child welfare cases that involve domestic abuse and training child welfare workers on safety planning and what victim service providers do. In addition, the Iowa Coalition has used these funds to expand best practices relating to housing, for example, shelter policies and practices around unhoused male victims, intake and assessments, database confidentiality, and technical assistance regarding individual crime victims experiencing mental health crises. This year, the Iowa Coalition added a new initiative under this grant program focused on collaborating and coordinating with federal, state, territory, and local entities engaged in addressing violence against women to develop a fatality report.

16. The Iowa Coalition receives competitive grants from OVW as well. Recently, the Iowa Coalition received the OVW FY21 Rural Program grant, providing a total of $500,000 for the period of October 1, 2021 through September 30, 2024, which was completed after receipt of a no-cost extension in March 2025. The Rural Program grant allowed the Iowa Coalition to build relationships within the school system and local churches to create access and trust with the local underserved community which was then provided with direct services through financial literacy classes and direct client assistance. We partnered with a culturally specific service provider to

complete our grant goals. The Rural Program Grant funded staff engaged in multidisciplinary training by providing logistical support and organizing efforts to a webinar series. The webinar series, which was offered on the months of January, May, June 2024 (continued in July too), is called "Family is Home" and focused on several topics including parenting across cultures, child welfare practices and policies, child protective services impact on underrepresented communities, parents responding to trauma, child development, and victim advocacy and support to survivors navigating child protective services. Tama County service providers were invited and attended along with a multi-disciplinary group of professionals, victim advocates, and community partners. Several financial literacy train-the-trainers were provided in Tama County with local partners.

17. For the upcoming OVW grant cycle (October 1, 2025 through September 30, 2026), the Iowa Coalition has intended to apply for the following grants:

    a. The FY25 Coalition Grant. If awarded the Coalition Grant, as expected, the Iowa Coalition would receive $114,533. The Notice of Funding Opportunity (NOFO) for the Coalition Grant requires applicants to submit a certification by June 23, 2025 at 11:59 PM ET and submit the final application by June 25, 2025 at 8:59 PM ET.[1] If awarded this Grant, the Iowa Coalition would be able to continue building on relationships developed within the Iowa Department of Health and Human Services to improve outcomes for children by providing training and technical assistance to child protective services staff and domestic abuse advocates; training and technical assistance to housing advocates such as monthly

---

[1] The Iowa Coalition applied for the Coalition Grant by this deadline. Pursuant to a stipulation filed in this matter, the Iowa Coalition and its members are not required to submit a certification for any OVW grant until August 12. Absent judicial relief, we will be required to submit a certification at that time.

6

peer to peer support opportunities; best practices on enhancing accessibility and advocacy for disabled individuals through webinars; updates to direct service standards; and technical assistance on Department of Housing and Urban Development regulations and individual cases, and coordination among several government and non-governmental stakeholders to develop a fatality report. However, if the Iowa Coalition does not receive the Coalition Grant, we will have to terminate at least one and up to three FTEs, leading to a reduction in training and technical assistance across all OVW-supported programming. The Iowa Coalition serves all 99 counties in Iowa, and we pride ourselves on the quick response we provide to our member programs who are, after all, providing crisis services twenty-four hours a day, seven days a week. When our members have a need for individual technical assistance, it is often an emergency. The loss of staff people at the Iowa Coalition would increase the time it takes to respond to the critical needs of our members, for example when child protective services is investigating a complaint, needs to see and interview a family in shelter within a certain response time, and confidentiality must be maintained for other families living there.

b. The FY25 Training and Services to End Abuse in Later Life Program Grant. The purpose of this grant is to provide support for a comprehensive approach to addressing abuse in later life, including domestic violence, dating violence, sexual assault, stalking, neglect, abandonment, economic abuse, or willful harm committed against victims who are 50 years of age or older. Applicants must demonstrate interdisciplinary partnerships with at least one law enforcement

7

agency; prosecutors' office; victim service provider; and nonprofit or government program with experience assisting individuals later in life. The NOFO for the End Abuse in Later Life Program Grant requires applicants to submit a certification by July 8, 2025 at 11:59 PM ET and submit the final application by July 10, 2025 at 8:59 PM ET. If awarded this grant, the Iowa Coalition would be able to improve accessibility for older survivors at member programs and develop mutually beneficial relationships with other system providers that intersect with older victims that, in turn, would allow for improvements in policy and practice in identifying and meeting the needs of these victims.

### IV. Grants That The Iowa Coalition Members Currently Have of Have Intended to Apply For

18. The Iowa Coalition's members have also received OVW grants, including grants under the Transitional Housing Assistance Grant, Rural Program Grant, and Legal Assistance for Victims Grant.

19. Various Iowa Coalition members have also intended to apply for OVW grants this year.

20. For example, Iowa Member Doe has intended to apply for the FY25 OVW Children and Youth Grant. The NOFO for the Children and Youth Grant requires applicants to submit a certification by June 30, 2025 at 11:59 PM ET and submit the final application by July 2, 2025 at 8:59 PM ET.

21. Iowa Member Doe has also intended to apply for the FY25 OVW Engaging Men Grant. The NOFO for the Engaging Men Grant requires applicants to submit a certification by July 8, 2025 at 11:59 PM ET and submit the final application by July 10, 2025 at 8:59 PM ET. Located in one of the larger Iowa cities, in order to reflect the population served and better reach

underserved victims, Iowa Member Doe, like other organizations, has found that success in outreach lies in strategically hiring from within those underserved communities.

22. Iowa Member Doe also applied for the Transitional Housing Assistance Grant, for which it submitted a certification on the new OVW funding conditions.

23. Another Iowa Coalition member, Crisis Intervention & Advocacy Center, currently works under the FY 2023 Rural Program Grant and has intended to apply for the Rural Program Grant continuation. Crisis Intervention & Advocacy Center is concerned that the OVW's new funding conditions will impact its ability to provide services to underserved populations, as there are isolated communities of non-English speakers and immigrants in the larger towns of their region. It should be noted that one of these communities is still recovering from the tragic events of a school shooting.

### V. OVW's New Funding Conditions

24. The NOFOs for the FY25 OVW grants for which the Iowa Coalition and its members have intended to apply include new "out-of-scope" funding conditions that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant funds from being used for: (1) promoting or facilitating the violation of federal immigration law; (2) inculcating or promoting gender ideology; (3) promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect; (4) activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses; (5) programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women; (6)

9

awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability; (7) initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support; and (8) any activity or program that unlawfully violates an Executive Order. In addition to identifying these activities as "out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW grants require applicants to submit a certification with their application saying that they will not use the grant funds on the "out-of-scope" activities.

25. In addition, OVW has updated the General Terms and Conditions applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

### VI. OVW's New Funding Conditions Place The Iowa Coalition and its Members in an Untenable Position

26. The new funding conditions present the Iowa Coalition and its members with an impossible choice. The Iowa Coalition could forgo applying for OVW grants and face the direct consequences to the Iowa Coalition's financial health and ongoing operations. Or the Iowa Coalition may apply and jeopardize its mission and compliance with VAWA requirements, and face enormous risks of litigation and government investigations under the False Claims Act no matter what the Iowa Coalition does.

27. Agreeing to the certifications would cause the Iowa Coalition profound harm. The funding conditions are vague, and several could be read to conflict with the Iowa Coalition's core mission and the activities it has undertaken for decades in furtherance of that mission and in reliance on OVW grants. The funding conditions may require the Iowa Coalition to cease engaging in activities that it had previously understood OVW grants to plainly support. Thus, the Iowa Coalition does not know how it may comply with the funding conditions while also staying true to its mission and providing essential support for member organizations, advocates, and vulnerable victims and survivors of domestic abuse.

28. For instance, the Iowa Coalition's mission is "to engage all people in a movement to change the social and political systems that perpetuate violence. We do this through education, advocacy, and quality services." Our "purpose" includes addressing "the oppressive conditions and systems that perpetuate violence" and advancing "the needs of all people by shaping public policy, increasing civic engagement, and strengthening relationships to change the social and political systems that perpetuate violence." We are unsure whether we may undertake our day-to-day activities reflecting our mission and purposes, without running afoul of the condition not to promot[e] or facilitat[e] discriminatory programs or ideology, including illegal DEI" as DOJ might interpret those terms. We also worry that our mission could be seen as violating the prohibition on funding "activities that frame domestic violence or sexual assault as systemic social justice issues," discussed more below.

29. It is also unclear whether the Iowa Coalition could comply with this condition without adopting a view antithetical to its true beliefs.

30. Many of the Iowa Coalition's activities in furtherance of its OVW grant-funded direct service programs may also conflict with the new funding conditions. For example, the

Iowa Coalition is also concerned that it cannot continue to engage in certain practices that respect the dignity of all victims of domestic violence, regardless of gender and sexual orientation, and are consistent with the VAWA mandate not to discriminate on the basis of gender or sexual orientation. In providing direct client services, Iowa Coalition staff use clients' preferred pronouns. The Iowa Coalition also trains and ensures best practices for victim services providers and member programs to develop affirming and safe spaces, including accommodations for serving transgender crime victims, males, and nonbinary individuals. These accommodations deal with everything from using preferred names and pronouns to sheltering, accessing shelter and navigating reactions from other survivors in the program. The organization also provides educational information about addressing other needs of the LGBTQ+ community. It is unclear whether the Iowa Coalition may continue these practices and activities while complying with the funding condition not to "inculcat[e] or promot[e] gender ideology."

31.    It is also unclear whether the Iowa Coalition may continue providing certain services to the immigrant community, including those without legal status, consistent with the funding conditions. The Iowa Coalition has historically provided extensive advocacy to immigrants regardless of immigration status, including legal assistance with adjustment of status, with the use of legal humanitarian immigration relief under the Violence against Women Act such as  U-visa, T-visa, and VAWA self-petitioners. We also support victims and immigrant communities in "Know Your Rights/Victim Rights" training through local community learning engagement sessions throughout the year.  Additionally, the Iowa Coalition applied for a  FY25 Legal Assistance for Victims grant to strengthen and expand the coalition's immigration legal program efforts and expand access to services to immigrants with various or no legal status.

These activities may conflict with the way DOJ interprets the prohibition against "promoting or facilitating the violation of immigration law."

32. Additionally, the Iowa Coalition has worked to promote a variety of alternative solutions for survivors to widen the options for safety, such as partnering with Iowa State University to create a community-based voluntary healthy relationship program for men. We worry that such steps could be seen as "discourag[ing] collaboration with law enforcement…limit[ing] the role of police, prosecutors or immigrant enforcement in addressing violence against women." In Iowa the protected petitioner on a restraining order can be arrested for "aiding and abetting" in the violation of the order issued to protect them; consequently, when a victim is considering getting a protective order, advocates are trained to go over the pros and cons, including legal risks to victims. This might also be seen as discouraging utilizing the criminal legal system, as would safety planning for victims who for a variety of reasons want to avoid using law enforcement for safety. These victims may have prior criminal histories themselves, or they may be immigrants fearing deportation. In small town Iowa it's likely that law enforcement are friends or relatives of their abusers, or the abuser may be part of the legal system itself. These certifications place a chilling effect on working with these victims to create safety plans outside the criminal legal system.

33. The Iowa Coalition is also concerned that it would have to fundamentally change its holistic approach to services to comply with the prohibition on "activities framing domestic violence or sexual assault as systemic social justice issues rather than criminal offenses." The Iowa Coalition is concerned that the framing of domestic abuse as a criminal offense is far too narrow to even provide effective advocacy, much less engage in primary prevention. The Iowa Coalition utilizes the Centers for Disease Control socio-ecological model of prevention,

13

including through direct training from the CDC. Additionally, the Iowa Coalition participates and is recently developing a multidisciplinary group to provide a thorough fatality report. To do so, we must ensure that the public health, educational institutions, and justice system stakeholders are involved. The purpose of such reports is to examine holes in responses across systems and make recommendations for systemic change and primary prevention to reduce the number of intimate partner homicides. The Iowa Coalition worries that continued use of this evidence-based model could be seen as violating the funding condition.

34. The Iowa Coalition encourages, promotes, and engages in non-criminal justice-based options for intervention in domestic abuse. In Iowa, all persons convicted of domestic abuse must go through the Iowa Domestic Abuse Program (IDAP) through the Iowa Department of Corrections, a battering intervention program. In general, participants must be court-ordered to receive intervention and treatment. Recognizing the need for intervention that was both voluntary and could intercede earlier before the level of abuse had risen to the point of criminal acts, the Iowa Coalition has partnered with Iowa State University to pilot the ProACTIVE program, a community-based violence prevention program for men, overseen by a multidisciplinary board and part of a research project on effectiveness. ICADV also promoted the creation of Caring Dads programs in two locations in the state. Caring Dads is an evidence-based curriculum that intervenes with batterers as parents. Though it has become a critical referral for child welfare in the areas it is available, it could, as well as ProActive, be framed as discouraging engagement with the criminal legal system.

35. The Iowa Coalition also engages in activities designed to raise awareness to issues surrounding the problem of domestic abuse, but it is uncertain whether it could still do so in compliance with the funding condition that "awareness campaigns" achieve "tangible

improvements." For example, every February for Dating Violence Awareness Month, the Iowa Coalition engages middle and high school students statewide in a "What Is Love?" Art Contest to raise awareness about domestic abuse and encourage discussions of healthy relationships. The Coalition believes activities like these are important to achieving attitudinal changes, but measuring those changes would require extensive funding that the Coalition does not have. But activities like this are also designed to achieve a reduction in violence perpetration or victimization over the course of the students' lifetimes, and given the youth of the participants, measuring results would be much more difficult. The impact of many prevention activities across social concerns is often discerned over decades rather and therefore are not immediately measurable year to year. Despite the numbers of people engaged by the Iowa Coalition's outreach and awareness activities, we are concerned that we would not be able to satisfy the new funding condition, especially without more funding being made available to attempt to measure results.

36. The Iowa Coalition fears that if it agrees to the new funding conditions, it could face not only the loss of grant funds, but federal government investigations, private party litigation under the False Claims Act, and potential legal and financial liability for not complying. These potential consequences of working under a grant subject to the new, vague conditions make the Iowa Coalition and its members concerned about applying or accepting an award. To mitigate these risks, the Iowa Coalition would have to change its practices, in many cases contrary to its core values.

37. Not agreeing to the certifications would result in equally grave harm.

38. Not having access to funds from the Coalition Grant and other competitive grants would severely undermine the Iowa Coalition's ability to function as a state coalition and to

15

provide direct services. Losing the Coalition Grant alone would result in a $114,533 loss of funds for the next fiscal year. The combined loss of funds from all of the grants for which the Iowa Coalition has intended to apply—the Coalition Grant, and the End Abuse in Later Life Grant—would represent a substantial loss of $614,533 in anticipated funds for the next fiscal year. Without these funds, the Iowa Coalition would have to reduce its services to its members and its direct impact work.

39. Our member programs would lose access to core, comprehensive training for their staff necessary to provide legally and ethically compliant advocacy services to clients in addition to regular training on emergent issues that ensure front-line staff are able to provide quality services to all survivors. The state would lose essential technical support for improving systemic practices that respond to and attempt to reduce domestic violence, enhance the effectiveness of legal system actions, and significantly strengthen survivor support and services. These losses would make the Iowa Coalition less effective as a coalition and undermine its role as the state authority on domestic abuse prevention, intervention, and response.

40. The Iowa Coalition would also have to reduce training and eliminate services and programs related to underrepresented victims of domestic and sexual violence, and stalking. The organization would have to furlough between one-to-three FTEs. These are just some of the ways the Iowa Coalition's programming and its beneficiaries would suffer.

### VII. Cuts to The Iowa Coalition's and its Members' Services Would Harm Domestic Violence and Sexual Assault Victims and Survivors

41. The reduction or outright termination of these services would have devastating effects on the community of survivors and victims of domestic violence.

42. In the absence of fully funded Iowa Coalition services, domestic violence victims will be confronted with more barriers when trying to access services and will have less

16

information about their rights. This is particularly true with respect to advocates and specialists working with children, immigrants, LGBTQ+, families experiencing homelessness and other hard to reach populations. Working with the Iowa Department of Health and Human Services to improve child welfare responses when domestic abuse is also present necessitates corresponding work with advocates within our member programs to understand the policies, practices, and language of child welfare as well as developing successful advocacy strategies to ensure fairness and safety for all family members.

43. The Iowa Coalition's operations are essential to permitting the network of direct service providers to focus on providing the highest-quality services to the survivors they serve and ensuring that the systems that contribute to addressing and responding to the epidemic of domestic violence are operating with evidence-based, trauma-informed, survivor-centered, and accessible and affirming policies and practices.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June __25__, 2025.

Kirsten Faisal
Digitally signed by Kirsten Faisal
Date: 2025.06.25 13:57:58 -05'00'

Kirsten Faisal
Director of Training and Technical Assistance
The Iowa Coalition Against Domestic Violence

17

# EXHIBIT A

**From:** Loder, Amy (OVW) <Amy.Loder@usdoj.gov>
**Sent:** Monday, June 9, 2025 8:33 AM
**To:** Loder, Amy (OVW) <Amy.Loder@usdoj.gov>
**Cc:** Schmisek, Melissa A. (OVW) <Melissa.Schmisek@usdoj.gov>; Sweeney, Kevin (OVW) <Kevin.Sweeney@usdoj.gov>; Bauer, Elizabeth (OVW) <Elizabeth.Bauer@usdoj.gov>; Serrano, Kathy (OVW) <Kathy.Serrano@usdoj.gov>; LaTour, Angella (OVW) <Angella.LaTour2@usdoj.gov>; McEntire, Betty (OVW) <Betty.McEntire@usdoj.gov>; tamikaiowacasa (Vendor) <tamika@iowacasa.org>; Tracy Wright <tracy@nccasa.org>; Ellen Yin-Wycoff <eyinwycoff@nnedv.org>
**Subject:** OVW State and Territory Coalition Program Allocations

Good morning

The coalition allocations are now available. Please use the amounts below for your FY 2025 application and budget. Contact your Program Manager if you have any questions


DV Coalition - **$113,574**
SA Coalition - $110,498 + $132,715 = **$243,213**
Dual Coalition - $224,072 + $132,715 = **$356,787**


Have a good week

Amy

Amy Loder
Associate Director
Amy.Loder@usdoj.gov
202.305.2971 (office)
202.598.9447 (cell)