# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND COALITION AGAINST
DOMESTIC VIOLENCE, *et al.*

    *Plaintiffs*,

v.

PAMELA BONDI, in her official capacity as United States Attorney General, *et al.*

    *Defendants*.

Case No. 1:25-cv-00279

**DECLARATION OF CARIANNE FISHER**

I, Carianne Fisher, declare as follows:

## I. Background

1.    I am the Executive Director at the North Carolina Coalition Against Domestic Violence ("North Carolina Coalition"), North Carolina's federally designated domestic violence coalition.

2.    The North Carolina Coalition was founded in 1981 and is headquartered in Durham, North Carolina. The North Carolina Coalition provides training and technical assistance to its membership and convenes and participates in meetings across the State with membership and allied professionals with the goal of bridging any gaps in domestic violence services and improving communication and collaboration between service providers.

3.    The North Carolina Coalition's membership is comprised of approximately 125 organizations across the state, including organizations singularly devoted to serving victims of domestic violence, educational institutions, and community partner organizations that serve victims of domestic violence in fields such as housing, legal services, and healthcare.

4. The North Carolina Coalition creates technical assistance documents for its members, such as a Best Practices Manual focused on how to best meet domestic violence victim needs consistent with law and research on dynamics of domestic violence and numerous "Quick Guides," which are brief documents explaining specific legal processes and obligations related to providing or receiving domestic violence services.

5. The North Carolina Coalition creates and facilitates trainings for its members and allied professionals. Training content ranges from general information about the dynamics of domestic violence and trauma to specific modules, such as a Lunch and Learn focused on how to respond to requests for information from child welfare agencies consistent with state and federal confidentiality laws. Multiple times a year, the North Carolina Coalition offers a free training for its domestic violence program members called "Advocates Institute," where Coalition staff deliver multiple days of training content to new and seasoned domestic violence advocates on domestic violence dynamics, confidentiality obligations, safety planning, and state and federal legal relief options available for victims of domestic violence.

6. The North Carolina Coalition has an annual budget of roughly $5.6 million. Of that total amount, roughly $313,000 comes from Office on Violence Against Women (OVW) grants.

**II. North Carolina Coalition Member Organizations**

7. The North Carolina Coalition is a membership organization with 123 member organizations. Membership is open to domestic violence agencies, community partners, colleges, and individuals who share our vision of eliminating domestic violence in North Carolina. Members receive tailored support, including access to individual questions, program materials,

peer-learning and networking opportunities, and access to toolkits, awareness materials, tip sheets, and guides.

8. The North Carolina Coalition's membership includes a member being identified for the purposes of this action as "North Carolina Member Doe," which provides crisis services, such as safety planning and operation of a 24/7 hotline for victims of domestic violence, community education programs, such as healthy relationship training for adolescents, and economic support for victims of domestic violence, such as housing support and financial counseling.

### III. Grants the North Carolina Coalition Has or Has Intended to Apply For

9. The North Carolina Coalition has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year since 2001.

10. Most recently, OVW awarded the North Carolina Coalition a total of $114,533 through the Coalition Grant in FY24. The grant has a period of performance and a budget period of October 1, 2024 through September 30, 2025.

11. The North Carolina Coalition has used Coalition Grant funds to support its legal technical assistance and training work, including the Legal Advocates Institute. In this two-day intensive legal seminar, advocates learn to issue-spot the legal needs of survivors and how to respond in an empowering, informed way. We also use Coalition Grant funds to support quick guides that provide immediate written information on a variety of legal topics and staff time to serve on core state, local, and national task forces and committees. These meetings include the North Carolina Domestic Violence Commission and its committees and the Governor's Crime Commission and its committees.

12. The North Carolina Coalition receives competitive grants from OVW as well. Currently, we are working under the OVW Disabilities Program Grant." The Disabilities Program Grant provides a total of $580,000 for the period October 1, 2023, through September 30, 2026. The North Carolina Coalition is currently in the planning phase of this funding and is using this grant to complete a needs assessment to identify the gaps in service delivery for survivors who are Deaf, Deafblind, and Hard of Hearing across North Carolina. Once this phase is complete, we plan to apply for the implementation phase to put those findings into action.

13. For the upcoming OVW grant cycle (October 1, 2025, through September 30, 2026), the North Carolina Coalition has applied for the FY25 Coalition Grant. If awarded the Coalition Grant, as expected, the North Carolina Coalition would receive $113,574. The Notice of Funding Opportunities ("NOFO") requires that Coalition Grant applicants submit a certification by June 23, 2025, at 11:59 PM ET and submit the final application by June 25, 2025 at 8:59 PM ET.[1] If awarded this Grant, we would be able to continue our legal technical assistance and training work, including the Legal Advocates Institute and regular calls with Legal Advocate across the state. We would also be able to continue to develop and disseminate quick guides to provide immediate written information on a variety of legal topics and to devote staff time to serving on core state, local, and national task forces and committees like the North Carolina Domestic Violence Commission and the Governor's Crime Commission.

14. However, if we could not obtain the Coalition Grant, the North Carolina Coalition would have to scale back essential programs, including by laying off at least two staff members. The effects of the diminished programming would be far-reaching. We would not be able to ensure timely and comprehensive responses to all requests for legal information from our

---

[1] Pursuant to a stipulation filed in this matter, the North Carolina Coalition and its members are not required to submit a certification for any OVW grant until August 12. Absent judicial relief, we will be required to submit a certification at that time.

4

members and the general public in North Carolina – responses that our members tell us are invaluable.

### IV. Grants That North Carolina Coalition Members Currently Have or Have Intended to Apply For

15. The North Carolina Coalition's members have also received OVW grants, including grants under the OVW's Transitional Housing Program, Tribal Coalitions Program, Sexual Assault Services Culturally Specific Program, Campus Program, Culturally Specific Campus Program, Disability Program, Improving Criminal Justice Responses Program, Legal Assistance for Victims Program, and Justice for Families Program.

16. Various North Carolina Coalition members have also intended to apply for OVW grants this year.

17. For example, North Carolina Coalition Member Doe plans to apply for the OVW FY25 Children and Youth Program. The NOFO requires that Children and Youth Grant applicants submit a certification by June 30, 2025 at 11:59 PM ET and submit the final application by July 2, 2025 at 8:59 PM ET. Member Doe intends to use this funding, if granted, to support comprehensive, community-based efforts to develop or expand prevention, intervention, treatment, and response strategies to address the needs of children and youth impacted by domestic violence, dating violence, sexual assault, stalking, and sex trafficking.

### V. OVW's New Funding Conditions

18. The NOFOs for the FY25 OVW grants for which the North Carolina Coalition and its members have intended to apply include new "out-of-scope" funding conditions that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant funds from being used for: (1) promoting or facilitating the violation of federal immigration law;

(2) inculcating or promoting gender ideology; (3) promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect; (4) activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses; (5) programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women; (6) awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability; (7) initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support; and (8) any activity or program that unlawfully violates an Executive Order. In addition to identifying these activities as "out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW grants require applicants to submit a certification with their application saying that they will not use the grant funds on the "out-of-scope" activities.

      19.      In addition, OVW has updated the General Terms and Conditions applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

### VI. OVW's New Funding Conditions Place the North Carolina Coalition and its Members in an Untenable Position

20. The new funding conditions present the North Carolina Coalition and its members with an impossible choice. We could forgo applying for OVW grants and face the direct consequences to the North Carolina Coalition's financial health and ongoing operations. Or we could apply and jeopardize our mission and compliance with VAWA requirements and face enormous risks of litigation and government investigations under the False Claims Act no matter what we do.

21. Agreeing to the certifications would cause the North Carolina Coalition profound harm. The funding conditions are vague, and several could be read to conflict with the North Carolina Coalition's core mission and the activities it has undertaken for decades in furtherance of that mission and in reliance on OVW grants. The funding conditions may require the North Carolina Coalition to cease engaging in activities that it had previously understood OVW grants to plainly support. Thus, the North Carolina Coalition does not know how it may comply with the funding conditions while also staying true to its mission and providing essential support for member organizations, advocates, and vulnerable victims and survivors of domestic abuse.

22. For instance, the North Carolina Coalition describes domestic violence as a pattern of power and control and does not reference the criminal legal system in our definitions of domestic violence during trainings or in technical assistance materials; rather, we discuss dynamics of domestic violence related to systems of oppression in training materials. We are concerned that doing so could be seen as violating the restriction on "activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses."

23. It is also unclear whether the North Carolina Coalition may continue providing certain services to the immigrant community, including those without legal status, consistent with the funding conditions. The North Carolina Coalition provides training and technical assistance to domestic violence service providers that encourages them to serve all survivors requesting services, regardless of whether an individual may have immigration documentation when fleeing domestic violence. The North Carolina Coalition also trains advocates to be aware of the specific needs and legal relief options available under state and federal law for all immigrant victims of domestic violence. Doing so now may conflict with the way DOJ interprets the prohibition against "promoting or facilitating the violation of immigration law."

24. The North Carolina Coalition is also concerned that it cannot continue to engage in certain practices that respect the dignity of all victims of domestic violence, regardless of gender and sexual orientation, and are consistent with the VAWA mandate not to discriminate on the basis of gender or sexual orientation. We provide training and technical assistance to member programs that direct them to serve all victims presenting for services and to avoid any conduct that could be interpreted as discrimination based on gender identity, consistent federal statutory language in the Violence Against Women's Act. It is unclear whether we may continue these practices and activities while complying with the funding condition not to "inculcat[e] or promot[e] gender ideology."

25. More broadly, the North Carolina Coalition, which provides training and technical assistance to members providing culturally specific services, is concerned about the lack of clarity and definitions relating to the prohibition against "operat[ing] any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

8

26. Additionally, North Carolina Coalition Member Doe would have to fundamentally change its programming or accept new grants and risk running afoul of various funding conditions imposed on those grants. For example, Member Doe is concerned about the lack of clarity and definitions around "inculcating gender ideology" and "illegal DEI programs," making it challenging for them to certify compliance with these terms while also upholding their practice of serving all survivors presenting for services and non-discrimination provisions related to gender identity.

27. The North Carolina Coalition fears that if it agrees to the new funding conditions, it could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. These potential consequences of seeking a grant subject to the new, vague conditions make the North Carolina Coalition concerned about applying or accepting an award. To mitigate these risks, we would have to change our practices, in many cases contrary to our core values.

28. Not agreeing to the certifications would result in equally grave harm.

29. Not having access to funds from the Coalition Grant and other competitive grants would severely undermine the North Carolina Coalition's ability to function as a state coalition and to provide essential services. Losing the Coalition Grant alone would result in a $113,574 loss of funds for the next fiscal year. The combined loss of funds from all of the grants for which the North Carolina Coalition has intended to apply—the Coalition Grant and the final year of the Disability Program Grant—would represent a loss of $306,907 in anticipated funds for the next fiscal year. Without these funds, the North Carolina Coalition would have to reduce the size of its staff and, therefore, its services to members.

30. Our member programs would lose access to core, comprehensive training for their staff necessary to provide legally and ethically compliant advocacy services to clients in addition to regular training on emergent issues that ensure front-line staff are able to provide quality services to all survivors. The North Carolina Coalition may not be able to offer the same cadence of Advocates Institute, which members rely on to orient new advocates and stay abreast of changes in the law and practice around serving survivors. Members would not have access to the same robust, up-to-date technical assistance materials, because the North Carolina Coalition would not have the same staffing capacity to create and update materials. The state would lose critical technical assistance in systemic response improvements that reduce domestic violence, increase effectiveness of legal responses, and dramatically improve survivor response and support efforts, as the North Carolina Coalition would not have the same staffing capacity to provide expertise and collaborative services to our state partners. These losses would make the North Carolina Coalition less effective as a coalition and undermine its role as the state authority on domestic assault prevention, intervention, and response.

### VII. Cuts to the North Carolina Coalition and its Members' Services Would Harm Domestic Violence Victims and Survivors

31. The reduction or outright termination of these services would have devastating effects on the community of survivors and victims of domestic abuse.

32. In the absence of fully funded North Carolina Coalition services, domestic abuse victims will be confronted with more barriers when trying to access services following their assault, including discriminatory treatment from medical, law enforcement or courtroom personnel, hotline operators, and therapists who have not received anti-bias and other core victim services training on the dynamics of domestic violence. This will immediately lead to more survivors choosing not to participate in the criminal justice system and fewer being linked to and

receiving appropriate medical and therapy services. Direct service providers will be unable to maintain high quality services that follow best practice guidance or even that are fully compliant with the myriad federal, state, and local requirements they would now have to navigate on their own, without the critical assistance of the North Carolina Coalition's training and technical assistance. This void would exist while domestic violence programs, law enforcement, and allied professionals desperately try to keep up with the already increasing demand for services and prevent the continued increase of domestic violence homicides in North Carolina.

33. The North Carolina Coalition's operations are essential to permitting the network of direct service providers to focus on providing the highest-quality services to the survivors they serve and ensuring that the systems that contribute to addressing and responding to the epidemic of domestic violence are operating with evidence-based, trauma-informed, survivor-centered policies and practices.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 25 2025.

Carianne Fisher
Digitally signed by Carianne Fisher
Date: 2025.06.25 21:57:29 -04'00'

CARIANNE FISHER
EXECUTIVE DIRECTOR
THE NORTH CAROLINA
COALITION AGAINST DOMESTIC
VIOLENCE

11