# EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND COALITION AGAINST
DOMESTIC VIOLENCE, *et al.*

    *Plaintiffs*,

v.

PAMELA BONDI, in her official capacity as United States Attorney General, *et al.*

    *Defendants.*

Case No. 1:25-cv-00279

## DECLARATION OF KERI MORAN-KUHN

I, Keri Moran-Kuhn, declare as follows:

### I. Background

1. I am the Executive Director at Oregon Coalition Against Domestic and Sexual Violence ("Oregon Coalition" or "OCADSV"), Oregon's federally designated domestic and sexual violence coalition.

2. Oregon Coalition is a dual domestic violence and sexual assault coalition membership organization composed of rural and urban members, founded in 1978 and headquartered in Portland, Oregon. Oregon Coalition provides statewide leadership, technical assistance, and support to member programs that serve survivors, the public, friends, family, and all whose lives are affected by domestic and sexual violence. We believe reaching our goal of a violence- and oppression-free society is most effectively done through grassroots efforts, communities that hold abusers accountable, and networking along with coalition building at the local, state and national levels.

3. Oregon Coalition works to end sexual and domestic violence in Oregon. We are a member-based organization supporting the rights of all to information, advocacy, crisis intervention, treatment, and services. We work to engage legislators on the local, state, and national levels to better meet the needs of the communities they represent. Oregon Coalition also provides training to professionals throughout the state of Oregon. The Annual Oregon Coalition conference brings together over 200 participants, including domestic and sexual violence advocates and leadership; local, state and federal government employees; and numerous community partners from the healthcare, military, law enforcement, corrections, K-12 and higher education, social services, and mental health fields. In addition, Oregon Coalition supports Oregon's Core Advocate training and responds to other training requests throughout the state.[1] Oregon Coalition participates in statewide advisory committees to provide subject matter expertise on victim services.

4. Oregon Coalition has an annual budget of $1,204,243. Of that total amount, $862,036 or 72% of total budget comes from direct federal funds, and $363,379 or 30% of total budget comes from Office on Violence Against Women (OVW) grants.

## II. Oregon Coalition Member Organizations

5. Oregon Coalition is a membership organization with the majority of the community-based direct-service domestic and sexual violence organizations in Oregon as our core members. Members fall into one of two categories. (1) Coalition member programs are local nonprofit organizations and Tribal Nation domestic and sexual violence service programs which provide shelter and community-based advocacy services primarily to survivors of domestic violence, sexual assault, stalking, and human trafficking throughout the state of Oregon. (2)

---

[1] Under Oregon law (ORS 40.264 – Rule 507-1), all certified advocates are required to complete 40 hours of Core Advocacy Training.

Affiliate and public service supporting members are community organizations and governmental entities (respectively) that support the Coalition's mission and values and are committed to supporting survivors of domestic violence, sexual assault, stalking, and human trafficking.

6. Among Oregon Coalition's members are Womenspace Inc., DBA Hope & Safety Alliance ("Hope & Safety Alliance"), which provides trauma informed and survivor centered services for all survivors of domestic violence in Lane County; Sexual Assault Support Services ("SASS"), which provides outreach, advocacy, and support to survivors of sexual violence and their partners, families, and friends throughout Eugene-Springfield and the rest of Lane County; and Sexual Assault Resource Center ("SARC"), which provides advocacy and ongoing support services to people who have been impacted by sexual violence and promotes sexual-violence prevention through its programming and healthy relationships curriculum in high schools and within the larger community.

### III. Grants Oregon Coalition Has or Has Intended to Apply For

7. Oregon Coalition has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year for more than twenty-five years.

8. Most recently, OVW awarded Oregon Coalition a total of $363,379 through the Coalition Grant in FY24. The grant has a period of performance and a budget period of October 1, 2022, through September 30, 2025. The Coalition Grant represented 30% of Oregon Coalition's annual budget.

9. Oregon Coalition has used Coalition Grant funds to sustain its technical assistance ("TA") team's ability to respond to TA requests in a timely manner, and to support participation in external State conferences and activities, including a Core Advocate Training and an Annual

OCADSV Conference. The OCADSV Annual Conference brings together advocates, mangers and other service providers from around the state to attend intermediate and advanced level workshops that strengthen the responses for victims/survivors of domestic violence, sexual assault and trafficking. Technical assistance requests range from reviewing best practices for administration of the organization and reviewing new programmatic designs. Technical assistance is important to connect different sized organizations in diverse communities to expertise that may meet a current or upcoming challenge.

10. For the upcoming OVW grant cycle (October 1, 2025, through September 30, 2026), Oregon Coalition has applied for the FY25 Coalition Grant. If awarded the Coalition Grant, as expected, Oregon Coalition would receive $356,787. The Notice of Funding Opportunity (NOFO) for the Coalition Grant requires applicants to submit a certification by June 23, 2025 a11:59 PM ET and submit the final application by June 25, 2025 at 8:59 PM ET.[2] If awarded this grant, Oregon Coalition would be able to continue providing Core Advocate Training. Oregon Core Advocate training refers to the mandatory 40-hour training required for advocates in Oregon to be eligible for advocate privilege. The training emphasizes a trauma-informed approach, recognizing the impact of trauma on victims and providing appropriate support. The training covers core competencies for victim advocacy, such as understanding the justice system, ethics, privacy, victims' rights, effective communication, crisis intervention, and safety planning. It equips advocates with the knowledge and skills to effectively support victims of domestic violence, sexual assault, and stalking. Orgon Coalition also uses these funds to host

---

[2] Pursuant to a stipulation filed in this matter, Oregon Coalition and its members are not required to submit a certification for any OVW grant until August 12. Absent judicial relief, we will be required to submit a certification at that time.

the Annual OCADSV Conference, and provide TA, support, and training to community-based nonprofits and Tribal Nation D/SV programs.

11. However, if the Oregon Coalition could not obtain the Coalition Grant, the consequences would be dire and would directly impact the support it could provide the state. Oregon Coalition would be required to cut its TA team in half, which would greatly hinder its ability to (1) respond to TA requests in a timely manner or (2) participate in external statewide committees (Survivor Response Committee, DSV Healthcare Advocates). In addition, Oregon Coalition would have to terminate at least one staff position (the SA/DV Program Coordinator) and find alternate funding for six other positions. Ultimately, if no alternate funding becomes available, Oregon Coalition would have to reduce the full-time equivalent (FTE) for at least six positions: Executive Director, Associate Director, Accounting Manager, Director of Capacity and Programming, Membership Coordinator and TA Training Coordinator. Overall, Oregon Coalition would experience a loss of 2.3 FTE.

12. In addition to the loss of staff, Oregon Coalition would be unable to conduct many of its grant-supported activities, such as in-person Core Advocate Training, regional trainings, workgroups, and responses to technical assistance grants. The trainings and workshops assist organizations working with jails or prisons or in the health care system. Oregon Coalition would also be unable to participate in statewide efforts to support intervention, including systems response. In essence, the VAWA systems response is a multi-faceted approach involving coordinated efforts among stakeholders (including victim service providers, criminal and civil justice systems, community-based organizations, health care providers, and others) to provide services such as training for law enforcement, emergency shelter for victims, housing for survivors who live in subsidized housing, immigration relief, and promoting health relationships.

such as the Batterers Intervention Program Advisory Board, and other relevant activities such as the Sexual Assault Services Program funding advisory committee (among other funding advisory committees). Oregon Coalition would also have to scale back our Annual Conference—for example, by offering fewer skills-building workshops for direct service providers.

### IV. Grants That Oregon Coalition Members Currently Have or Have Intended to Apply For

13. Oregon Coalition's members have also received OVW grants, including grants under the Transitional Housing Program, the Rural Program, the Culturally Specific Services Program, the Justice for Families (JFF) Program, the Underserved Program, and the Legal Assistance to Victims (LAV) Program. For example, Hope & Safety Alliance is currently operating under the OVW FY23 Transitional Housing Assistance Grant, which is set to expire at the end of next year. SASS is currently a subrecipient of the OVW FY23 Transitional Housing Assistance Grant.

14. Various Oregon Coalition members have also intended to apply for OVW grants this year, including: the Transitional Housing Assistance Grant, the LAV Program Grant, the Sexual Assault Services (SASP) Formula Grant (as a subrecipient), the Rural Program Grant, the Underserved Program Grant, the Culturally Specific Services Program Grant, and the JFF Program Grant. For example, both Hope & Safety Alliance and SASS have intended to apply for the OVW FY25 Transitional Housing Grant, but were deterred from applying because of the new funding conditions described below.

### V. OVW's New Funding Conditions

15. The NOFOs for the FY25 OVW grants for which Oregon Coalition and its members have intended to apply include new "out-of-scope" funding conditions that differ significantly from the conditions imposed on the use of federal funds under the same grant

6

awards for prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant funds from being used for: (1) promoting or facilitating the violation of federal immigration law; (2) inculcating or promoting gender ideology; (3) promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect; (4) activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses; (5) programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women; (6) awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability; (7) initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support; and (8) any activity or program that unlawfully violates an Executive Order. In addition to identifying these activities as "out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW grants require applicants to submit a certification with their application saying that they will not use the grant funds on the "out-of-scope" activities.

16. In addition, OVW has updated the General Terms and Conditions applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

## VI. OVW's New Funding Conditions Place Oregon Coalition and its Members in an Untenable Position

17. The new funding conditions present Oregon Coalition and its members with an impossible choice. Oregon Coalition could forgo applying for OVW grants and face the direct consequences to Oregon Coalition's financial health and ongoing operations. Or Oregon Coalition could apply and jeopardize its mission and compliance with VAWA requirements, and face enormous risks of litigation and government investigations under the False Claims Act no matter what Oregon Coalition does.

18. Agreeing to the certifications would cause Oregon Coalition profound harm. The funding conditions are vague, and several could be read to conflict with Oregon Coalition's core mission and the activities it has undertaken for decades in furtherance of that mission and in reliance on OVW grants. The funding conditions may require Oregon Coalition to cease engaging in activities that it had previously understood OVW grants to plainly support. Thus, Oregon Coalition does not know how it may comply with the funding conditions while also staying true to its mission and providing essential support for member organizations, advocates, and vulnerable victims and survivors of domestic abuse and sexual violence.

19. For instance, Oregon Coalition's mission statement begins: "[Oregon Coalition] promotes equity and social change in order to end violence for all communities. We seek to transform society by engaging diverse voices, supporting the self-determination of survivors and providing leadership for advocacy efforts." It also contains an express Statement of Equity and Inclusion that states, in part, "We engage in an ongoing process of analysis that sees all systems of oppression as interrelated and work to challenge the power structures that legitimize them and perpetuate injustices. We conduct education about the impact of the various oppressions. We examine and improve practices, policies and protocols, on an ongoing basis, to ensure

compliance with this statement and encourage and enable member programs in their equity and inclusion efforts."

20. Oregon Coalition is unsure whether it may undertake its day-to-day activities reflecting its mission and guiding principles, which reference "equity," without running afoul of the condition not to "promot[e] or facilitat[e] discriminatory programs or ideology, including illegal DEI" as DOJ might interpret those terms. It is also unclear whether Oregon Coalition's mission and guiding principles, which recognize that the criminal offenses of sexual assault and domestic violence carry a systematic social justice element, violate the anti-social justice part of the certification, and whether Oregon Coalition could comply with the anti-social justice condition without adopting a view antithetical to its true beliefs.

21. Oregon Coalition is also concerned that it cannot continue to engage in certain practices that respect the dignity of all victims of sexual violence, regardless of gender and sexual orientation, and are consistent with the VAWA mandate not to discriminate on the basis of gender or sexual orientation. As Oregon Coalition's Philosophy Statement provides, in relevant part, "Collectively, we support the rights of all people to have access to information, advocacy, crisis intervention, treatment, education and prevention services. We support the right of survivors to make choices about reporting, prosecution, pregnancy, future safety and other issues created by their experience. We believe in self-determination, empowerment and the right of all persons to live without fear of interpersonal violence regardless of race, gender, national origin, age, ability, religion or sexual orientation." It is unclear whether Oregon Coalition may continue its practices and activities while complying with the funding condition not to "inculcat[e] or promot[e] gender ideology."

22. It is also unclear whether Oregon Coalition may continue providing certain services to the immigrant community, including those without legal status, in accordance with the funding conditions. Oregon Coalition regularly convenes affinity groups and provides technical assistance to member programs that work with immigrant communities, including those that are not documented. But doing so now may conflict with the way DOJ interprets the prohibition against "promoting or facilitating the violation of immigration law."

23. Oregon Coalition member Hope & Safety Alliance would also have to fundamentally change its programming or accept new grants and risk running afoul of various funding conditions imposed on those grants. Hope & Safety Alliance centers diversity and inclusion on its team as a critical way to connect to the diverse communities of survivors who come to them for help—for a survivor, being able to speak with someone who shares their lived experience or cultural identity is a critical part of building trust and safety. Undermining that diversity would damage the very foundation of Hope & Safety Alliance's survivor-centered work.

24. Oregon Coalition member SASS would likewise have to fundamentally change its programming or accept new grants and risk running afoul of various funding conditions imposed on those grants. All SASS staff are certified privileged advocates under Oregon law (*see* note 1 above); their required training includes, amongst other topics, "Anti-Oppression, Anti-Racism, [and] Cultural Responsiveness." If SASS were to accept the grant with the funding conditions, it would have to change the way it trains program staff in a manner that could render them ineligible to be certified privileged advocates. This, in turn, would make it impossible for them to perform essential job duties related to the provision of SASS's core programs, including the 24/7 Crisis and Support Line and 24/7 Emergency Medical Advocacy.

25. As for Oregon Coalition member SARC, it was already deterred from applying to the Children and Youth Program, the Abuse in Later Life Program, and the Engaging Men Program because of the new funding conditions. A college had also invited SARC to collaborate as a partner and subgrantee for a Campus Program application, but it will now likely abstain because of the conditions. SARC's intent in applying to these funds was to *grow* to meet the identified need from the communities it serves, but now, and particularly in light of decreased funding from the state, SARC will be forced to *reduce* its services unless it can apply for VAWA funds.

26. Oregon Coalition fears that if it agrees to the new funding conditions, it could face not only the loss of grant funds, but federal government investigation, private-party litigation under the False Claims Act, and potential liability for not complying. These potential consequences of seeking a grant subject to the new, vague conditions make Oregon Coalition concerned about applying or accepting an award. To mitigate these risks, Oregon Coalition would have to change its practices, in many cases contrary to its core values.

27. Not agreeing to the certifications would result in equally grave harm.

28. Not having access to funds from the Coalition Grant would severely undermine Oregon Coalition's ability to function as a state coalition and to provide direct services. Losing the Coalition Grant would result in a loss of $367,379 in funds for the next fiscal year. Without these funds, as explained in paragraph 11 above, Oregon Coalition would have to reduce the size of its staff and, therefore, its services to members.

29. Oregon Coalition's member programs would lose access to core, comprehensive training for their staff, including needed legal and ethical compliance training on client advocacy services in addition to regular training on emergent issues to ensure front-line staff are able to

provide quality services to all survivors. The state would lose critical technical assistance in systemic response improvements that reduce sexual violence, increase effectiveness of legal responses, and dramatically improve survivor response and support efforts. These losses would make Oregon Coalition less effective as a coalition and undermine its role as the state authority on sexual violence prevention, intervention, and response.

30. Oregon Coalition would also have to reduce or eliminate some of its programs, including its Core Advocate Training. It would not be able to train up-and-coming leaders in sexual assault and domestic violence organizations that are doing important work serving victims throughout Oregon, including in under-resourced areas of the state such as rural and frontier communities and among historically marginalized groups such as immigrants and people with disabilities. This training vacuum would undermine the viability and sustainability of these organizations' programs, and their ability to meet grant application and management requirements, because culturally specific service providers tend to be smaller, less well-resourced organizations lacking the historically established infrastructure necessary for the basic operation of nonprofits, such as bookkeeping, human resources, and management skills. These are just some of the ways Oregon Coalition's programming and its beneficiaries would suffer.

### VII. Cuts to Oregon Coalition's and its Members' Services Would Harm Domestic Violence and Sexual Assault Victims and Survivors

31. The reduction or outright termination of these services would have devastating effects on the community of survivors and victims of sexual violence in Oregon.

32. In the absence of fully funded Oregon Coalition services, sexual assault and domestic violence victims will be confronted with more barriers when trying to access services following their assault, including discriminatory treatment from medical, law enforcement or courtroom personnel, hotline operators, and therapists who have not received anti-bias and other

core victim services training. This will immediately lead to more survivors choosing not to participate in the criminal justice system and fewer being connected to and receiving appropriate medical and therapy services. Direct service providers will be left without the critical assistance they need to navigate compliance with myriad federal, state, and local requirements, all the while desperately trying to keep up with the already-increasing demand for services. Ultimately, the quality of their services will inevitably suffer.

33.     Oregon Coalition's operations are essential to permitting the network of direct service providers to focus on providing the highest-quality services to survivors and ensuring that the systems that contribute to addressing and responding to the epidemic of sexual violence are operating with evidence-based, trauma-informed, and survivor-centered policies and practices.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2025.

Keri Moran-Kuhn
Executive Director
Oregon Coalition Against Sexual and Domestic Violence

13