# EXHIBIT 17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND COALITION AGAINST
DOMESTIC VIOLENCE, *et al.*

*Plaintiffs*,

v.

PAMELA BONDI, in her official capacity as United States Attorney General, *et al.*

*Defendants*.

Case No. 1:25-cv-00279

**DECLARATION OF KELSEN YOUNG**

I, Kelsen Young, declare as follows:

**I.  Background**

1. I am the Executive Director at the Montana Coalition Against Domestic and Sexual Violence (hereinafter "Montana Coalition"), Montana's federally designated domestic violence and sexual assault coalition.

2. The Montana Coalition was founded in 1986 and is headquartered in Helena, Montana.

3. The Montana Coalition is a dual domestic violence and sexual assault coalition and membership organization. The Montana Coalition provides training and technical assistance to service providers addressing domestic and sexual violence in the State and serves as a resource for member and allied organizations by providing training, technical assistance, conducting statewide planning and needs assessment, developing and enhancing service standards, and gathering and disseminating critical resources and information.

4.      The Montana Coalition was founded to strengthen the support systems serving survivors of domestic and sexual violence by facilitating networking among member programs while advocating for social and systems change in Montana. The Montana Coalition is the designated State Coalition for Montana by related federal government agencies.

5.      The Montana Coalition is the only statewide organization providing training and technical assistance to the array of service providers that address domestic and sexual violence in the state. One of the Montana Coalition's primary goals is to increase the representation of underserved populations in the coordination of activities and identifying gaps in services. We hold a number of training and membership events throughout the year that focus on promoting coalition building and collaboration, developing and enhancing strategies to address problems, and increasing the capacity of advocates and other system personnel to meet the diverse needs of survivors.

6.      The Montana Coalition has an annual budget of approximately $1.2 million. Of that total, 97 percent—over $1 million—is from direct federal funds. At least 50 percent of the Montana Coalition's budget is from grants issued by the U.S. Department of Justice's Office on Violence Against Women (OVW).

**II. The Montana Coalition Member Organizations**

7.      The Montana Coalition is a membership organization with 40 member organizations. Members include nonprofit organizations with the primary mission of providing services to survivors of domestic violence, dating violence, sexual assault, or stalking, and state and local victim assistance programs and supports associated with the local prosecutors' or law enforcement office.

8. Member organizations receive regular email updates on related state and federal policy; receive access to the Montana Coalition trainings and conference, with options for need-based scholarships; opportunities to network with other members at membership and regional meetings throughout the state; and access to an extensive resource library, technical assistance, and webinars on a wide variety of topics.

**III. The Montana Coalition Has or Has Intended to Apply For**

9. **Coalition Grants.** The Montana Coalition has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year since at least 2006 when I started as Executive Director of the Montana Coalition, but I believe we have received the grant funding since it became available in 1996.

10. Most recently, OVW awarded the Montana Coalition a total of $367,379.00 through the Coalition Grant in FY24. The grant has a period of performance and a budget period of October 1, 2024 through September 30, 2025. The Coalition Grant generally represents 50% of the Montana Coalition's annual budget. In FY 2024 it is closer to 35% but only because we have American Rescue Plan Act dollars which end in September 2025. For October 2025 forward, the Coalition Grant represents 50% of our funding.

11. With the Coalition Grant, the Montana Coalition supports the development and operation of community and statewide initiatives to address the needs of the LGBTQ+ community, one of the most underserved and vulnerable populations in our state. We are one of only a few statewide organizations working on this issue and our inability to continue would represent a significant shift in capacity and ability to meet the needs in our state.

12. With the Coalition Grant, the Montana Coalition collaborates with the Montana Board of Crime Control on technical assistance and support to member programs regarding their administrative and programmatic capacity. This includes financial management and grant compliance, policies and procedures for internal and external operations, staff hiring and supervision, allowable expenses and federal rules for grants, as well as many other topics as needed. We hold regular calls and meetings with directors of programs in order to do so. We would not be able to afford the efforts at the same level if we lost our OVW grant and would be limited to only focus on domestic violence shelters.

13. The Montana Coalition has received competitive grants from OVW as well, including the Legal Assistance for Victims (LAV) Grant, the Disabilities Grant, and the Rural Program Grant Bakken Special Funding Opportunity, which allowed the Montana Coalition to respond to a particularized need for increased services in Montana and Eastern North Dakota during the so-called Bakken Oil boom. In recent years, however, the Montana Coalition has received increased funds from the Department of Health and Human Services to respond to the vast needs of their members and survivors for increased resources and support as a result of the COVID 19 pandemic.

14. For the upcoming OVW grant cycle (October 1, 2025 through September 30, 2026), the Montana Coalition again applied for the Coalition Grant. If awarded the Coalition Grant, as expected, the Montana Coalition would receive $356,707. The Notice of Funding Opportunity (NOFO) for the Coalition Grant requires applicants to submit a certification by June 23, 2025 at 11:59 PM ET and submit the final application by June 25, 2025 at 8:59 PM ET.[1] If awarded this Grant, the Montana Coalition would be able to continue providing technical

---

[1] Pursuant to a stipulation filed in this matter, the Montana Coalition and its members are not required to submit a certification for any OVW grant until August 12. Absent judicial relief, we will be required to submit a certification at that time.

4

assistance to support our member programs that provide critical domestic violence and sexual assault services to the community. However, if the Montana Coalition could not obtain the Coalition Grant, the Montana Coalition would only be able to continue with its work addressing domestic and dating violence and would need to discontinue all its work related to assisting survivors of sexual assault and stalking. As the only statewide entity who specializes in sexual assault, this would be a significant loss of capacity at every level for sexual violence.

### IV. Grants That Montana Coalition Members Currently Have or Have Intended to Apply For

15. Montana Coalition members also receive and/or have intended to apply for OVW grants. Those including the LAV Grant, the Rural Program Grant, the Transitional Housing Assistance Grant, the Improving Criminal Justice Responses Program (ICJR) Grant and the Justice for Families Program Grant.

16. Montana Coalition member Friendship Center of Helena, Inc. intended to apply for the ICJR Grant but chose not to do so because of concerns about the OVW's new funding conditions.

### V. OVW's New Funding Conditions

17. The Notices of Funding Opportunity (NOFOs) for the FY25 OVW grants for which the Montana Coalition and its members have intended to apply include new "out-of-scope" funding conditions that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant funds from being used for: (1) promoting or facilitating the violation of federal immigration law; (2) inculcating or promoting gender ideology; (3) promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal

dignity and respect; (4) activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses; (5) programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women; (6) awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability; (7) initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support; and (8) any activity or program that unlawfully violates an Executive Order. In addition to identifying these activities as "out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW grants require applicants to submit a certification with their application saying that they will not use the grant funds on the "out-of-scope" activities.

18.     In addition, OVW has updated the "General Terms and Conditions" applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

**VI. OVW's New Funding Conditions Place the Montana Coalition and its Members in an Untenable Position**

19.     The new funding conditions present the Montana Coalition and its members with an impossible choice: forgoing applying for critical OVW grants and facing direct consequences to their financial health and ongoing operations or applying for these critical grants but

6

jeopardizing their mission and compliance with Violence Against Women Act (VAWA) anti-discrimination requirements, while also facing the extreme risks of litigation and government investigations under the False Claims Act.

20. Agreeing to the certifications now required by OVW would cause the Montana Coalition significant harm. First, the funding conditions are vague, making it exceedingly challenging to know whether they have been violated. Second, some of the conditions could be read as in conflict with the Montana Coalition's role, mission, and guiding principles that inform the activities it has undertaken for decades in furtherance of that mission and in reliance on OVW grants. The funding conditions may further require the Montana Coalition to cease engaging in activities that it had previously understood OVW grants to plainly support, finding itself in a position where it may not know how to comply with these funding conditions while also staying true to its mission and the essential support it has provided to member organizations, advocates, and vulnerable victims and survivors of domestic and sexual violence for four decades.

21. As one example of the potential misalignment between the Montana Coalition's work and the new conditions imposed by OVW is the Coalition's self-described goal to "uproot violence and oppression in order to end domestic and sexual violence in Montana." In furtherance of this goal, the Montana Coalition provides technical assistance and training to member organizations and allied organizations regarding the disproportionate impact of violence on marginalized communities in Montana. Those efforts evolve based on the most pressing issues of the time, but, for example, we actively support efforts to address the Missing and Murdered Indigenous People Crisis in Montana. These efforts are critical to addressing the particular needs of Indigenous people, who the federal government has recognized are at a

7

disproportionate risk of experiencing violence or murder or going missing. The Coalition also supports tribal programs directly while there is no designated tribal coalition in Montana. The Montana Coalition is unsure whether this approach to its work, one that has served it and its community for nearly four decades, would violate the new prohibitions of funds being used for "activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses."

22. The Montana Coalition also operates programs designed to advocate for justice, inclusion, and full community participation, remove barriers, real or perceived, to encourage the widest possible participation from vulnerable communities. Accordingly, the Montana Coalition is unsure whether it may undertake its day-to-day activities reflecting its mission and guiding principles without running afoul of the condition not to "promot[e] or facilitat[e] discriminatory programs or ideology, including illegal DEI" or "inculcat[e] or promot[e] gender ideology" as the U.S. Department of Justice (DOJ) might interpret those terms.

23. Many of the Montana Coalition's activities in furtherance of its OVW grant-funded training programs may also conflict with the new funding conditions. It is unsure if it may operate its current trainings that address explicit and implicit bias in program development, service delivery, and interactions with survivors, and the disparate impacts of societal risks and systems of oppression on survivors. Again, the Coalition does not know if those trainings would be construed as "promoting or facilitating discriminatory programs or ideology, including illegal DEI" as DOJ might interpret those terms.

24. The Montana Coalition is also concerned that it cannot continue to engage in certain practices that respect the dignity of all victims of domestic and sexual violence, regardless of gender and sexual orientation, and are consistent with the VAWA mandate not to

8

discriminate on the basis of gender or sexual orientation. It offers training on how to help advocates be attuned to and appropriately address specific needs of LGBTQ+ survivors, and the technical assistance they provide to Montana agencies, member programs, and community partners include information about compliance with the U.S. Housing and Urban Development's and VAWA's anti-discrimination mandates. The Coalition also regularly requests and uses pronouns, participates in an LGBTQ+ Coalition, includes information about LGBTQ+ survivors in advocacy and public information, and again, complies with anti-discrimination provisions under VAWA. It is unclear whether it may continue these practices and activities while complying with the DOJ's funding condition not to "inculcat[e] or promot[e] gender ideology."

25. The Montana Coalition is also unsure whether it may continue providing certain services to the immigrant community, including those without legal status, and the member organizations that support these communities, while complying with the funding conditions. The Coalition includes member organizations that help immigrant clients understand their rights and obtain appropriate legal assistance, including specific education around the VAWA and crime-victim specific immigration opportunities and protections that may be available regardless of their current status. But doing so may now conflict with the way DOJ interprets the prohibition against "promoting or facilitating the violation of immigration law."

26. In both its trainings and advocacy, the Coalition and its members recognize and present data and evidence showing that the criminal legal system does not always contribute to improving safety for some survivors, and in some cases increases their harm. Accordingly, to effectively implement survivor-centered services it is important to explore alternatives to the criminal legal system and individualized support for survivors in policy, programming, and protocol development. But the Coalition is unclear about whether continuing to share this

information and advocate for systemic solutions to address the limitations of the criminal legal system would violate the DOJ's interpretation of the prohibition on using OVW funds for "activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses" or "limit the role of police, prosecutors, or immigration enforcement in addressing violence against women."

27. The Coalition is also concerned about the prohibition against campaigns or media that does not "lead to tangible improvements in prevention, victim safety, or offender accountability." The Montana Coalition regularly responds to media requests from a wide variety of sources and participates in events by providing public educational materials on a wide range of issues related to domestic violence and sexual assault. With no definition or parameters around "tangible improvement," it is impossible to know what OVW would want demonstrated before the Coalition is able to issue anything publicly, including social media or other communications that require rapid response.

28. Membership organizations in the Montana Coalition share some of these concerns as well. For example, the Coalition's member organization Friendship Center of Helena, Inc. may need to change how they conduct educational programs, alter their long-ago created advertisements and brochures, and adjust how they speak with clients about domestic violence, sexual assault, and stalking ("DVSAS"). Specifically, the "out of scope" restrictions regarding gender ideology, diversity, equity, inclusion, and the prohibition against acknowledging that DVSAS is a social justice issue create a compliance concern. Friendship Center of Helena finds the other restrictions to be so broad that it is difficult to understand the interpretation and associated impact. For example, they explain reporting options to victims, make it clear that the choice to report is not required and belongs to them; inform them that they have the right to

refuse to talk to law enforcement about their experience; assist with getting a no contact order or order of protection dropped; help them to work with prosecutors to get a case dismissed if that is their wish—all of which Friendship Center of Helena worries will be considered discouraging collaboration with law enforcement and somehow violate the "out of scope" restrictions. They worry that, for example, if they only have one room available in the housing shelter with multiple applicants, and the applicant that moves into the shelter happens to be undocumented, that the organization would be sued for violating the immigration provision.

29. The Coalition Member is unsure about whether they will be able to use OVW funding to serve all immigrant survivors regardless of their immigration status—a current commitment of their organization—without the DOJ interpreting this as violating the prohibition against "promoting or facilitating the violation of immigration law." Currently, this organization also uses inclusive language and approaches when working with survivors who are gender-fluid, gender-questioning, and transgender but worries that continuing to do so would violate the prohibition on "inculcating or promoting gender ideology."

30. The Montana Coalition fears that if it agrees to the new funding conditions, it could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. These potential consequences and vague conditions make the Montana Coalition concerned about applying for or accepting a grant from OVW, grants that have been critical to sustaining its work for decades. To mitigate these risks, the Montana Coalition would have to change its practices, in ways that would contradict its mission, guiding principles, and effectiveness.

31. Yet, not agreeing to the certifications would result in equally grave harm. Not having access to funds from the Coalition Grant and other competitive grants would severely

undermine the Montana Coalition's ability to function effectively and provide invaluable training and services to its members and other service providers in the community. Losing the Coalition Grant alone would result in a $356,707 loss of funds for the next fiscal year. Without these funds, the Montana Coalition would have to reduce the size of its staff and its services to members significantly.

32. The Montana Coalition member programs would lose access to core, comprehensive training for their staff necessary to provide legally and ethically compliant advocacy services to clients in addition to regular training on emergent issues that ensure front-line staff are able to provide quality services to all survivors. The Montana Coalition would not be able to train up-and-coming leaders in domestic and sexual violence organizations that are doing important work serving culturally-specific communities. The state would lose critical technical assistance in systemic response improvements that reduce domestic and sexual violence, increase effectiveness of legal responses, and dramatically improve survivor response and support efforts. These losses would make the Coalition less effective and undermine its role as Montana's authority on domestic and sexual violence prevention, intervention, and response.

### VII. Cuts to the Montana Coalition and its Members' Services Would Harm Domestic and Sexual Violence Victims and Survivors

33. The reduction or outright termination of these services would have devastating effects on the community of survivors and victims of domestic and sexual violence.

34. In the absence of fully funded Montana Coalition services, domestic and sexual violence victims and survivors will be confronted with more barriers when trying to access services following their assault, including discriminatory treatment from medical, law enforcement or courtroom personnel who have not received anti-bias and other core victim services training. This will immediately lead to more survivors choosing not to participate in the

criminal justice system and fewer being connected to and receiving appropriate medical and therapy services. Direct service providers will be unable to maintain high quality services that follow best practices guidance and comply with the myriad federal, state, and local requirements they would now have to navigate on their own, without the critical assistance of the Montana Coalition, while desperately trying to keep up with the already increasing demand for services.

35. The Montana Coalition's operations are essential to permitting the network of direct service providers to focus on providing the highest quality services to the survivors they serve and ensuring that the systems that contribute to addressing and responding to the epidemic of domestic and sexual violence are operating with evidence-based, trauma-informed, survivor-centered policies and practices.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 25, 2025.

**Kelsen Young**
Digitally signed by Kelsen Young
Date: 2025.06.25 13:05:57 -06'00'

Kelsen Young
Executive Director
Montana Coalition Against Domestic and Sexual Violence

13