# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| **RHODE ISLAND COALITION AGAINST DOMESTIC VIOLATION**, *et al.*, | Case No. 1:25-cv-00279-WES-AEM |
| Plaintiffs, | |
| **v.** | |
| **PAMELA BONDI**, *et al.*, | |
| Defendants. | |

## DECLARATION OF GINGER BARAN LYONS

I, Ginger Baran Lyons, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information known to me from official records reasonably relied upon by me in the course of my employment, hereby declare as follows relating to the above titled matter. Records attached to this declaration are true and accurate copies of records maintained in the ordinary course of business.

1.      I am the Deputy Director for Grants Development and Management in the United States Department of Justice's ("the Department") Office on Violence Against Women ("OVW"), which administers grant programs authorized under the Violence Against Women Act ("VAWA"). I also currently serve as OVW's designated Supervisory Official.  I oversee the operations of the office, including the management of its grants.

1

2.      Prior to being installed as Deputy Director in December 2024, I served as OVW's Associate Director for Performance, Assessment, Research, and Evaluation.  I began working at OVW as a Grant Program Specialist in May 2010 and served in positions of increasing responsibility before my appointment to Associate Director in July 2022.

**The Grant Programs Administered by OVW Further VAWA's Purpose**

3.      Originally established administratively in 1995, OVW was established by statute in 2002 as a "separate and distinct" office within the Department of Justice.[1]  OVW's mission[2] is to provide federal leadership in developing the nation's capacity to reduce violence against women and administer justice for and strengthen services to victims of domestic violence, dating violence, sexual assault, and stalking ("VAWA crimes").  OVW administers more than two dozen federal grant programs, most of which are authorized by VAWA and subsequent legislation.  Some programs are discretionary, meaning that eligible applicants generally must compete for funding through a merit review process conducted by OVW, typically using external peer reviewers;[3] others are formula or quasi-formula, meaning that all eligible applicants receive an award, provided they meet application requirements, with the amount of the award determined by a mathematical formula.

---

[1] Pub. L. No. 107-273, div. A, § 402(3), 116 Stat. 1789 (codified as amended at 34 U.S.C. §§ 10442-10445).
[2] U.S. DEP'T JUST. OFFICE ON VIOLENCE AGAINST WOMEN, *Mission Statement*, https://www.justice.gov/ovw/mission (last visited July 18, 2025); *see also* 34 U.S.C. §§ 10442(c)(1) and 10444(5) (providing that OVW has sole jurisdiction over certain duties and functions, which carrying out the functions of the Department of Justice under VAWA and its reauthorizations, including "the development and management of grant programs").
[3] *See* 2 C.F.R. § 200.1 (defining a discretionary award as "an award in which the Federal agency, in keeping with specific statutory authority that enables the agency to exercise judgment ('discretion'), selects the recipient or the amount of Federal funding awarded through a competitive process or based on merit of proposals" and noting that "[a] discretionary award may be selected on a non-competitive basis, as appropriate.").

4.      Grant recipients and subrecipients ("recipients") of OVW funds report serving hundreds of thousands of victims each year.[4] In their performance reports, recipients document the ways grant funds are used to help victims escape violence and live to see another day.[5] OVW's grants provide funding to meet the urgent needs of victims in crisis and support the justice system's response to VAWA crimes.[6]

5.      In my 15+ years as a career public servant, I have always known OVW to be an office staffed by people who are dedicated to the mission and committed to supporting recipients in keeping victims safe from further harm. My colleagues are steadfastly devoted to seeing that shelter, rape crisis center, police precinct, courthouse, and hospital doors are open to all victims, and that people who brutalize others are held accountable for their crimes and prevented from wreaking more havoc on their families and communities.

6.      Activities that recipients can undertake with OVW funds are determined by statutes, regulations (including 2 C.F.R. Part 200, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards,* "Uniform Guidance"[7]), requirements outlined in the Notice of Funding Opportunity ("NOFO") under which an award is issued, and the *DOJ Grants Financial Guide.*[8]

### Out-of-Scope Activities

7.      Activities that recipients can undertake with OVW funds vary across grant programs. Since Fiscal Year ("FY") 2011, each NOFO has identified a non-exhaustive list of out-

---

[4] *See, e.g., 2024 Biennial Report to Congress on the Effectiveness of Grant Funds under the Violence Against Women Act / Answering the Call: Thirty Years of the Violence Against Women Act*, U.S. DEP'T JUST. OFFICE ON VIOLENCE AGAINST WOMEN (Dec. 13, 2024), https://www.justice.gov/ovw/media/1385821/dl?inline.
[5] *Id.*
[6] *Id.* at 16-17.
[7] Available at https://www.ecfr.gov/current/title-2/subtitle-A/chapter-II/part-200?toc=1.
[8] *DOJ Grants Financial Guide*, U.S. DEP'T JUST. OFFICE OF JUSTICE PROGRAMS (October 2024), https://www.ojp.gov/funding/financialguidedoj/overview.

of-scope activities to alert applicants to what we cannot finance under the statute setting forth the grant program's scope. These lists have been revised over time, largely in response to activities OVW staff commonly advise recipients to remove from their proposed grant budgets and project plans, or activities recipients report having funded with OVW dollars because they did not realize it was out-of-scope. The out-of-scope activities list must be read in conjunction with the statutory program purposes, also set forth in the NOFO. Even when a particular activity or cost is not explicitly prohibited by a NOFO or the Uniform Guidance, funds that are spent on unallowable activities typically must be paid back, so OVW modifies its out-of-scope activities lists to help applicants develop proposals and ensure recipients keep costs in line with the statutory purposes of the grant program. For example:

  a.  Since FY 2012, NOFOs for a grant program addressing VAWA crimes on college campuses list as out-of-scope: "Products and/or materials that are not specifically focused on the dynamics of [VAWA crimes] and campus responses to these crimes." This was added to NOFOs after OVW found that recipients were using or requesting to use grant funds to develop and distribute materials on topics unrelated to the purposes of their projects, such as women's empowerment or sex education. This out-of-scope item was added to clarify for applicants and recipients that activities untethered to addressing VAWA crimes are not permissible uses of grant funds.

8.     The revision, addition, or removal of out-of-scope activities is not a formalized process, but rather, is typically determined by OVW staff when they draft NOFOs using a given year's NOFO template. Out-of-scope activities are also scrutinized during the NOFO review process by OVW supervisors and attorneys, who advise on matters of statutory compliance. OVW

4

staff are mindful of Uniform Guidance directives to "limit the length and complexity of the [NOFO]" while also including "information on program specific unallowable costs so that the applicant can develop an application and budget consistent with program requirements."[9]

### NOFOs Often Emphasize an Administration's Priorities

9.     In my experience, NOFO templates, individual NOFOs, and other public-facing documents are perennially subject to revisions by politically appointed leadership, as is their prerogative. Examples of past revisions include those to: a) advance an Administration's policy objectives by emphasizing specific ways of implementing VAWA programs' purposes (e.g., a focus on anti-stalking efforts under the first Trump Administration and a priority of reaching underserved populations under the Biden Administration); b) encourage applicants to address perceived areas of underinvestment (e.g., under various Administrations, supporting faith-based organizations and emphasizing legal obligations to provide language access for people with limited English proficiency); and c) use favored words or avoid disfavored words (e.g., "historically marginalized" was a term frequently used under the Biden Administration and terms such as "unconscious bias" or "intersectionality" were deemed to be potential indicators of trainings that teach divisive concepts during the first Trump Administration).

10.     The Out-of-Scope Activities section is a logical place to emphasize the current Administration's priorities related to violence prevention, victim safety, law enforcement, and offender accountability, because activities not furthering these goals also fall outside the statutory scope of OVW's grant programs. OVW's 30 years' experience administering grant programs has taught us that recipients can get distracted from the authorized purposes of the programs by a desire to tackle crimes not generally covered by VAWA, such as child abuse and neglect, or broader

---

[9] 2 C.F.R. § 200.204 & App. I(b)(3)(i)(G).

systemic social justice issues, such as criminal justice reform, economic development, or anti-bias training unrelated to measurable improvements in responding to VAWA-covered crimes. The FY 2025 list of out-of-scope activities addressing Administration priorities not specifically covered by an E.O. are informed by this experience. The out-of-scope activities in the FY 2025 NOFOs do not preclude recipients from using grant funds for activities allowed under VAWA and other pertinent authorities.

**OVW's General Terms and Conditions**

11.    Each year, OVW posts on its website "General Terms and Conditions" as required by the Uniform Guidance.[10] Since FY 2017, these general conditions have included one on "remedies for non-compliance or for materially false statements" and several on "[c]ompliance with DOJ regulations pertaining to civil rights and nondiscrimination."

12.    The general terms and conditions have reflected past administration's policy priorities. An example of an amplifying condition implemented pursuant to an E.O. is OVW's general condition on policies to ban text messaging while driving, which was required by 2009 E.O. 13513, *Federal Leadership on Reducing Text Messaging While Driving*.[11]

13.    An example of a condition implementing an Administration priority is OVW's general condition on "training guiding principles," which was originally added to OVW awards pursuant to a March 20, 2012 Deputy Attorney General memorandum requiring that Department-funded training be guided by "a set of overarching principles" developed by a working group of "the Attorney General's Arab-Muslim Engagement Advisory Group."[12]

---

[10] 2 C.F.R. § 200.211(c)(2).  These conditions are posted by fiscal year on OVW's website. *See* U.S. DEP'T JUST. OFFICE ON VIOLENCE AGAINST WOMEN, Award Conditions, https://www.justice.gov/ovw/award-conditions (last visited July 18, 2025).

[11] *See* U.S. DEP'T JUST. OFFICE ON VIOLENCE AGAINST WOMEN, General Terms and Conditions, § 21 https://www.justice.gov/ovw/fy-2025-general-terms-and-conditions#21 (last visited July 18, 2025).

[12] *See id.* at § 9; *see also* U.S. DEP'T JUST., Mem. for Heads of Components and United States Attorneys (Mar. 20, 2012), https://www.justice.gov/sites/default/files/dag/legacy/2012/03/20/training-guiding-principles.pdf.

14.     In FY 2025, OVW and DOJ's other two grantmaking components, the Office of Community Oriented Policing Services and the Office of Justice Programs, all added a new condition to comply with Section 3(b)(iv) of E.O. 14173, which requires the head of each federal agency to include in every grant award a term requiring the recipient (1) "to agree that its compliance in all respects with all applicable federal anti-discrimination laws is material to the government's payment decisions for purposes of [the False Claims Act]"; and (2) "to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." The new condition is number 15 on the list of general conditions posted on OVW's website.[13] OVW understands this condition as amplifying—but not materially changing—the pre-existing general conditions on remedies for non-compliance for materially false statements and compliance with DOJ regulations pertaining to civil rights and nondiscrimination.

**Agency Process to Determine FY 2025 Out-of-Scope Activities**

15.     On January 27, 2025, the Office of Management and Budget's ("OMB") issued memorandum M-25-13, *Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs*, which, among other things, directed federal agencies to identify federal financial assistance programs implicated by an executive order ("E.O.") issued in the initial days of the Trump Administration.[14] In response, OVW analyzed its grant programs and concluded that no OVW grant programs promote or facilitate the violation of federal immigration laws (see *Protecting the American People Against Invasion* (E.O. 14159)), fund discriminatory programs including illegal DEI and "diversity, equity, inclusion, and accessibility" ("DEIA") (see *Ending*

---

[13] *See* U.S. DEP'T JUST. OFFICE ON VIOLENCE AGAINST WOMEN, FY 2025 General Terms and Conditions, § 15, https://www.justice.gov/ovw/fy-2025-general-terms-and-conditions#15 (last visited July 18, 2025).
[14] M-25-13 was rescinded on January 29, 2025. *See* OFF. OF MGMT. & BUDGET, EXEC. OFF. OF THE PRESIDENT, Mem. M-25-14, *Rescission of M-25-13* (Jan. 29, 2025), https://www.whitehouse.gov/omb/information-resources/guidance/memoranda/.

*Radical and Wasteful Government DEI Programs and* Preferencing (E.O. 14151)), promote gender ideology (see *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (E.O. 14168)), or support activities prohibited by E.O.s issued on or after January 20, 2025.

16.    I further analyzed OVW's grant programs vis-à-vis the *Defending Women* E.O. in late January 2025, determining that the grant programs OVW administers exist to defend women from violence and abuse and that, pursuant to VAWA's nondiscrimination provision (34 U.S.C. § 12291(b)(13)(A)), OVW recipients must serve victims regardless of how victims describe themselves.

17.    In mid-March 2025, I further analyzed our grant programs vis-à-vis E.O. 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, and a February 5, 2025 Attorney General memorandum, *Eliminating Internal Discriminatory Practices*.[15] I determined that OVW grants do not promulgate DEI/DEIA nor do they "violate the text and spirit of our longstanding Federal civil-rights laws[...]and undermine our national unity." I saw no room in OVW's authorizing statutes for such programming and determined that OVW will not approve material that presents social theory as empirical fact and/or encourages "race- or sex-based preferences, diversity hiring targets, or preferential treatment based on DEI- or DEIA related criteria." As part of my analysis, I considered that OVW administers grant programs authorized by Congress to provide culturally specific victim services and reach underserved populations and that, in addition to victim services, investigation, prosecution, and other activities, OVW grant programs fund training to equip professionals with the knowledge and skills they need to combat violence and serve victims. I also considered that some of this training addresses how race, sex,

---

[15] *See* OFF. OF ATT. GEN., Mem. For All Department of Justice Employees, *Eliminating Internal Discriminatory Practices* (Feb. 5, 2025), https://www.justice.gov/ag/media/1388556/dl?inline.

culture, and other factors can affect a person's experience of violence and their pursuit of safety and justice, relying on the following illustrative examples:

    a. *Training on honoring victims' religious traditions*. OVW-funded staff at domestic violence shelters benefit from and provide training on how to best serve victims from the populations represented in their local communities. This can mean, for example, ensuring that shelter staff know to have non-pork meal options for Jewish residents. Religious and cultural traditions such as these can be core to a person's sense of self and integral to their ability to survive hard times and thrive in the future.

    b. *Training on serving male victims of sexual violence*. A recipient trains victim advocates and law enforcement in rural counties on working with men and boys who have been victimized and may face unique difficulties when they disclose, due to commonly held misperceptions about male victims. This training can foster more effective investigations, increased reporting, and services that help men and boys cope with trauma in healthy ways.

    c. *Training on a Native community's culture to help victims recover*. At an OVW-funded agency in an Alaska Native village, staff are trained by elders on Yupik culture so they can support Yupik victims in healing from violence and parenting their children in traditional ways.

    d. *Training on not regulating behavior in ways that conflict with culture*. For example, at a training for OVW-funded supervised visitation staff, a trainer who works in a port city advises attendees that policies must account for the cultural norms of the populations served. She explains that at her visitation center, staff could not enforce

a rule against foul language because expletives are a part of the vernacular among the longshoremen who comprise a significant portion of the men court-ordered to see their kids at the visitation center. Canceling visits over curse words would mean these fathers could not spend time with their children, which could in turn jeopardize the children's and their mothers' safety.

e. *Training for community partners on supporting victims from specific populations.* Two examples are: 1) a recipient that works with the Korean American community trains faith leaders in local Korean churches so they can support victims in their congregations; and 2) OVW-funded staff at a Deaf victim services program train law enforcement on communicating and working with Deaf victims. This training can help law enforcement gather more accurate information and build trust with Deaf victims, resulting in better investigations.

18. In March 2025, OVW assessed how best to address the Administration's priorities, including E.O.s, in OVW's FY 2025 NOFOs. Given OVW's prior determination that our grant programs could not fund activities proscribed by the E.O.s, we identified the Out-of-Scope Activities section as the best place to emphasize the policy goals of the E.O.s by clarifying what recipients *already* cannot do with OVW funds. The Out-of-Scope Activities section simply clarifies that for any E.O. not specifically referenced, we determined that any *unlawful* violation of an E.O. necessarily is out-of-scope because grant funds could never be used for unlawful activities.

**The FY 2025 Out-of-Scope Activities and General Terms and Conditions Are Consistent with VAWA**

19.     OVW does not view and never to my knowledge has viewed any of its grant programs' statutes as promoting "illegal DEIA", facilitating the violation of immigration laws, or "inculcating gender ideology."

20.     VAWA, as amended, prohibits OVW recipients from excluding, denying benefits to, or discriminating against any person on the basis of actual or perceived race, color, religion, national origin, sex, gender identity, sexual orientation, or disability in any program or activity funded in whole or in part by OVW (34 U.S.C. § 12291(b)(13)(A)). The note at the end of the list of out-of-scope activities (stating that "[r]ecipients should serve all eligible victims as required by statute, regulation, or award condition") was intended to refer in part to this provision. During my tenure at OVW, I have never received or known of a directive from Department leadership to insert into NOFOs any limitation, condition, or other requirement compelling recipients to violate this provision.

21.     OVW regulations (28 C.F.R. § 90.4(c)) stipulate that [v]ictim eligibility for direct services is not dependent on the victim's immigration status." Similarly, OVW grants include a condition[16] that recipients may not engage in activities that jeopardize victim safety or allow offenders to escape responsibility, including, among other things, excluding victims from receiving services based on their actual or perceived immigration status. The note at the end of the list of out-of-scope activities (stating that "[r]ecipients should serve all eligible victims as required by statute, regulation, or award condition") was intended to refer in part to this regulation and award condition. Also, recipients may use grant funds to help victims access immigration benefits designed for abused immigrants and other immigrant victims of crime (i.e., VAWA self-

---

[16] *See* U.S. DEP'T JUST. OFFICE ON VIOLENCE AGAINST WOMEN, General Terms and Conditions, § 31, https://www.justice.gov/ovw/fy-2025-general-terms-and-conditions#21 (last visited July 18, 2025).

petitioning, VAWA cancellation of removal, and T and U visas).[17] During my tenure at OVW I have never received or known of a directive from Department leadership to insert into NOFOs any limitation, condition, or other requirement compelling recipients to violate this regulation or curtail lawful services to immigrant victims.

22.    May 23, 2025, I provided OVW staff with talking points for responding to applicants' questions about the Out-of-Scope Activities listed across OVW's FY 2025 NOFOs. *See* Talking Points dated May 23, 2025, attached hereto as **Exhibit A.**

23.    June 11, 2025, OVW posted a sample letter for the Certification Regarding Out-of-Scope Activities on the Open NOFOs page of our website with a brief note explaining what it is. This was not a policy announcement. It was intended to assist applicants, as it is OVW's standard practice to provide sample certification letters and other required documents to make it easier to apply for OVW grants.

### The Certification and Civil Rights Fraud Initiative

24.    In early May 2025, OVW added the Certification Regarding Out-of-Scope Activities to FY 2025 NOFOs to call applicants' (and ultimately recipients') attention to the importance of focusing grant-funded activities on the statutory purposes of each grant program. Including a certification encourages applicants to read and think carefully about its contents and provides guardrails for OVW's iterative decision-making process with recipients on the use of grant funds. It also provides a clear basis for suspending or terminating an award if OVW's other

---

[17] *See* 34 U.S.C. § 12291(a)(24) (defining "legal assistance" to include assistance provided in immigration matters); *id.* § 12291(a)(51) (defining "victim services" to include legal assistance); *id.* § 10461(b)(5) (allowing grant funds under the ICJR Program to be used for strengthening assistance to victims in immigration matters); *id.* § 12341(b)(2) (allowing funds under the Rural Program to be used to assist victims of domestic violence, dating violence, sexual assault, and stalking in immigration matters); *id.* § 10441(b)(10) (allowing STOP Formula Grant Program funds to be used to provide assistance to victims of domestic violence and sexual assault in immigration matters).

corrective measures for ensuring recipients use funds for in-scope activities have proven unsuccessful.

25.    On May 19, 2025, the Department announced a Civil Rights Fraud Initiative "which will utilize the False Claims Act to investigate and, as appropriate, pursue claims against any recipient of federal funds that knowingly violates federal civil rights laws."[18] I have not been involved in, or been made aware of, any intentions within the Department to subject OVW recipients to investigations or penalties under the False Claims Act.

**OVW Guides a Grant Recipient in the Pre- and Post- Award Process**

26.    Determining whether a planned activity is within the scope of a grant program is not always a straightforward, categorical decision. It is best done in the context of a specific project and not based on hypotheticals. It tends to be case-specific and decided through an iterative process with the recipient.

27.    The NOFO is the first of many steps in the award process because it provides basic information for applicants to use in developing a proposal. Once the applicant becomes a recipient, negotiations may involve OVW asking the recipient for clarification on the need for the activity/item, providing the recipient with opportunities to revise its justification for the activity/item, explaining to the recipient our basis for determining that the activity/item is out-of-scope, and assisting the recipient in coming up with alternatives that are within the scope of the statute and the funded project, as well as allowable under the Uniform Guidance.

a.    For example, OVW staff recently worked with a recipient during budget review to ensure that planned expenditures were necessary, allowable, reasonable, and allocable in keeping with the Uniform Guidance. In this case, the recipient intended

---

[18] *See* Press Release, *Justice Dep't Establishes Civil Rights Fraud Initiative*, U.S. DEP'T JUST. OFF. PUBLIC AFFAIRS (May 19, 2025), https://www.justice.gov/opa/pr/justice-department-establishes-civil-rights-fraud-initiative.

to buy Stanley cups (i.e., high-end water bottles that cost $50 each) to distribute at community events with information about where victims can go for help placed inside the cups. The recipient contended that these items were critical to achieving the project's outreach goals. OVW's statutes, regulations, and other requirements do not explicitly address water bottles, so water bottles are not unilaterally an allowable or unallowable purchase. OVW, however, has a duty to work with recipients to determine that budgeted items under our grants are within scope and are a worthwhile use of grant dollars. In this case, OVW staff recommended purchasing cheaper water bottles and the recipient agreed.

b.  As another example, a recipient recently submitted for OVW approval a training resource on how to counter legislation the recipient deemed harmful to victims. Because recipients cannot use OVW funds to lobby lawmakers, OVW did not approve this item. Rather, OVW worked with the recipient to identify a training topic (i.e., navigating jurisdictional issues in sexual assault cases) that was within the statutory scope of the grant program and the scope of the recipient's project.

28.    OVW actively guides recipients to ensure they can advance anti-violence against women and victim-safety efforts in their communities.  We ensure projects not only adhere to program scope and legal requirements, but also achieve maximum impact.

29.    OVW staff identify out-of-scope activities throughout an application's pre-award review and continue to work with a recipient after an award is issued to ensure that such activities are not supported with grant funds (e.g., removing out-of-scope items from budgets before approving the budget and releasing the funds). When we find that a recipient has spent grant funds on an Out-of-Scope Activity (e.g., discovered when conducting routine monitoring, such as

14

reading performance reports that most recipients file twice per year, or during the closeout process), we address it with the recipient and may require the recipient to return misspent funds to the grant. Oftentimes, however, we can resolve the issue without requiring repayment of funds, such as when we flag as out-of-scope sections of a PowerPoint presentation submitted for OVW approval. In such a case, we typically would direct the recipient to simply revise the presentation.

30.    In mid-February 2025, I provided staff with instructions for reviewing recipients' grant-funded products to ensure they align with OVW's statutory charge from Congress, pertinent regulations, and Department directives. I reminded them that the thread that runs through all VAWA programs is a coordinated community response, which means that when a victim asks for help, people work together to keep the victim safe from further violence; collaboration, training, and other elements of a coordinated response ensure that advocates, law enforcement officers, prosecutors, healthcare personnel, and others know the communities they work in and can effectively serve victims. I also reminded them that VAWA prohibits OVW recipients from excluding, denying benefits to, or discriminating against any person on the basis of actual or perceived race, color, religion, national origin, sex, gender identity, sexual orientation, or disability in any program or activity funded in whole or in part by OVW. Finally, I asked them to be mindful of the Attorney General's February 5, 2025 memorandum, *Ending Internal Discriminatory Practices*, when reviewing and approving materials, specifically its instructions to avoid references to DEI or DEIA in training and programs, including references to "unconscious bias," "cultural sensitivity," and "inclusive leadership."

### OVW Works with Grant Recipients to Resolve Issues

31.    Since FY 2017, every OVW grant awards has contained an award condition stating that compliance with assurances or certifications submitted by recipients are a material

requirement of the award and that failure to comply may result in OVW withholding award funds, disallowing costs, or suspending or terminating the award. This condition further states that any materially false, fictitious, or fraudulent statement to the federal government related to the award may, among other things, be subject to criminal prosecution under 18 U.S.C. § 1001 or lead to civil penalties and administrative remedies under the False Claims Act. [19]

32.    In our normal course of business, OVW does not take draconian measures when concerns arise in a project we fund, including the recipient's conformity with program scope or award conditions. We work with recipients to resolve issues, offering guidance or technical assistance to assist them in doing so. OVW's goal is for the grant programs to succeed to further to goals of VAWA. To that end, OVW may issue a corrective action plan to make clear to a recipient what needs to be done to get the project back on track. When problems persist, we may make referrals for additional monitoring or oversight (e.g., a referral to the Office of the Inspector General's ("OIG") Audit Division, or to the Office of Justice Programs' Office for Civil Rights). A recipient's inability or refusal to rectify problems after OVW takes such corrective measures may then warrant further action which could ultimately lead to suspension or termination of a grant or even civil or criminal penalties, if DOJ enforcement authorities determine that the legal standards for these remedies have been met.

**The FY 2025 Grant Applications Have Increased Compared to FY 2024**

33.    The updated out-of-scope activities and related certification for FY 2025 have not deterred grant applications.  Rather, OVW has seen a significant increase in competitive grant applications in FY 2025 as compared to last year. The following programs' NOFOs closed within recent weeks:

---

[19] *See* U.S. DEP'T JUST. OFFICE ON VIOLENCE AGAINST WOMEN, General Terms and Conditions, § 21, https://www.justice.gov/ovw/fy-2025-general-terms-and-conditions#21 (last visited July 18, 2025).

| NOFO | 2024 no. of apps received | 2025 no. of apps received | Increase |
|---|---|---|---|
| Transitional Housing | 238 | 277 | 16% |
| Tribal Governments | 53 | 65 | 22% |
| Improving Criminal Justice Responses | 61 | 100 | 64% |
| Consolidated Youth | 121 | 323 | 167% |
| Rural | 162 | 210 | 30% |
| Engaging Men and Youth | 48 | 90 | 49% |
| Abuse in Later Life | 27 | 30 | 11% |
| Enhancing Investigation & Prosecution | 40 | 45 | 13% |

34.    In the states where Plaintiff coalitions are and states whose Attorneys General filed an amicus brief, OVW received a net 30% more applications under competitive grant programs for which the now-closed FY 2025 NOFO contained the cross-program out-of-scope activities. The chart below shows that the total number of applications increased this year for 21 of the 29 states, decreased for five states, and remained the same as FY 2024 for three states:

| State | Transitional Housing Program | | Improving Criminal Justice Responses (ICJR) | | Rural Program | | Consolidated Youth Program | | Enhancing Investigation & Prosecution | | State Total | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2024 | 2025 | 2024 | 2025 | 2024 | 2025 | 2024 | 2025 | 2024 | 2025 | 2024 | 2025 | |
| Arizona | 5 | 7 | 0 | 0 | 5 | 5 | 5 | 7 | 0 | 1 | 15 | 20 | ⇧ |
| California | 29 | 35 | 4 | 11 | 5 | 13 | 18 | 41 | 1 | 5 | 57 | 105 | ⇧ |
| Colorado | 5 | 2 | 2 | 2 | 7 | 4 | 2 | 8 | 0 | 2 | 16 | 18 | ⇧ |
| Connecticut | 1 | 2 | 0 | 2 | 0 | 0 | 2 | 3 | 0 | 0 | 3 | 7 | ⇧ |
| District of Columbia | 2 | 3 | 0 | 0 | 0 | 0 | 1 | 3 | 0 | 0 | 3 | 6 | ⇧ |
| Delaware | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 3 | 1 | ⇩ |
| Hawaii | 1 | 5 | 0 | 1 | 1 | 1 | 0 | 2 | 0 | 2 | 2 | 11 | ⇧ |
| Idaho | 2 | 1 | 1 | 0 | 4 | 5 | 2 | 3 | 0 | 0 | 9 | 9 | -- |
| Illinois | 3 | 10 | 2 | 2 | 3 | 1 | 7 | 13 | 2 | 2 | 17 | 28 | ⇧ |
| Iowa | 3 | 6 | 0 | 0 | 5 | 1 | 1 | 2 | 0 | 0 | 9 | 9 | -- |
| Kansas | 0 | 0 | 0 | 1 | 2 | 3 | 1 | 1 | 0 | 1 | 3 | 6 | ⇧ |
| Maine | 2 | 4 | 2 | 2 | 5 | 6 | 0 | 2 | 3 | 0 | 12 | 14 | ⇧ |
| Maryland | 2 | 7 | 0 | 3 | 1 | 1 | 3 | 4 | 0 | 0 | 6 | 15 | ⇧ |
| Masachussetts | 3 | 5 | 2 | 2 | 1 | 2 | 2 | 6 | 1 | 1 | 9 | 16 | ⇧ |
| Michigan | 8 | 8 | 2 | 1 | 4 | 3 | 2 | 11 | 5 | 2 | 21 | 25 | ⇧ |
| Minnesota | 10 | 5 | 4 | 2 | 2 | 4 | 3 | 4 | 0 | 1 | 19 | 16 | ⇩ |
| Montana | 3 | 5 | 3 | 1 | 6 | 7 | 0 | 3 | 0 | 1 | 12 | 17 | ⇧ |
| Nevada | 4 | 4 | 0 | 3 | 2 | 4 | 2 | 1 | 0 | 1 | 8 | 13 | ⇧ |
| New Jersey | 6 | 6 | 1 | 3 | 0 | 1 | 4 | 8 | 1 | 0 | 12 | 18 | ⇧ |
| New Mexico | 3 | 4 | 0 | 0 | 4 | 1 | 0 | 1 | 1 | 0 | 8 | 6 | ⇩ |
| New York | 18 | 15 | 5 | 4 | 6 | 8 | 9 | 17 | 5 | 1 | 43 | 45 | ⇧ |
| North Carolina | 10 | 7 | 3 | 4 | 7 | 6 | 5 | 9 | 1 | 1 | 26 | 27 | ⇧ |
| Oregon | 6 | 3 | 4 | 0 | 6 | 6 | 2 | 2 | 1 | 1 | 19 | 12 | ⇩ |
| Pennsylvania | 7 | 2 | 1 | 3 | 2 | 1 | 3 | 10 | 0 | 1 | 13 | 17 | ⇧ |
| Rhode Island | 2 | 1 | 0 | 1 | 0 | 0 | 1 | 1 | 0 | 0 | 3 | 3 | -- |
| Vermont | 1 | 3 | 1 | 1 | 1 | 2 | 0 | 1 | 0 | 0 | 3 | 7 | ⇧ |
| Virginia | 5 | 3 | 2 | 1 | 4 | 2 | 2 | 9 | 0 | 0 | 13 | 15 | ⇧ |
| Washington | 4 | 5 | 4 | 4 | 2 | 6 | 3 | 6 | 4 | 1 | 17 | 22 | ⇧ |
| Wisconsin | 10 | 6 | 1 | 3 | 11 | 6 | 4 | 7 | 0 | 0 | 26 | 22 | ⇩ |
| TOTAL | 156 | 165 | 45 | 57 | 96 | 99 | 84 | 185 | 26 | 24 | 407 | 530 | 30% ⇧ |

**The Coalitions Program**

35.    By law, the Grants to State and Territorial Domestic Violence and Sexual Assault Coalitions ("Coalitions Program") are for "coordinating state victim services activities, and collaborating and coordinating with federal, state, and local entities engaged in violence against women activities" (34 U.S.C. § 10441(c)(1)). Sexual assault coalitions receive additional funds "to assist in supporting the establishment, maintenance, and expansion of such coalitions" (34 U.S.C. § 12511(d)(1)(A)). Specifically, funds may be used for: a) working with local sexual assault programs and other providers of direct services to encourage appropriate responses to sexual assault within the state or territory; b) working with judicial or law enforcement agencies to encourage appropriate responses to sexual assault cases; c) working with courts, child protective services agencies, and children's advocates to develop appropriate responses to child custody and visitation issues when sexual assault has been determined to be a factor; d) designing and conducting public education campaigns; planning and monitoring the distribution of grants and grant funds to their state or territory; e) collaborating with and informing federal, state, or local public officials and agencies to develop and implement policies to reduce or eliminate sexual assault (34 U.S.C. § 12511(d)(2)).

36.    The Coalitions Program operates as a formula-based program where annual grant awards are determined mathematically: each coalition is to receive 1/56th of the funds available for domestic violence and sexual assault coalitions. See 34 U.S.C. §§ 12511(d)(3)(B); 10446(b)(2)-(3). However, unlike typical formula grants to named entities like state governments, the Executive Branch maintains exclusive discretion in designating eligible coalitions: only organizations recognized by the Department of Health and Human Services ("HHS") as either a

domestic violence or sexual assault coalition—or sometimes both, as in the case of a dual coalition—are to receive an award (34 U.S.C. § 10441(c)(2)).

37.    Pursuant to HHS regulation, to be designated as a domestic violence coalition an organization's "membership must include representatives from a majority of the primary-purpose domestic violence service providers operating with the state" (45 C.F.R. § 1370.20(b)(1)). In addition, the organization's purpose must be to support its members in establishing and maintaining shelter and supportive services for victims of domestic violence and their dependents, to serve as a resource center on domestic violence for the state, and to support the development of policies, protocols, and procedures to enhance domestic violence intervention and prevention in the state. See id. § 1370.20(b)(4). Although these purposes affect designation, and therefore eligibility for an award using the mathematical formula described above, they are broader than the purposes for which funds under the Coalitions Program may be used.

38.    HHS's Centers for Disease Control and Prevention designates sexual assault coalitions pursuant to 42 U.S.C. § 280b-1b as organizations that "coordinat[e] and provid[e] prevention activities, provid[e] assistance to prevention programs, and collaborat[e] and coordinat[e] with applicable federal, state, tribal, and local entities engaged in sexual violence prevention[.]" The statute addressing sexual assault coalitions gives the Attorney General exclusive authority to require each eligible entity desiring a grant to submit an application "at such time, in such manner, and containing such information as the Attorney General determines to be essential to carry out the purposes of [the program statute]" (34 U.S.C. § 12511(d)(4)).

39.    The plaintiff coalitions are 17 of 86 currently designated sexual assault, domestic violence, or dual coalitions.  Beyond the HHS criteria for coalitions' membership, each coalition

sets its membership criteria in accordance with its articles of incorporation and bylaws under state law governing nonprofit organizations.

40.    To receive an award each year, all coalitions must apply annually for funding under a non-competitive NOFO, through which OVW funds all eligible applications, although funds may be placed on hold pending submission of missing documents.[20] The application includes a Proposal Narrative in which applicants must list activities divided according to each applicable statutory purpose area, with a separate section for the additional funds and purposes available only for sexual assault coalitions (or dual coalitions eligible for the additional sexual assault-focused funds under 34 U.S.C. § 12511(d)). The application also requires a budget with a clear link between project activities and budget items, with funds budgeted under 34 U.S.C. § 10441(c)(1) and 34 U.S.C. § 12511(d) clearly broken out. The NOFO states that OVW will review applications to ensure that they are complete and meet statutory, regulatory, and other program requirements as described in the NOFO.

41.    In addition to funding under the Coalitions Program, domestic violence and sexual assault coalitions may apply for funding under OVW's competitive grant programs if they meet the statutory eligibility criteria.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Executed this 18th day of July 2025.

_Ginger Baran Lyn_
_____

---

[20] U.S. DEP'T JUST. OFF. ON VIOLENCE AGAINST WOMEN, OVW Fiscal Year 2025 State and Territory Domestic Violence and Sexual Assault Coalitions Program, https://www.justice.gov/ovw/media/1400746/dl?inline (last visited July 18, 2025).

Ginger Baran Lyons

OVW Supervisory Official

Deputy Director for Grants Development and
Management

# EXHIBIT A

PRE-DECISIONAL | DO NOT SHARE

OVW Program-wide Out-of-scope Activities:
Talking Points for Staff Responding to Applicants' Questions
May 2025

*This document provides talking points for OVW staff for responding to questions from applicants regarding program-wide out-of-scope activities listed in our FY 2025 NOFOs. This document is internal and for OVW staff only; do not forward outside OVW. Staff may cut and paste or relay over the phone information from this document, as needed and as appropriate based on the question presented.*

1. Promoting or facilitating the violation of federal immigration law.

This means what it says. While it has not been explicitly proscribed in NOFOs until now, promoting or facilitating violations of law has always been an unallowable use of OVW funds.

2. Inculcating or promoting gender ideology as defined in Executive Order 14168, Defending.Women.from.Gender.Ideology.Extremism.and.Restoring.Biological.Truth.to. the.Federal.Government.

- OVW and the grant programs we administer exist to defend all victims from violence and abuse.
- OVW does not fund projects that inculcate or promote "gender ideology" as described in E.O. 14168 (*Defending Women*).
- By statute the services these grants provide are available to victims of domestic violence, sexual assault, dating violence, no matter how they describe themselves.
- OVW's nondiscrimination provision (34 U.S.C. § 12291(b)(13)(A)) is the law and OVW grant recipients and subrecipients are expected to abide by it.
- OVW will continue to monitor recipients for compliance with all laws, including ensuring that grant funds are not used to promote or inculcate gender ideology.

3. Promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect, as described in Executive Order 14173, Ending. Illegal.Discrimination.and.Restoring.Merit_Based.Opportunity. This prohibition is not intended to interfere with any of OVW's statutory obligations, such as funding for HBCUs, culturally specific services, and disability programs.

- OVW administers its grant programs in accordance with their authorizing statutes and pertinent regulations and requirements. As such, OVW does not and will not permit grant funds to be used for illegal programming of any sort.
- OVW's grant programs support coordinated community responses to VAWA crimes. In addition to victim services, investigation, prosecution, and other activities, the

1

PRE-DECISIONAL | DO NOT SHARE

grants fund training to equip professionals with the knowledge and skills they need to combat violent crime and serve victims.

- o Some training may address how race, sex, culture, and other factors can affect a person's experience of violence and their pursuit of safety and justice. As always, these trainings must comport with the terms and conditions of recipients' grant awards, and they must not "diminish the importance of individual merit, aptitude, hard work, and determination." (E.O. 14173, Sec. 1).
- o OVW will not approve material that runs counter to federal civil rights laws or presents social theory as empirical fact.

- All grantees are subject to a statutory provision that prohibits them from discriminating in their programming against anyone based on a number of prohibited classifications, including race and sex.

4. Activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses (e.g., prioritizing criminal justice reform or social justice theories over victim safety and offender accountability).

- Recipients using OVW funds for training and technical assistance should be mindful of this as they prepare content and materials.
- Training materials should focus on how best to perform one's job (whether that be a law enforcement officer, advocate, prosecutor, etc.), support victims of crime, and hold offenders accountable.
- For recipients whose funds are for serving victims and administering justice, OVW expects them to continue to do their work as normal.

5. Generic community engagement or economic development without a clear link to violence prevention, victim safety, or offender accountability.

Applicants and recipients are encouraged to consider on their own whether an activity has a clear link to violence prevention, victim safety, and/or offender accountability. Applicants are welcome to inquire with OVW, as well, as they assess whether an activity's link to these objectives is clear, tenuous, or nonexistent. Because the answer might not always be simple and obvious, applicants and recipients should be prepared to make judgment calls, without explicit guidance from OVW, about whether an activity has a clear link to violence prevention, victim safety, or offender accountability.

6. Programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women.

The cornerstone of VAWA grant programs is coordinated community response, meaning victim services providers, law enforcement, prosecutors, and others work together to keep their communities safe and support victims in navigating the aftermath of violence. OVW

2

PRE-DECISIONAL | DO NOT SHARE

has always encouraged grantees to collaborate with law enforcement and prosecutors to keep victims safe and hold offenders accountable.

7. Awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability.

Applicants and recipients are encouraged to determine on their own whether an awareness campaign or media production to be undertaken with OVW funds is likely to lead to tangible improvements in prevention, victim safety, or offender accountability. Note that OVW performance reports are an appropriate venue to report on these activities and related indicators of success. Applicants and recipients are welcome to bring questions to OVW, as well. Because, however, the answer might not always be simple and obvious, applicants and recipients should be prepared to make judgment calls, without explicit guidance from OVW, about whether an awareness campaign or media production is likely to have tangible results.

8. Initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support.

OVW grantees serve all victims of domestic violence, sexual assault, dating violence, and stalking, and they investigate and prosecute cases involving these crimes no matter who is the victim or the perpetrator. Furthermore, service providers do not necessarily know the legal status of the victims they help. While applicants and recipients should not *prioritize* serving any specific group of victims, they should expect to continue serving all victims and assisting victims with obtaining relief for which they are eligible. Where resources are limited, service providers may triage clients based on safety factors such as risk of future harm.

9. Excessive funding for consulting fees, training, administrative costs, or other expenses not related to measurable violence prevention, victim support, and offender accountability.

OVW funds should be used for efforts to support victims, hold offenders accountable, and engage in prevention activities with measurable outcomes. Any consulting fees, training, administrative costs, and other expenses paid through OVW grants should be necessary for achieving the purpose of the funded project, as outlined in the terms and conditions of the award. Furthermore, per 2 CFR Part 200 (Subpart E-Cost Principles), costs charged to a federal grant must be reasonable, allocable, and allowable.

10. Any activity or program that unlawfully violates an Executive Order.

This means that recipients must not break the law. If an applicant or recipient is concerned that something they are proposing to do with OVW funds is unlawful, they should consult with their counsel.

3