IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND COALITION AGAINST
DOMESTIC VIOLENCE, *et al.*

        *Plaintiffs*,

  v.

PAMELA BONDI, in her official capacity as United
States Attorney General, *et al.*

        *Defendants*.

Case No. 1:25-cv-00279

**DECLARATION OF BRIELYN AKINS ("BRIE FRANKLIN")**

I, Brielyn Akins ("Brie Franklin"), declare as follows:

**I.　Background**

    1.　　I am the Executive Director at the Colorado Coalition Against Sexual Assault (Colorado Coalition), Colorado's federally designated sexual assault coalition.

    2.　　The Colorado Coalition was founded in 1984 and is headquartered in Denver, Colorado. The Colorado Coalition is a statewide sexual assault coalition committed to providing leadership, advocacy, and support to address and prevent sexual violence.

    3.　　The Colorado Coalition supports members, partners, and the broader community through technical assistance, training, publications and other resources, statewide systems change, and public policy education and advocacy. The Colorado Coalition also provides initial response, information, and referrals to victims of sexual assault.

    4.　　The Colorado Coalition has an annual budget of roughly $1.6 million. Of that total amount, roughly $579,000 comes directly from Office on Violence Against Women (OVW) grants.

1

## II. Colorado Coalition Member Organizations

5. The Colorado Coalition is a membership organization with over 90 members. Membership is open to all organizations and individuals that endorse the Colorado Coalition's mission, vision, and values. The Colorado Coalition's membership includes sexual assault programs and dual domestic violence and sexual assault programs; affiliate agencies, including college and university campuses, law enforcement agencies, district attorneys' offices, medical professionals, public health agencies, offender treatment programs, and other organizations; and individual sexual assault survivors, victim advocates, and concerned persons throughout Colorado. These members complete an application to join and typically pay a suggested amount of dues based on their budget.

6. The Colorado Coalition's membership includes "Member Doe A", which is a community-based nonprofit that provides free and confidential services to victims of domestic violence and sexual assault. The Colorado Coalition's membership also includes "Member Doe B", which is a community-based nonprofit that provides free and confidential services to victims of sexual assault.

## III. Grants the Colorado Coalition Has or Has Intended to Apply For

7. The Colorado Coalition has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year since the mid- to late-1990s.

8. In FY24, OVW awarded the Colorado Coalition a total of $252,846 through the Coalition Grant. The grant has a period of performance and a budget period of October 1, 2024 through December 31, 2025. The Coalition Grant represented approximately 15% of the Colorado Coalition's annual budget.

9. The Colorado Coalition has used the Coalition Grant to address child sexual abuse, educate the public about sexual assault, plan and monitor the distribution of grants and grant funds to the State, provide training and technical assistance, and participate in state and national boards, committees, taskforces, and workgroups to address sexual assault. Through May 31, 2025, the Colorado Coalition has responded to 8 requests for technical assistance, and participated on a collaborative group with state funders and the domestic violence coalition, and the VAWA STOP Formula grant state administrating agency's funding advisory board. The Colorado Coalition has also worked with partners to bring attention to and education about a backlog of sexual assault evidence kits in the state.

10. Most recently, OVW awarded the Colorado Coalition $243,213 through the Coalition Grant for FY25. The grant has a period of performance and a budget period of October 1, 2025 through September 30, 2026. The Notice of Funding Opportunity (NOFO) for the Coalition Grant required applicants to submit a certification by June 23, 2025 at 11:59 PM ET and submit the final application by June 25, 2025 at 8:59 PM ET; pursuant to a stipulation in this matter, the Colorado Coalition applied by that date without submitting a certification.[1] The Colorado Coalition will use this grant to address child sexual abuse, educate the public about sexual assault, plan and monitor the distribution of grants and grant funds to the State, provide training and technical assistance, and participate in state and national boards, committees, taskforces, and workgroups. However, if the Colorado Coalition were unable to use the Coalition Grant funding, it would need to cut programming that allows it to address child sexual abuse, public education, training and technical assistance, and participation on state and national boards, and terminate approximately 1.9 full time equivalent (FTE) of staff.

---

[1] Pursuant to a stipulation filed in this matter, the Colorado Coalition and its members were not required to submit a certification for any OVW grant until August 12; the Court granted a stay of the challenged conditions on August 8.

11. The Colorado Coalition intends to apply for the Coalition Grant in FY26 and beyond. If awarded the Coalition Grant in the future, as expected, Colorado Coalition anticipates continuing to provide the services I describe above.

12. The Colorado Coalition receives competitive grants from OVW as well. The Colorado Coalition has the OVW Fiscal Year 2022 Rural Domestic Violence, Dating Violence, Sexual Assault, and Stalking Program Grant (Rural Program Grant) which provides a total of $700,000 for the period of October 1, 2022 through September 30, 2026. The Colorado Coalition uses this grant to provide funding to three local community-based advocacy organizations that provide services for victims of sexual assault in their rural communities, with a focus on victims who are Hispanic/Latine, including those who have limited English proficiency and/or are immigrants. The Colorado Coalition also uses this grant to provide training and technical assistance to other member organizations that serve rural communities. Through December 31, 2024, project partners have provided civil legal advocacy, criminal justice advocacy, crisis intervention, hospital response, support groups, and other victim advocacy services to 93 victims and conducted 74 outreach and educational activities. Through May 31, 2025, the Colorado Coalition has hosted or provided 10 trainings and responded to 19 requests for technical assistance from member organizations serving rural areas.

13. The Colorado Coalition has applied for an OVW FY25 Restorative Practices Pilot Sites (RPPS) Grant. The grant has an anticipated period of performance and a budget period of January 1, 2026 through December 31, 2029. If awarded, the Colorado Coalition would receive $1,000,000. The Colorado Coalition will use this grant to collaborate with project partners to develop tools and procedures for referring and supporting survivors of sexual assault who wish to pursue a restorative practice.

14. Additionally, the Colorado Coalition applied as a subrecipient of the State of Colorado on an OVW FY25 ICJR Grant and as a subrecipient of the Justice Information Resource Network (JIRN) on an OVW FY25 Research and Evaluation (R&E) Grant:

   a. The FY25 ICJR Grant. If the State is awarded the ICJR Grant, the Colorado Coalition would receive $468,823 and be required to agree to the certifications upon accepting the subaward from the State. The grant has an anticipated period of performance and a budget period of October 1, 2025 through September 30, 2028. If awarded this Grant, the Colorado Coalition would be able to provide training and technical assistance to support the development, implementation, and/or enhancement of sexual assault response teams (SARTs); coordinate victim services across Tribes in Southwestern Colorado and the Four Corners Region (AZ, CO, NM, UT); and participate on State boards, committees, taskforces, and workgroups that a) develop and implement policies and training for police, prosecutors, and probation and parole officers in recognizing, investigating, and prosecuting instances of sexual assault, as well as education for judges to improve judicial handling of sexual assault cases, b) develop and promote state, local, and Tribal legislation and policies that enhance best practices for responding to the crime of sexual assault, and c) develop protocols for responding to and addressing Colorado's backlog of sexual assault evidence collection kits, including policies and protocols for notifying and involving victims. However, if the Colorado Coalition could not obtain the ICJR Grant, it would need to cut programming to support SARTs; coordinate victim services for Tribes; participate on State boards,

committees, taskforces, and workgroups; and terminate approximately 1.1 FTE of staff.

b. The FY25 R&E Grant. If JIRN is awarded the R&E Grant, the Colorado Coalition would receive $21,214 and be required to agree to the certifications upon accepting the subaward from the State. The grant has an anticipated period of performance and a budget period of March 1, 2026 through February 29, 2028. If awarded this Grant, the Colorado Coalition would be able to assist with conducting a process evaluation of victim representative engagement in community-based supervision teams for sex offenders to better understand how this requirement is being implemented in Colorado.

## IV. Grants That The Colorado Coalition Members Currently Have or Have Intended to Apply For

15. The Colorado Coalition's members have also received OVW grants, including grants under the Legal Assistance for Victims Program ("LAV Program"), the Rural Program, the Restorative Practices Pilot Sites Program, the Sexual Assault Services Culturally Specific Program, the Transitional Housing Assistance Grants for Victims of Domestic Violence, Dating Violence, Sexual Assault, and Stalking Program ("Transitional Housing Program"), and SASP and STOP Formula funds administered through the state.

16. Various Colorado Coalition members intend to apply for or have been awarded OVW grants this year.

17. The Colorado Coalition Member Doe A has been awarded an FY25 Rural Program Grant in the amount of $689,205. The grant has a period of performance and a budget period of October 1, 2025 through September 30, 2028, which is subject to the challenged

conditions. Pursuant to this Court's order, Member Doe A has not had to certify compliance with the Funding Conditions thus far.

18. If the Colorado Coalition is awarded the FY25 Restorative Practices Pilot Sites Grant, then Colorado Coalition Member Doe B would receive $114,415 as a subrecipient and would be subject to the challenged conditions upon accepting the subaward from the Colorado Coalition. The grant has an anticipated period of performance and a budget period of January 1, 2026 through December 31, 2029. Member Doe B has concerns about the Funding Conditions and may choose to decline the grant if this Court's stay expires and the Funding Conditions apply.

### V. OVW's New Funding Conditions

19. The NOFOs for the FY25 OVW grants for which the Colorado Coalition and its members have intended to apply include new "out-of-scope" funding conditions that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant funds from being used for: (1) promoting or facilitating the violation of federal immigration law; (2) inculcating or promoting gender ideology; (3) promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect; (4) activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses; (5) programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women; (6) awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability; (7) initiatives that prioritize illegal aliens over U.S. citizens

and legal residents in receiving victim services and support; and (8) any activity or program that unlawfully violates an Executive Order. In addition to identifying these activities as "out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW grants require applicants to submit a certification with their application saying that they will not use the grant funds on the "out-of-scope" activities. Although prior OVW NOFOs listed some out-of-scope activities—conditions that clarified the scope of the grant program, for example by noting that grant funds could not be used for curriculum development or criminal defense—prior NOFOs did not previously require grantees to expressly certify compliance.

20. In addition, OVW has updated the General Terms and Conditions applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

### VI. OVW's New Funding Conditions Place The Colorado Coalition and its Members in an Untenable Position

21. The new funding conditions present the Colorado Coalition and its members with an impossible choice. The Colorado Coalition and its members could forgo the OVW grants and face direct consequences to the Colorado Coalition's and its members' financial health and ongoing operations. Or the Colorado Coalition and its members may jeopardize their mission and compliance with VAWA requirements, and face enormous risks of litigation and government

8

investigations under the False Claims Act no matter what the Colorado Coalition and its members do.

22.    Agreeing to the certifications would cause the Colorado Coalition and its members profound harm. The funding conditions are vague, and several could be read to conflict with the Colorado Coalition's and its members' core mission and the activities they have undertaken for decades in furtherance of that mission and in reliance on OVW grants. The funding conditions may require the Colorado Coalition and its members to cease engaging in activities that they had previously understood OVW grants to plainly support. Thus, the Colorado Coalition and its members do not know how they may comply with the funding conditions while also staying true to their mission and providing essential support for member organizations, advocates, and vulnerable victims and survivors of sexual violence.

23.    For instance, the Colorado Coalition's organizational values include a commitment to "[d]ismantle systems of oppression to create a more just and equitable society," and to "create inclusive and anti-oppressive policy and practices." The Colorado Coalition is unsure whether it may undertake day-to-day activities reflecting its mission and guiding principles, which require considerations of equity, without running afoul of the condition not to "promot[e] or facilitat[e] discriminatory programs or ideology, including illegal DEI" as DOJ might interpret those terms. It is also unclear whether the Colorado Coalition's mission and guiding principles, which require "addressing the root causes of sexual violence" and recognize that the criminal offenses of sexual assault and domestic violence carry a systematic social justice element, violate the anti-social justice part of the certification, and whether the Colorado Coalition could comply with the anti-social justice condition without adopting a view antithetical to its true beliefs.

24. Many of the Colorado Coalition activities in furtherance of its OVW grant-funded programs may also conflict with the new funding conditions. The Colorado Coalition conducts specific programming for Latine advocates and provides training and technical assistance on serving specific underserved communities. The coalition does not know if these programs would be construed as "promoting or facilitating discriminatory programs or ideology, including illegal DEI" as DOJ might interpret those terms.

25. The Colorado Coalition is also concerned that it cannot continue to engage in certain practices that respect the dignity of all victims of sexual violence, regardless of gender and sexual orientation, and are consistent with the VAWA mandate not to discriminate on the basis of gender or sexual orientation. The Colorado Coalition is unsure whether it may continue to operate training and technical assistance programs that include information about specific needs and special considerations on how to serve LGBTQIA+ victims, and whether it may continue to include an analysis of gender, including non-binary identities, and how gender intersects with sexual violence in sexual assault advocacy training. It is unclear whether the Colorado Coalition may continue these practices and activities while complying with the funding condition not to "inculcat[e] or promot[e] gender ideology."

26. It is also unclear whether the Colorado Coalition may continue providing certain services to members and others that serve the immigrant community, including those without legal status, consistent with the funding conditions. The Colorado Coalition's training and technical assistance includes specific information about specific needs and special considerations on how to serve immigrant victims, which assist and support member organizations that focus on providing legal assistance to immigrant victims. But doing so now may conflict with the way

DOJ interprets the prohibition against "promoting or facilitating the violation of immigration law."

27. Colorado Coalition Member Doe A would have to fundamentally change its programming or accept the new conditions and risk running afoul of various funding conditions imposed on those grants. Without the FY2025 Rural Grant, Member Doe A would need to cut at least 4 FTE of staff, which would decrease its capacity to serve victims of domestic violence and sexual assault who reside in rural communities in Colorado.

28. Colorado Coalition Member Doe B would have to fundamentally change its programming or accept the new conditions and risk running afoul of various funding conditions imposed on those grants. Member Doe B's programming is grounded in evidence-based practices and nationally recognized public health and victim services frameworks. These approaches necessarily incorporate understandings of how gender, power, and social inequities contribute to the prevalence of sexual violence and affect survivors' access to safety and healing. Restricting the ability to reference or address these factors would impair the organization's capacity to provide trauma-informed advocacy and ensure equitable access to services for all survivors. Member Doe B's advocacy and therapy direct service programs rely on culturally responsive and individualized care. Restrictions on acknowledging a survivor's identity, lived experience, or the broader social context of violence would compromise both ethical and professional standards of trauma-informed service delivery. If Member Doe B instead did not accept the FY2025 RPPS, should it be awarded, Member Doe B would need to cut at least 0.55 FTE of staff, which would decrease its capacity to serve victims of sexual assault in Colorado who wish to pursue a restorative practice.

29.     The Colorado Coalition and its members fear that if they agree to the new funding conditions, they could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. These potential consequences of seeking a grant subject to the new, vague conditions make the Colorado Coalition and its members concerned about applying or accepting an award. To mitigate these risks, the Colorado Coalition and its members would have to change their practices, in many cases contrary to their core values.

30.     Not agreeing to the certifications would result in equally grave harm.

31.     Not having access to funds from the Coalition Grant and other competitive grants would severely undermine the Colorado Coalition's ability to function as a state coalition. Losing the Coalition Grant alone would result in a $243,213 loss of funds for the next fiscal year. The combined loss of funds from all of the grants for which the Colorado Coalition has applied for or been awarded—the Coalition Grant, the ICJR Grant, the Rural Grant, the RPPS Grant, and the R&E Grant identified above—would represent a substantial loss of roughly $670,000 in anticipated funds for the next fiscal year. Without these funds, the Colorado Coalition would have to significantly reduce the size of its staff and, therefore, its services to members.

32.     The Colorado Coalition's member programs would lose access to core, comprehensive training for their staff, necessary to provide legally and ethically compliant advocacy services to victims, in addition to regular training on emergent issues that ensure front-line staff are able to provide quality services to all victims. Member organizations and individuals across the state would lose critical technical assistance in systemic response improvements that reduce sexual violence, increase effectiveness of legal responses, and dramatically improve victim response and support efforts. These losses would make the

Colorado Coalition less effective as a coalition and undermine its role as the state authority on sexual violence prevention, intervention, and response.

### VII. Cuts to the Colorado Coalition's and its Members' Services Would Harm Domestic Violence and Sexual Assault Victims and Survivors

33. The reduction or outright termination of these services would have devastating effects on the community of survivors and victims of sexual violence.

34. In the absence of fully funded Colorado Coalition services, sexual assault victims will be confronted with more barriers when trying to access services following their assault, including discriminatory treatment from medical, law enforcement, or courtroom personnel, hotline operators, and therapists who have not received anti-bias and other core victim services training. This will immediately lead to more victims choosing not to participate in the criminal justice system and fewer being linked to and receiving appropriate medical and therapy services. Direct service providers will be unable to maintain high quality services that follow best practice guidance or even that are fully compliant with the myriad federal, state, and local requirements they would now have to navigate on their own, without the critical assistance of coalitions, while desperately trying to keep up with the already increasing demand for services.

35. The Colorado Coalition's operations are essential to permitting the network of direct service providers to focus on providing the highest-quality services to the victims they serve and ensuring that the systems that contribute to addressing and responding to the epidemic of sexual violence are operating with evidence-based, trauma-informed, victim-centered policies and practices.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 17, 2025.

/s/ Brielyn Akins
_____
BRIELYN AKINS
EXECUTIVE DIRECTOR
COLORADO COALITION AGAINST
SEXUAL ASSAULT