IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>PAMELA BONDI, in her official capacity as United States Attorney General, *et al.*,<br><br>*Defendants*. | Case No.    1:25-cv-00279 |

**DECLARATION OF JUDY CHEN**

I, Judy Chen, declare as follows:

**I.    Background**

1.    I am the Executive Director of the Washington State Coalition Against Domestic Violence (WSCADV), Washington's federally designated domestic violence coalition.

2.    WSCADV was founded in 1990 and is headquartered in Seattle, Washington. WSCADV is the domestic violence coalition that serves as a non-profit network of survivors, domestic violence and sexual assault service providers across the state and allies working to strengthen how communities across Washington respond to and prevent intimate partner violence and sexual assault. WSCADV's mission is to mobilize our member programs and allies to end abuse through advocacy and action for social change. WSCADV provides its member domestic violence and sexual assault agencies statewide with access to resources, training opportunities, technical assistance, and input on best practices; provides leadership for the field in our state; and educates the public, all for the purpose of advancing safety, justice, and healing

for survivors and their children. In May 2025, WSCADV became the federally-designated sexual assault coalition for Washington State, and is beginning the process of updating the organizational name, mission, and services to reflect its strong commitment to rape crisis programs and survivors of sexual abuse.

3. The Washington State Coalition Against Domestic Violence has an annual budget of $2,686,751. Of that total amount, roughly $241,598 comes directly from Office on Violence Against Women (OVW) grants.

## II. Washington Coalition Against Domestic Violence Member Organizations

4. WSCADV is a membership organization with over 70 member agencies. Membership primarily consists of Domestic Violence and Sexual Assault service providers; however, individual and professional associate memberships are also available to anyone who supports the coalition's mission and values.

5. WSCADV's membership includes YWCA Clark County, which provides domestic violence emergency shelter for victims, domestic violence and sexual assault survivor services, housing and help for foster children, violence prevention in schools, and a therapeutic children's program for children who have experienced trauma, in Southwest Washington state.

6. WSCADV's membership also includes Member Doe, a nonprofit sexual assault survivors services organization, which provides crisis support and services to sexual assault survivors including children, teens, and adults, as well as prevention education that aims to stop child sexual abuse and sexual violence from happening in the first place. All of Member Doe's rape crisis services are available in both English and in Spanish. Over half of its sexual assault survivor clients are children under the age of 18. One of its internal programs is a racial equity and diversity initiative to ensure that sexual assault survivors from all backgrounds can have

access to victim services that meet their needs for safety and help from advocates who understand their life experiences and whom they can trust.

### III. OVW Grants WSCADV Has or Has Intended to Apply For

7. WSCADV has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year since its inception.

8. In FY25, OVW awarded WSCADV a total of $353,303 through the Coalition Grant. The grant has a period of performance and a budget period of October 1, 2024 through September 30, 2025. Previous to this year, WSCADV's annual Coalition grant was roughly $113,000. This year's award includes funds to serve rape crisis centers and to help stop sexual assault.

9. WSCADV has used Coalition Grant funds to increase access to safety, life-saving resources, and justice for victims of domestic violence in Washington State. The award funds: training and tailored problem-solving, advice, and free consulting ("technical assistance") for WSCADV's 70+ direct service member programs, affiliated Tribes, and helping professions; representation on local, state, and national workgroups, task forces, and advisory committees that work on issues related to domestic violence (and now, sexual assault); leadership of and participation in institutional collaborations addressing domestic violence and sexual assault issues; monitoring and analyzing public policies affecting victims, perpetrators, and their families. The OVW grant is an important source of core funding for staff to keep WSCADV open and operating. These efforts have been particularly important due to a sharp drop in funding from state and federal funders, high turnover in the field especially since the pandemic, and increased violence and abuse, which have combined to create a perfect storm that is de-

stabilizing the field and leading to cuts or discussion of outright closure of domestic violence and sexual assault services in several counties in Washington state. For example, one rural domestic violence/sexual assault member program has reported that due to funding cuts, it has had to cut 37% of its victim advocates, and a rape crisis member program laid off 13% of staff last month due to funding cuts, reducing its ability to serve child sexual abuse and adult rape victims in a service area of over 1,000,000 people.

10. Most recently, OVW awarded WSCADV the FY25 Coalition grant for this grant cycle (October 1, 2025 through September 30, 2026) in the amount of $353,303, as noted above. The Coalition Grant Notice of Funding Opportunity (NOFO) required that applicants submit a certification by June 23, 2025 at 11:59 PM ET and submit the final application by June 25, 2025 at 8:59 PM ET. WSCADV will use this grant funding to sustain core functions of the state coalition, including: training and help for domestic violence emergency shelters, domestic violence and sexual assault legal advocacy, support groups, and victim advocacy; strengthening culturally responsive, survivor-centered advocacy practices statewide for survivors from all walks of life; and strengthening judicial and law enforcement responses to sexual assault to ensure survivor voices influence systemic improvements. In addition, this year's Coalition Grant will fund WSCADV's new work to assist rape crisis centers and sexual assault victim advocates, and build back a network of statewide help and collaboration - which has been a gap for roughly five years in Washington state - as the newly federally-designated sexual assault state coalition. However, if WSCADV was not able to use the Coalition Grant funding, it would lose critical agency infrastructure, resulting in the need to terminate staff and to significantly reduce programming, which would have lasting impacts on WSCADV's capacity to engage in essential functions.

11.     WSCADV is almost 100% reliant on the OVW Coalition Grant funding to create and build out its new sexual assault statewide coalition functions; absent the Coalition Grant, there will be no statewide sexual assault coalition activities. Sexual assault victim service programs have sought out and formally requested that WSCADV serve as the sexual assault coalition, but if WSCADV was not able to use the Coalition Grant, sexual assault programs, and ultimately victims of sexual assault across the state, would suffer the loss of the help they need.

12.     WSCADV has applied for the Coalition Grant in FY26 and plans to do so in years beyond FY26. If awarded the Coalition Grant in the future, as expected, WSCADV anticipates continuing to provide the services described above.

## IV.     OVW Grants That WSCADV Members Currently Have or Intended to Apply For

13.     WSCADV members have also received OVW grants for services to victims of domestic violence, sexual assault, dating violence, stalking, under the OVW Improving Criminal Justice Response Program, Justice for Families Program, Legal Assistance Program, Rural Program, Children and Engaging Men and Boys Program, Culturally Specific Services Program, Transitional Housing Program, Tribal Governments Programs, and other OVW grant programs. Various WSCADV members have applied or had intended to apply for OVW grants this year.

14.     Victim services in Washington state depend on OVW grants as an essential funding source. In 2024, OVW made 31 grant awards totalling roughly $20,810,243 (excluding state agencies), including to the YWCA Clark County, which is a current recipient of an OVW FY 2024 Justice for Families award ($600,000), FY 2023 Legal Advocacy for Victims award ($750,000), and FY 2023 Transitional Housing award ($500,000), providing critical and life-saving help to victims and their children. The YWCA Clark County anticipates that when it needs to reapply for these grants in future years, it will need to agree to the challenged

certification conditions. The YWCA Clark County has also recently applied for the OVW Grants to Engage Men and Youth in Preventing Domestic Violence, Dating Violence, Sexual Assault, and Stalking Program FY 2025 grant. Member Doe is also a current recipient of OVW grants including a current Legal Advocacy for Victims award.

V.     **OVW's New Funding Conditions**

15.     The Notices of Funding Opportunity (NOFOs) for the FY25 OVW grants for which WSCADV and its members have intended to apply, or did not apply out of concern, include new "out-of-scope" funding conditions that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant funds from being used for: (1) promoting or facilitating the violation of federal immigration law; (2) inculcating or promoting gender ideology; (3) promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect; (4) activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses; (5) programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women; (6) awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability; (7) initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support; and (8) any activity or program that unlawfully violates an Executive Order. In addition to identifying these activities as "out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW grants require applicants to submit

a certification with their application saying that they will not use the grant funds on the "out-of-scope" activities.

16. In addition, OVW has updated the General Terms and Conditions applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

## VI. OVW's New Funding Conditions Place the Washington State Coalition Against Domestic Violence and its Members in an Untenable Position

17. The new funding conditions present the Washington State Coalition Against Domestic Violence and its members with an impossible choice. WSCADV and its members could forgo applying for future OVW grants and face the direct consequences to its financial health and ongoing operations. Or WSCADV and its members could agree to the conditions and thereby jeopardize its mission and compliance with VAWA requirements, and face enormous risks of litigation and government investigations under the False Claims Act no matter what the WSCADV (or its members) does.

18. Agreeing to the certifications creates the risk of profound harm to WSCADV. The funding conditions are vague, and several could be read to conflict with WSCADV's core mission and the activities it has undertaken for decades in furtherance of that mission and in reliance on OVW grants. The funding conditions may require WSCADV to cease engaging in activities that it had previously understood OVW grants to plainly support. Thus, WSCADV

does not know how it may comply with the funding conditions while also staying true to its mission and providing essential support for member organizations, advocates, and vulnerable victims and survivors of domestic abuse and sexual violence.

19. For instance, WSCADV's vision statement describes a purpose of changing a "culture of violence built on generations of oppression. Violence is used to control groups, communities, and individual people." WSCADV's guiding principles "recognize that oppression in the form of racism, sexism, classism, anti-Semitism, … creates a climate of supremacy and ownership [over victims of abuse] which enables domestic and sexual violence." WSCADV uses this analysis to help explain the historic and systemic roots of the attitudes, beliefs, and behaviors that grant social permission for domination and mis-use of power and control, and why sexual abuse and domestic violence continue to be so prevalent and deadly.

20. WSCADV is unsure whether it may undertake its day-to-day activities reflecting its mission, guiding principles, and values, which reference "equity," "oppression," and "cross-cultural" and "culturally appropriate" approaches to survivor advocacy, without running afoul of the condition not to "promot[e] or facilitat[e] discriminatory programs or ideology, including illegal DEI" as DOJ might interpret the OVW term. It is also unclear whether WSCADV's mission, vision, and guiding principles, which recognize that the criminal offenses of sexual assault and domestic violence carry a systematic social justice element, violate the anti-social justice part of the certification, and whether WSCADV could comply with the anti-social justice condition without adopting a view antithetical to its true beliefs.

21. Many of WSCADV's activities in furtherance of its OVW grant-funded programming and services to members may also conflict with the new funding conditions. For instance, WSCADV currently operates programs and activities that promote access to victim

services, dignity and healing for all people, and that focus on populations of people who traditionally have faced barriers to such access—including survivors who are Deaf or have disabilities including victims with Traumatic Brain Injury due to the battering they have suffered; people for whom English is not their primary language; immigrants, refugees, and asylees; Black, Asian American, Hispanic, Pacific Islander individuals; Native Americans, Alaskan Natives, and Native Hawaiians; people of various religious faiths; and lesbian, bisexual, gay, and transgender victims of rape and domestic violence. The coalition does not know if these programs' focus would be construed as "promoting or facilitating discriminatory programs or ideology, including illegal DEI" as DOJ might interpret those terms.

22. WSCADV is also concerned that it may not be able to continue to engage in certain practices that respect the dignity of all victims of sexual and domestic violence, regardless of gender and sexual orientation, and are consistent with the VAWA mandate not to discriminate on the basis of gender or sexual orientation. WSCADV would continuously run into challenges because it advocates on behalf of survivors of abuse from all walks of life, including those who are transgender or otherwise outside of the gender binary, and because WSCADV trains and provides technical assistance, which includes guidance on serving transgender survivors of abuse and survivors who are nonbinary, as part of serving survivors fleeing violence. For example, domestic violence emergency shelters are in such high demand, and the need is so dire, that shelters prioritize lethality risk - how likely it is that an abuser will kill a survivor and their children - rather than the survivor's gender identity or other aspects of their personal background. Furthermore, WSCADV provides training on screening and intake to domestic violence emergency shelters, and training for new victim advocates as well as continuing education, on the provision of trauma-informed services to survivors. This includes

training providers on issues specific to transgender clients—including recognizing and responding to the unique safety concerns and dynamics of abuse that are faced by these survivors (for instance, the threat of "outing" by an abusive partner which can result in losing a job, housing, or family support), as well as the higher rates of violent victimization experienced by transgender people as compared to the rest of the public. It is unclear whether WSCADV may continue its regular training practices and activities while complying with the funding condition not to "inculcat[e] or promot[e] gender ideology."

23. It is also unclear whether WSCADV may continue providing these services related to immigrant survivors of violence, including those without legal status, consistent with the funding conditions. Several of WSCADV's member programs focus on providing culturally specific services to immigrant victims, utilizing bilingual advocates who know and understand these survivors' experiences. In addition to the training and technical assistance described above, which also supports member agencies in understanding the dynamics of abuse and provision of trauma-informed services for immigrant survivors, WSCADV provides training on legal remedies to help them gain or maintain legal status when violence has played a role in their immigration experience, for example if they are being controlled by a U.S. citizen spouse. WSCADV encourages its member agencies to put safety first and provide services to any person who is experiencing high risk of violence or death, without screening that goes beyond basic safety information. WSCADV also encourages advocates to first consider risks of immediate or near-future violence or harm when they must prioritize providing services to clients. This could mean that, based on harm-avoidance prioritization principles, or risk of imminent danger, an immigrant who cannot immediately produce documentation could be prioritized over a U.S.

citizen. Conducting these activities now may conflict with the way DOJ interprets the prohibition against "promoting or facilitating the violation of immigration law."

24.     Additionally, the YWCA Clark County is concerned that it would also have to change or eliminate some of its direct services to victims and violence prevention efforts to comply with the conditions, should its FY 25 grant application be successful, and for future renewal applications for its current awards. If the YWCA Clark County agreed to the conditions, it would have to end programming for victims who belong to specific identity categories that have been deemed "out of scope" and therefore ineligible for coverage in facilities and through programming that is paid for by OVW grant funds. The new conditions would imperil its mission of eliminating racism, empowering women, and fostering justice for all, and its work to serve survivors and ensure their safety, confidentiality, and autonomy.

25.     Member Doe is also concerned that it would also have to change or eliminate some of its direct services to victims and violence prevention efforts to comply with the conditions, for future renewal applications for its current OVW awards. If Member Doe agreed to the conditions, it would have to end programming for victims who belong to specific identity categories that have been deemed "out of scope" and therefore ineligible for coverage in facilities and through programming that is paid for by OVW grant funds. The new conditions would imperil its mission to serve survivors and ensure their safety, confidentiality, and autonomy.

26.     If WSCADV's members, including but not limited to the YWCA Clark County and Member Doe, do not re-apply or do not accept the grant funds, they would need to cut victim services, violence prevention, and collaboration with police, prosecutors, and courts. On the chopping block would be: (a) Collaboration and leadership to improve criminal justice response

to domestic violence, sexual assault, dating violence, and stalking as serious violations of criminal law and to increase victim safety and autonomy (funded by OVW Improve the Criminal Justice Response Program Grants Program); (b) Collaboration and leadership to improve civil and criminal justice system response to families involving child sexual abuse, sexual assault, and domestic violence (OVW Justice for Families Grants Program); (c) Legal services for victims of domestic violence, sexual assault, dating violence, and stalking (OVW Legal Assistance for Victims Grants Program); (d) Rural victims services, recognizing the unique barriers to safety and help in rural and remote areas (OVW Rural Grants Program); (e) Children and youth victim services and prevention of dating violence, sexual assault, domestic violence, and stalking (OVW Grants to Engage Men and Youth in Preventing Domestic Violence, Dating Violence, Sexual Assault, and Stalking Program and OVW Consolidated Youth Program); (f) Transitional housing programs that provide 6-24 months of non-emergency housing with support services for victims who are homeless or in need of transitional housing, recognizing that domestic violence is a leading cause of homelessness for American women and children (OVW Transitional Housing Grants Program); (g) the Tribal Government Grants Program, which grants funding to tribes to develop and enhance effective governmental strategies to curtail violent crimes against and increase the safety of Indian women consistent with tribal law and custom; increase tribal capacity to respond to domestic violence, dating violence, sexual assault, sex trafficking, and stalking crimes against Indian women; strengthen tribal justice interventions; enhance services to Indian women victims; work in cooperation with the community to develop education and prevention strategies directed towards these crimes; provide programs for supervised visitation and safe visitation exchange of children; provide transitional housing for victims; provide legal assistance for victims; provide services to address the needs of youth victims; and develop and

promote legislation and policies that enhance best practices for responding to these crimes against Indian women.

27.  WSCADV fears that, depending on DOJ's current or future interpretation of the new funding conditions, both it and its member programs could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. These potential consequences of seeking a grant subject to the new, vague conditions make WSCADV and its member programs concerned about their new awards and about applying or accepting future awards. To mitigate these risks, WSCADV and its member programs would have to change their respective practices, in many cases contrary to their respective core values and commitment to survivors of abuse.

28.  Not agreeing to the certifications would result in equally grave harm. Not having access to funds from the Coalition Grant and other competitive grants would severely undermine WSCADV's ability to function as a state coalition, and to provide any sexual assault coalition services at all. Losing the Coalition Grant alone would result in a loss of approximately $353,303 funds for the next (federal) fiscal year. Without these funds, WSCADV would have to reduce the size of its staff and, therefore, its services to members, collaboration with criminal justice agencies, and unique statewide role to advocate for victim safety and access to justice, in ways that would have significant and lasting impacts on the coalition's capacity to engage in essential functions. These losses would make WSCADV less effective as a coalition and undermine its role as the statewide authority on domestic violence and sexual assault prevention, intervention, and response.

29.  WSCADV member programs would lose access to core, comprehensive training for their staff and volunteers necessary to provide legally and ethically compliant advocacy

services to clients in addition to regular training on emergent issues that ensure front-line staff are able to provide quality services to all survivors. The state would lose critical technical assistance infrastructure at the coalition as this grant allows coalition staff to travel across the state in order to provide on-request, one-on-one or team/staff-wide assistance on complex advocacy issues, such as: responding to domestic violence homicides and murder-suicides, working to keep the doors open in the face of rapidly decreasing federal and state funding for victim services, safety and security measures for rape crisis centers and domestic violence programs, dealing with threats of violence against victim services or employees, building coordinated community response teams and sexual assault response teams, improving systemic responses in legal, medical, and social services settings, shelter policies and practices, confidentiality and trauma-informed advocacy, and more.

30. WSCADV would no longer be able to provide new and continuing advocates across the state with: (1) ongoing training and technical assistance; (2) resources that educate members on best practices, update them on changes to state and federal law, and help survivors and the public recognize violence, find safety, and access available resources; or (3) systems coordination support, including tailored technical assistance, training, and coaching on building and sustaining community partnerships that increase victim safety and abuser accountability, and decrease the risk of death. Additionally, WSCADV would not have the funding needed to document and collect data meant to provide localities and the state with critical information on service trends, victim help-seeking behavior, prevention programming, and outcomes for victims and their families who are served by Washington's domestic violence and rape crisis programs. The resulting vacuum in training, technical assistance, data, and best practice-building would undermine the viability and sustainability of organizations across the state, and their ability to

meet grant application and management requirements, not only for culturally specific service providers, but also those in rural areas, since these kinds of providers tend to be smaller, less resourced organizations that lack historical infrastructure.

31. If WSCADV's members, including but not limited to the YWCA Clark County and Member Doe, do not re-apply or do not accept the OVW grants, they would need to drastically cut victim services and collaboration with police, prosecutors, courts, and other systems that victims often encounter, as noted above. To put it plainly, this will ultimately result in victims and their children, including child sexual abuse victims, being turned away from help, as well as increased risk of domestic violence fatalities, across Washington state. These are just some of the ways WSCADV's programming and its beneficiaries would suffer.

## VII. Cuts to WSCADV's and its Members' Services Would Harm Domestic Violence and Sexual Assault Victims and Survivors

32. The reduction or outright termination of these services would have devastating effects on the community of survivors and victims of sexual and domestic violence.

33. In the absence of fully funded WSCADV services, domestic violence and sexual assault victims, including child victims, will be confronted with more barriers when trying to access services following their assault(s) or victimization, including (often unintentional) victim-blaming, re-victimizing, exclusion, or discriminatory treatment, and lack of legal consequences for the abusive person, from medical, law enforcement, or courtroom personnel, as well as hotline operators, therapists, and other helping professionals, whose employers' policies or practices do not reflect best practices in survivor safety or abuser accountability, and/or who have not received anti-bias and other core victim services training. This will immediately lead to more survivors afraid to call 911 or seek help from the criminal justice system and fewer being linked to and receiving life-saving help or appropriate medical and therapy services, out of a

well-founded fear of further danger or re-victimization. Direct service providers will be unable to maintain high quality services that follow best practice guidance or even that are fully compliant with the myriad federal, state, and local requirements they would now have to navigate on their own, without the critical assistance of coalitions, while desperately trying to keep up with the already increasing demand for services.

34. WSCADV's operations are essential to permitting the statewide network of victim service providers to get the help they need to provide high quality, trauma-informed, and survivor-centered services for their local communities; and to ensuring that the civil and criminal justice systems, and other systems that address domestic violence and sexual assault, are listening to survivors, operating with respect to best practices, and responding to survivors' real-life experiences and needs; all so that adult and child survivors of abuse can be safer, have access to justice, and begin to heal from trauma.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 16, 2025.

Judy Chen
Executive Director
Washington State Coalition Against Domestic Violence