**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

RHODE ISLAND COALITION AGAINST
DOMESTIC VIOLENCE, *et al.*

        *Plaintiffs*,

    v.

PAMELA BONDI, in her official capacity as United
States Attorney General, *et al.*

        *Defendants*.

Case No. 1:25-cv-00279

**DECLARATION OF SUSAN HIGGINBOTHAM**

I, Susan Higginbotham, declare as follows:

## I.    Background

1.      I am the Chief Executive Director at the Pennsylvania Coalition Against Domestic Violence (Pennsylvania Coalition), Pennsylvania's federally designated domestic violence coalition.

2.      The Pennsylvania Coalition was founded in 1976 and is headquartered in Harrisburg, Pennsylvania. The Pennsylvania Coalition serves as both a membership organization and a funder for Pennsylvania's domestic violence service programs, making it the largest domestic violence coalition in the United States. It is the oldest statewide domestic violence coalition in the nation.

3.      Each year, the Pennsylvania Coalitions' network of 59 local domestic violence programs provides free and confidential direct services to nearly 90,000 victims and survivors of domestic violence and their children in all 67 counties of the Commonwealth. Together, local programs and the statewide Coalition work in collaboration to deliver a continuum of services,

1

support, and systems to help victims and survivors find safety, obtain justice, and build lives free from abuse.

4.      Survivors served by the Pennsylvania Coalition have access to essential, life-saving interventions that enable them to live autonomous lives that are financially independent, free of violence, and sustainable. Intervention programming includes Domestic Violence Housing First, Civil Legal Representation, Lethality Assessment Screening, Medical Advocacy, and Economic Justice. The Pennsylvania Coalition has had great success in developing trauma-informed, survivor-centered supportive housing programs that meet otherwise unaddressed needs.

5.      More than 3 million victims and their children have been served by the Pennsylvania Coalition and its member programs since 1976.

6.      The Pennsylvania Coalition has an annual budget of roughly $53 million, of which $46.3 million passes through to other organizations. It has an internal annual budget of approximately $7.2 million.  Of that amount, roughly $110,000 comes from Office on Violence Against Women (OVW) grants or subgrants.

**II. Pennsylvania Coalition Member Organizations**

7.      Pennsylvania Coalition is a membership organization with 59 member agencies. Members fall into one of two categories. The first category of members encompasses Pennsylvania domestic violence programs. To be eligible for membership, a program must operate a direct services program in Pennsylvania; demonstrate mission-alignment with the Pennsylvania Coalition, including a commitment to racial and social justice and philosophy of empowerment; demonstrate a commitment to working cooperatively with other programs in their region; and pay applicable dues. The second category of members includes caucuses.

8.     To receive funds through the Pennsylvania Coalition, service providers shall utilize a culturally-responsive, trauma-informed model.

9.     Pennsylvania Coalition's membership includes Pennsylvania Member Doe 1, which provides core domestic violence services, legal representation, and medical advocacy.

### III. Grants Pennsylvania Coalition Has or Has Intended to Apply For

10.     Pennsylvania Coalition has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year since the mid- to late-1990s.

11.     In FY24, OVW awarded Pennsylvania Coalition a total of $114,533 through the Coalition Grant. The grant had a period of performance and a budget period of October 1, 2024 through September 30, 2025.

12.     Pennsylvania Coalition has used Coalition Grant funds to support its Lethality Assessment Program, a nationally recognized, evidence-based initiative with demonstrated success in strengthening partnerships between law enforcement and community-based domestic violence programs. Police officers are trained to identify the warning signs of domestic violence and follow a survivor-centered protocol for assessing potentially lethal situations when responding to incidents of violence.

13.     It also relies on the Coalition Grant to provide technical assistance and training to member programs and law enforcement. In addition, the funding allows coalition staff to participate in statewide planning with STOP administrators.

14.     The Pennsylvania Coalition has received STOP grant funding each year since 2020, including in FY 25. In FY25, we received $175,000 under Pennsylvania's STOP grant program.

15.    For the most recent OVW grant cycle (October 1, 2025 through September 30, 2026), Pennsylvania Coalition applied for the the FY25 Coalition Grant. Pennsylvania Coalition received $110,000. The NOFO requires Coalition Grant applicants to submit a certification by June 23, 2025 at 11:59 PM ET and submit the final application by June 25, 2025 at 8:59 PM ET; pursuant to a stipulation in this matter, the Pennsylvania Coalition applied by that date without submitting a certification.[1] With the grant funding, Pennsylvania Coalition intends to continue funding its Lethality Assessment Project and dedicate resources to core programs essential for its members, including civil legal representation, medical advocacy, and safe housing. However, if the Pennsylvania Coalition is not able to use  the Coalition Grant, we would have to cease creating and disseminating key support documents for our members and members of the community at large.  In addition, OVW formula funding is essential to sustaining and expanding PCADV's core initiatives, which form the foundation of its mission to end domestic violence in Pennsylvania. The grant supports a robust technical assistance infrastructure that enables the Coalition to deliver tailored, high-quality supportive services to 59 member programs across the Commonwealth. These efforts ensure that domestic violence services remain survivor-centered, prioritize victim's needs, and that direct service programs are responsive to evolving needs and challenges. Not being able to use this funding would negatively impact PCADV's ability to sufficiently support local programs and the survivors they serve.

        a.

16.    Pennsylvania Coalition intends to apply for the Coalition Grant in FY26 and beyond. If awarded the Coalition Grant in the future, as expected, Pennsylvania Coalition anticipates continuing to provide the services I describe above.

---

[1] Pursuant to a stipulation filed in this matter, the Pennsylvania Coalition and its members were not required to submit a certification for any OVW grant until August 12; the Court granted a stay of the challenged conditions on August 8.

17.     In addition, the Pennsylvania Coalition received pass-through funding through the State of Pennsylvania's STOP grant, which is also subject to the funding conditions.  Without the STOP grant funding, we would have to greatly reduce our work on our annual Lethality Assessment, greatly impacting the collective work of 481 police departments and 48 domestic violence programs. We would also greatly reduce our work on the Protection from Abuse ("PFA") database, which we operate in collaboration with the Pennsylvania State Police. PFA is a computer archival system designed to complement the operation of the Pennsylvania State Police Protection Order Registry. This archival database automates the PFA process in the courts; provides critical statewide data for analysis by the courts and law enforcement; creates and disseminates the Pennsylvania State Police Protection From Abuse Summary Data Sheet - information necessary for inclusion in the Pennsylvania State Policy Registry; and contains all standardized PFA forms approved by the Pennsylvania Supreme Court as well as other forms necessary for protection from abuse cases.

**IV. Grants That Pennsylvania Coalition Members Currently Have or Have Intended to Apply For**

18.     Pennsylvania Coalition's members have also received OVW grants, including the OVW Fiscal Year 2024 Grants to Improve the Criminal Justice Response (ICJR) Program Grant; the OVW Fiscal Year 2024 Legal Assistance for Victims Grant; and the OVW Fiscal Year 2024 Transitional Housing Assistance Grants.

19.     Various Pennsylvania Coalition members have applied or intended to apply for OVW grants this year.

20.     For example, Pennsylvania Member Doe intends to apply for the OVW Fiscal Year 2025 Children and Youth Grant and the OVW Fiscal Year 2025 Rural Program Grant. Children and Youth Grant applicants must submit a certification by June 30, 2025 at 11:59 PM

5

ET and submit the final application by July 2, 2025 at 8:59 PM ET.  Rural Program Grant

applications must submit a certification by July 8, 2025 at 11:59 PM ET and submit the final

application by July 10, 2025 at 8:59 PM ET.

### V. OVW's New Funding Conditions

21.     The NOFOs for the FY25 OVW grants for which Pennsylvania Coalition and its

members have intended to apply include new "out-of-scope" funding conditions that differ

significantly from the conditions imposed on the use of federal funds under the same grant

awards for prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant

funds from being used for: (1) promoting or facilitating the violation of federal immigration law;

(2) inculcating or promoting gender ideology; (3) promoting or facilitating discriminatory

programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility"

programs that do not advance the policy of equal dignity and respect; (4) activities that frame

domestic violence or sexual assault as systemic social justice issues rather than criminal offenses;

(5) programs that discourage collaboration with law enforcement or oppose or limit the role of

police, prosecutors, or immigration enforcement in addressing violence against women; (6)

awareness campaigns or media that do not lead to tangible improvements in prevention, victim

safety, or offender accountability; (7) initiatives that prioritize illegal aliens over U.S. citizens

and legal residents in receiving victim services and support; and (8) any activity or program that

unlawfully violates an Executive Order. In addition to identifying these activities as

"out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW

grants require applicants to submit a certification with their application saying that they will not

use the grant funds on the "out-of-scope" activities.

22.     In addition, OVW has updated the General Terms and Conditions applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

## VI. OVW's New Funding Conditions Place Pennsylvania Coalition and its Members in an Untenable Position

23.     The new funding conditions present Pennsylvania Coalition and its members with an impossible choice. Pennsylvania Coalition could forgo the OVW grants and face the direct consequences to Pennsylvania Coalition's financial health and ongoing operations. Or Pennsylvania Coalition could agree to the conditions and thereby jeopardize its mission and compliance with VAWA requirements, and face enormous risks of litigation and government investigations under the False Claims Act no matter what Pennsylvania Coalition does.

24.     Agreeing to the certifications would cause Pennsylvania Coalition profound harm. The funding conditions are vague, and several could be read to conflict with Pennsylvania Coalition's core mission and the activities it has undertaken for decades in furtherance of that mission and in reliance on OVW grants. The funding conditions may require Pennsylvania Coalition to cease engaging in activities that it had previously understood OVW grants to plainly support. Thus, Pennsylvania Coalition does not know how it may comply with the funding conditions while also staying true to its mission and providing essential support for member

organizations, advocates, and vulnerable victims and survivors of domestic abuse and sexual violence.

25.    For instance, the Pennsylvania Coalition requires members to maintain a "commitment to racial and social justice and a philosophy of empowerment." It is unclear whether it can continue to maintain this core element of its mission without running afoul of the restriction against framing domestic violence as a systemic social justice issue. The Pennsylvania Coalition is also unsure if this will be seen as running afoul of the condition not to "promot[e] or facilitat[e] discriminatory programs or ideology, including illegal DEI" as DOJ might interpret those terms.

26.    Pennsylvania Coalition is also concerned that it cannot continue to engage in certain practices that respect the dignity of all victims of domestic violence, regardless of gender and sexual orientation, and are consistent with the VAWA mandate not to discriminate on the basis of gender or sexual orientation. In providing direct client services, many Pennsylvania Coalition staff use clients' preferred pronouns. The organization also provides information about addressing the needs of the LGBTQ+ survivor community. It is unclear whether Pennsylvania Coalition may continue these practices and activities while complying with the funding condition not to "inculcat[e] or promot[e] gender ideology."

27.    It is also unclear whether Pennsylvania Coalition may continue providing certain services to the immigrant community, including those without legal status, consistent with the funding conditions. Both the Pennsylvania Coalition and its members regularly help immigrant clients understand their rights and obtain appropriate legal assistance, including specific education around the VAWA and crime-victim specific immigration opportunities and protections that may be available regardless of current status. But doing so now may conflict

with the way DOJ interprets the prohibition against "promoting or facilitating the violation of immigration law."

28.     Additionally, Pennsylvania Member Doe would have to fundamentally change its programming or accept new grants and risk running afoul of various funding conditions imposed on those grants. For example, the program would be unable to competently identify and serve survivors from myriad communities, thus causing more harm and in some cases, increasing lethality.

29.     Pennsylvania Coalition fears that if it agrees to the new funding conditions, it could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. These potential consequences of seeking a grant subject to the new, vague conditions make Pennsylvania Coalition concerned about applying or accepting an award. To mitigate these risks, Pennsylvania Coalition would have to change its practices, in many cases contrary to its core values.

30.     Not agreeing to the certifications would also result in grave harm.

31.     Not having access to funds from the Coalition Grant and other competitive grants would severely undermine Pennsylvania Coalition's ability to function as a state coalition. Losing the Coalition Grant alone would result in a $113,574 loss of funds for the next fiscal year. Without these funds, Pennsylvania Coalition would have to reduce its services to members.

32.     Our member programs would lose access to core, comprehensive training for their staff necessary to provide legally and ethically compliant advocacy services to clients in addition to regular training on emergent issues that ensure front-line staff are able to provide quality services to all survivors. The state would lose critical technical assistance in systemic response improvements that reduce domestic violence, increase effectiveness of legal responses, and

dramatically improve survivor response and support efforts. These losses would make the Pennsylvania Coalition less effective as a coalition and undermine its role as the state authority on domestic violence prevention, intervention, and response.

33.     These are just some of the ways Pennsylvania Coalition's programming and its beneficiaries would suffer.

### VII. Cuts to Pennsylvania Coalition's and its Members' Services Would Harm Domestic Violence Victims and Survivors

34.     The reduction or outright termination of these services would have devastating effects on the community of survivors and victims of sexual violence.

35.     In the absence of fully funded Pennsylvania Coalition services, domestic violence victims will be confronted with more barriers when trying to access services, including discriminatory treatment from medical, law enforcement or courtroom personnel, hotline operators, and therapists who have not received anti-bias and other core victim services training. This will immediately lead to more survivors choosing not to participate in the criminal justice system and fewer being linked to and receiving appropriate medical and therapy services. Direct service providers will be unable to maintain high quality services that follow best practice guidance or even that are fully compliant with the myriad federal, state, and local requirements they would now have to navigate on their own, without the critical assistance of coalitions, while desperately trying to keep up with the already increasing demand for services.

36.     Pennsylvania Coalition's operations are essential to permitting the network of direct service providers to focus on providing the highest-quality services to the survivors they serve and ensuring that the systems that contribute to addressing and responding to the epidemic of domestic violence are operating with evidence-based, trauma-informed, survivor-centered policies and practices.

10

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 12, 2025.

_____

Susan Higginbotham
Chief Executive Officer
Pennsylvania Coalition Against Domestic Violence