IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE, *et al.* *Plaintiffs*, v. PAMELA BONDI, in her official capacity as United States Attorney General, *et al.*, *Defendants*. | Case No. 1:25-cv-00279 |

**DECLARATION OF NEW JERSEY COALITION TO END DOMESTIC VIOLENCE**

I, Denise Higgins Bonifanti, declare as follows:

## I. Background

1. I am the Legal Director of the New Jersey Coalition to End Domestic Violence (NJCEDV), New Jersey's federally designated domestic violence coalition.

2. NJCEDV was founded in 1980 as the New Jersey Coalition Against Battered Women and is headquartered in Hamilton, NJ. NJCEDV is the state domestic violence coalition that serves as a non-profit network of domestic violence service providers, including comprehensive programs and agencies, and allies working to strengthen New Jersey's response to and prevention of domestic violence. NJCEDV's mission is to lead collaborative community and systemic responses to domestic violence by providing public awareness, training, advocacy, policy development, technical assistance and supportive services. NJEDV envisions a society where all are free from oppression, injustice, and violence. NJCEDV provides its member domestic violence agencies statewide with access to resources, training opportunities, technical assistance, and input on policies and practices that advance safety, justice, and healing for survivors.

3. The New Jersey Coalition to End Domestic Violence has an annual budget of $3.7 million. Of that total amount, roughly $110,000 comes directly from Office on Violence Against

Women (OVW) grants, and $76,120 comes from pass-through funds distributed by the Office on Violence Against Women to the NJ Office of the Attorney General which is then passed on to NJCEDV.

**II.     New Jersey Coalition to End Domestic Violence Member Organizations**

4.  NJCEDV is a membership organization with 33 member agencies. Membership primarily consists of Domestic Violence service providers throughout all of New Jersey's 21 counties.

5.  NJCEDV's membership includes member Safe and Sound Somerset, which is the only domestic and sexual violence service provider in its county, serving survivors for nearly 50 years through providing comprehensive services designed to provide safety, hope and healing to survivors and their children; and to educate communities to interrupt, and stop intimate partner violence. Safe and Sound Somerset also collaborates and trains across systems to help ensure survivors receive trauma-informed support and services across communities. Member Safe and Sound Somerset's services include a 24/7 helpline, emergency safe housing, sexual assault response teams, domestic violence response team, strangulation response, counseling, legal advocacy, housing advocacy, services for children who have experienced domestic violence, and community training and prevention education.

**III.    OVW Grants NJCEDV Has or Has Intended to Apply For**

6.  NJCEDV has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year since its inception.

7. In FY25, OVW awarded NJCEDV a total of $110,090 through the Coalition Grant. The grant has a period of performance and a budget period of October 1, 2025 through September 30, 2026.

8. NJCEDV uses the OVW Coalition grant to provide technical assistance (TA) to programs that provide direct services to victims of domestic violence, dating violence, and stalking, conducting statewide, regional and/or community-based forums/meetings for victim advocates, including from culturally specific organizations, to identify gaps in services and to coordinate activities to address gaps and enhance services for survivors, particularly survivors from underserved populations, survivors who have been charged, convicted or incarcerated, LGBTQ+ survivors, survivors with a disability, survivors of color, and survivors experiencing abuse later in life. NJCEDV also utilizes these funds to collaborate with federal, state, and municipal courts, state police and local law enforcement or county prosecutors to enhance access to safety and justice for victims.

9. NJCEDV plans to apply for this funding in years beyond FY26. If awarded the Coalition Grant in the future, as expected, NJCEDV anticipates continuing to provide the services described above.

10. NJCEDV is also awarded a grant of federal funds made available through the Violence Against Women Act to the New Jersey Office of the Attorney General who then distributes the funds to NJCEDV through their funding application and notification process. This funding award in the amount of $76,120, supports NJCEDV's Prevention Programming. First awarded to NJCEDV in 2018, this funding was the launchpad that allowed NJCEDV to further develop its engaging men and boys work in prevention, has allowed NJCEDV to develop school-

based partnerships and training, and will now be used to develop a Youth Advisory Board to ensure youth leadership and voice is at the center of our prevention work.

### IV. OVW Grants That NJCEDV Members Currently Have or Have Intended to Apply For

11. NJCEDV members have received OVW grants, including OVW Housing, OVW Sexual Assault Services Grant Program, OVW Culturally Specific Funding, Expanding Legal Services Grant, Legal Assistance for Victims Program, Disability, Improving Criminal Justice Responses, and the Children and Youth Program.

12. Various NJCEDV members receive VAWA funds passed through the New Jersey Office of the Attorney General that are originally disbursed by the Office on Violence Against Women to support programming such as Domestic Violence Crisis Response Teams in every community.

13. For example, Member Safe and Sound Somerset is a current recipient of pass-through FY24 OVW funds distributed by the New Jersey Office of the Attorney General in the amount of $52,500 to support the Domestic Violence Response Team program in their county, ensuring that survivors have access to an advocate when engaging with law enforcement or a forensic exam from a hospital. Through this program, Safe and Sound Somerset also trains law enforcement and hospital personnel to provide trauma-informed support to survivors.

### V. OVW's New Funding Conditions

14. The NOFOs for the FY25 OVW grants for which NJCEDV and its members have applied include new "out-of-scope" funding conditions that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant funds from being used for: (1) promoting or facilitating the violation of federal immigration law; (2) inculcating or

promoting gender ideology; (3) promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect; (4) activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses; (5) programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women; (6) awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability; (7) initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support; and (8) any activity or program that unlawfully violates an Executive Order. In addition to identifying these activities as "out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW grants require applicants to submit a certification with their application saying that they will not use the grant funds on the "out-of-scope" activities.

15. In addition, OVW has updated the "General Terms and Conditions" applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

VI. **OVW's New Funding Conditions Place NJCEDV and its Members in an Untenable Position**

16.     The new funding conditions present NJCEDV and its members with an impossible choice to either not apply for critical OVW funding and face immediate consequences to their financial stability and services, or to apply for these critical grants which are antithetical to their mission and may violate the anti-discrimination requirements under the VAWA and the New Jersey Law Against Discrimination (NJLAD). Additionally, signing the certification would require NJCEDV and its members to open themselves up to the extreme risk of litigation and government investigations under the False Claims Act.

17.     Agreeing to the certifications required by OVW would most certainly cause NJCEDV significant harm. First, the funding conditions are vague, making it exceedingly challenging to know whether they have been violated. Second, some of the conditions could be read as in conflict with NJCEDV's role, mission, and bylaws that inform the activities it has undertaken for over forty years in furtherance of that mission and in reliance on OVW grant funding. NJCEDV has worked to eradicate domestic violence through the understanding that all systems of oppression are connected and that the disparate treatment of any community, whether it is based on racial characteristics, national origin or identifying as part of the LGBTQ+ community, is a barrier to ending that violence. NJCEDV's articles and bylaws include the tenant that "work on behalf of victims of domestic violence is informed by an ongoing process of analysis that sees systems of oppression as interrelated; we work to challenge the power structures that legitimize them and perpetuate injustices." The Articles and Bylaws also assert that NJCEDV "appreciate[s] the diversity made possible by race, ethnicity, gender identity, ancestry, place of origin, color, citizenship, religion/spirituality, sexual orientation, age, marital status, political affiliation and ability" which applies to the victims we serve, our employees and our board members. NJCEDV is unsure whether it may undertake its day-to-day activities

reflecting its articles and bylaws, which reference "equity" and "diversity," without running afoul of the condition not to "promot[e] or facilitat[e] discriminatory programs or ideology, including illegal DEI" as DOJ might interpret the OVW term.

18. The funding conditions may further require NJCEDV to cease engaging in activities that it had previously understood OVW grants to plainly support, finding itself in a position where it may not understand how to comply in good faith with these funding conditions while also staying true to the NJCEDV mission and provide essential support to member organizations, advocates, and vulnerable survivors of domestic abuse as it has for over four decades.

19. One such example of the potential discrepancy between NJCEDV's work and the new conditions imposed by OVW is the Coalition's mission is the prohibition against inculcating or promoting gender ideology. NJCEDV and its members engage best practices that respect the dignity of all victims of domestic violence, regardless of gender and sexual orientation, and are consistent with the VAWA mandate and NJLAD not to discriminate on the basis of gender or sexual orientation. NJCEDV incorporates working with LGBTQ+ survivors in its training and provides technical assistance to community members on how to support survivors of all genders. NJCEDV also partners with housing programs to offer technical assistance and training regarding compliance with HUD and VAWA's anti-discrimination mandates. NJCEDV also respects the use of preferred pronouns, participates in an LGBTQ+ taskforce, does outreach to the LGBTQ+ community to provide resources about our member programs and works with our member agencies to promote compliance with anti-discrimination provisions under VAWA and NJLAD. It is unclear whether NJCEDV may continue these practices and activities while complying with the DOJ's funding condition not to "inculcat[e] or promot[e] gender ideology."

20. NJCEDV is also concerned about the potential conflict of its mission "to be the collective voice and advocate for domestic violence survivors by leading collaborative community and systemic responses to domestic violence" and the prohibition of funds being used for "activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses." For over forty years NJCEDV has worked from a collaborative approach incorporating prevention work and abuse intervention programming while also providing technical assistance and training to our system partners. This model focuses not just on criminalizing domestic violence but also on ending the cycles of abuse through counseling, education, and safety planning. The framing of domestic violence as a criminal offense may not allow for these preventative measures to be incorporated into the work, in contradiction to NJCEDV's mission to lead collaborative community and systemic responses.

21. NJCEDV breaks down its work into five main roles within the state: Prevention, Policy, Training, Housing and Economic Justice and Social Justice while operating from a lens of anti-oppression and anti-racism. Specifically, NJCEDV defines social justice on its website as "recognizing the impact that violence and abuse has had on marginalized communities, and the role that oppressive systems and policies have had on perpetuating harm and inequity throughout communities". Accordingly, NJCEDV is unsure whether it may continue to work for social justice while abiding by the condition of not "promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect." In doing this work, NJCEDV focuses on equitable solutions to domestic violence which take into account the disparate treatment of marginalized communities and the unequal treatment of these communities in the criminal justice system. Our policy advocacy centers anti-oppression and anti-racism in our

advocacy to improve response to domestic violence for all members of the state. New Jersey has a very diverse community and the survivor centered and trauma informed work of NJCEDV and its members must recognize these various lived experiences which often include discrimination, oppression and systemic harm. The prohibition in the certification against illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect;" is both vague as to its meaning and ignores the historical oppression that the work of NJCEDV is built on. NJCEDV would be unable to perform its regular duties without fear of infringing on this vague description of illegal DEI which could also be amended or modified at any point during the grant period.

22. As part of their core services, NJCEDV and its member programs provide a range of options for survivors to free themselves from the abuse including psychoeducation, shelter services and information about obtaining civil restraining orders through family court. Advocates are on call to meet with survivors at the police station, at hospitals and at the courthouse to offer these resources and to provide information about these options so that survivors can make the decisions that are safest and most appropriate in their particular situation. This is often a crucial intervention to provide life saving safety planning and emergency shelter. NJCEDV is concerned that providing these resources and options may violate the prohibition to "discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women" if a survivor chooses one of the civil legal options or chooses to seek shelter instead of immediately filing a criminal complaint. This limiting of options may be particularly harmful when the abuser is connected with law enforcement as was the case in two recent homicides in New Jersey.

NJCEDV member programs will have to choose between offering lifesaving resources and staying in compliance with the condition to collaborate with law enforcement.

23. NJCEDV is further concerned that members abiding by the confidentiality terms of VAWA and the New Jersey Advocate Privilege Law (N.J. Stat. § 2A:84A-22.15), may be found in violation of the prohibition to "discourage collaboration with immigration enforcement," The confidentiality protections afforded to victim service agencies and their clients under VAWA are at the core of domestic violence agency services. New Jersey law further protects this shared information under the Advocate Privilege Law, recognizing the need for survivors to feel safety in sharing information about their experiences. The guaranteed protection of confidentiality allows survivors to seek safety without fear of their abusers finding out. NJCEDV regularly offers training and technical assistance on the importance of confidentiality, including during the initial intake and assessment process. NJCEDVs members would have to reassess these procedures where they advise survivors of these confidentiality provisions. Furthermore, the member would have to balance violating both VAWA and State law if cooperation with immigration enforcement were demanded or violate the condition, putting them at risk of a claim under the False Claims Act. Ultimately the survivors would be most affected, as they will be put in a position of being unable to trust the member organizations and therefore leaving them with less options for leaving an abusive relationship.

24. NJCEDV is further unsure whether it may continue providing certain services to the immigrant community, including those without legal status, and the member organizations that support these communities, while complying with the funding conditions. NJCEDV includes member organizations that help immigrant clients understand their rights and obtain appropriate legal assistance, including specific education regarding the VAWA and crime-victim specific

immigration opportunities and protections that may be available regardless of their current status. But doing so may now conflict with the way DOJ interprets the prohibition against "promoting or facilitating the violation of immigration law." Furthermore, by complying with the VAWA and New Jersey Law Against Discrimination requirements of non-discrimination based on national origin, member programs are unsure if they might be found in violation simply by default. Member programs do not inquire about a survivor's national origin or immigration status as it is not a determinate of abuse and is not a factor to be considered in serving survivors. Member programs in a geographically diverse area may be serving more survivors from a particular culture or demographic by nature of their physical location in the community.

25. NJCEDV is further concerned with the catchall prohibition against "any activity or program that unlawfully violates an Executive Order." NJCEDV will be unable to continue its work while balancing the demands of ever-changing and overarching executive orders. Projects and materials will need to be constantly scrutinized and monitored for compliance with these orders. This will take resources away from the support of programs and longstanding projects.

26. Membership organizations in NJCEDV share some of these concerns as well. For example, Member Safe and Sound Somerset would also have to change or eliminate some of its direct services to victims to comply with the conditions. If it agreed to the conditions, Safe and Sound Somerset would have to end programming for victims from specific identity categories that have been deemed "out of scope" and therefore ineligible for coverage in facilities and through programming that is paid for by OVW grant funds.

27. Safe and Sound Somerset is further unsure about whether they will be able to use OVW funding to serve all immigrant survivors regardless of their immigration status as required under VAWA and NJLAD without the DOJ interpreting this as violating the prohibition against

"promoting or facilitating the violation of immigration law." This organization also uses inclusive language and approaches when working with all survivors but worries that continuing to do so would violate the prohibition on "inculcating or promoting gender ideology." Safe and Sound Somerset fears that if it agrees to the new funding conditions, it could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. These potential consequences and vague conditions make Safe and Sound concerned about applying for or accepting a grant from OVW, grants that have been critical to sustaining its work for decades. To mitigate these risks, Safe and Sound would have to change its practices, in ways that would contradict its mission, guiding principles, and effectiveness.

## VII. Cuts to NJCEDV's and its Members' Services Would Harm Domestic Violence Victims and Survivors

28. The reduction or outright termination of these services would have devastating effects on the community of domestic violence survivors in New Jersey.

29. In the absence of fully funded NJCEDV services and NJCEDV member services, domestic violence victims will be confronted with more barriers when trying to access services following their abuse, including discriminatory treatment from medical, law enforcement or courtroom personnel, hotline operators, and therapists who have not received anti-bias and other core trauma informed victim services training. This will have an immediate impact and lead to more survivors choosing not to participate in the criminal justice system with fewer being linked to appropriate medical and therapeutic services. Direct service providers will be unable to maintain high quality services that follow best practice guidance or that are fully compliant with the myriad federal, state, and local requirements they would now have to navigate on their own,

without the critical assistance of coalitions, while desperately trying to keep up with the already increasing demand for services.

30. NJCEDV's operations are essential to permitting the network of direct service providers to focus on providing the highest-quality services to the survivors they serve and ensuring that the systems that contribute to addressing and responding to the epidemic of domestic violence are operating with evidence-based, trauma-informed, survivor-centered policies and practices.

31. This loss of trauma informed, non-discriminatory services will lead to greater incidents of domestic violence, sexual abuse, and ultimately higher rates of intimate partner homicide.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 17, 2025.

*Denise Higgins*

Denise Higgins Bonifanti
Legal Director
New Jersey Coalition to End Domestic Violence