IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND COALITION AGAINST
DOMESTIC VIOLENCE, *et al.*

    *Plaintiffs,*

v.

PAMELA BONDI, in her official capacity as United States Attorney General, *et al.*

    *Defendants.*

Case No. 1:25-cv-00279

## DECLARATION OF ANGELINA MERCADO

I, Angelina Mercado, declare as follows:

### I. Background

1. I am the Executive Director at the Hawaiʻi State Coalition Against Domestic Violence ("Hawaiʻi Coalition"), Hawaii's federally designated domestic violence coalition.

2. The Hawaiʻi Coalition has operated as a domestic violence coalition membership organization since 1994 and is headquartered in Honolulu, Hawaiʻi. The coalition is dedicated to preventing and ending domestic violence, dating violence, and stalking in Hawaiʻi. It supports survivors and the people who serve them by promoting safety, healing, justice, and lasting change.

3. The Hawaiʻi Coalition's work includes providing statewide support for domestic violence programs by offering technical assistance, resources, and guidance to agencies that serve survivors. The coalition also offers expert training and individualized support for advocates, educators, judicial officers, medical professionals, and other personnel working with survivors. It raises awareness about domestic violence issues to promote prevention across the

1

state. And it uplifts survivor voices by centering the needs and experiences of victims and survivors in everything it does.

4. Additionally, the Hawai'i Coalition created statewide service standards in coordination with a committee of member programs. These standards support member programs' provision of quality shelter and non-shelter services. Any domestic violence service provider that wishes to be recognized as a member program must agree to and adhere to those standards.

5. The Hawai'i Coalition has an annual budget of roughly $925,673. Twelve percent of that total amount comes from the Office on Violence Against Women (OVW) Coalition Grant.

## II. Hawai'i Coalition Member Organizations

6. The Hawai'i Coalition is a membership organization with 20 member organizations. There are four types of memberships: (1) an individual membership open to any person, (2) an organizational membership, open to any organization that fulfills any of the following: an organization whose mission and primary purpose is to provide direct services to survivors and/or prevent domestic and sexual violence; an organization with programs that provide advocacy and/or intervention services to victims of domestic and sexual violence, but do not have that as their primary purpose; or is an organizations with programs that provide emergency domestic violence shelter and transitional housing, (3) an organization membership, open to any organization that provides targeted or limited services to domestic violence victims (such as clinical, medical, or visitation centers, limited legal services) or through their day-to-day work, serve or otherwise impact survivors of domestic and sexual violence on a regular basis, (4) allied professional organizations, companies, and other organizations that are dedicated to addressing other intersectional social justice issues that may be related to, but are not specifically

2

about, domestic violence. These may include government agencies and community-based coalitions aligned with the Hawaiʻi Coalition's mission, vision, and values.

### III. OVW Grants the Hawaiʻi Coalition Has or Has Intended to Apply For

7. The Hawaiʻi Coalition has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year since at least 2004.

8. In FY24, OVW awarded the Hawaiʻi Coalition $114,533 through the Coalition Grant. Initially, the grant had a period of performance of October 1, 2024, through September 30, 2025, but the award was extended to September 30, 2026, through a no-cost extension approved by OVW.

9. Most recently, OVW awarded the Hawaiʻi Coalition $110,090 through the Coalition Grant for FY25. This grant has a period of performance of October 1, 2025, through September 30, 2026. The Notice of Funding Opportunity (NOFO) for the Coalition Grant required applicants to submit a certification by June 23, 2025, at 11:59 PM ET and submit the final application by June 25, 2025, at 8:59 PM ET; the Hawaiʻi Coalition applied by that date and submitted a certification.

10. Coalition grant funds are a primary source of funding for the Hawaiʻi Coalition to coordinate statewide activities to improve responses to domestic violence in Hawaiʻi. Over the decades, the Hawaiʻi Coalition has used Coalition Grant funds for many purposes: to provide training and technical assistance to member programs; to provide training and technical assistance to allied professionals involved in responding to domestic violence; to convene a county-level multi-disciplinary team to examine the efficacy of the lethality assessment program in the City and County of Honolulu, and collaboratively address gaps in practice and

3

coordination that support efforts to reduce domestic violence homicides in Hawaiʻi; to convene a coordinated community response team to improve firearm retrieval and enhance victim safety in domestic violence cases; and to support the online resource library for its member programs to have access to educational information, public awareness materials, and current information on best practices.

11. This year, the Coalition intends to use the FY25 funds to continue to coordinate state victim services activities through training and technical assistance; enhance victim services through the implementation of member program service standards to ensure that core services are provided to standard; provide training and technical assistance to judges and court staff on the dynamics of domestic violence, coercive control, and lethality indicators; and provide educational resource information to the public about the issues of domestic violence.

12. The Hawaiʻi Coalition received $549,567 in funding through the OVW Justice for Families Grant Program, a competitive OVW grant in FY19, which was no-cost extended to 9/30/24 due to the COVID-19 pandemic. The grant award funded an asynchronous online training on stalking for advocates, law enforcement, prosecutors, and judges; statewide training for interpreters on the basics of interpreting skills and ethics; statewide advanced training on domestic violence and sexual assault for interpreters; a joint training session with domestic violence advocates and child welfare staff to promote collaboration and enhance outcomes for survivors with child welfare cases, while emphasizing culturally informed services and prioritizing Native Hawaiian culture as a protective factor.

13. If the Hawaiʻi Coalition were unable to use funds from the grants it currently receives, it would suffer significant, detrimental consequences that would be felt statewide. The Coalition likely would have to cut staff, including those who provide much of the technical assistance for Hawaiʻi victim service programs and public awareness outreach. Additionally,

statewide coordination of training and technical assistance to allied professionals would suffer due to staff losses or the reassignment of duties required by other funders as a priority for remaining staff.

14. The Hawaiʻi Coalition intends to apply for the Coalition Grant in FY26 and beyond, and it intends to apply for competitive grants in future years as well. If awarded the Coalition Grant in the future, as expected, the Coalition anticipates continuing to provide the services described above.

**IV. OVW's New Funding Conditions**

15. The NOFOs for the FY25 OVW grants for which the Hawaiʻi Coalition and its members have intended to apply include new "out-of-scope" funding conditions that differ significantly from the conditions imposed on the use of federal funds under the same grant awards in prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant funds from being used for: (1) promoting or facilitating the violation of federal immigration law; (2) inculcating or promoting gender ideology; (3) promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect; (4) activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses; (5) programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women; (6) initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support; and (7) any activity or program that unlawfully violates an Executive Order. In addition to identifying these activities as "out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW grants require applicants to submit

5

a certification with their application saying that they will not use the grant funds on the "out-of-scope" activities.

16. In addition, OVW has updated the General Terms and Conditions applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

### V. OVW's New Funding Conditions Place the Hawaiʻi Coalition and its Members in an Untenable Position

17. The new funding conditions present the Hawaiʻi Coalition and its members with an impossible choice. The Hawaiʻi Coalition could forgo OVW grants and face the direct consequences to its financial health and ongoing operations. Or the Hawaiʻi Coalition could agree to the conditions and thereby jeopardize its mission and compliance with VAWA requirements, and also face enormous risks of litigation and government investigations under the False Claims Act, no matter what the coalition does.

18. Agreeing to the certifications would cause the Hawaiʻi Coalition profound harm. The funding conditions are vague, and several could be read to conflict with the Hawaiʻi Coalition's core mission and the activities it has undertaken for decades in furtherance of that mission and in reliance on OVW grants. The funding conditions may require the Hawaiʻi Coalition to cease engaging in activities that it had previously understood OVW grants to plainly support. Thus, the Hawaiʻi Coalition does not know how it may comply with the funding

conditions while also staying true to its mission and providing essential support for member organizations, advocates, and vulnerable victims and survivors of domestic violence.

19. For instance, the Hawaiʻi Coalition is unsure if it may offer training and technical assistance consistent with the restriction on framing domestic violence as systemic social justice issues rather than criminal offenses. The coalition's training and technical assistance has never framed domestic violence as *only* criminal offenses but has included additional context about root causes and social drivers behind instances of domestic violence. The coalition trains advocates on prevention and intervention methods that address verbal and financial abuse and other types of coercion and control that go beyond the criminal elements of domestic violence—the aspects of physical violence and threats of physical violence—that are codified as crimes.

20. The Hawaiʻi Coalition also does not know if it may continue in its current form certain training for advocates, allied professionals, and members of the public while complying with the condition not to engage in activities that "promot[e] or facilitat[e] discriminatory programs or ideology, including illegal DEI" as the current Administration would interpret that condition. Some of the coalition's training takes a public health model approach to preventing domestic violence, which is evidence-based and includes components addressing the intersection of violence and oppression, including racism, classism, homophobia, and ableism, with an emphasis on Native Hawaiian, Filipino, and Pacific Islander communities. The Hawaiʻi Coalition does not discriminate against anyone, but the vague term "illegal DEI" makes it impossible for the Hawaiʻi Coalition to know whether its training would be considered an out-of-scope activity under this funding condition.

21. It is also unclear whether OVW would interpret "inculcating or promoting gender ideology" as prohibiting the coalition from continuing activities that raise awareness about the

7

unique vulnerabilities faced by the transgender community, which experiences disproportionate rates of domestic and sexual violence. The disproportionate harms suffered by the transgender community underscore the Coalition's responsibility to assist victim service providers in providing competent, inclusive, and affirming services to transgender survivors. The Hawaiʻi Coalition has understood that VAWA prohibits discrimination against an individual based on their gender identity, and therefore has assisted member programs to understand their obligations to serve transgender survivors in order to be in compliance with the law.

22. Additionally, the Hawaiʻi Coalition frequently responds to technical assistance requests regarding serving both legal immigrant survivors and undocumented survivors, given the increased vulnerability that these survivors face from those who exploit their immigration status. This includes training and technical assistance for advocates on the best ways to conduct outreach to those who speak English as a second language, providing training to interpreters to be trauma-informed, and assisting shelters in identifying appropriate responses for the presence of Immigration and Customs Enforcement officials or related concerns affecting the immigrant community. None of the information the coalition provides promotes violating the law. Still, it is unclear whether the Department of Justice would consider these activities as "promoting or facilitating the violation of federal immigration law."

23. Additionally, the Hawaiʻi Coalition makes an effort to bring awareness to the public about the services its members provide, to inform victims of strategies they can use to seek safety from a situation involving domestic violence, and to engage the public on ways to respond to domestic violence in their communities and broader society. For example, each year in October, the Coalition engages in public awareness and outreach activities for the designated domestic violence awareness month. The Coalition participates in media interviews, generates

news articles, and shares social media posts to engage the public in understanding the realities and prevalence of domestic violence in Hawaiʻi. It also shares resources, including how people can access member program services. The Hawaiʻi Coalition is concerned about its ability to comply with the funding condition requiring that "awareness campaigns and media" result in "tangible improvements" while carrying out these activities. It would be cost-prohibitive for the Coalition to devise pre- and post-campaign testing to try to measure whether it led to "tangible improvements," as we do not have funds to perform such testing, and the funding provided by the Coalition Grant cannot be used on this kind of testing (research) activity. In any event, the vague term "tangible improvements" leaves the Hawaiʻi Coalition with no way of knowing whether its activities have met that metric. Therefore, the "awareness campaign" condition threatens the Hawaiʻi Coalition's ability to engage in these activities that are important for creating lasting change.

24. The Hawaiʻi Coalition fears that if it agrees to the new funding conditions, it could face not only the loss of grant funds but also federal government investigation, private party litigation under the False Claims Act, and potential liability for noncompliance. These potential consequences of seeking a grant subject to the new, vague conditions make the Hawaiʻi Coalition concerned about applying for or accepting an award. To mitigate these risks, the coalition would have to change its practices, in many cases contrary to its core values.

25. Not agreeing to the certifications would result in equally grave harm.

26. Not having access to funds from the Coalition Grant would severely undermine the Hawaiʻi Coalition's ability to function as a state coalition. Losing the Coalition Grant alone would result in a $110,090 loss of funds for the next fiscal year. Without these funds, the coalition would have to reduce the size of its staff and, therefore, its services to members.

9

27.     Cuts to staff would likely include the Training and Technical Assistance Coordinator, who plays a key role in ensuring that services provided to survivors in Hawaiʻi are high-quality, follow best practices, and meet standards. Our member programs would lose access to core, comprehensive training for their staff, necessary to provide ethically compliant advocacy services to clients, as well as regular training on emergent issues that ensure front-line staff are able to provide quality services to all survivors. The state would lose critical technical assistance in systemic response improvements that reduce domestic violence, increase the effectiveness of legal responses, and dramatically improve survivor response and support efforts. These losses would make the Hawaiʻi Coalition less effective as a coalition and undermine its role as the state authority on domestic violence prevention, intervention, and response.

28.     These are just some of the ways the Hawaiʻi Coalition's programming and its beneficiaries would suffer.

### VI. Cuts to the Hawaiʻi Coalition's and its Members' Services Would Harm Domestic Violence Victims and Survivors

29.     The reduction or outright termination of these services would have devastating effects on the community of survivors.

30.     In the absence of fully funded Hawaiʻi Coalition services, domestic violence victims will be confronted with more barriers when trying to access services following their abuse, including discriminatory treatment from medical, law enforcement, or courtroom personnel, hotline operators, and therapists who have not received anti-bias and other core victim services training. This will immediately lead to more survivors choosing not to participate in the criminal justice system and fewer being linked to and receiving appropriate advocacy, housing, financial, and therapy services. Direct service providers will be unable to maintain high-quality services that follow best practice guidance or even that are fully compliant with the myriad

10

federal, state, and local requirements they would now have to navigate on their own, without the critical assistance of coalitions, while desperately trying to keep up with the already increasing demand for services.

31.     The Hawai'i Coalition's operations are essential to enabling the network of direct service providers to focus on providing the highest-quality services to the survivors they serve and to ensuring that the systems that address and respond to the epidemic of domestic violence operate with evidence-based, trauma-informed, survivor-centered policies and practices.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on November 17, 2025.

Angelina Mercado (Nov 17, 2025 11:34:57 HST)

Angelina Mercado
Executive Director
Hawai'i State Coalition Against
Domestic Violence

11