# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> PAMELA BONDI, in her official capacity as United States Attorney General, *et al.* <br><br> *Defendants*. | Case No. 1:25-cv-00279 |

## DECLARATION OF LUCY RIOS

I, Lucy Rios, declare as follows:

### I. Background

1.   I am the Executive Director at the Rhode Island Coalition Against Domestic Violence (RICADV or "Rhode Island Coalition"), Rhode Island's federally designated domestic violence coalition.

2.   The Rhode Island Coalition was founded in 1979 and is headquartered in Warwick, Rhode Island. The Rhode Island Coalition is an organization dedicated to ending domestic violence made up of ten member agencies. Originally, we were formed to support and assist domestic violence shelters in Rhode Island. Today, we provide statewide leadership on the issue of domestic violence, enhance the work of our member agencies, and strive to create justice for victims and survivors through our systems and policy advocacy. We raise awareness on the issue and the prevention of domestic violence in Rhode Island through our training, technical assistance, communications and primary prevention strategies.

1

3. The Rhode Island Coalition and its member agencies have a recognized track record of successfully administering and implementing effective programs for victims and survivors of domestic violence, reaching an average of 10,000 victims every year. We are currently involved in various statewide collaborative projects with law enforcement, prosecution, and community-based organizations. As a coalition, we have the strength, unity, and statewide vision necessary to effect changes in services, policies, laws, and public attitudes.

4. For nearly 50 years, the Rhode Island Coalition has established itself as a bedrock of survivor services and advocacy in the state of Rhode Island. The Rhode Island Coalition has helped increase safety options for survivors and increase offender accountability in Rhode Island. We identify systemic gaps that compromise survivor safety and advocate for policy and legislative changes to address those gaps.

5. The Rhode Island Coalition works to build the public's knowledge about domestic violence in order to help make resources more accessible to victims and empower communities to intervene. The Rhode Island Coalition collects and maintains statewide data on the occurrence of domestic violence using a Rhode Island Data Dashboard which contains data points that describe the problem of domestic violence in Rhode Island and related factors that increase the risk of domestic violence, such as economic insecurity, or that help protect against it, such as access to safe, affordable housing. The Rhode Island Coalition also executes statewide public awareness campaigns three times a year. The Rhode Island Coalition responds to domestic violence homicides and high-profile cases in the news, in order to raise up the voices and experiences of survivors, honor the lives lost, identify system failures and policy solutions, and ensure media coverage is accurate, sensitive and well-informed.

6. Building a world where we can prevent domestic violence before it starts is central to the Rhode Island Coalition's mission. Our primary prevention work focuses on creating protective environments, engaging influential adults and peers, and strengthening economic supports for families. The Rhode Island Coalition applies a public health approach to domestic violence prevention and works with our member agencies and community partners, including youth-serving organizations, on these strategies. Examples include signature programs like Ten Men, where participants educate themselves and others about men's role in ending domestic violence, bring visibility to men engaged in this work, and mobilize men to find community solutions for preventing domestic violence.

7. Every aspect of our work is informed by the Rhode Island Coalition's nationally-recognized survivor task force, Sisters Overcoming Abusive Relationships (SOAR). Since 1989, SOAR promotes, advocates for, and works towards the elimination of domestic violence by embodying and giving visibility to the voices of abused women. SOAR members share their stories of survival to affect systems change and educate the public about the dynamics of abuse and community resources.

8. The Rhode Island Coalition has an annual budget of roughly $5 million, and approximately $3.2 million (64%) of that total is passed through to member agencies. Of that total amount, roughly $750,000 comes from Office on Violence Against Women (OVW) grants.

**II. Rhode Island Coalition Member Organizations**

9. The Rhode Island Coalition is a membership organization with 10 member agencies. Members fall into one of two categories. The first category of members is composed of primary purpose domestic violence agencies whose mission focuses on domestic violence and

3

the organization provides emergency shelter for survivors of abuse. The Rhode Island Coalition's membership of primary purpose domestic violence agencies includes:

    a. Blackstone Valley Advocacy Center (BVAC), which provides trauma-informed, client-centered services to victims of violent crimes, including sexual and domestic violence in Providence, Northern Rhode Island and the Blackstone Valley area.

    b. Domestic Violence Resource Center (DVRC), which provides trauma-informed, client-centered services to victims of domestic violence in Washington County;

    c. Elizabeth Buffum Chace Center (EBCC), which provides trauma-informed, client-centered services to victims of domestic and sexual violence in Kent County; and

    d. Women's Resource Center (WRC), which provides trauma-informed, client-centered services to victims of domestic violence in Newport and Bristol Counties.

10. Some of our members provide not only regional services, but statewide services as well. For example, BVAC implements two statewide programs, the Victims of Crime Helpline and the Safe Families Collaboration. BVAC also operates the Domestic Abuse Restraining Order Office at Joseph Garrahy Judicial Complex. Additionally, WRC implements the statewide Family Violence Option and Advocacy Program, and operates the Domestic Abuse Restraining Order Office at the Florence K. Murray Judicial Complex. EBC operates the Domestic Abuse Restraining Order Office at Noel Judicial Complex, and DVRC manages the Domestic Abuse Restraining Order Office at the McGrath Judicial Complex.

11. In 2017, the Rhode Island Coalition expanded its membership to include multi-service community-based organizations that have an established program that focuses on addressing domestic violence. Through the addition of affiliate members, the Rhode Island Coalition is better able to support organizations that reach traditionally underserved communities, and build stronger collaborations with effective community-based organizations. Each of these organizations brings their own area of expertise and specialized experience to the work of our coalition to help achieve our collective mission and vision, a world without domestic violence. These members are not voting members on the Rhode Island Coalition Board of Directors, but they are encouraged to engage in the business of the organization and actively serve on the statewide committees the Rhode Island Coalition convenes with equal voting power. Currently, we have the following six affiliate members that have at least one specialized domestic violence program for victims and their children statewide:

    a. Crossroads Rhode Island;

    b. Center for Southeast Asians;

    c. Family Service of Rhode Island;

    d. Progreso Latino Inc.;

    e. McAuley Ministries; and

    f. YWCA Rhode Island.

12. Our network of member agencies provides comprehensive emergency services and support to victims of domestic violence, dating violence, sexual violence, and stalking. Services include 24-hour Helpline support, emergency shelter, transitional housing, permanent supportive housing, support groups, counseling services, children who witness services, prevention programs, and assistance with navigating the legal system.

13. In 2024 alone, the Rhode Island Coalition's four primary purpose domestic violence agencies, along with affiliate member Crossroads Rhode Island, provided the following services:

- 9,661 individual victims of domestic violence received help;

- 296 adults and children stayed in shelters/safe homes;

- 63 adults and children lived in transitional housing;

- 2,738 victims were assisted by a Court Advocate in obtaining a restraining order;

- 158 victims participated in a support or educational group;

- 480 victims of domestic violence received clinical/counseling services;

- 303 children who witnessed domestic violence received services;

- 46,318 individual services provided by advocates; and

- 12,716 helpline/hotline calls were answered.

**III. Grants Rhode Island Coalition Has Applied For**

14. The Rhode Island Coalition has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year since at least 2001. OVW awarded the Rhode Island Coalition a total of $114,533 through the Coalition Grant in FY24. The grant had a period of performance and a budget period of October 1, 2024 through September 30, 2025. Most recently, OVW awarded the Rhode Island Coalition a total of $110,090 through the Coalition Grant in FY25.

15. This grant enables the Rhode Island Coalition to provide funding, training and technical assistance, program implementation and evaluation support, and statewide coordination of member agencies services and programs. With grant funds, the Rhode Island Coalition

effectively assists our member organizations to develop services for victims and survivors of domestic violence and develop a statewide strategic plan for prevention and intervention to accomplish our mission of ending domestic violence.

16. The Rhode Island Coalition has used Coalition Grant funds to support its training and technical assistance to its membership and community-based organizations in Rhode Island that provide domestic violence victim services. The Rhode Island Coalition convenes and facilitates communities of practice among its member agencies based on roles (e.g., Residential Directors, EmpowerDB Data Administrators, Court Advocates, Executive Directors); develops statewide in-service trainings for advocates and victim service providers; disseminates best practices and national resources (e.g., whitepapers, toolkits) and provides technical assistance to our member agencies and other victim service providers statewide. The Rhode Island Coalition conducts outreach activities to promote member agencies' services and resources, with a focus on reaching traditionally underserved communities.

17. Coalition Grant funds also support the Rhode Island Coalition's statewide coordination with other key partner organizations, including law enforcement, prosecution, and batterer's intervention program providers. With support from Coalition Grant funds, the Rhode Island Coalition maintains the statewide EmpowerDB database, an encrypted database that helps not only capture the prevalence of domestic violence in Rhode Island, but also the capacity of providers serving victims and children. With support from Coalition Grant funding, the Rhode Island Coalition also participates on cross-sector statewide committees, such as the Critical Case Review Team, the Governor's Executive Working Group on Domestic Violence, and the Batterers Intervention Program Oversight Committee.

18. In addition to the Coalition Grants, the Rhode Island Coalition receives competitive discretionary grants from OVW as well. Currently, the Rhode Island Coalition has recently received the following OVW grants:

   a. <u>OVW Justice for Families Program Grant</u>. The Rhode Island Coalition first received this grant in FY 2022, with a total of $550,000 for the period October 1, 2022 through September 30, 2025. Most recently, OVW awarded the Rhode Island Coalition a FY25 Justice for Families Program Grant, with a total of $600,000 for the period October 1, 2025 through September 30, 2028. The Rhode Island Coalition uses this funding to create and operate the Safe Exchange and Supervised Visitation Center—the first-of-its-kind safe and secure visitation and exchange program for court-involved domestic violence survivors and their children. The Rhode Island Coalition also uses the OVW Justice for Families Grant to strengthen the capacity of the statewide court advocacy program and the community of LGBTQ+-serving organizations in Rhode Island so that they are more knowledgeable of safety options and services and responsive to the needs of survivors in the LGBTQ+ communities and their families through community training, outreach, and direct services to victims.

   b. <u>OVW FY22 Engaging Men and Boys As Allies Grant</u>. This Grant provided a total of $350,000 for the period October 1, 2022 through September 30, 2025. The Rhode Island Coalition used this grant to support its Young Men Preventing Violence Project, an initiative to engage young men in Providence, Rhode Island in the work to end men's violence against women and girls in youth, immigrant, and refugee communities by adapting and drawing from the Rhode Island

Coalition's highly innovative Ten Men prevention strategy. The goal of the project is to educate male youth of color and immigrant and refugee male youth in Providence on the crimes of domestic and dating violence, engage them as bystanders, and promote ally behavior. Conducted in partnership with Youth in Action, Refugee Dream Center, and the Blackstone Valley Advocacy Center, the Young Men Preventing Violence Project underscores the development of young men of color role models as critical to preventing violence and creating gender equity, as well as key to preventing domestic violence in high-risk communities.

19. For the upcoming OVW grant cycle (October 1, 2025 through September 30, 2026), the Rhode Island Coalition has applied for and is still awaiting decision for the following grants:

   a. The OVW FY25 Children and Youth & Engaging Men Program Grant. If awarded, the Rhode Island Coalition will receive $350,000 for the period October 1, 2025 through September 30, 2028. The Rhode Island Coalition plans to use this grant to support its Violence's Young Men Preventing Violence Project, an initiative to engage young men in Providence, Rhode Island in the work to end men's violence against women and girls in youth, immigrant, and refugee communities by adapting and drawing from the Rhode Island Coalition's highly innovative Ten Men prevention strategy.

   b. The OVW FY25 Grants to Improve the Criminal Justice System. If awarded, the Rhode Island Coalition will receive $900,000 for the period October 1, 2025 through September 30, 2028. If awarded, the Rhode Island Coalition will, in

partnership with its four primary purpose domestic violence agency members, hire and train Lethality Risk Screening Advocates to assess and screen court-involved victims of domestic abuse for lethality risks. The identification of potentially high-risk cases where lethality risk factors are present will help enhance safety planning, referrals, and options for survivors and their families, also aiding the District Court Pretrial Services Unit in determining possible supervision and monitoring options. With the survivor's voluntary informed signed release in compliance with the federal Violence Against Women Act (VAWA), high-risk assessments could be utilized by other victim advocates, Pretrial Services Unit staff, attorneys, mediators, social workers, or others to assist in making appropriate decisions regarding safety and supervision options in each individual domestic violence case.

**IV. Grants That Rhode Island Coalition Members Currently Have Applied For**

20. The Rhode Island Coalition's members have also received OVW grants, including grants under the Transitional Housing Program, Rural Program, the Culturally Specific Services Program, and others.

21. Members BVAC and WRC receive and rely on OVW Transitional Housing Grant funds.

22. Member Progreso Latino Inc. receives the OVW Culturally Specific Services Grant.

23. Various Rhode Island Coalition members have also applied for OVW grants this year.

24. Another member, WRC, applied for the Expanding Legal Services Initiative Grant, part of the Legal Assistance for Victims Grant Program, with objections, and was awarded that grant. WRC also applied for the FY 25 Transitional Housing Grant with the statement that it agreed to the conditions only to ensure that it would not be precluded from receiving the Grant; WRC was also awarded that grant.

**V. OVW's New Funding Conditions**

25. The NOFOs for the FY25 OVW grants for which the Rhode Island Coalition and its members have already applied include new "out-of-scope" funding conditions that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant funds from being used for: (1) promoting or facilitating the violation of federal immigration law; (2) inculcating or promoting gender ideology; (3) promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect; (4) activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses; (5) programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women; (6) awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability; (7) initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support; and (8) any activity or program that unlawfully violates an Executive Order. In addition to identifying these activities as "out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW

11

grants require applicants to submit a certification with their application saying that they will not use the grant funds on the "out-of-scope" activities.

26.  In addition, OVW updated the General Terms and Conditions applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

27.  For grants programs in which the Rhode Island Coalition and its members applied for in January 2025, including the Justice for Families Program Grant and the Expanding Legal Services Initiative Grant, the NOFOs were not revised to include these conditions. However, on May 12, 2025, OVW told applicants they had to submit a certification saying they will not use the grant funds on the "out-of-scope" activities listed in Paragraph 26 above.

28.  As one example, on January 22, 2025, the Rhode Island Coalition submitted an application for the OVW Justice for Families Program Grant, along with certifications that were then-required. On May 12, the Rhode Island Coalition received an email from OVW, stating that, "[s]ince the time of your application submission, OVW has added a required Certification Regarding Out-of-Scope Activities for all FY 2025 applications" and directing the Rhode Island Coalition to certify that they will not use grant funds to engage in the out-of-scope activities described in Paragraph 26 above by May 23, 2025. (See Exhibit 1, Email Correspondence between the Rhode Island Coalition and OVW.)

12

29. On May 23, 2025, the Rhode Island Coalition requested an extension to obtain legal guidance on its obligations under the certifications, and OVW agreed to a one-week extension. (See Exhibit 1.)

30. On May 30, 2025, the Rhode Island Coalition submitted a letter with objections to seven of the eleven certification requirements. (See Exhibit 2, May 30, 2025 Rhode Island Coalition JFF Out-of-Scope Response.)

31. On June 2, 2025, OVW informed the Rhode Island Coalition that "the certification submitted with qualifiers cannot be accepted." (See Exhibit 1.)

32. On June 5, 2025, OVW informed the Rhode Island Coalition that "failure to submit the full certification as requested without caveats will remove you from further consideration." (See Exhibit 1.)

33. Understanding OVW's correspondence to mean that the Rhode Island Coalition would be precluded from being considered in the Justice for Families Program Grant application, which are funds that the Rhode Island Coalition needs to continue to perform critical services, the Rhode Island Coalition submitted the certification with great unease. (See Exhibit 3, June 6, 2025 letter.)

### VI. OVW's New Funding Conditions Place the Rhode Island Coalition and its Members in an Untenable Position

34. The new funding conditions present the Rhode Island Coalition and its members with an impossible choice. The Rhode Island Coalition could forgo the OVW grants and face the direct consequences to its financial health and ongoing operations. Or the Rhode Island Coalition could jeopardize its mission and compliance with VAWA requirements, and face enormous risks of litigation and government investigations under the False Claims Act no matter what the Rhode Island Coalition does.

35.     Agreeing to the certifications would cause the Rhode Island Coalition and its members profound harm. The funding conditions are vague, and several could be read to conflict with the Rhode Island Coalition's core mission and the activities it has undertaken for decades in furtherance of that mission and in reliance on OVW grants. The funding conditions may require the Rhode Island Coalition and its members to cease engaging in activities that it had previously understood OVW grants to plainly support under VAWA. Thus, the Rhode Island Coalition does not know how it may comply with the funding conditions while also staying true to its mission and providing essential support for member organizations, advocates, and vulnerable victims and survivors of domestic abuse and sexual violence.

36.     For instance, the Rhode Island Coalition is committed to anti-racism work and has been working with consultants for decades to help the Rhode Island Coalition and its members become more equitable, more diverse, and more inclusive. The Rhode Island Coalition is unsure whether it may undertake its antiracism and Diversity, Equity, Inclusion and Belonging (DEIB) work, reflecting its mission and guiding principles, without running afoul of the condition not to "promot[e] or facilitat[e] discriminatory programs or ideology, including illegal DEI" as DOJ might interpret those terms.

37.     Staff of the Rhode Island Coalition and member agencies are required to attend trainings on providing culturally competent care to specific demographics, and have references to "root causes" and DEI in their mission, visions, strategic plans, and organizational values. It is unclear whether the Rhode Island Coalition and its members could comply with the anti-DEI and anti-social justice conditions without adopting a view antithetical to its true beliefs.

38.     The Rhode Island Coalition and its members are also concerned that if they accept the funds with these conditions, they may not be able to continue to serve victims of domestic

14

and sexual violence, regardless of gender, sexual orientation and gender identity, and consistent with the VAWA nondiscrimination mandate. The Rhode Island Coalition has invested many years in trying to build understanding and capacity to address the unique barriers that LGBTQ+ victims of domestic violence face. From training on how to answer the phone, training staff to ask and utilize the pronouns identified by clients (and by other staff members), and requiring staff to attend training on providing LGBTQ+-affirming care, the Rhode Island Coalition is proud of its commitment to serve victims in this historically underserved population. Additionally, many of the Rhode Island Coalition's activities in furtherance of its OVW grant-funded direct service programs may also conflict with the new funding conditions. As mentioned earlier, the Rhode Island Coalition uses the OVW Justice for Families Program Grant to specifically serve the needs of LGBTQ+ victims of domestic violence, a historically underserved population. It is unclear whether the Rhode Island Coalition may continue these practices and activities while complying with the funding condition not to "inculcat[e] or promot[e] gender ideology."

39.     The Rhode Island Coalition and its members serve all victims of domestic violence, regardless of their citizenship status and consistent with VAWA's mandate. The requirement that funding won't be used to "prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support" creates grave concerns for the Rhode Island Coalition and its members. As a practical matter, victims do not have to identify their citizenship status, consistent with VAWA. Unfortunately, most of the direct services that member agencies provide are limited in capacity, whether it is shelter space, outpatient therapy, support groups, or legal assistance as some examples. If they accepted OVW funds with this condition, the Rhode

Island Coalition's member agencies would potentially have to fundamentally alter their programming or risk running afoul of this vague non-prioritization of "illegal alien" provision.

40. Because primary prevention is a critical part of the Rhode Island Coalition's work, work that we are funded, in part, by the OVW Men & Youth Grant to do, the Rhode Island Coalition participates on many intersectional coalitions and committees. A fundamental principle that guides the Rhode Island Coalition's organizational strategy for outreach and public awareness is that victimization takes place in a social context and that victimization is a social justice and health issue. The anti-social justice funding condition appears to undercut the Rhode Island Coalition's entire model of community outreach and primary prevention efforts.

41. The Rhode Island Coalition's prevention work includes public awareness campaigns focused on educating bystanders on ways they can intervene to disrupt the cycle of abuse, including the statewide helpline and website for community resources for not only victims and survivors, but for bystanders as well. Public awareness campaigns are very expensive to evaluate, and while we can include metrics related to social media engagement, page views, we do not have the resources to evaluate communication strategies for increases or decreases in domestic violence, and we do not know if these bystander public awareness efforts would violate the "tangible improvements in prevention, victim safety, or offender accountability" provision.

42. Using OVW Engaging Men and Boys as Allies Grant, the Rhode Island Coalition has developed effective primary programming which focuses on engaging male youth of color and male immigrant and refugee youth in Providence as allies in ending violence against women and girls. Even if the Rhode Island Coalition were to receive the OVW Children & Youth and Engaging Men funding that it applied for, we do not know if this program would be construed as violating the anti-DEI or the anti-immigration funding provisions.

43. As another example, member agency WRC is the backbone agency for the Newport Health Equity Zone, which is a primary prevention strategy that focuses on addressing root causes of violence, including health disparities, to reduce rates of domestic violence in the community. WRC does not know if its participation and leadership position in the Newport Health Equity Zone would be construed as violating the anti-DEI provision or the anti-social justice funding provision.

44. The Rhode Island Coalition fears that if it agrees to the new funding conditions, it could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. We have seen abusers weaponize the justice system to harass victims and organizations that serve victims, and we have every expectation that this would now be a tool for harassing litigation against our organizations for doing life-saving work. These potential consequences of seeking a grant subject to the new, vague conditions make the Rhode Island Coalition and its members concerned about accepting an award. To mitigate these risks, the Rhode Island Coalition would have to change its practices, in many cases contrary to its core values.

45. Not agreeing to the certifications would result in equally grave harm.

46. Not having access to funds from the Coalition Grant and other OVW competitive grants would severely undermine the Rhode Island Coalition's ability to function as a state coalition and to provide prevention services. Losing the Coalition Grant alone would result in a $110,090 loss of funds for the next fiscal year. The combined loss of funds from all of the grants for which the Rhode Island Coalition has applied—the Coalition Grant, the Justice for Families Program Grant, the Engaging Youth & Men Grant, and the Improving the Criminal Justice Response Program Grant identified above—would represent a substantial loss of over $1.9

million in anticipated funds over the next 15 months. And this total does not include the $ 339,678 we receive from OVW, passed through from the State of Rhode Island through STOP VAWA grants. Without these funds, the Rhode Island Coalition would have to reduce the size of its staff and, therefore, its services to members.

47. Our member programs would lose access to core, comprehensive training for their staff necessary to provide legally and ethically compliant advocacy services to clients in addition to regular training on emergent issues that ensure front-line staff are able to provide quality services to all survivors. The State of Rhode Island would lose critical technical assistance in systemic response improvements that reduce domestic violence, increase effectiveness of legal responses, and dramatically improve survivor response and support efforts. These losses would make the Rhode Island Coalition less effective as a coalition and undermine its role as the state authority on domestic violence prevention, intervention, and response.

### VII. Cuts to the Rhode Island Coalition's and its Members' Services Would Harm Domestic Violence and Sexual Assault Victims and Survivors

48. The reduction or outright termination of these services would have devastating effects on the community of survivors and victims of domestic and sexual violence.

49. Without OVW funds, the Rhode Island Coalition's member agencies would have no choice but to reduce or eliminate direct service programs. The organizations would not be able to provide transitional housing for victims of domestic violence and their children, forcing victims to choose between returning to an abuser or homelessness. Victims would not have access to legal advocacy and assistance when seeking restraining orders and custody orders in court. Counseling services for adult survivors and their children, children who witness art therapy, and support groups for survivors and victims would be severely limited as there would

be less advocates available to provide these critical services that support healing and wellness after abuse.

50.    Without OVW funding, survivors in Rhode Island will lose RI's first Safe Exchange and Supervised Visitation Center operated by a domestic violence program specifically catering to families that have experienced domestic violence. This would be a significant loss for survivors that need a safe place to comply with court ordered child custody and visitation.

51.    As described above, the Rhode Island Coalition has used OVW Justice for Families Program funding to strengthen the capacity of the statewide court advocacy program and the community of LGBTQ+-serving organizations in Rhode Island so that they are more knowledgeable of safety options and services and responsive to the needs of survivors in the LGBTQ+ communities and their families through community training, outreach, and direct services to victims in historically underserved populations. All the organizational capacity and relationship building related to being more responsive to the needs of LGBTQ+ survivors that has been built in the last three years is also at risk of being lost.

52.    In the absence of fully funded services, domestic violence victims will be confronted with more barriers when trying to access services following their assault, including discriminatory treatment from medical, law enforcement or courtroom personnel, hotline operators, and therapists who have not received anti-bias and other core victim services training. This will immediately lead to more survivors choosing not to participate in the criminal and civil justice system and fewer being linked to and receiving appropriate medical and therapy services. Direct service providers will be unable to maintain high quality services that follow best practice guidance or even that are fully compliant with the myriad federal, state, and local requirements

they would now have to navigate on their own, without the critical assistance of coalitions, while desperately trying to keep up with the already increasing demand for services.

53. The Rhode Island Coalition's operations are essential to permitting the network of direct service providers to focus on providing the highest-quality services to the survivors they serve and ensuring that the systems that contribute to addressing and responding to the epidemic of domestic and sexual violence are operating with evidence-based, trauma-informed, survivor-centered policies and practices.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October  20 , 2025.

_____
Lucy Rios
Executive Director
RI Coalition Against Domestic Violence