IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND COALITION AGAINST
DOMESTIC VIOLENCE, *et al.*

        *Plaintiffs*,

   v.

PAMELA BONDI, in her official capacity as United
States Attorney General, *et al.*,

        *Defendants*.

Case No.    1:25-cv-00279

**DECLARATION OF SARAH ROBINSON**

I, Sarah Robinson, declare as follows:

**I.**    **Background**

    1.    I am Co-Executive Director at the Vermont Network Against Domestic and Sexual Violence (Vermont Network), Vermont's federally designated domestic violence and sexual assault coalition.

    2.    The Vermont Network was founded in 1986 and is headquartered in Waterbury, Vermont. The Vermont Network is a dual state sexual assault coalition and domestic violence coalition that serves as a non-profit network of survivors, sexual and domestic violence agencies, and allies working to strengthen Vermont's response and prevention of sexual and intimate partner violence. The Vermont Network's mission is to create a Vermont free from violence where actions, beliefs and systems support all people to thrive. We work with our Member Organizations, allied non-profit organizations, state agencies, policymakers, and funders to advance our mission.

3. The Vermont Network provides its member sexual and domestic violence agencies statewide with access to resources, training opportunities, technical assistance, and input on policies and practices that advance safety, justice, and healing for survivors of domestic and sexual violence.

4. The Vermont Network also operates several statewide direct services programs:

   a. The Vermont Network operates the Deaf Vermonters Advocacy Services (DVAS) which provides victim advocacy services to victims of domestic violence, sexual assault and stalking who are deaf, heard of hearing or deaf-blind.

   b. The Vermont Network operates the Discussing Intimate Violence and Accessing Support (DIVAS) program, which provides advocacy, support groups and re-entry services to incarcerated victims of domestic violence, sexual assault and human trafficking at Vermont's only women's prison.

   c. The Vermont Network operates Safe Space, a statewide program offering a hotline and victim advocacy such as protection order assistance to victims of violence who identify as lesbian, gay, bisexual, or transgender.

   d. Finally, the Vermont Network operates a statewide legal clinic, which serves hundreds of individuals annually with direct representation and legal advice for victims of domestic violence, sexual assault and stalking.

5. The Vermont Network Against Domestic and Sexual Violence has an annual budget of $5,884,367. Of that total amount, $1,227,423 comes either directly or through grant agreements from Office on Violence Against Women (OVW) grants.

### II. Vermont Network Member Organizations

6. The Vermont Network is a membership organization with 15 member agencies. Member Organizations are regional or statewide domestic and/or sexual violence advocacy organizations.

7. The Vermont Network's membership includes Mosaic Vermont, Inc. Mosaic is a community-based nonprofit organization based in Washington County, Vermont whose mission is to heal communities and end sexual violence. Mosaic serves all people seeking services, resources, or healing after experiencing or being affected by sexual harm. Mosaic provides partnership, education, and consulting services for communities, businesses, and organizations to build new models to address and prevent violence.

### III. Grants the Vermont Network Has or Has Intended to Apply For

8. The Vermont Network has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year since its inception.

9. In FY25, OVW awarded the Vermont Network a total of $367,379 through the Coalition Grant. The grant has a period of performance and a budget period of October 1, 2025 through September 30, 2026.

10. The Vermont Network has used Coalition Grant funds to provide technical assistance and learning opportunities for our Member Organizations. This has included consultation and statewide meetings to update membership and services standards for Member Organizations. Services standards ensure that Member Organizations are providing comparable services and that victims of domestic violence, sexual assault and stalking can reliably access services in every community in Vermont, regardless of geography. This grant program has also

supported our staff members, in providing one-on-one tailored technical assistance and training to new directors at local agencies and to those who need assistance with direct services practices, personnel and organizational policies/practices, and grant and financial management best practices.

    11.    The Vermont Network also receives several competitive, discretionary grant funds from OVW:

    a.    The Vermont Network receives the FY21 Firearms Technical Assistance Project (FTAP) grant which provides a total of $500,000 for the performance and budget period of July 1, 2022 through June 30, 2025 with a 12-month no-cost budget and performance extension and draw-down period through June 30, 2026. The FTAP grant improves system responses to firearms violence for victims of domestic violence in Vermont through a partnership with the Vermont State Police, the Vermont Judiciary, and the Vermont Attorney General's Office.

    b.    The Vermont Network receives the FY24 Restorative Practices Pilot Sites Program grant which provides a total of $1,499,985 for the performance period of October 1, 2024 through September 30, 2029. The Restorative Practices Pilot Sites Program supports the development of restorative practices to promote victim safety and justice in one pilot site in Vermont through a partnership with a community justice center, a regional domestic violence advocacy program and several community-based non-profit organizations.

    c.    The Vermont Network receives the FY23 Legal Assistance for Victims grant, which provides a total of $750,000 for the performance period of October 1, 2023 through September 30, 2026. The Vermont Network uses these funds to operate a

legal clinic that provides pro bono civil legal representation and advice for victims of domestic violence and sexual assault, not only in protection order proceedings but also in divorce and custody proceedings.

12. The Vermont Network receives competitive discretionary OVW grant funds as a subrecipient as well. Currently, the Vermont Network has the following pass-through OVW grant:

   a. The Vermont Network received a subaward through the OVW FY23 Rural Domestic Violence, Dating Violence, Sexual Assault, and Stalking Program ("Rural Grant") through the Vermont Center for Crime Victim Services, which provides a total of $138,500 for the period October 1, 2023 through September 30, 2026. The Vermont Network partners with the Vermont Center for Crime Victim Services and several Member Organizations to enhance services to youth victims of domestic violence and sexual assault in rural northern Vermont.

13. Most recently, OVW awarded the Vermont Network the FY25 Coalition grant for the current cycle (October 1, 2025 through September 30, 2026). The Vermont Network received approximately $356,787. The Coalition Grant Notice of Funding Opportunity (NOFO) required that applicants submit the final application by June 25, 2025 at 8:59 PM ET. For the application to be considered timely and complete, DOJ required applicants to also submit a Certification Regarding Out of Scope Activities. For the application to be considered timely and complete, DOJ required applicants to also submit a Certification Regarding Out of Scope Activities. The Vermont Network submitted a letter stating that because it understood that OVW required a letter of certification to apply, it certified not to engage in the out-of-scope activities to avoid being precluded from consideration. However, it noted that because the requirements as written, either

5

by direct words or vagueness, could require the Vermont Network to act inconsistent with obligations under state and federal laws and obligations, the Vermont Network certified that its compliance would be consistent with the requirements to the extent they did not conflict with its obligations under the law.

14. The Vermont Network uses this grant funding to sustain core functions of the state coalition, including the partial salaries for 6 staff members, and providing training and technical assistance to new and continuing advocates at our 15 Member Organizations. In addition, these funds are used for the further development of services standards across the state and for advancing state partnership and the development of best practices to inform and guide the sexual and domestic violence field in Vermont. However, if the Vermont Network was not able to use the Coalition Grant funding, it would lose critical agency infrastructure, resulting in the need to terminate staff immediately and significantly reduce programming as to have lasting impacts on the coalition's capacity to engage in essential functions.

15. The Vermont Network intends to apply for the Coalition Grant in subsequent years. If awarded the Coalition Grant in the future, as expected, Vermont Network anticipates continuing to provide the services described above.

**IV. Grants That Vermont Network Member Organizations Currently Have or Have Intended to Apply For**

16. Vermont Network Member Organizations have also received direct or subrecipient OVW grants, including grants under the Rural Program, the Transitional Housing Program, and the Justice for Families grant programs.

17. Various Vermont Network Member Organizations have applied or have intended to apply for OVW grants this year.

18. Mosaic receives subrecipient funds through the OVW Rural grant. Most recently, Mosaic received a Rural grant subaward from the Vermont Center for Crime Victim Services for $130,000 amount for a budget and performance period of October 1, 2023–-September 30, 2026. Mosaic anticipates that when accepting subrecipient grant funds in future grants, it will need to agree to the challenged certification conditions.

19. Mosaic also receives pass through funds through the Vermont Center for Crime Victim Services for the Sexual Assault Services Formula Grant Program (SASP). In 2025, Mosaic received $31,695 of SASP funding, to which the OVW out-of-scope conditions apply. Various Vermont Network Member Organizations intended to apply for various OVW grants this year but were deterred by the challenged conditions.

**V. OVW's New Funding Conditions**

20. The Notices of Funding Opportunity (NOFOs) for the FY25 OVW grants for which the Vermont Network and its members have intended to apply include new "out-of-scope" funding conditions that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant funds from being used for: (1) promoting or facilitating the violation of federal immigration law; (2) inculcating or promoting gender ideology; (3) promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect; (4) activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses; (5) programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women; (6) awareness campaigns or media that do not lead to

7

tangible improvements in prevention, victim safety, or offender accountability; (7) initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support; and (8) any activity or program that unlawfully violates an Executive Order. In addition to identifying these activities as "out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW grants require applicants to submit a certification with their application saying that they will not use the grant funds on the "out-of-scope" activities.

21. In addition, OVW has updated the General Terms and Conditions applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

### VII. The New Funding Conditions Place the Vermont Network and its Members in an Untenable Position

22. The new funding conditions present the Vermont Network and its members with an impossible choice. The Vermont Network and its members could forgo the OVW grants in current and future years and face the direct consequences to its financial health and ongoing operations. Or the Vermont Network and its members could agree to the conditions and thereby jeopardize its mission and compliance with VAWA requirements, and face enormous risks of litigation and government investigations under the False Claims Act no matter what they do.

23. Agreeing to the certifications would cause the Vermont Network profound harm. The funding conditions are vague, and several could be read to conflict with the Vermont

8

Network's core mission and the activities it has undertaken for decades in furtherance of that mission and in reliance on OVW grants. The funding conditions may require the Vermont Network to cease engaging in activities that it had previously understood OVW grants to plainly support. Thus, the Vermont Network does not know how it may comply with the funding conditions while also staying true to its mission and providing essential support for member organizations, advocates, and vulnerable victims and survivors of domestic violence sexual assault and stalking.

24. For instance, the Vermont Network's purpose statement is to "create a world free from oppression where actions, systems and beliefs support all people to thrive." Furthermore, the Vermont Network's core values include "integrity" which we define as "hold(ing) ourselves accountable for keeping the most marginalized at the center of our work and "respect" which we define as "honoring every last person's full humanity and right to dignity, equity and justice". The furtherance of our mission and values involves an analysis of and a commitment to changing cultural norms which allow violence to occur.

25. In addition, the Vermont Network operates several direct services programs including Safe Space Anti-Violence Program which is the only population-specific program in Vermont serving victims of violence who are lesbian, gay, bisexual or transgender. The Vermont Network is unclear about whether the challenged conditions pertaining to "inculcat[e] or promot[e] gender ideology" would permit it to provide these services, in accordance with anti-discrimination provisions of the Violence Against Women Act.

26. The Vermont Network is unsure whether it may undertake its day-to-day activities reflecting its mission and guiding principles, which reference "equity" and "oppression" without running afoul of the condition not to "promot[e] or facilitat[e] discriminatory programs or

9

ideology, including illegal DEI" as DOJ might interpret those terms. It is also unclear whether The Vermont Network's mission and values, which recognize that the criminal offenses of sexual assault and domestic violence are related to systemic social conditions, violate the anti-social justice part of the certification, and whether the Vermont Network could comply with the anti-social justice condition without adopting a view antithetical to its mission.

27. The Vermont Network's activities in furtherance of its OVW grant-funded direct service programs may also conflict with the new funding conditions. For instance, the Vermont Network currently operates programs and activities that promote access to services, dignity and healing for all people —including with disabilities, people for whom English is not their primary language, and people who have been excluded from specific services such as shelter due to their gender. The coalition does not know if these programs' focus would be construed as "promoting or facilitating discriminatory programs or ideology, including illegal DEI" as DOJ might interpret those terms.

28. The Vermont Network is also concerned that it cannot continue to engage in certain practices that respect the dignity of all victims of sexual and domestic violence, regardless of gender and sexual orientation, and are consistent with the VAWA mandate not to discriminate on the basis of gender or sexual orientation. The Vermont Network would continuously run into challenges because we are advocates on behalf of all victims of domestic violence and sexual assault, including those who are transgender. We train and provide technical assistance to our Member Organizations, state agencies and others about VAWA non-discrimination requirements in the provision of services such as shelter and support groups. This includes technical assistance about providing trauma-informed services including using victims' stated names, pronouns, and gender identities. It is unclear whether the Vermont

Network may continue these practices and activities while complying with the funding condition not to "inculcat[e] or promot[e] gender ideology."

29. The Vermont Network's members, including Mosaic, have similar concerns about how to comply with the conditions. Mosaic is unsure whether its activities in furtherance of its OVW grant-funded direct service programs may also conflict with the new funding conditions, including programs and activities that promote access to services, dignity and healing for underserved populations. Mosaic does not know if these programs' focus would be construed as "promoting or facilitating discriminatory programs or ideology, including illegal DEI" as DOJ might interpret those terms.

30. Mosaic is also unsure whether its mission and values, which envision "a world with resilient communities, free of sexual and gender-based violence, where all people are supported in healing from harm," violate the anti-social justice part of the certification, and whether Mosaic could comply with the anti-social justice condition without adopting a view antithetical to its mission.

31. Finally, Mosaic is unsure whether it can continue providing trauma-informed care that respects gender identity by self-identified pronouns and names and providing care and referrals that accord with victims' gender identities. It is unclear whether Mosaic may continue these practices and activities while complying with the funding condition not to "inculcat[e] or promot[e] gender ideology."

32. In addition, it is also unclear whether the Vermont Network and its Member Organizations including Mosaic may continue providing services to immigrant survivors of violence, including those without legal status, consistent with the funding conditions. In addition to the training and technical assistance described above, the Vermont Network supports Member

Organizations in understanding the dynamics of abuse and barriers that immigrant victims may experience in seeking legal or other safety related relief. The Vermont Network assists survivors who are immigrants to access legal remedies to help them gain or maintain legal status when violence has played a role in their immigration experience. The Vermont Network encourages our member agencies through training and technical assistance to put safety first and provide services, resources and supports to any and all person(s) experiencing high risk violence without eligibility screening that goes beyond basic and immediate safety information. Conducting these activities now may conflict with the way that DOJ interprets the prohibition against "promoting or facilitating the violation of immigration law."

33. If the Vermont Network's Member Organizations did not accept grant funds, they would need to cut services including: 24 hour hotline services to provide immediate safety and support to victims; emergency shelter for victims of domestic violence and sexual assault, transitional housing programs that provide 6-24 months of non-emergency housing with support services; short-term supportive services intended to help survivors locate permanent housing and employment in the community, including counseling, childcare, transportation, and life skills, educational and/or job training; and training and partnership programs designed to engage law enforcement, judges, attorneys, court personnel, and healthcare and social services providers, in efforts to enhance the safety of rural victims of sexual assault, domestic violence, dating violence and stalking, with a focus on coordinated community responses and cross-system collaboration.

34. Mosaic in particular would need to cut direct services provided to victims of sexual assault including accompanying victims to sexual assault forensic exams and court appearances. In addition, they would need to cut 24-hour hotline services, and support groups or individualized advocacy and referral services.

35. The Vermont Network and its members fear that if it agrees to the new funding conditions, it could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. These potential consequences of seeking a grant subject to the new, vague conditions make the Vermont Network and its Member Organizations concerned about applying to or accepting current and future awards. To mitigate these risks, the Vermont Network and its Member Organizations would have to change practices, in many cases contrary to their mission and core values.

36. Not agreeing to the certifications would result in equally grave harm.

37. Not having access to funds from the Coalition Grant and other competitive grants would severely undermine the Vermont Network's ability to function as a state coalition and to provide direct services. Losing the Coalition Grant alone would result in a loss of approximately $360,000 funds for the next fiscal year, funding portions of six staff positions. Without these funds, the Vermont Network would have to reduce the size of its staff and, therefore, our services to members, in ways that would have significant and lasting impacts on the coalition's capacity to engage in essential functions. These losses would undermine the Vermont Network's role as the state authority on sexual violence prevention, intervention, and response. If the Vermont Network lost its federal funding and needed to downsize considerably, it would lose the capacity to provide the infrastructure necessary to serve Member Organizations.

38. Our Member Organizations would lose access to core, comprehensive training for their staff, which are necessary to provide legally and ethically compliant advocacy services to clients in addition to regular training on emergent issues that ensure front-line staff are able to provide quality services to all survivors. Vermont would lose critical technical assistance

infrastructure at the coalition as this grant allows staff to travel across the state in order to provide on-request, one-on-one or team/staff-wide assistance on complex advocacy issues such as building coordinated community response teams and sexual assault response teams, improving systemic responses in legal, medical, and social services settings, shelter policies and practices, confidentiality and trauma-informed advocacy, and more.

39.    The Vermont Network would no longer be able to provide new and continuing advocates across the state with: (1) ongoing training and technical assistance; (2) resources that educate members on best practices, update them on changes to state and federal law, and help survivors and the public recognize violence, find safety, and access available resources; or (3) systems coordination support, including tailored technical assistance, training, and coaching on building and sustaining community partnerships.

### VIII. Cuts to the Vermont Network's and its Members' Services Would Harm Domestic Violence and Sexual Assault Victims and Survivors

40.    The reduction or outright termination of these services would have devastating effects on the community of survivors and victims of sexual violence. If the Vermont Network did not accept OVW grant funds, there would be an immediate and detrimental impact to the field and services available to survivors.

41.    If the Vermont Network did not accept OVW funds, it would have an immediate impact on direct services for survivors of domestic violence, sexual assault, and stalking, including 1) legal services for victims, 2) forensic nursing care for child and adult victims of abuse and 3) victim advocacy for deaf individuals.

42.    In the absence of fully funded Vermont Network services, sexual assault victims will be confronted with more barriers when trying to access services following their assault, including ineffective or harmful treatment from medical, law enforcement or courtroom

personnel, hotline operators, and therapists who have not received core victim services training. This will immediately lead to more survivors choosing not to participate in the criminal justice system and fewer being linked to and receiving appropriate medical and therapy services. Direct service providers will be unable to maintain high quality services that follow best practice guidance or even that are fully compliant with the myriad federal, state, and local requirements they would now have to navigate on their own, without the critical assistance of coalitions, while desperately trying to keep up with the already increasing demand for services.

43. The Vermont Network's operations are essential to permitting the network of direct service providers to focus on providing the highest-quality services to the survivors they serve and ensuring that the systems that contribute to addressing and responding to the epidemic of sexual violence are operating with evidence-based, trauma-informed, survivor-centered policies and practices.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 14, 2025.

*Sarah Robinson*
Sarah Robinson
Co-Executive Director
Vermont Network Against Domestic and Sexual Violence