IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>PAMELA BONDI, in her official capacity as United States Attorney General, *et al.*<br><br>*Defendants*. | Case No. 1:25-cv-00279 |

**DECLARATION OF TAI SIMPSON-BRUCE**

I, Tai Simpson-Bruce, declare as follows:

**I.   Background**

1. I am Collective Stewardship, Co-Director at Idaho Coalition Against Sexual and Domestic Violence ("Idaho Coalition"), Idaho's federally designated sexual assault coalition.

2. Idaho Coalition was founded in 1980 and is headquartered in Boise, Idaho. It is a 21-member dual domestic violence and sexual assault coalition membership organization that works to end gender-based violence from its systemic roots, including by providing member organizations with training and technical assistance, access to statewide and national training and development, and participation in State-level advocacy and systems reform. The Idaho Coalition works with over 60 organizational partners, including community-based domestic and sexual violence programs, tribal service providers, culturally specific organizations, and grassroots collectives. Its partners include organizations and individuals committed to ending gender-based violence, including tribal domestic violence and sexual assault programs, culturally specific nonprofits, LGBTQIA+ organizations, and allied professionals.

3. The Coalition provides support and capacity building to more than 40 direct service organizations annually. These member programs collectively serve tens of thousands of survivors each year. Coalition activities include:

- Delivering training and technical assistance to advocates, legal professionals, and allied stakeholders;
- Disseminating printed and digital resources in English, Spanish, and other languages;
- Supporting youth prevention programs and school-based education efforts;
- Assisting programs with housing stabilization, shelter operations, and rapid re-housing;
- Coordinating statewide prevention and response strategies to domestic and sexual violence, including in rural, frontier, and tribal communities;
- Providing policy guidance and legislative analysis to state and federal partners;
- Maintaining infrastructure for statewide data collection, program evaluation, and survivor-informed practice.
- The Coalition also engages in tribal government-to-government consultation, supports implementation of tribal codes related to domestic and sexual violence, and coordinates cross-jurisdictional responses involving tribal, local, and state law enforcement.

4. Idaho Coalition has an annual budget of roughly $2.1 million. The Coalition manages and administers multiple federal grants, including awards from the Office on Violence Against Women (OVW), the Family Violence Prevention and Services Act (FVPSA), and other federal and state agencies. Federal funds make up more than 70% of the organization's total operating budget. OVW awards, which make up roughly 60%, or $1.3 million, of the Coalition's budget, specifically support the Coalition's ability to maintain staffing, support member

2

programs, produce statewide training curricula, and coordinate culturally specific responses to gender-based violence.

### II. Idaho Coalition Member Organizations

5. Idaho Coalition is a membership organization with 21 member agencies. Members include organizations and individuals committed to ending gender-based violence, including tribal DV/SA programs, culturally specific nonprofits, LGBTQIA+ organizations, and allied professionals.

### III. Grants Idaho Coalition Has or Has Intended to Apply For

6. Idaho Coalition has applied for and received a formula grant from OVW for the State and Territory Domestic Violence and Sexual Assault Coalitions Program ("Coalition Grant") every year for over two decades.

7. In FY24, OVW awarded the Idaho Coalition a total of $367,379 through the Coalition Grant. The grant had a period of performance and a budget period of October 1, 2023, through September 30, 2024. The Coalition Grant represented 16% of Idaho Coalition's annual budget.

8. Idaho Coalition has used Coalition Grant funds to implement strategic, community-rooted initiatives that strengthen the statewide response to gender-based violence while navigating federal constraints on resource development. These initiatives included:

   a. Designing and delivering statewide technical assistance and training to support local and tribal programs in collecting survivor-informed data, engaging in culturally responsive outreach, and refining service delivery models for underserved communities. Throughout the grant period, the Idaho Coalition facilitated a series of Executive Director Learning Sessions, regional workshops,

3

and advocate learning communities focused on improving trauma-informed practices, advancing racial and gender equity, and strengthening the ability of programs to respond to complex and overlapping experiences of harm. These sessions supported both skill-building and systems change, with attention to the unique needs of LGBTQ+ survivors and those impacted by the Missing and Murdered Indigenous People (MMIP) crisis.

b. Additionally, the Idaho Coalition continued to lead coordinated outreach and systems engagement efforts. Staff conducted site visits across geographically diverse and rural regions of Idaho, built relational infrastructure with tribal nations, and supported community-led outreach strategies. These efforts included capacity building with member programs on developing localized outreach plans that reflect cultural context, geographic isolation, and community need.

c. Finally, the Idaho Coalition remained a critical convener across federal, state, and local systems. By participating in policy tables such as the Idaho Criminal Justice Commission's MMIP Subcommittee and other interagency bodies, the Idaho Coalition ensured that community-informed data and survivor perspectives—particularly from Black, Indigenous, Latinx, and LGBTQ+ communities—were reflected in broader institutional efforts to address domestic and sexual violence across Idaho.

9. Idaho Coalition receives or has received competitive grants from OVW as well. Currently, Idaho Coalition has the following OVW grants:

a. The OVW FY24 Engaging Men "Warriors Rising" Grant, which provides a total of $350,000 for the period October 1, 2024, through September 30, 2027. Idaho

Coalition uses this grant to support the *Warriors Rising* initiative, a community-rooted strategy to engage men and boys as allies in the prevention of violence against women and girls. Activities include culturally grounded community circles with Native youth and men in rural Idaho and the development of anti-violence curricula rooted in Indigenous values and relational accountability.

b. The OVW Rural Program Grant, which provides a total of $750,000 for the period October 1, 2022, through September 30, 2025. Idaho Coalition uses this grant to support cross-jurisdictional and community-based responses in rural and frontier areas, including funding travel and training for advocates on safety planning with survivors facing limited law enforcement access, and partnering with tribal advocates to build coordinated community responses in reservation-adjacent areas.

c. The OVW FY22 Disabilities Grant, which provides a total of $500,000 for the period October 1, 2020, through September 30, 2024. Idaho Coalition used this grant to enhance accessibility in member programs and statewide training for serving survivors with intellectual, developmental, and physical disabilities. For example, we've partnered with local disability rights organizations to co-develop plain-language safety planning tools and provided technical assistance to improve shelter accessibility.

d. The OVW FY21 Transitional Housing Assistance Grant, which provides a total of $450,000 for the period October 1, 2021, through September 30, 2024. Idaho Coalition used this grant to provide short-term housing assistance and support services to survivors. This includes flexible rental assistance, application fee

       coverage, and capacity-building support to rural advocates navigating landlord negotiations.

    e. The OVW FY23 Training and Technical Assistance Grant, which provided a total of $400,000 for the period October 1, 2022, through September 30, 2025. Idaho Coalition uses this grant to provide national training and technical assistance with a focus on Indigenous-centered prevention strategies and intergenerational leadership development. Deliverables include workshops, webinars, and culturally responsive resources requested by tribal and rural programs.

    f. The OVW FY22 Legal Assistance for Victims (LAV) Grant, which provides a total of $800,000 for the period October 1, 2022, through September 30, 2025. Idaho Coalition uses this grant to fund collaborative legal services with project partners including Idaho Legal Aid and Immigrant Justice Idaho. LAV attorneys have served over 150 clients in obtaining civil protection orders, navigating custody arrangements, and securing immigration relief. Survivor clients routinely report that having a trauma-informed legal advocate made it possible for them to pursue safety through the legal system.

10. Most recently, OVW awarded Idaho Coalition the following grants for the October 1, 2025, through September 30, 2026 grant cycle:

    a. The FY25 Coalition Grant. Idaho Coalition received $367,379. The Notice of Funding Opportunity (NOFO) for the Coalition Grant required applicants to submit a certification by June 23, 2025 at 11:59 PM ET and submit the final

application by June 25, 2025 at 8:59 PM ET; pursuant to a stipulation in this matter, the Iowa Coalition applied by that date without submitting a certification.[1]

i. Idaho Coalition intends to continue to sustain core statewide coordination functions, including training and technical assistance for over 40 member programs, production of multilingual resources, convening of community-based and tribal partners, and implementation of culturally specific strategies focused on prevention, survivor support, and systems change. The grant supports key personnel and infrastructure required to meet the needs of Idaho's rural, tribal, and immigrant communities, including development of policy materials, survivor-informed prevention curricula, and emergency technical support for frontline advocates.

ii. However, if Idaho Coalition were unable to use the Coalition Grant funding, it would result in immediate operational instability, including potential layoffs of core staff responsible for training, resource development, and tribal coordination. The Coalition would likely have to reduce or eliminate its statewide technical assistance program, cancel standing meetings with tribal programs, and pause production of essential resources, such as translated outreach materials and community safety guides. Smaller programs across Idaho, many of which have no other access to ongoing support, would be impacted by the loss of culturally responsive consultation and training. This would result in a statewide

---

[1] Pursuant to a stipulation filed in this matter, Idaho Coalition and its members were not required to submit a certification for any OVW grant until August 12; the Court granted a stay of the challenged conditions on August 8.

   reduction in the quality and availability of services for survivors of domestic violence and sexual assault, particularly in underserved areas.

b. The FY25 STOP (Services, Training, Officers, and Prosecutors) Violence Against Women Formula Grant. As a subrecipient of the STOP award to the State of Idaho, Idaho Coalition uses this funding to continue providing systems-focused training, coordination, and strategic planning with law enforcement, prosecution, and court partners in partnership with the Idaho State Police and Idaho Council on Domestic Violence and Victim Assistance. The Coalition uses STOP funds to convene cross-sector stakeholder meetings, support trauma-informed training for criminal legal system partners and provide technical assistance to communities implementing coordinated community responses. If unable to use this grant funding, the Coalition would be unable to support meaningful systems change work at the state level or continue its collaboration with STOP subgrantees. This would reduce survivor safety and accountability infrastructure across Idaho, particularly in jurisdictions with limited local coordination capacity. Additionally, the Coalition's ability to support culturally specific and tribal grantees in navigating STOP grant requirements and aligning their responses with community safety goals would be significantly diminished.

c. The FY25 Sexual Assault Services Program ("SASP") Formula Grant. As a subrecipient of the Idaho State Police, Idaho Coalition uses this grant funding to continue to support the capacity of sexual assault programs across the state, including tribal and rural grantees, by offering training, materials, and peer-learning spaces specific to sexual assault advocacy. The Coalition uses SASP

funds to develop and disseminate sexual assault-specific resources, provide survivor-informed technical assistance, and uplift underserved voices in statewide strategy sessions. Funding also supports annual convenings for rural and tribal advocates focused on sexual assault response and prevention.

Without using the SASP grant, Idaho Coalition would lose a key source of funding for its sexual assault-specific programming and would be forced to significantly reduce its support for tribal sexual assault programs, culturally specific service providers, and rural advocates. The absence of dedicated SASP-funded technical assistance would limit the state's ability to meet the needs of survivors of sexual violence, particularly in under-resourced and marginalized communities.

d. The FY25 Rural Program Grant. Idaho Coalition uses this funding to build upon its current rural program by continuing to support tribal and frontier communities in enhancing survivor safety through local partnerships and culturally responsive strategies. The Coalition offers tailored training, logistical support, and advocacy coordination in high-need rural areas—especially where cross-jurisdictional gaps exist. The grant also funds materials and convenings focused on challenges unique to rural survivors, including firearm access, isolation, and limited law enforcement response. Without using this grant funding, Idaho Coalition would lose critical infrastructure for rural outreach and tribal partner support. The ability to provide in-person training and capacity-building in geographically remote regions would be curtailed. This would leave rural programs without the tools or support they need to navigate complex barriers to survivor safety, potentially

9

reducing access to advocacy services and increasing survivor vulnerability in low-resource communities.

11. End Domestic Abuse WI intends to apply for the Coalition Grant in FY26 and beyond. If awarded the Coalition Grant in the future, as expected, End Domestic Abuse WI anticipates continuing to provide the services I describe above.

### IV. Grants That Idaho Coalition Members Currently Have or Have Intended to Apply For

12. Idaho Coalition's members have also received OVW grants, including awards under the Transitional Housing Assistance Program, Legal Assistance for Victims (LAV) Program, Rural Program, Abuse in Later Life Program, Culturally Specific Services Program, and others.

13. Various Idaho Coalition members have also applied for and intended to apply for OVW grants this year, including the Transitional Housing Assistance Grant, the Rural Program Grant, the Engaging Men Grant, the Abuse in Later Life Program Grant, and the LAV Program Grant.

14. For example, one member program located in a rural and tribal-adjacent region of northern Idaho intends to apply for the Rural Program Grant to fund outreach, mobile advocacy, and emergency transportation for survivors across multiple isolated communities. This program has previously relied on Idaho Coalition for grant navigation, program design support, and cross-jurisdictional coordination with tribal partners.

15. Another member, which operates a culturally specific immigrant and refugee support program in a rapidly growing urban corridor, has applied for the LAV Program to expand bilingual legal services and survivor navigation support. This program serves a high

percentage of undocumented survivors and previously collaborated with Idaho Coalition on training and outreach under a subgrant.

### V. OVW's New Funding Conditions

16.     The NOFOs for the FY25 OVW grants for which Idaho Coalition and its members have applied or intended to apply include new "out-of-scope" funding conditions that differ significantly from the conditions imposed on the use of federal funds under the same grant awards for prior fiscal years. Specifically, the NOFOs for the FY25 OVW grants prohibit grant funds from being used for: (1) promoting or facilitating the violation of federal immigration law; (2) inculcating or promoting gender ideology; (3) promoting or facilitating discriminatory programs or ideology, including illegal DEI and "diversity, equity, inclusion, and accessibility" programs that do not advance the policy of equal dignity and respect; (4) activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses; (5) programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women; (6) awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability; (7) initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support; and (8) any activity or program that unlawfully violates an Executive Order. In addition to identifying these activities as "out-of-scope activities" for which grant funds may not be used, the NOFOs for the FY25 OVW grants require applicants to submit a certification with their application saying that they will not use the grant funds on the "out-of-scope" activities.

17.     In addition, OVW has updated the General Terms and Conditions applicable to its grants and cooperative agreements for fiscal year 2025 to require a separate certification as a

term of each award. The term requires a grant recipient to agree that "its compliance with all applicable federal civil rights and nondiscrimination laws is material to the government's decision to make th[e] award and any payment thereunder, including for purposes of the False Claims Act." The term further states that "by accepting the award," the grantee "certifies that it does not operate any programs," including DEI programs, "that violate any applicable federal civil rights nondiscrimination laws."

### VI. OVW's New Funding Conditions Place Idaho Coalition and its Members in an Untenable Position

18. The new funding conditions present Idaho Coalition and its members with an impossible choice. Idaho Coalition could forgo the OVW grants and face the direct consequences to Idaho Coalition's financial health and ongoing operations. Or Idaho Coalition could agree to the conditions and thereby jeopardize its mission and compliance with Violence Against Women Act (VAWA) requirements, and face enormous risks of litigation and government investigations under the False Claims Act no matter what Idaho Coalition does.

19. Agreeing to the certifications would cause Idaho Coalition profound harm. The funding conditions are vague, and several could be read to conflict with Idaho Coalition's core mission and the activities it has undertaken for decades in furtherance of that mission and in reliance on OVW grants. The funding conditions may require Idaho Coalition to cease engaging in activities that it had previously understood OVW grants to plainly support. Thus, Idaho Coalition does not know how it may comply with the funding conditions while also staying true to its mission and providing essential support for member organizations, advocates, and vulnerable victims and survivors of domestic abuse and sexual violence.

20. For instance, Idaho Coalition's mission is "to center collective liberation and address systemic oppression as a praxis for responding to, and preventing, gender-based

12

violence"; it describes its values as "compassion, interconnection, lead[ing] boldly, social equity, and collective liberation." Idaho Coalition is unsure whether it may undertake its day-to-day activities reflecting its mission and guiding principles, which reference "equity," without running afoul of the condition not to "promot[e] or facilitat[e] discriminatory programs or ideology, including illegal DEI" as DOJ might interpret those terms. It is also unclear whether Idaho Coalition's mission and guiding principles, which recognize that the criminal offenses of sexual assault and domestic violence carry a systematic social justice element, violate the anti-social justice part of the certification, and whether Idaho Coalition could comply with the anti-social justice condition without adopting a view antithetical to its true beliefs.

21. Many of Idaho Coalition's OVW-funded activities may now fall into a legal gray area due to the new funding conditions. Idaho Coalition's programming is guided by an organizational Theory of Change that centers safety and liberation through healing, resilience, and justice—particularly for communities most impacted by gender-based violence, including Black, Indigenous, Latinx, immigrant, LGBTQ2S+ survivors, and those with disabilities. This approach is embedded in programs like Warriors Rising, described above in paragraph 9(a), which supports culturally grounded work with Native youth and men to prevent violence through Indigenous values and accountability. Similarly, OVW-supported MMIP work includes tribal coordination, policy response, and culturally specific technical assistance for reservation- and rural-based advocates. It is unclear whether this targeted, survivor-informed work—rooted in cultural identity, racial equity, and community-led healing—could be interpreted by DOJ as "promoting or facilitating discriminatory programs or ideology, including illegal DEI." The vagueness of these restrictions creates substantial risk that core elements of Idaho Coalition's

long-standing and federally funded practices may no longer be permitted under the evolving conditions, despite their legal grounding and demonstrated benefit to underserved survivors.

22. Idaho Coalition is also concerned that it cannot continue to engage in certain practices that respect the dignity of all victims of sexual violence, regardless of gender and sexual orientation, and are consistent with the VAWA mandate not to discriminate on the basis of gender or sexual orientation. In providing direct client services, many Idaho Coalition staff use clients' preferred pronouns. The organization also provides information about addressing the needs of the LGBTQ+ community. It is unclear whether Idaho Coalition may continue these practices and activities while complying with the funding condition not to "inculcat[e] or promot[e] gender ideology."

23. It is also unclear whether Idaho Coalition may continue providing certain services to the immigrant community, including those without legal status, in accordance with the funding conditions. Idaho Coalition regularly helps immigrant clients understand their rights and obtain appropriate legal assistance, including specific education around VAWA and crime-victim-specific immigration relief such as U visas, T visas, and VAWA self-petitions, which are explicitly available to certain noncitizen survivors regardless of current immigration status. These activities are core to the Coalition's implementation of its LAV Grant, which supports collaboration with legal service providers to ensure immigrant survivors can access protections established under federal law. However, it is now unclear whether continuing to provide these services—particularly to undocumented individuals—may be deemed as "promoting or facilitating the violation of immigration law" under DOJ's current interpretation of funding conditions. This uncertainty has created a chilling effect and raises significant concerns about

whether Idaho Coalition and its legal partners can continue offering legally authorized, survivor-centered support to immigrant victims without risking loss of federal funding.

24. Idaho Coalition fears that if it agrees to the new funding conditions, it could face not only the loss of grant funds, but federal government investigation, private party litigation under the False Claims Act, and potential liability for not complying. These potential consequences of seeking a grant subject to the new, vague conditions make Idaho Coalition concerned about applying or accepting an award. To mitigate these risks, Idaho Coalition would have to change its practices, in many cases contrary to its core values.

25. Not agreeing to the certifications would result in equally grave harm.

26. Not having access to funds from the Coalition Grant and other competitive grants would severely undermine Idaho Coalition's ability to function as a state coalition and to provide direct services. Losing the Coalition Grant alone would result in a $367,379 loss of funds for the next fiscal year. The combined loss of funds from all of the grants for which Idaho Coalition has intended to apply—the Coalition Grant, STOP, SASP, and Rural Domestic Violence Grants identified above—would represent a substantial loss of $1,317,379 in anticipated funds for the next fiscal year.

27. Without these funds, Idaho Coalition would be forced to eliminate multiple staff positions responsible for training, technical assistance, resource development, and coordination with tribal and rural programs. The Coalition would likely need to suspend critical program activities, including multilingual outreach resource production, statewide prevention education, housing advocacy support, and culturally specific programming. Technical assistance to over 40 community-based and tribal service providers would be drastically reduced or discontinued. This would have a cascading impact across Idaho, particularly in underserved rural and frontier areas,

where many programs rely on the Coalition for programmatic guidance, legal coordination, and capacity support. Survivor-serving agencies would experience reduced access to training, fewer culturally relevant tools, and less policy support—all of which would weaken the statewide response to gender-based violence.

28. Our member programs would lose access to core, comprehensive training for their staff necessary to provide legally and ethically compliant advocacy services to clients in addition to regular training on emergent issues that ensure front-line staff are able to provide quality services to all survivors. The state would lose critical technical assistance in systemic response improvements that reduce sexual violence, increase effectiveness of legal responses, and dramatically improve survivor response and support efforts. These losses would make Idaho Coalition less effective as a coalition and undermine its role as the state authority on sexual violence prevention, intervention, and response.

### VII. Cuts to Idaho Coalition's and its Members' Services Would Harm Domestic Violence and Sexual Assault Victims and Survivors

29. The reduction or outright termination of these services would have devastating effects on the community of survivors and victims of sexual violence.

30. In the absence of fully funded Idaho Coalition services, sexual assault and domestic violence victims will be confronted with more barriers when trying to access services following their assault, including discriminatory treatment from medical, law enforcement or courtroom personnel, hotline operators, and therapists who have not received anti-bias and other core victim services training. This will immediately lead to more survivors choosing not to participate in the criminal justice system and fewer being linked to and receiving appropriate medical and therapy services. Direct service providers will be unable to maintain high-quality services that follow best practice guidance or even that are fully compliant with the myriad

federal, state, and local requirements they would now have to navigate on their own, without the critical assistance of coalitions, while desperately trying to keep up with the already increasing demand for services.

31. Idaho Coalition's operations are essential to permitting the network of direct service providers to focus on providing the highest-quality services to the survivors they serve. They ensure that the systems that contribute to addressing and responding to the epidemic of sexual violence are operating with evidence-based, trauma-informed, survivor-centered policies and practices.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 3, 2025.

_____
Tai Simpson-Bruce
Collective Stewardship, Co-Director
Idaho Coalition Against Sexual & Domestic Violence