UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE, et al., <br>     Plaintiffs, <br><br>     v. <br><br> TODD BLANCHE, et al. <br>     Defendants. | C.A. No. 25-cv-279-MRD-AEM |

## MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Before the Court is Plaintiffs' Motion for Preliminary Relief under 5 U.S.C. § 705, which the Court is evaluating using the preliminary injunction standard. ECF No. 53.[1] For the following reasons, the Court grants Plaintiffs' Emergency Motion.

## BACKGROUND

The Court assumes the reader's familiarity with the background underlying this dispute and the factual milieu that the Court provided in its August 8, 2025 Memorandum and Order. *See* ECF No. 34 at 1-9. As a brief reminder, this action involves a challenge brought by seventeen non-profit organizations seeking to invalidate a list of conditions that the Office on Violence Against Women ("the Office")

---

[1] Plaintiffs originally sought a temporary restraining order when they filed this motion. ECF No. 53 at 1. Notwithstanding this request, the Court chose to resolve Plaintiffs' motion as a request for a preliminary injunction and set a briefing schedule accordingly. Text Order (Feb. 25, 2026). As a result, the Court will refer to this motion as "Plaintiffs' Emergency Motion."

sought to impose on grant programs authorized by the Violence Against Women Act ("VAWA").[2]  Like other federal statutes, Congress regularly reauthorizes funding for grant programs that fall within VAWA's purview in an effort to target the adverse effects stemming from violent crimes committed against women.  *Id.* at 2-3.  In order to administer these grant programs, VAWA created the Office and housed it within the Department of Justice ("DOJ") so that DOJ could administer these Congressionally funded programs consistent with their requirements.  *Id.* Previously, Defendants attempted to impose a host of purportedly unlawful conditions on VAWA's grant programs and this Court prevented their imposition after it determined that Plaintiffs were likely to succeed in demonstrating that Defendants violated the Administrative Procedure Act ("APA") by engaging in arbitrary and capricious agency action.  *Id.* at 21-22, 26-27.

Here, however, Plaintiffs contend that Defendants have attempted to impose additional conditions on *different* grant programs that also seek to remedy harm caused by violence perpetrated against women.[3]  ECF No. 53-1 at 9-14.  Specifically, Plaintiffs assert that Defendants issued grant awards containing new, previously

---

[2] Plaintiffs brought this action against then-Attorney General Pam Bondi in her official capacity along with the Department of Justice's subcomponents and their officials that administer VAWA's grant programs.  This Memorandum and Order refers to them as "Defendants."  Acting Attorney General Todd Blanche has been substituted as Ms. Bondi's interim successor.  *See* Fed. R. Civ. P. 25(d).

[3] Unlike the prior grants, DOJ's Office of Justice Programs administers the grants at issue here.  ECF No. 53-1 at 9-11.  Along with their Emergency Motion, Plaintiffs moved to amend their Complaint in order to contest the most recent conditions, which this Court granted over Defendants' objection.  Text Order (Apr. 8, 2026).

unannounced conditions preventing grantees from using funds to provide domestic violence assistance services to a "removable alien" pursuant to the Immigration and Nationality Act or any other "unlawfully present" person in the United States. *Id.* Plaintiffs also seek to preliminarily enjoin, and ultimately invalidate, a separate grant certification requirement asking grantees to confirm that they do not engage in diversity, equity, or inclusion ("DEI") activities that violate federal anti-discrimination laws.[4] Moreover, Plaintiffs contend that the DEI Condition requires recipients to represent that their compliance with it is "material" to the award for the purpose of the False Claims Act ("FCA").[5]

With respect to the grants themselves, Plaintiffs challenge Defendants' attachment of these Conditions to the following three grant programs: (1) grants provided by the Victims of Crime Act ("VOCA"); (2) additional VOCA grants that provide services for victims of crimes; and (3) Pet Shelter grants that provide funding for both survivors of domestic violence *and* their pets.[6] As outlined above, Plaintiffs'

---

[4] In this Memorandum and Order, the Court will refer to the immigration-related condition as the "Immigration Condition," the DEI condition as the "DEI Condition," and the two of them collectively as the "Conditions."

[5] Individuals and entities may face FCA liability when the government can demonstrate that they "knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval" or when they "knowingly make use or cause to be made or used, a false record or statement *material* to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B) (citation modified) (emphasis added). Defendants' grant condition effectively asks Plaintiffs to concede that operating an unlawful DEI program — whatever that may mean — would automatically constitute a violation of the materiality element of the FCA.

[6] Congress found that people may refuse to leave a household where someone subjects them to domestic violence because they do not wish to leave a pet in that abusive

3

Emergency Motion asks the Court to preliminarily enjoin the imposition of these grant Conditions as well as stay them pursuant to 5 U.S.C. § 705. In support of these requests, Plaintiffs contend that these Conditions: (1) violate the APA because they exceed Defendants' statutory authority; (2) violate the APA because Defendants engaged in arbitrary and capricious action in imposing these Conditions; (3) violate the APA as contrary to law; (4) violate the APA as contrary to the Constitution; (5) violate the Fifth Amendment to the Constitution as unconstitutionally vague; and (6) violate the First Amendment to the Constitution.[7]

## LEGAL STANDARD

Litigants seeking a preliminary injunction must demonstrate: (1) their likelihood on the success of the merits of their claim; (2) irreparable harm if the Court does not issue the injunction; (3) that the balance of equities tips in their favor; and (4) that the injunction is in the public's interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the context of the APA, courts consider factors three and four together, presumably because the plaintiff has brought an action against the government itself and the public's interest is already accounted for when balancing the relative equities. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Importantly,

---

household. *See* H.R. Conf. Rep. 115-1072 at 778 (2018). Congress evidently authorized this funding in order to incentivize survivors of domestic violence to leave a household where someone subjects them to abuse.

[7] Plaintiffs appear to limit their First Amendment challenge to the DEI Condition. *See* ECF No. 53-1 at 35-37.

"likelihood of success is the main bearing wall of the four-factor framework." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996).

Section 705 of the APA provides the following: "On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C § 705. Although we have not yet received definitive guidance from either the Supreme Court or the First Circuit, courts typically use the same factors governing their assessment of a preliminary injunction when they review a request for relief pursuant to Section 705. *See, e.g., Immigrant Defs. Law Ctr. v. Noem*, No. 25-2581, 2025 WL 2017247, at *4 (9th Cir. July 18, 2025); *Mass. Fair Hous. Ctr. v. HUD*, 496 F. Supp. 3d 600, 609-12 (D. Mass. 2020) (applying the preliminary injunction factors and granting a stay pursuant to 5. U.S.C. § 705).

## DISCUSSION

### A. Threshold Issues

Separate from the merits of Plaintiffs' APA and constitutional claims, Defendants first argue that (1) Plaintiffs lack standing to contest the application of some of these Conditions; (2) Defendants' imposition of the Conditions does not constitute a "final agency action" pursuant to the APA; and (3) Defendants maintain an effectively unreviewable level of discretion to impose the Conditions. All three arguments fail, and the Court will address each of them in turn.

Defendants first argue that Plaintiffs lack standing and contend that Plaintiffs may not challenge the grant Conditions that they are subject to as *sub*-awardees because states receive the grants from Defendants in the first instance who then pass them on to Plaintiffs. ECF No. 58 at 27-28. In order to establish standing, "the party who invokes a federal court's authority must show that (1) [s]he or []he has personally suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court." *N.H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996). According to Defendants, the idea that a given state could decline to impose the Conditions on Plaintiffs as sub-awardees destroys the nexus between the relief they seek and the Court's ability to redress the harm they have allegedly suffered. ECF No. 58 at 27-28.

Here, Plaintiffs have established standing to challenge the Conditions both as direct recipients of these grants and as sub-awardees. While Defendants argue that *some* of these grants passed through states, which then awarded them to two of the plaintiff organizations here, not all grants at issue in this case are subject to this framework. As Plaintiffs point out, some Plaintiffs directly received grants subject to the DEI Condition and the Immigration Condition, and this direct relationship alone provides all Plaintiffs with standing here. *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) ("If at least one plaintiff has standing, the suit may proceed.") (citation

6

omitted).  Based on the fact that at least some of Plaintiffs here are directly subject to these grant Conditions, Defendants' standing argument fails.[8]

Defendants next argue that these grant Conditions do not constitute a "final agency action" as defined by the APA.  ECF No. 58 at 28-39; *see* 5 U.S.C. § 704.  As this Court has previously determined in the context of the prior conditions challenged in this case, Defendants' imposition of the Conditions here constitutes a final agency action.  ECF No. 34 at 13-15.  Specifically, the Court once again concludes that Defendants' adoption of the Conditions qualifies as discrete agency action that "mark[s] the consummation of [Defendants'] decisionmaking process" and that Defendants' imposition of them determines Plaintiffs' rights, their obligations, and has attendant legal consequences. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Moreover, Defendants fail to argue that anything about their imposition of the Conditions here would alter the Court's prior determination.  *See* ECF No. 58 at 28-29.  The Court therefore rejects this argument as well.

Finally, Defendants argue that the Court lacks the ability to review the Conditions because the APA provides Defendants with the exclusive discretion to

---

[8] In any event, the Court alternatively determines that a sufficient, fairly-traceable causal nexus exists between the harm Plaintiffs face — the imposition of these Conditions — and Defendants' conduct — namely, creating these Conditions in the first instance and asking states to apply them to the sub-awardee Plaintiffs.  *See Wine and Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 45 (1st Cir. 2005) ("The requirement that an alleged injury be fairly traceable to the defendant's action does not mean that the defendant's action must be the final link in the chain of events leading up to the alleged harm.  Nor does that requirement exclude injuries produced by coercive effect upon the action of someone else.") (citation modified).  The Court therefore determines that it may properly evaluate the merits of Plaintiffs' claims without running afoul of the standing doctrine on this basis as well.

impose them.  ECF No. 58 at 29-32.  As with Defendants' previous argument, the Court has already rejected this contention in its prior Memorandum & Order granting Plaintiffs relief pursuant to Section 705.  ECF No. 34 at 15-17. Nevertheless, Defendants urge us to conduct a new analysis of these grant programs because Plaintiffs' motion "involves different statutes with different terms[.]"  ECF No. 58 at 29.

While courts cannot review agency action that Congress commits to their discretion "by law," 5 U.S.C. § 701(a)(2), the Supreme Court has interpreted this lack of authority in a narrow manner and has instead determined that courts may not review agency action in "those rare circumstances when the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Dep't of Com. v. New York*, 588 U.S. 752, 771-72 (2019) (cleaned up).  As the Court has previously explained, "the determination of grant terms and conditions is not a category of decision traditionally committed to exclusive agency discretion."  ECF No. 34 at 16 (citing *Biden v. Missouri*, 595 U.S. 87 (2022)).  Moreover, each of the three grant programs at issue here set forth eligibility criteria that allow the Court to determine whether Defendants properly used their discretion.  *See* 34 U.S.C. §§ 20103(a)-(c), 20111(c)(3), 20127(1)-(5).  The Court therefore rejects Defendants' assertion that they have exclusive, unreviewable discretion to impose these Conditions.

8

### B. Likelihood of Success

Plaintiffs contend that they will likely succeed on the merits because, among other theories, Defendants have imposed these conditions in an arbitrary and capricious manner. Specifically, Plaintiffs have pointed out that Defendants appear to have failed to justify these grant Conditions *at all*. ECF No. 53-1 at 27-28. Moreover, Defendants effectively concede this point when they assert that their rationale for these conditions is "self-evident on its face." ECF No. 58 at 37. As this Court has already repeatedly noted, Defendants must set forth the specific facts that support the decision-making process that took place and their failure to do so strongly supports a determination that the events that took place constitute arbitrary and capricious action. *See Ohio v. EPA*, 603 U.S. 279, 292 (2024). Rather than relying on the supposed self-evidentiary nature of their behavior, Defendants must demonstrate that they took reasonable actions when considering whether to impose these Conditions while offering a reasonable explanation justifying their behavior. *Id.*

Critically, Courts determine that agencies engage in arbitrary and capricious behavior when they determine that the agency "entirely failed to consider an important aspect of the problem." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43, 46 (1983) (determining that an agency acted arbitrarily and capriciously when it failed to substantively consider its decision to revise automobile safety standards and noting that the reviewing court may not backfill the agency's rational for taking that action). Plaintiffs' Emergency Motion and Defendants' briefing in opposition has provided the Court with an extremely

9

narrow view of the overall decision-making process that took place here. Specifically, the Conditions appear to have resulted from what Defendants describe as a change in "funding priorities." ECF No. 58 at 37-38. Nevertheless, the Court's review reveals that Defendants appear to have wholly failed to consider the amount of time and effort that Plaintiffs would need to undertake in order to comply with the Conditions and whether Plaintiffs could do so without violating other statutory mandates. Rather than providing clear — or any — guidance and establishing workable standards to assist with compliance, Defendants instead expect Plaintiffs to fend for themselves which leaves Plaintiffs potentially exposed to unintentional noncompliance accusations in the future. ECF No. 58 at 37. Without a sufficient explanation for their imposition of the Conditions, Defendants' actions here serve as the hallmark of unreasoned decisionmaking and therefore warrants preliminary relief. Therefore, the Court determines that Plaintiffs have demonstrated a likelihood of success on this aspect of their APA claim.[9]

### C. Irreparable Harm, the Equities, and the Public Interest

Plaintiffs contend that Defendants' attempt to impose the Conditions subjects them to irreparable harm. ECF No. 53-1 at 37. Specifically, they argue that Defendants' actions have forced them to either: (1) accept the purportedly unlawful

---

[9] Consistent with its prior Memorandum and Order, this Court limits its evaluation of Plaintiffs' likelihood of success to their arbitrary and capricious claim and therefore need not substantively evaluate the other statutory and constitutional claims at issue in this action at this time. *See* ECF No. 34 at 19, 20, 22. Specifically, the Court's conclusion on this issue obviates the need for it to address either Plaintiffs' or Defendants' statutory arguments and the remaining First and Fifth Amendment claims at this time.

10

Conditions; or (2) sacrifice federal funding needed to carry out their organizations' missions. *Id.* In response, Defendants remind the Court that a preliminary injunction constitutes an extraordinary remedy, that Plaintiffs' claimed harm rests on improper speculation and a misunderstanding of the manner in which Defendants will implement these Conditions, and that Plaintiffs only seek monetary relief. ECF No. 58 at 44-48. Recently, the First Circuit has confirmed the principle that the effects arising from a loss of federal funding may constitute irreparable harm in the context of a request for a preliminary injunction. *New York v. Trump*, 171 F.4th 1, 24-25 (1st Cir. 2026); *see also New York v. U.S. Dep't of Just.*, 804 F. Supp. 3d 294, 330 (D.R.I. 2025) ("In life-or-death scenarios, time of crisis when someone faces domestic violence, homelessness, or a mental health crisis, it practically goes without saying that there can be no do over and no redress if services are unlawfully denied or if someone suffers for it. That of course constitutes irreparable harm.").

Here, Plaintiffs have demonstrated that they will face irreparable harm from the imposition of the Conditions. Specifically, the Court acknowledges the immediate and longstanding reputational harm that would result from Plaintiffs' attempt to obtain immigration information from recent survivors of domestic violence along with the chaos and inevitable chilling effect that will arise from the likely haphazard, trial-and-error approach that Plaintiffs would need to take in order to learn how the current Executive Administration will evaluate — or prosecute — a program that involves DEI-related components. Moreover, the Court has reached this same conclusion regarding the prior conditions that it halted in its prior Memorandum and

11

Order.  ECF No. 34 at 22-23.  As a result, the Court determines that the downstream effects faced by Plaintiffs constitute irreparable harm in this matter as well.

Similarly, the Court determines that the equities and public interest favor Plaintiffs.  As outlined above, the Court has already enjoined Defendants' prior attempt to impose VAWA grant conditions during the pendency of this action and its decision to do so here is in line with its prior course of action.  On the contrary, permitting Defendants to impose these Conditions will create a substantial amount of upheaval as Plaintiffs would need to quickly develop methods to comply with these less-than-well-defined Conditions.  *See United States v. U.S. Coin & Currency*, 401 U.S. 715, 726 (1971) (Brennan, J., concurring) ("A government has no legitimate interest in upholding an unconstitutional [law].")  Therefore, the Court determines that Plaintiffs have satisfied the requisite criteria needed to receive a preliminary injunction and are therefore entitled to a preliminary stay of the implementation of the Conditions pursuant to § 705.

### D. Scope of Relief and Bond

Finally, Defendants seek to limit the scope of Plaintiffs' requested relief.  Specifically, Defendants argue that, if the Court enjoins the Conditions, it must do so as narrowly as possible in order to avoid the Supreme Court's limitations outlined in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).  ECF No. 58 at 48-51.  Notwithstanding their request, Defendants mischaracterize the law.  In *CASA*, the Supreme Court did not offer any guidance on how the limitations it placed on nationwide injunctions works in the context of the APA.  *Id.* at 847 n.10 ("Nothing we say today resolves the

12

distinct question of whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action."). While the Supreme Court did not answer this APA question, the Court can undoubtedly enjoin Defendants from imposing these Conditions on Plaintiffs themselves. *See id.* at 854 (noting that a district court may enjoin unlawful activity taking place within the state it sits). Notwithstanding its authority to do so, the Court will nevertheless preliminarily stay Defendants' implementation of these Conditions pursuant to Section 705 of the APA.[10] Accordingly, the Court finds it "necessary and appropriate" to postpone the effective date and implementation of the Conditions pending the conclusion of these proceedings. 5 U.S.C. § 705.

Separately, Defendants have asked the Court to require Plaintiffs to post a bond pursuant to Fed. R. Civ. P. 65(c). ECF No. 58 at 51. However, the Court finds this unnecessary based on its decision to administratively stay the conditions pursuant to Section 705. *See* § 705 (directing the Court ordering relief to consider "such conditions as may be required and to the extent necessary to prevent irreparable injury").

---

[10] The Court acknowledges that its March 3, 2026 text order indicated it would consider Plaintiffs' motion as one for preliminary injunction. After considering the completed briefing and given the same analysis required when evaluating parties' arguments for an administrative stay vs. a preliminary injunction, the Court concludes that issuing a preliminary stay pursuant to § 705 is the appropriate relief to grant in order to remain consistent with the relief granted earlier in this case. *See* ECF No. 34 at 26-27; *see also California v. Kennedy*, 802 F. Supp. 3d 273, 281 (D. Mass. 2025) (acknowledging that a § 705 stay is evaluated pursuant to the same standard as that the one governing a preliminary injunction).

## CONCLUSION

Based on the foregoing, the Court concludes that Plaintiffs have demonstrated their entitlement to preliminary relief pursuant to 5 U.S.C. § 705. Plaintiffs' Emergency Motion is GRANTED. ECF No. 53.

IT IS SO ORDERED.

_____

Melissa R. DuBose
United States District Judge


April 17, 2026