**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE, *et al*., <br><br> *Plaintiffs*, <br><br> *v.* <br><br> TODD BLANCHE, *et al*., <br><br> *Defendants*. | Civil Action No. <br> 1:25-cv-00279-MRD-AEM |

**DEFENDANTS' COMBINED CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

A.   Domestic Violence and Federal Grants.................................................................. 2

B.   The Violence Against Women Act and the Office on Violence Against Women................ 3

    1.   VAWA Grant Programs Are Subject to Statutory Requirements ........................... 4

    2.   OVW Notice of Funding Opportunity ................................................................... 5

    3.   2025 Executive Orders and OVW's FY2025 NOFOs ............................................ 6

    4.   OVW Out-of-Scope Activities .............................................................................. 8

    5.   OVW Nondiscrimination Certification................................................................... 13

C.   The Office of Justice Programs................................................................................ 14

    1.   OJP's Certification Requirement ........................................................................... 14

    2.   OJP's Unlawful Presence Provision....................................................................... 15

D.   This Litigation......................................................................................................... 16

LEGAL STANDARDS...................................................................................................... 17

A.   Summary Judgment Generally................................................................................. 17

B.   Summary Judgment in APA Cases.......................................................................... 18

ARGUMENT..................................................................................................................... 18

A.   Threshold Issues Require Granting Summary Judgment for Defendants.................. 18

    1.   Plaintiffs Lack Standing to Challenge Grants They Do Not Directly Receive ........................................................................................................................ 18

    2.   Plaintiffs Have Not Identified Reviewable Final Agency Actions ....................... 20

    3.   The Implementation of Grant Terms is Committed to Agency Discretion ........... 21

B.   The Challenged Terms Survive Arbitrary and Capricious Review................................. 23

    1.   OVW's Out-of-Scope Activities Survive Arbitrary and Capricious Review........ 24

    2.   The Certification Requirements Are Not Arbitrary and Capricious .................... 30

i

3.    The OJP Unlawful Presence Provision Is Not Arbitrary and Capricious ............ 31

C.    The Challenged Terms Are Within Defendants' Statutory Authority and Are Consistent With Law ................................................................................................ 33

    1.    OVW's Out-of-Scope Activities Are Lawful ......................................... 34

    2.    The OVW and OJP Certification Requirements Are Lawful ................. 38

    3.    The OJP Unlawful Presence Provision Is Lawful ................................. 42

D.    Plaintiffs' Constitutional Claims Fail ................................................................ 44

    1.    Plaintiffs' Fifth Amendment Challenges Fail ....................................... 46

    2.    Plaintiffs' First Amendment Challenges Fail ....................................... 49

    3.    Plaintiffs' Separation of Powers and Spending Clause Claims Fail .... 53

    4.    Plaintiffs' Ultra Vires Claims Fail ....................................................... 56

E.    Plaintiffs' Requested Relief Is Overbroad and Would Violate Article III ........ 57

    1.    A Permanent Injunction is Improper ..................................................... 61

    2.    Plaintiffs' Request for Forward-Looking Relief is Unripe and Exceeds the APA ..................................................................................................... 63

    3.    Any Relief Should Be Limited to the Parties ......................................... 64

CONCLUSION ............................................................................................................... 67

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc., ("AID"),*
  570 U.S. 205 (2013) ............................................................................................... 50, 52

*Al Otro Lado v. Exec. Off. for Immigr. Rev,*
  138 F.4th 1102 (9th Cir. 2025), *cert. granted sub. nom. Noem v. Al Otro Lado*, 146 S. Ct. 604
  (2025) ............................................................................................................................ 45

*Anderson v. Liberty Lobby Inc.,*
  477 U.S. 242 (1986) .................................................................................................... 17

*Bd. of Educ. for Silver Consol. Schs. v. McMahon,*
  791 F. Supp. 3d 1272 (D.N.M. 2025) ........................................................................ 55

*Bd. of Governors, FRS v. MCorp Fin., Inc.,*
  502 U.S. 32 (1991) ...................................................................................................... 57

*Bennett v. Ky. Dep't of Educ.,*
  470 U.S. 656 (1985) .................................................................................................... 47

*Bennett v. Spear,*
  520 U.S. 154 (1997) ............................................................................................... 20, 61

*Biden v. Missouri,*
  595 U.S. 87 (2022) ...................................................................................................... 56

*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh,*
  295 F.3d 28 (D.C. Cir. 2002) ...................................................................................... 49

*Bluestone Env't Grp., Inc. v. Zapisek,*
  No. 3:21-cv-30056 MGM, 2022 WL 16857173 (D. Mass. Nov. 10, 2022) ............... 18

*Boston Redevelopment Auth. v. Nat'l Park Serv.,*
  838 F.3d 42 (1st Cir. 2016) ......................................................................................... 18

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) .................................................................................................... 58

*California v. Texas,*
  593 U.S. 659 (2021) .................................................................................................... 20

*Capen v. Campbell,*
  134 F.4th 660 (1st Cir. 2025) ................................................................................. 46, 48

*Cent. Maine Power Co. v. Maine Comm'n on Governmental Ethics & Election Pracs.,,*
  144 F.4th 9 (1st Cir. 2025) .......................................................................................... 50

*Centro de Trabajadores Unidos v. Bessent*,
  167 F.4th 1218 (D.C. Cir. 2026) ................................................................................... 21

*Citizens Alert Regarding Env't v. EPA*,
  102 F. App'x 167 (D.C. Cir. 2004) ............................................................................... 21

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105
  (1977) ............................................................................................................................. 23

*City & Cnty. of S.F. v. U.S. Dep't of Just.*,
  822 F. Supp. 3d 1056 (N.D. Cal. 2026) ....................................................................... 45

*City of Fall River v. FERC*,
  507 F.3d 1 (1st Cir. 2007) ............................................................................................ 61

*City of Los Angeles v. Sessions*,
  No. 18-cv-7347, 2019 WL 1957966 (C.D. Cal. Feb. 15, 2019) ............................. 63, 64

*Cnty. of Los Angeles v. Shalala*,
  192 F.3d 1005 (D.C. Cir. 1999) .................................................................................... 58

*Cobell v. Kempthorne*,
  455 F.3d 301 (D.C. Cir. 2006) ...................................................................................... 61

*Dalton v. Specter*,
  511 U.S. 462 (1994) ...................................................................................................... 54

*Edgar v. Haines*,
  2 F.4th 298 (4th Cir. 2021) ........................................................................................... 45

*EPA v. Brown*,
  431 U.S. 99 (1977) ........................................................................................................ 21

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ..................................................................................... 23, 24, 25, 29

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ...................................................................................................... 47

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021) ........................................................................................... 23, 24, 29

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ...................................................................................................... 60

*Florida v. HHS*,
  19 F.4th 1271 (11th Cir. 2021) ..................................................................................... 62

iv

*Freedom Network USA v. Trump*,
  825 F.Supp.3d 638 (N.D. Ill. 2026) ........................................................................ 63

*Garcia-Gonzalez v. Puig-Morales*,
  761 F.3d 81 (1st Cir. 2014) ..................................................................................... 47

*Georgia v. President of the U.S.*,
  46 F.4th 1283 (11th Cir. 2022) ................................................................................ 63

*Guardians Ass'n v. Civ. Serv. Comm'n of N.Y.*,
  463 U.S. 582 (1983) ............................................................................................ 41, 48

*Haaland v. Brackeen*,
  599 U.S. 255 (2023) ................................................................................................. 20

*Illinois v. FEMA*,
  No. 25-cv-206-WES-PAS (D.R.I.), ......................................................................... 60

*Int'l Jr. Coll. of Bus. & Tech., Inc. v. Duncan*,
  802 F.3d 99 (1st Cir. 2015) ..................................................................................... 49

*Karst Env't Educ. & Prot., Inc. v. EPA*,
  403 F. Supp. 2d 74 (D.D.C. 2005), *aff'd* 475 F.3d 1291, 1295 (D.C. Cir. 2007) ..................... 21

*Kinney-Coastal Oil Co. v. Kieffer*,
  277 U.S. 488 (1928) ................................................................................................. 62

*Labor Relations Division of Construction Industries of Massachusetts., Incorporated v. Healey*,
  844 F.3d 318 (1st Cir. 2016) ................................................................................... 61

*Lewis v. Casey*,
  518 U.S. 343 (1996) ................................................................................................. 58

*Libby Welding Co. v. United States*,
  444 F. Supp. 987 (D.D.C. 1977), *aff'd*, 595 F.2d 887 (D.C. Cir. 1979) ................................. 29

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ........................................................................... 21, 32, 34, 43

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................... 19, 51, 64

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ................................................................................................. 61

*Mandel v. Boston Phoenix, Inc.*,
  456 F.3d 198 (1st Cir. 2006) ................................................................................... 17

*Maryland v. King,*
567 U.S. 1301 (2012)...........................................................................................................60

*Massachusetts v. EPA,*
549 U.S. 497 (2007).....................................................................................................32, 42

*Me. Med. Ctr. v. Burwell,*
841 F.3d 10 (1st Cir. 2016) .................................................................................................58

*Medina-Munoz v. R.J. Reynolds Tobacco Co.,*
896 F.2d 5 (1st Cir. 1990) ...................................................................................................17

*Milk Train, Inc. v. Veneman,*
310 F.3d 747 (D.C. Cir. 2002).............................................................................................21

*Monsanto Co. v. Geertson Seed Farms,*
561 U.S. 139 (2010)............................................................................................................59

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024)................................................................................................1, 45, 50

*Murthy v. Missouri,*
603 U.S. 43 (2024).......................................................................................................19, 20

*Nat. Res. Def. Council v. SEC,*
606 F.2d 1031 (D.C. Cir. 1979)...........................................................................................32

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump,*
167 F.4th 86 (4th Cir. 2026)...................................................................................30, 46, 51

*Nat'l Endowment for the Arts v. Finley,*
524 U.S. 569 (1998).........................................................................................1, 46, 47, 50

*Nat'l Lab. Rels. Bd. v. Beverly Enters.-Mass., Inc.,*
174 F.3d 13 (1st Cir. 1999) .................................................................................................18

*Nat'l Urb. League v. Trump,*
783 F. Supp. 3d 61 (D.D.C. 2025) ...........................................................................40, 42, 51

*New Vision Photography Program, Inc. v. District of Columbia,*
54 F. Supp. 3d 12 (D.D.C. 2014) .........................................................................................47

*New York v. Trump,*
133 F.4th 51 (1st Cir. 2025) ................................................................................................59

*Nuclear Regul. Comm'n v. Texas,*
605 U.S. 665 (2025)......................................................................................................56, 57

*Palisades Gen. Hosp. Inc. v. Leavitt,*
    426 F.3d 400 (D.C. Cir. 2005)....................................................................... 58

*Peregrine Myanmar Ltd. v. Segal,*
    89 F.3d 41 (2d Cir. 1996) ............................................................................. 59

*Planned Parenthood of Wisconsin, Inc. v. Azar,*
    316 F. Supp. 3d 291 (D.D.C. 2018), *vacated as moot,* 942 F.3d 512 (D.C. Cir. 2019) ............ 21

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992)...................................................................................... 53

*R.I. Coal. Against Domestic Violence v. Bondi,*
    794 F. Supp. 3d 58 (D.R.I. 2025)............................................................... 4, 22

*Rattlesnake Coal. v. EPA,*
    509 F.3d 1095 (9th Cir. 2007)..................................................................... 21

*Rhea Lana, Inc. v. United States,*
    925 F.3d 521 (D.C. Cir. 2019)..................................................................... 25

*Rust v. Sullivan,*
    500 U.S. 173 (1991)...................................................................................... 50

*Ry. Clerks v. Assoc. for Benefit of Non-contract Emps.,*
    380 U.S. 650 (1965)...................................................................................... 57

*S.F. A.I.D.S. Found. v. Trump,*
    786 F. Supp. 3d 1184 (N.D. Cal. 2025), *appeal filed,*
    No. 25-4988 (9th Cir. Aug. 7, 2025) ................................................. 40, 42, 51

*SEC v. Chenery Corp.,*
    318 U.S. 80 (1943)........................................................................................ 58

*Sig Sauer, Inc. v. Brandon,*
    826 F.3d 598 (1st Cir. 2016) ........................................................................ 18

*Smiley v. Citibank (S.D.), N.A.,*
    517 U.S. 735 (1996)...................................................................................... 29

*South Dakota v. Dole,*
    483 U.S. 203 (1987)................................................................................ 55, 56

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014)...................................................................................... 52

*Texas v. Cardona*,
   743 F. Supp. 3d 824 (N.D. Tex. 2024), *appeal dismissed sub nom.*
   *Texas v. McMahon*, No. 24-10910, 2025 WL 2840825 (5th Cir. Apr. 23, 2025) ...................... 60

*Texas v. United States*,
   523 U.S. 296 (1998) ................................................................................................... 61

*Town of Castle Rock v. Gonzalez*,
   545 U.S. 748 (2005) ................................................................................................... 47

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ................................................................................................... 62

*U.S. ex rel. Purcell v. MWI Corp.*,
   807 F.3d 281 (D.C. Cir. 2015) ............................................................................. 40, 52

*U.S. ex rel. Schutte v. SuperValu Inc.*,
   598 U.S. 739 (2023) ........................................................................................... 40, 52

*United States v. Brennick*,
   908 F. Supp. 1004 (D. Mass. 1995) ........................................................................... 47

*United States v. Hansen*,
   599 U.S. 762 (2023) ........................................................................................... 50, 52

*United States v. Orleans*,
   425 U.S. 807 (1976) ................................................................................................... 34

*United States v. Rahimi*,
   602 U.S. 680 (2024) ................................................................................................... 45

*United States v. Salerno*,
   481 U.S. 739 (1987) ................................................................................................. 1, 45

*United States v. Town of Hingham*,
   683 F. Supp. 3d 81 (D. Mass. 2023), *aff'd sub nom. U.S. ex rel. Zotos v. Town of Hingham*, 98
   F.4th 339 (1st Cir. 2024). ........................................................................................... 39

*Universal Health Servs., Inc. v. United States, ("Escobar I")*,
   579 U.S. 176 (2016) ........................................................................................... 39, 40

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) ................................................................................................... 45

*Webster v. Doe*,
   486 U.S. 592 (1988) ................................................................................................... 23

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) ...................................................................................................... 62

*West Virginia v. B.P.J.*,
  609 U.S. ----, 2026 WL 1868739 (June 30, 2026) ................................................... 36

*Wightman v. Springfield Terminal Ry. Co.*,
  100 F.3d 228 (1st Cir. 1996) ...................................................................................... 17

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*,
  784 F.Supp.3d 127  (D.D.C.  2025) ........................................................................... 55

**Statutes**

5 U.S.C. § 701(a)(2) ....................................................................................................... 21

5 U.S.C. § 704 ................................................................................................................. 20

5 U.S.C. § 705 ........................................................................................................... 16, 17

5 U.S.C. § 706 ..................................................................................................... 18, 57, 58

8 U.S.C. § 1229a(e)(2) .................................................................................................... 15

34 U.S.C. § 10441 ................................................................................................... *passim*

34 U.S.C. § 10442 ................................................................................................... *passim*

34 U.S.C. § 10444 ................................................................................................... *passim*

34 U.S.C. § 10461 ..................................................................................................... 36, 37

34 U.S.C. § 12291 ................................................................................................... *passim*

34 U.S.C. § 12341(b) ................................................................................................ 36, 37

34 U.S.C. § 12511(d)(2) .................................................................................................... 5

34 U.S.C. § 20101 ........................................................................................................... 13

34 U.S.C. § 20103 ..................................................................................................... 13, 22

34 U.S.C. § 20111 ................................................................................................. 13, 22, 34

34 U.S.C. § 20123(d) ...................................................................................................... 38

34 U.S.C. § 20127 ................................................................................................. 14, 23, 32, 43

42 U.S.C. § 2000d-1 ............................................................................................. 41, 42, 52

Agriculture Improvement Act of 2018,
Pub. L. No. 115-334, 132 Stat. 4490 (codified at 34 U.S.C. § 20127). .................................... 14

Violence Against Women Act of 1997,
Pub. L. No. 103-322, tit. IV, 108 Stat. 1796 (Sept. 13, 1994).................................................... 3

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................................. 17

Fed. R. Civ. P. 65...................................................................................................................... 59

**Regulations**

2 C.F.R. § 200.211(c)(1)(ii) ................................................................................................. 5, 28

2 C.F.R. § 200.300(a)................................................................................................................ 20

2 C.F.R. § 200.303(a)................................................................................................................ 44

2 C.F.R. § 200.332(b)................................................................................................................ 20

28 C.F.R. § 90.4(c).................................................................................................................... 36

2 C.F.R. part 38 .......................................................................................................................... 6

2 C.F.R. part 42 .......................................................................................................................... 6

2 C.F.R. part 54 .......................................................................................................................... 6

*Defending the American People from Invasion*,
Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025)...................................................... 7

*Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the
Federal Government* , Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025). ....... 7, 9, 53

*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*,
Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025)............................................. *passim*

*Ending Radical and Wasteful DEI Programs and Preferencing*,
Exec. Order No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025)................................................... 6, 7

*Federal Leadership on Reducing Text Messaging While Driving,*
Exec. Order No. 13513, 74 Fed. Reg. 51225 (Oct. 1, 2009) .................................................... 6

*Improving Oversight of Federal Grantmaking,*
Exec. Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025). ......................................... 15, 31

**Other Authorities**

CDC, *National Intimate Partner and Sexual Violence Survey (NISVS)* (May 16, 2024)
    https://perma.cc/8JAS-5VR6 ................................................................................... 2

FY2023 General Terms and Conditions,
    https://www.justice.gov/ovw/file/1312971/dl...................................................... 6, 12

FY2024 General Terms and Conditions,
    https://www.justice.gov/ovw/fy-2024-general-terms-and-conditions#14 ...................... 6, 12, 13

FY2025 General Terms and Conditions,
    https://www.justice.gov/ovw/fy-2025-general-terms-and-conditions#14 ...................... 6, 12, 13

NNEDV, *Domestic Violence Counts: 19th Annual Report* (May 2025),
    https://perma.cc/82FZ-39QB (full report: https://perma.cc/GU66-R3C5) ........................... 3, 32

U.S. DOJ, FY 2025 OVW Grant Awards by Program,
    www.justice.gov/ovw/awards/fy-2025-ovw-grant-awards-program ......................................... 2

U.S. DOJ, *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination*
    www.justice.gov/ag/media/1409486/dl.................................................................. 48

U.S. DOJ, Office of Justice Programs, *Criminal Victimization 2024* (Sept. 2025)
    https://bjs.ojp.gov/document/cv24.pdf.................................................................. 2

U.S. DOJ, Office for Victims of Crime, About OVC Funding,
    ovc.ojp.gov/funding ...................................................................................... 2

U.S. DOJ, OJP, "General Conditions" for OJP Awards in FY 2025,
    https://perma.cc/D3NX-3W9R ............................................................................. 14, 40

xi

**INTRODUCTION**

For decades, the Office on Violence Against Women and the Office of Justice Programs within the Department of Justice have implemented terms in the sexual assault and domestic violence grant programs they administer, in order to ensure grantees use the funds to fulfill the purposes of the grant programs and to ensure limited funds are spent lawfully and consistent with the policy preferences of the Executive Branch.

Defendants acted lawfully in implementing the grant terms that Plaintiffs challenge. The administrative records show Defendants acted reasonably and prudently in implementing the challenged terms and carefully considered the statutes authorizing the grant programs at issue and other relevant factors. Defendants did not exceed their statutory authority in acting as responsible stewards of grant program funding by ensuring it is used as Congress directed. Nor did they act contrary to law in implementing the challenged terms.

Plaintiffs' constitutional claims also should fail. The challenged grant terms pertain to government funding, and as the Supreme Court has held, "when the Government is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 589 (1998). Moreover, Plaintiffs fail to demonstrate—as they must in a facial posture—"that no set of circumstances exists under which the [Orders] would be valid" or "that the [Orders] lack[] a 'plainly legitimate sweep.'" *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Plaintiffs cannot make that showing.

Finally, Plaintiffs' requested relief is extraordinarily overbroad. A permanent injunction is unwarranted, as is extending relief to nonparties or beyond the grant terms at issue. Should the Court find for Plaintiffs, the appropriate remedy is vacatur and remand to the agency to take future

1

action consistent with the law and within its discretionary authority. For these reasons, the Court should deny summary judgment to Plaintiffs and grant summary judgment to Defendants.

## BACKGROUND

### A.    Domestic Violence and Federal Grants

"[M]illions of Americans are affected by sexual violence, stalking, and intimate partner violence every year." *See* CDC, *National Intimate Partner and Sexual Violence Survey (NISVS)* (May 16, 2024).[1] The National Crime Victimization Survey administered by DOJ's Bureau of Justice Statistics reported over 1.1 million reports of domestic or intimate partner violence in 2024, while estimating that only 64% of domestic violence crimes were reported to law enforcement. *See* U.S. DOJ Office of Justice Programs, *Criminal Victimization 2024* (Sept. 2025).[2]

DOJ is authorized to issue grants to assist domestic violence and sexual assault victims and to ensure offender prosecution. *See, e.g.,* 34 U.S.C. § 10441 (stating the two purposes of Violence Against Women Act grant programs is to "strengthen effective law enforcement and prosecution strategies" and "to develop and strengthen victim services"). Through programs administered by the Office for Victims of Crime ("OVC") in the Office of Justice Program ("OJP"), and the Office on Violence Against Women ("OVW"), DOJ distributes billions of dollars in grant funding to support services nationwide for victims of domestic and sexual violence, and administers dozens of grant programs designed to help victims find safety and justice. *See* U.S. DOJ, FY 2025 OVW Grant Awards by Program;[3] U.S. DOJ, Office for Victims of Crime, About OVC Funding.[4]

Even with federal grant funding, providers consistently report that funding is insufficient to meet demand. The National Network to End Domestic Violence ("NNEDV") reported that *on a*

---

[1] https://perma.cc/8JAS-5VR6.
[2] https://bjs.ojp.gov/document/cv24.pdf, at 3, 7 (table 4).
[3] www.justice.gov/ovw/awards/fy-2025-ovw-grant-awards-program.
[4] ovc.ojp.gov/funding.

*single day* in September 2024, domestic violence programs nationwide were unable to meet 14,095 requests for help due to resource constraints. *See* NNEDV, *Domestic Violence Counts: 19th Annual Report* (May 2025).[5] And more entities are seeking federal funds: for example, OVW reported that applications for its grant funding increased in 2025. *See* OVW Administrative Record ("OVW AR") at 278, (Declaration of Ginger Baran Lyons ("Baran Decl.") ¶ 34), ECF No. 36-3.

These realities underscore the central challenge facing federal grant administrators: demand for services is enormous and increasing, but resources are limited. Agencies must therefore decide how to allocate limited funds and what conditions are necessary to ensure those funds are used effectively and lawfully, in order to fulfill the grant programs' purposes.

**B.    The Violence Against Women Act and the Office on Violence Against Women**

Plaintiffs first challenge certain terms applicable to grant programs authorized by the Violence Against Women Act ("VAWA"), and administered by OVW. *See* 2d Am. Compl. ¶¶ 164–174, ECF No. 62; *see also* Pls.' Mem. in Supp. of Their Mot. for Summ. J. ("Pls.' Mot.") at 17, ECF No. 71-1.

Congress enacted VAWA in 1994 to address violent crimes disproportionately perpetrated against women, including domestic violence, sexual assault, and stalking. 34 U.S.C. § 10441. VAWA strengthened federal, tribal, and state law enforcement's ability to respond to those crimes, including by providing enhanced sentencing for repeat federal sex offenders, mandating restitution to victims of specified federal sex offenders, and authorizing grants to state, local, and tribal authorities to investigate and prosecute violent crimes against women, ant to nonprofits for related victim services. *See* Violence Against Women Act of 1994, Pub. L. No. 103-322, tit. IV, 108 Stat. 1796 (Sept. 13, 1994).

---

[5] https://perma.cc/82FZ-39QB (full report: https://perma.cc/GU66-R3C5).

OVW administers more than two dozen federal grant programs authorized by VAWA and subsequent legislation to address domestic/dating violence, sexual assault, and stalking. *See* OVW AR at 279 (Baran Decl. ¶ 3). OVW "possesses far-reaching authority over VAWA-authorized grants." *R.I. Coal. Against Domestic Violence v. Bondi*, 794 F. Supp. 3d 58, 68 (D.R.I. 2025). The OVW Director has "final authority over all grants, cooperative agreements, and contracts awarded by the Office[,]" 34 U.S.C. § 10442(b), and is responsible for "the development and management of grant programs," "the award and termination of grants," and "[e]stablishing such rules, regulations, guidelines, and procedures as are necessary to carry out any function of the Office." *Id.* § 10444(5)(B)–(C), (8). The Director must ensure that VAWA funds are used "only for the specific purposes described in VAWA legislation." *R.I. Coal.*, 794 F. Supp. 3d at 68 (quoting 34 U.S.C. § 12291(b)(5).

OVW administers both formula and competitive/discretionary grant programs under VAWA. *See* OVW AR at 279 (Baran Decl. ¶ 3 n.1–3). Certain Plaintiffs are recipients of quasi-formula grants, *i.e.*, grants where the relevant statute directs funds to be awarded only to entities recognized by the Department of Health and Human Services as eligible to receive them. *See* 2d Am. Compl. ¶ 69; 34 U.S.C. § 10441(c)(2). Plaintiffs may also apply for discretionary grants administered by OVW. Compl. ¶ 70. OVW is responsible for selecting discretionary award recipients based on merit and eligibility, in accordance with authorizing legislation. *See* OVW AR at 279 (Baran Decl.).

### 1. VAWA Grant Programs Are Subject to Statutory Requirements

VAWA imposes requirements that apply across VAWA-funded grant programs. Notably, VAWA imposes a statutory civil rights requirement prohibiting recipients from discriminating "on the basis of actual or perceived race, color, religion, national origin, sex, gender identity . . . sexual

orientation, or disability[.]" 34 U.S.C. § 12291(b)(13)(A).

Plaintiffs must also satisfy program-specific requirements regarding cooperation with law enforcement. For instance, Services, Training, Officers, and Prosecutors Violence Against Women Formula Grant ("STOP") set-aside funding must be used for "collaborating and coordinating with federal, state, and local entities engaged in violence against women activities." *Id.* § 10441(c)(1). Sexual Assault Coalitions recognized under 34 U.S.C § 10441(c) also receive Sexual Assault Services Program ("SASP") grant funding, which must be used for specified activities, including work with judicial and law-enforcement agencies to encourage appropriate responses to sexual assault cases. *See* 34 U.S.C. § 12511(d)(2).

OVW is responsible for ensuring that grant funds are used only for activities that comply with VAWA's across-the-board requirements and a program's specific statutory requirements. *See id.* §§ 12291(b)(5), 10444(5)–(7). OVW does not leave recipients to determine those requirements on their own. It guides recipients throughout the pre- and post-award process, including by implementing grant terms, and working to ensure that proposed and funded programs comply with VAWA. *See* OVW AR at 290–292 (Baran Decl. ¶¶ 26–30).

2.    *OVW Notice of Funding Opportunity*

OVW solicits applications for each grant through a notice of funding opportunity ("NOFO"). NOFOs have historically reflected the priorities of different Presidential Administrations in implementing VAWA. OVW AR at 282 (Baran Decl. ¶¶ 9–10). Since at least 2015, OVW's NOFOs have also identified out-of-scope activities to alert applicants to statutory limits. *Id.* at 282 (Baran Decl. ¶ 10). OVW revises those lists in response to noncompliant activities commonly proposed by applicants. *Id.* For example, in 2012, OVW added an out-of-scope activity to a discretionary grant program after learning that recipients were using grant funds to distribute

materials on topics unrelated to the program's statutory scope, including women's empowerment and sex education. *Id.* at 281 (Baran Decl. ¶ 7(a)).

OVW also posts General Terms and Conditions governing its grants. Consistent with 2 C.F.R. § 200.211(c)(1)(ii) ("Federal agencies must incorporate the following general terms and conditions . . . National policy requirements."), those terms have been updated over time to reflect various national policy requirements, including Executive Orders. OVW AR at 282 (Baran Decl. ¶ 12). For example, one term encourages recipients to ban text messaging while driving, as required by a 2009 Executive Order. *See Federal Leadership on Reducing Text Messaging While Driving,* Exec. Order No. 13 513, 74 Fed. Reg. 51225 (Oct. 1, 2009).

Since at least 2017, OVW's general conditions included a term requiring compliance with the VAWA nondiscrimination laws, *see* 34 U.S.C. § 12291(b)(13)(A), and notifying applicants of their obligations to comply civil rights and nondiscrimination laws.[6] In addition, OVW's general conditions have long specified that award conditions and "assurances or certifications submitted" are "material."[7]

### 3. *2025 Executive Orders and OVW's FY2025 NOFOs*

After taking office, President Trump issued Executive Orders setting new policy priorities.

---

[6] OVW's general civil-rights requirements direct grantees to comply with all applicable civil rights regulations at 28 C.F.R. Parts 38 42, and 54. *See* https://www.justice.gov/ovw/file/1312971/dl (FY2023 General Terms and Conditions) https://www.justice.gov/ovw/fy-2024-general-terms-and-conditions#14 (FY2024 General Terms and Conditions); https://www.justice.gov/ovw/fy-2025-general-terms-and-conditions#14 (FY2025 General Terms and Conditions).

[7] *See, e.g.,* https://www.justice.gov/d9/2023-09/2023_Award_Conditions.pdf (2023 General Terms and Conditions) (stating that "[t]he conditions of this award are material requirements of the award. Compliance with any assurances or certifications submitted by or on behalf of the recipient that relate to conduct during the period of performance also is a material requirement of this award."); https://www.justice.gov/ovw/fy-2024-general-terms-and-conditions#1 (2024 General Terms and Conditions) (same); OVW AR at 121 (FY2025 General Terms) (same).

*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025), states that its purpose is to ensure that the federal government is "enforcing our civil-rights laws" by "ending illegal preferences and discrimination." *Id.* § 1. It instructs agencies, "consistent with applicable law," *id*. § 8, to include certain terms in "every contract or grant award" and directs OMB to "[e]xcise references to DEI and DEIA principles . . . from Federal acquisition, contracting, grants, and financial assistance procedures." *Id.* § 3(b)(iv) & (c)(ii).

Executive Order 14,151 states that the federal government should "coordinate the termination of all discriminatory programs, including illegal DEI" "to the maximum extent allowed by law" *Ending Radical and Wasteful DEI Programs and Preferencing*, Exec. Order No. 14151, § 2, 90 Fed. Reg. 8339 (Jan. 20, 2025).

Executive Order 14,159, directs the Attorney General to review grants "to ensure" that they "conform to applicable law and are free of waste, fraud, and abuse, and that they do not promote or facilitate violations of our immigration laws[.]" *Defending the American People from Invasion*, Exec. Order No. 14159, § 19(a), 90 Fed. Reg. 8443 (Jan. 20, 2025).

Executive Order 14,168, provides that "[a]gencies shall take all necessary steps, as permitted by law, to end the Federal funding of gender ideology," and that agencies must ensure grant funds do not promote gender ideology. *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* , Exec. Order No. 14168, § 3, 90 Fed. Reg. 8615 (Jan. 20, 2025).

Each order must be "implemented consistent with applicable law." *See* EO 14,151 § 4(b); EO 14,173 § 8(b); EO 14,168 § 8(b), EO 14,159 § 23(b).

OVW reviewed VAWA's statutory requirements and revised its FY2025 NOFO template to

7

align with the Administration's priorities and to further rather than conflict with each program's statutory purposes. *See* OVW AR at 20 (Jan. 27, 2025, Email), 284–290 (Baran Decl. ¶¶ 15-25). On February 12, 2025, OVW circulated a memorandum explaining that it added administrative priorities only "to the extent consistent with the program's authorizing statute," accounting for potential statutory conflicts and applicant burden. OVW AR at 63–65 (Feb. 12, 2025, Memorandum) (emphasis omitted). For instance, OVW chose not to impose certain requirements on tribal governments "to reduce application burden on tribes." *Id.* at 64 n.2.

OVW issued a March 2025 memorandum addressing the anti-DEI certification. *See* OVW AR at 68–86 (Mar. 14, 2025, Email & Memorandum). The memorandum explained that OVW grant program purposes are to support "coordinated community responses to domestic violence, sexual assault, dating violence, and stalking." *Id.* at 72 (Mar. 14, 2025, Memorandum). It clarified that training may address race, sex, culture, religion, disability, or community-specific factors without becoming unlawful DEI under the relevant Executive Order—for example, training shelter staff to honor victims' religious traditions, training advocates and law enforcement to serve male victims of sexual violence, training staff in an Alaska Native village on Yupik culture, or training supervised-visitation staff on cultural norms relevant to safety. *See id.* at 72–73 (Mar. 14, 2025, Memorandum). OVW recognized that culturally specific and underserved-population services remain permissible when they further VAWA's statutory purposes and do not involve unlawful preferences or discrimination.

### 4.    *OVW Out-of-Scope Activities*

Following its review of applicable grant programs, OVW added the eight challenged out-of-scope activities to its FY2025 NOFOs.

OVW added the "Illegal DEI Term," which excludes activities that promote or facilitate

discriminatory programs or ideology, including illegal DEI/DEIA programs that do not advance equal dignity and respect.[8] *See* OVW AR at 212 (Final NOFO Template). Before implementing the term, OVW concluded its programs' purposes do not advance illegal DEI and expressly considered programs serving culturally specific, underserved, LGBT-specific, HBCUs, Tribal Colleges, and Hispanic-serving Institutions. *See* OVW AR at 72–74 (Mar. 14, 2025, Memorandum). OVW concluded those programs fund victim services, training, and law-enforcement responses for populations Congress identified as underserved, not unlawful discriminatory preferences. *Id.* Later talking points confirmed that OVW will not approve material that violates civil-rights laws. *See* OVW AR at 300 (May 2025, Talking Points).

The "Defending Women Term" excludes activities that inculcate or promote gender ideology as defined in EO 14,168.[9] OVW implemented this term after determining that VAWA grant programs protect women from violence and abuse. OVW determined that recipients must serve victims regardless of how victims describe themselves, and underserved and LGBT-specific services programs should serve victims of domestic and sexual violence rather than use funds to promote or inculcate ideology. OVW AR at 28–30 (Jan. 31, 2025, Email). The Final NOFO Template added the term to the out-of-scope list but clarified that nothing in the certification prohibits serving all eligible victims as required by statute, regulation, or award condition. OVW

---

[8] The full text of the Illegal DEI Term prohibits: "Promoting or facilitating discriminatory programs or ideology, including illegal DEI and 'diversity, equity, inclusion, and accessibility' programs that do not advance the policy of equal dignity and respect, as described in Executive Order [No.] 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*. This prohibition is not intended to interfere with any of OVW's statutory obligations, such as funding for HBCUs, culturally specific services, and disability programs." OVW AR at 212 (Final NOFO Template).

[9] The full text of the Defending Women Term prohibits: "Inculcating or promoting gender ideology as defined in Executive Order [No.] 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*." OVW AR at 212 (Final NOFO Template).

AR at 212 (Final NOFO Template).

The "Immigration Law Violation Term" and "Prioritizing Illegal Aliens Term" exclude activities that promote or facilitate violations of federal immigration law and initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support.[10] OVW understood promoting or facilitating legal violations as outside the purposes of its grants. OVW AR at 64 (Feb. 12, 2025 Memorandum). In its May 2025 talking points, OVW explained that such illegal activities had always been unallowable, even if not previously stated explicitly in NOFOs. OVW AR at 87 (May 2025 Talking Points). These talking points were provided to guide OVW staff in answering questions clearly and succinctly in recognition of the high-pressure environments in which grantees serving victims and investigating and prosecuting cases operate, so the talking points clarify that "applicants and recipients should not *prioritize* serving any specific group of victims" but "may triage clients based on safety factors such as risk of future harm." *Id.* at 89.

OVW also recognized that VAWA prohibits excluding victims based on actual or perceived immigration status; permits assistance with immigration benefits designed for abused immigrants and immigrant crime victims, including VAWA self-petitioning, VAWA cancellation of removal, and T and U visas; and does not curtail lawful services to immigrant victims. OVW AR at 288–289 (Baran Decl. ¶ 21). OVW considered these statutory provisions and determined there was no conflict with barring the unlawful facilitation of immigration-law violations and providing lawful services to immigrant victims. *Id.* OVW determined it could reasonably prohibit immigration-

---

[10] The full text of Immigration Law Violation Term prohibits: "Promoting or facilitating the violation of federal immigration law." OVW AR at 212 (Final NOFO Template). The full text of the Prioritizing Illegal Aliens Term prohibits: "Initiatives that prioritize illegal aliens over U.S. citizens and legal residents in receiving victim services and support." *Id*.

status-based prioritization while preserving service to all eligible victims and prohibiting any exclusions from services that jeopardize victim safety and allow offenders to escape responsibility. *Id.*

The "Anti-Law Enforcement Term" excludes programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women.[11] Using grant funds to discourage such collaboration is outside VAWA's scope because coordinated community response—including collaboration among victim-service providers, law enforcement, and prosecutors—is a core purpose of VAWA. OVW AR at 72–76 (Mar. 14, 2025, Memorandum). OVW has long encouraged grantees to collaborate with law enforcement and prosecutors to keep victims safe and hold offenders accountable. OVW AR at 301 (May 2025 Talking Points).

The "Systemic Social Justice Term" excludes activities that frame domestic violence or sexual assault as systemic social justice issues *rather than* criminal offenses, including activities that prioritize criminal justice reform or social justice theories over victim safety and offender accountability.[12] The administrative record explains that OVW grants support on-the-ground coordinated responses to VAWA crimes and practical training that equips professionals to combat violent crime and serve victims—not using funds to promote ideologies that undermine a core goal of VAWA, which is strengthening law enforcement responses to sexual assault and domestic

---

[11] The full text of the Anti-Law Enforcement Term prohibits: "Programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women." OVW AR at 212 (Final NOFO Template).

[12] The full text of the Systemic Social Justice Term prohibits: "Activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses (e.g., prioritizing criminal justice reform or social justice theories over victim safety and offender accountability)." OVW AR at 212 (Final NOFO Template).

violence crimes. OVW AR at 72 (Mar. 14, 2025, Memorandum); *see also* 34 U.S.C. § 10441 (stating a core purpose of Violence Against Women Act grants is to "strengthen effective law enforcement and prosecution strategies").

The "EO Term" excludes any activity or program that unlawfully violates an Executive Order. OVW determined that unlawful violations of Executive Orders are necessarily outside the scope of federal grant funding because grant funds cannot be used for unlawful activities. OVW AR at 287 (Baran Decl. ¶ 18).[13]

The "Campaigns without Improvements Term" excludes awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability.[14] OVW has long required performance reports monitoring, congressional reporting, identifying technical-assistance needs and best practices, and monitoring grantees' progress toward project goals. OVW AR at 106–107 (OVW FY2025 Application Companion Guide). These performance reports give OVW grantees a "venue to report on [their] activities and related indicators of success," enabling them to explain their "judgment calls . . . about whether an awareness campaign or media production is likely to have tangible results." OVW AR at 89 (May 2025, Talking Points). OVW therefore requires that funded awareness campaigns and media activities must be tied to tangible outcomes for victims and offender accountability, which are core VAWA purposes.

     5.     *OVW Nondiscrimination Certification*

OVW also updated its General Terms and Conditions for grant awards. *See* OVW AR at 284 (Baran Decl. ¶ 14). The new "Nondiscrimination Certification" requires applicants to (1)

---

[13] The full text of the EO Term prohibits: "Any activity or program that unlawfully violates an Executive Order." OVW AR at 212 (Final NOFO Template).

[14] The full text of the Campaigns without Improvements Term prohibits: "Awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability."

"certify that [they do] not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws" and (2) "agree that [their] compliance in all respects with all applicable federal anti-discrimination laws is material to the government's payment decisions for purposes of [the False Claims Act]." *Id.*

That certification simply reflects longstanding features of OVW's grant framework. As stated above, since at least 2017 OVW has included grant award provisions expressly requiring applicants to comply with applicable civil rights and nondiscrimination laws.[15]

For years, OVW's terms also treated award conditions and certifications as material requirements, authorized remedies for noncompliance, and expressly warned that materially false statements may result in criminal, civil, or administrative remedies, including under the False Claims Act.[16] OVW's terms have also long required compliance with civil-rights and nondiscrimination laws. *Id.* Thus, this term imposes no new requirements on grantees. The new certification was implemented simply to clarify that some DEI programs may violate nondiscrimination laws. OVW AR at 28 (Jan. 31, 2025 Email).

## C.   The Office of Justice Programs

The second half of Plaintiffs' motion involves challenges to two grant terms that apply to

---

[15] The general civil rights requirements that have been in OVW grant terms since 2017 require grantees to comply with all applicable civil rights regulations at 28 C.F.R. Parts 38 42, and 54.   *See*   https://www.justice.gov/ovw/file/1312971/dl   (FY2023   General   Terms) https://www.justice.gov/ovw/fy-2024-general-terms-and-conditions#14 (FY2024 General Terms); https://www.justice.gov/ovw/fy-2025-general-terms-and-conditions#14   (FY2025   General Terms).

[16] OVW's General Terms and Conditions governing grants have long specified that award conditions are "material," as are any "assurances or certifications submitted." *See* https://www.justice.gov/d9/2023-09/2023_Award_Conditions.pdf (FY 2023 General Terms and Conditions) ("The conditions of this award are material requirements of the award. Compliance with any assurances or certifications submitted by or on behalf of the recipient that relate to conduct during the period of performance also is a material requirement of this award."); https://www.justice.gov/ovw/fy-2024-general-terms-and-conditions#1 (FY 2024 General Terms and Conditions) (same); OVW AR at 121 (FY 2025 General Terms and Conditions) (same).

13

Plaintiffs through awards or subawards through states under three discretionary grant programs. *See* Pls.' Mot. at 7. These programs are administered by a separate grantmaking component within OJP: the Office for Victims of Crime ("OVC"). *Id.*

**VOCA Victim Assistance Grants.** The Victims of Crime Act of 1984 ("VOCA") established the Crime Victims Fund and created OVC to administer victim-assistance grants. *See* 34 U.S.C. §§ 20101, 20111. OVC administers the VOCA Victim Assistance Grant program, which provides annual formula grants to states. *Id.* § 20103(a). States then issue subawards to victim assistance programs, including domestic violence and sexual assault coalitions such as Plaintiffs. *See* Pls.' Mot. at 7. The OVC Director may require state grantees to "provide such other information and assurances related to the purposes of this section as the Director may reasonably require." 34 U.S.C. § 20103(a)(2)(D).

**The Services for Victims of Crime Grant Program ("Services Program").** VOCA also authorizes discretionary grants to victim assistance programs. *Id.* § 20103(c). OVC established the Services for Victims of Crime Grant Program ("Services Program") under 34 U.S.C. § 20103(c)(1)(A), which authorizes grants "for victim services, demonstration projects, program evaluation, compliance efforts, and training and technical assistance services to eligible crime victim assistance programs[.]"

**Emergency and Transitional Pet Shelter and Housing Assistance Grant Program ("PAWS Program").** The PAWS Act established the Emergency and Transitional Pet Shelter and Housing Assistance Grant Program ("PAWS Program"), which authorizes grant funding to provide domestic-violence victims with housing with or for their pets, service or emotional support animals, or horses. *See* Agriculture Improvement Act of 2018, Pub. L. No. 115-334, § 12502(b), 132 Stat. 4490 (codified at 34 U.S.C. § 20127). Grant recipients may use funding to provide

14

housing with or for a victim's pet for up to two years, with extensions permitted under specified conditions. *See* 34 U.S.C. § 20127(5)(A).

### 1.    *OJP's Certification Requirement*

Pursuant to EO 14,173, OJP updated its "General Conditions for OJP Awards" webpage on May 12, 2025. *See* U.S. DOJ, OJP, "General Conditions" for OJP Awards in FY 2025, § 15;[17] *see also* OJP Administrative Record ("OJP AR-1"), at 61 ECF No. 50-3 (Jan. 23, 2026) (FY 2025 General Conditions). OJP's "General Conditions" webpage for prospective applicants provides the language of award conditions that applicants (if successful) can expect to see on all awards made in the specified fiscal year.

The updated "Federal Civil Rights and Nondiscrimination Laws" certification requires OJP grantees to agree that compliance with applicable federal civil-rights and nondiscrimination laws is material to the government's award and payment decisions, including for False Claims Act purposes, and to certify that they do not operate programs, including DEI-related programs, that violate applicable federal civil-rights or nondiscrimination laws. OJP AR-1 at 61 (FY 2025 "General Conditions" for OJP Awards). The OJP administrative record shows this certification was adopted through OJP's standard FY2025 award-condition framework and tracks EO 14,173. *See* OJP AR-1 at 2.

Crucially, like OVW, *for years* OJP has required recipients to comply with applicable civil-rights laws and nondiscrimination provisions, including obligations that flow down to subrecipients. *See* OJP AR-1 at 47–56 (Certified Standard Assurances). In implementing its new certification requirement, OJP relied on its longstanding rule that activities violating applicable federal civil-rights or nondiscrimination laws are impermissible and will not be funded. *See* OJP

---

[17] https://perma.cc/D3NX-3W9R.

AR-1 at 49 (Dec.18, 2024, Overview of Civil Rights Requirements Associated with OJP Awards).[18] Additionally, OJP has *for years* noted that award terms and any assurances or certifications submitted by a grant recipient are "material," and false statements made to the government related to the award may lead to penalties under the False Claims Act.[19]

    2.     *OJP's Unlawful Presence Provision*

On August 7, 2025, the President issued Executive Order 14,332. *Improving Oversight of Federal Grantmaking*, Exec. Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025). The Order seeks to improve federal grantmaking and ensure that taxpayer funds advance American interests. *Id.* It directs agencies to review discretionary grants and ensure they do not promote or fund illegal immigration. *Id.* § 4(ii)(C). The Order must be implemented "consistent with applicable law." *Id.* § 7(b).

In January 2026, OJP decided to include the Unlawful Presence Provision in award offers under two competitive discretionary programs: the Services Program and the PAWS Program. *See*

---

[18] *See* www.ojp.gov/funding/explore/legaloverview2019/mandatorytermsconditions#21 (2019 OJP Terms); www.ojp.gov/funding/explore/legaloverview2020/mandatorytermsconditions#21 (2020 OJP Terms); www.ojp.gov/funding/explore/legaloverview2021/mandatorytermsconditions#21 (2021 Terms); www.ojp.gov/funding/explore/legaloverview2022/mandatorytermsconditions#21 (2022 Terms); www.ojp.gov/funding/explore/legaloverview2023/mandatorytermsconditions#21 (2023 Terms); www.ojp.gov/funding/explore/legaloverview2024/mandatorytermsconditions#21 (2024 Terms); www.ojp.gov/funding/explore/legaloverview2025/mandatorytermsconditions#21 (2025 Terms).

[19] *See* www.ojp.gov/funding/explore/legaloverview2019/mandatorytermsconditions#1 (2019 OJP Terms); www.ojp.gov/funding/explore/legaloverview2020/mandatorytermsconditions#1 (2020 OJP Terms); www.ojp.gov/funding/explore/legaloverview2021/mandatorytermsconditions#1 (2021 Terms); www.ojp.gov/funding/explore/legaloverview2022/mandatorytermsconditions#1 (2022 Terms); www.ojp.gov/funding/explore/legaloverview2023/mandatorytermsconditions#1 (2023 Terms); www.ojp.gov/funding/explore/legaloverview2024/mandatorytermsconditions#1 (2024 Terms); www.ojp.gov/funding/explore/legaloverview2025/mandatorytermsconditions#1 (2025 Terms).

OJP Administrative Record ("OJP AR-2"), at 82–83, ECF No. 69-3 (May 22, 2026) (Email dated

Jan. 20, 2026). The Unlawful Presence Provision states:

> The recipient shall ensure that no award funds [provided] under this award (or any subaward, at any tier) will be used to provide benefits or services to any removable alien (*see* 8 U.S.C. § 1229a(e)(2)) or any alien otherwise unlawfully present in the United States, but this prohibition shall not apply where such use is expressly authorized by law (or otherwise expressly allowable under the terms of this award) or where the prohibition would contravene any express requirement of any law, or of any judicial ruling, governing or applicable to the award.

*Id.* at 82. (emphasis omitted). The provision has important limitations: it applies only where it does

not "contravene any express requirement of any law"; it does not restrict a grantee's use of funds

outside the grant; and it applies only to Services Program and PAWS Program grants, not VOCA

Victim Assistance formula grants. *Id.*

OJP analyzed the applicable programs and determined that neither requires services to

removable aliens or aliens otherwise unlawfully present in the United States. *Id.* OJP expressly

considered the "limited supply of federal discretionary grant program dollars" and concluded that

those resources could reasonably be directed to U.S. citizens and lawful residents. *Id.* OJP further

explained that the restriction would not prevent recipients from using non-federal funds to serve

removable aliens or aliens otherwise unlawfully present in the United States. *Id.* And OJP

considered reliance interests, noting that recipients of discretionary federal grant funding lack

reliance interests generally and that any such interests were outweighed by the government's

interest in ensuring limited federal funds are properly allocated. *Id.*

**D.   This Litigation**

Plaintiffs filed this action on June 16, 2025, challenging proposed OVW FY2025 grant

terms under the Separation of Powers, Spending Clause, First Amendment, Fifth Amendment, and

APA. *See* Compl. ¶¶ 59–74, ECF No. 1. Plaintiffs moved to preliminarily enjoin the challenged

OVW terms. *See* ECF No. 15.

On August 8, 2025, Court stayed enforcement of the terms under 5 U.S.C. § 705, concluding on the preliminary record that the terms were insufficiently explained under the APA. Memorandum & Order at 17–22, ECF No. 34. Defendants then produced the OVW administrative record. *See* ECF Nos. 35–36.

In November 2025, Plaintiffs amended their complaint to challenge OJP's Certification Requirement, but did not seek emergency relief. Am. Compl., ECF No. 41. Defendants produced the OJP administrative record on January 23, 2026. ECF No. 50.

Plaintiffs later sought leave to amend a second time, to challenge the OJP Unlawful Presence Provision, which appeared in January 2026 OJP award offers. On February 20, 2026, Plaintiffs filed a motion for leave to file a second amended complaint, ECF No. 52, and a motion for temporary restraining order and preliminary relief, ECF No. 53. The motion was converted to a preliminary-injunction motion on March 3, 2026.

On April 17, 2026, the Court preliminarily stayed enforcement of the OJP Unlawful Presence Provision and the OJP Certification Requirement under 5 U.S.C. § 705. *See* Memorandum & Order Granting Plaintiffs' Second Motion for Preliminary Relief ("2d Mem. Op.") ECF No. 63. The Court reasoned that the implementation of the terms appeared to be arbitrary and capricious under the APA. *See id.* at 9. The Court also determined that the stay should apply to three OJP grant programs that Plaintiffs demonstrated standing to challenge. *See* Text Order dated May 29, 2026. OJP provided the administrative record as to the Unlawful Presence Provision on May 22, 2026. ECF No. 69.

## LEGAL STANDARDS

### A.    Summary Judgment Generally

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual

18

dispute is "one that must be decided at trial because the evidence . . . would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review." *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir. 2006). In such circumstances, courts "resolve all factual disputes and any competing, rational inferences in the light most favorable to the party against whom summary judgment has entered." *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996).

**B.      Summary Judgment in APA Cases**

"[T]he summary judgment rubric has a special twist in the administrative law context," where "summary judgment is simply a vehicle to tee up a case for judicial review and, thus, an inquiring court must review an agency action not to determine whether a dispute of fact remains but, rather, to determine whether the agency action was arbitrary and capricious." *Boston Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016). The Court may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Nat'l Lab. Rels. Bd. v. Beverly Enters.-Mass., Inc.*, 174 F.3d 13, 23 (1st Cir. 1999) (quoting 5 U.S.C. § 706(2)(A)). "The burden is on the party challenging the agency decision"—here, Plaintiffs—"to show that the arbitrary and capricious standard has been met." *Bluestone Env't Grp., Inc. v. Zapisek*, No. 3:21-cv-30056 MGM, 2022 WL 16857173, at *4 (D. Mass. Nov. 10, 2022). The standard of review is narrow, and a reviewing court "may not substitute [its] judgment for that of the agency, even if [it] disagrees with [the agency's] conclusions." *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 601 (1st Cir. 2016) (citation modified).

## ARGUMENT

### A.     Threshold Issues Require Granting Summary Judgment for Defendants

As an initial matter, Defendants respectfully preserve their threshold objections to Plaintiffs' claims. Although the Court has previously addressed some of these issues at the preliminary-relief stage, Plaintiffs still bear the burden at summary judgment to establish jurisdiction and reviewability for each claim, each defendant, and each form of relief. They have not done so.

#### 1.     *Plaintiffs Lack Standing to Challenge Grants They Do Not Directly Receive*

Plaintiffs lack standing to challenge terms in grants they do not directly receive, but rather receive as subrecipients through state passthrough grants. Article III requires Plaintiffs to show an injury that is concrete, particularized, and actual or imminent; fairly traceable to Defendants; and likely redressable by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing "is not dispensed in gross," and Plaintiffs must establish it "for each claim they press" and "for each form of relief." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted). Further, at the summary judgment stage, Plaintiffs cannot rest on "mere allegations, but must set forth by affidavit or other evidence specific facts" to demonstrate standing. *Lujan*, 504 U.S. at 561 (citation modified).

Plaintiffs lack standing to challenge terms in VOCA Victim Assistance grant programs, where States—and no Plaintiffs—are the federal recipients. Plaintiffs receive pass-through funding only through state-administered subawards. *See* Declaration of Kristen Faisal ("Faisal Decl.") ¶ 18, ECF No. 71-8; Declaration of Kelsen Young ("Young Decl.") ¶ 17, ECF No. 71-26,. Because the federal government is not a party to Plaintiffs' subaward agreements, Plaintiffs' alleged injuries depend on independent decisions by state recipients that are not parties to this case. When a "suit is one challenging the legality of government action or inaction, the nature and extent of facts that

20

must be averred (at the summary judgment stage) . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action." *Lujan*, 504 U.S. at 561. Where, as here, "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed." *Id*. at 562 (emphasis in original). As the Supreme Court has emphasized, Plaintiffs face a "substantially more difficult" burden to establish standing in these circumstances. *Id.* (citation omitted).

The indirect theory of harm asserted by Plaintiffs breaks traceability and redressability as to the VOCA Victim Assistance grants. A federal court cannot redress an injury that results from "the independent action of some third party not before the court." *Murthy*, 603 U.S. at 57 (citation omitted). Courts are "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment," *id.* (citation omitted), and standing is absent where redress depends on speculation about third-party choices. *See California v. Texas*, 593 U.S. 659, 675 (2021); *see also Haaland v. Brackeen*, 599 U.S. 255, 293–94 (2023) (holding that non-Native American adoptive parents lacked standing to challenge custody provisions of the Indian Child Welfare Act because non-party states administered the provisions).

Plaintiffs have not shown traceability and redressability. The Certification Requirement applies to federal recipients. Defendants have explained that recipients determine what requirements to include in their subawards to comply with federal obligations. *See* Ltr. to Pls.' Counsel at 3 (Nov. 19, 2025), ECF No. 42-1; *see also* 2 C.F.R. §§ 200.300(a), 200.332(b)(2)–(3). Therefore, even if the Court enjoined the federal certification, States could independently require similar assurances from their subrecipients. Plaintiffs therefore cannot show with the evidence required at summary judgment that their alleged subrecipient injuries are fairly traceable to Defendants or likely redressable by the relief they seek.

###### 2.    *Plaintiffs Have Not Identified Reviewable Final Agency Actions*

The APA permits review only of "final agency action." 5 U.S.C. § 704. Final agency action must mark the "consummation" of the agency's decisionmaking process and determine rights or obligations or produce legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation omitted). Preliminary, procedural, or intermediate steps are not independently reviewable. *See* 5 U.S.C. § 704.

To the extent Plaintiffs challenge OVW's NOFO language apart from any award, they do not challenge final agency action. A NOFO is an invitation to apply for funding and describes the application process; it does not itself award funds, deny funds, or finally determine any applicant's rights or obligations. This is true even in the case of a formula grant program, under which the agency must determine whether the application meets the statutory requirements of the program. *See, e.g.,* 34 U.S.C. § 12511(d)(4) (giving the Attorney General discretion to "determine[]" the "information" applicants must submit that is "essential to carry out the purposes of" the statute directing grants to sexual assault coalitions). As such, an agency does not take final action in the grant context until it completes review of an application and decides whether to award or disburse funds. *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007); *Citizens Alert Regarding Env't v. EPA*, 102 F. App'x 167, 168 (D.C. Cir. 2004); *Planned Parenthood of Wisconsin, Inc. v. Azar*, 316 F. Supp. 3d 291, 300 (D.D.C. 2018), *vacated as moot*, 942 F.3d 512 (D.C. Cir. 2019); *Karst Env't Educ. & Prot., Inc. v. EPA,* 403 F. Supp. 2d 74, 81 (D.D.C. 2005), *aff'd* 475 F.3d 1291, 1295 (D.C. Cir. 2007).

That limitation is especially important where Plaintiffs seek relief extending to future NOFOs and awards. *See* Pls.' Mot. at 78. In that context, courts may not review agency actions "not yet promulgated, the final form of which has only been hinted at[.]" *EPA v. Brown*, 431 U.S.

22

99, 104 (1977). Any challenge to future grant terms is premature, unripe, and outside the APA.

Finally, the Certification Requirements are not final agency action because they reiterate existing legal obligations. An agency statement that "merely expresses its view of what the law requires" is not final agency action. *Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1236 (D.C. Cir. 2026). The certifications require compliance with applicable federal civil-rights and nondiscrimination laws and specify that compliance is material—obligations that already apply to recipients of federal funds. OJP and OVW awards have long included these obligations. *See* Background, at Parts B.5 and C.1. The certifications therefore do not create a new reviewable legal regime, and are not a final agency action.

> 3. *The Implementation of Grant Terms is Committed to Agency Discretion*

Defendants' decisions in implementing grant terms are precluded from APA review by the grant programs' statutes. 5 U.S.C. § 701(a)(2). Agency decisions about how best to condition and allocate appropriated grant funds are classic discretionary judgments. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993); *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 748–51 (D.C. Cir. 2002).

That principle applies across the programs at issue here. For VAWA programs, Congress gave OVW "sole jurisdiction" to administer grants and ensure that funds are used to further VAWA's specific purposes. *R.I. Coal.*, 794 F. Supp. 3d at 68 (citing 34 U.S.C. § 10442(a), (c); & *id*. § 10444(5)-(8)). Moreover, the OVW Director has "final authority over all grants, cooperative agreements, and contracts awarded by the Office," 34 U.S.C. § 10442(b), and is responsible for "the development and management of grant programs," "the award and termination of grants," and "[e]stablishing such rules, regulations, guidelines, and procedures as are necessary to carry out any function of the Office." *Id.* § 10444(5)(B)–(C), (8). OVW's decisions identifying out-of-scope activities reflect its Congressionally delegated authority to administer grant programs and ensure

that awards further statutory purposes.

The same is true for OVC's Services Program. That program was established by the OVC Director under discretionary authority conferred by 34 U.S.C. § 20103(c)(1). Congress authorized the Director to establish programs "on terms and conditions determined by the Director to be consistent with that subsection." 34 U.S.C. § 20111(c)(3). The statute supplies broad programmatic objectives, not judicially manageable standards for second-guessing each grant term governing discretionary awards.

VOCA Victim Assistance grants likewise involve discretion over assurances and grant administration. Congress authorized the OVC Director to require state grantees to "provide such other information and assurances related to the purposes of this section as the Director may reasonably require." 34 U.S.C. § 20103(a)(2)(D). The Certification Requirement falls within that authority because it ensures that federal victim-assistance funds are administered consistent with federal civil-rights and nondiscrimination requirements.

The PAWS Act contains similar language. Applicants must submit "such assurances as the Secretary determines to be necessary to ensure compliance by the entity with the requirements of [the statute]." 34 U.S.C. § 20127(2)(A)(ii). That language "fairly exudes deference" and gives the administering agency substantial discretion to determine what assurances are necessary to ensure statutory compliance. *Webster v. Doe*, 486 U.S. 592, 600 (1988).

\*\*\*

In sum, Plaintiffs ask the Court to supervise discretionary grant administration judgments Congress assigned to OVW and OJP. The APA does not authorize that kind of judicial second guessing. At minimum, these threshold defects confirm that any relief must be limited to discrete, final agency action properly before the Court and for which Plaintiffs have demonstrated standing.

24

**B.    The Challenged Terms Survive Arbitrary and Capricious Review**

Even if the Court reaches the merits of Plaintiffs' claims, the challenged grant terms survive permissive arbitrary and capricious review. Under the applicable standard, agency action is presumed valid, and the Court asks only whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). Review is "deferential," and a court "may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Nor must an agency provide a perfect explanation. Rather, a court must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC v. Fox Television Stations*, Inc., 556 U.S. 502, 513–14 (2009) (citation omitted). And when an agency changes policy, it "need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one." *Id.* at 515. "[I]t suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better." *Id.*

That standard is met here. The OVW Administrative Record shows that OVW carefully reviewed the relevant Executive Orders, VAWA's statutory requirements, program-specific limitations, applicant burdens, and existing grant-administration tools before revising its FY2025 NOFO template and General Terms. The OJP Administrative Records likewise demonstrate that OJP implemented the challenged certification through its ordinary FY2025 award-condition framework and imposed the immigration-related condition only after DOJ leadership review of two competitive discretionary programs. The agencies' paths are "reasonably discerned," *Fox Television*, 556 U.S. at 513–14 (citation omitted), and therefore satisfy "deferential" arbitrary and capricious review, *Prometheus Radio Project*, 592 U.S. at 423.

25

       *1.*     *OVW's Out-of-Scope Activities Survive Arbitrary and Capricious Review*

The OVW Director has final authority over OVW grants and may establish "rules, regulations, guidelines, and procedures" necessary to carry out OVW's functions. 34 U.S.C. §§ 10442, 10444(5)(B)-(C), (8). Plaintiffs do not dispute that OVW has long used NOFOs to tell applicants what activities fall outside a grant program's scope. *See* Pls.' Mot. at 18. Indeed, OVW's FY2025 out-of-scope terms continue that ordinary grantmaking practice: the terms identify activities OVW concluded are improper uses of VAWA grant funds, while preserving applicable statutory obligations to serve eligible victims.

OVW undertook a detailed and considered process in implementing the out-of-scope activities. In January 2025, OVW began reviewing its grant programs in light of the new Executive Orders and related DOJ guidance. *See* OVW AR at 20 (Jan. 28, 2025 Email). On February 12, OVW circulated a memorandum revising its NOFO template to align with "the Attorney General's priorities for combatting violence against women." OVW AR at 63 (Feb. 12, 2025 Memorandum). That memorandum stated that OVW would add priorities only "to the extent consistent with the program's authorizing statute," and also analyzed statutory limitations and considered applicant burden. *Id.* at 63–65. For example, OVW did not impose certain requirements on tribal governments "in keeping with ongoing efforts to reduce application burden on tribes." *Id.* at 64.

OVW's decision was not post-hoc, as Plaintiffs contend. *See* Pls.' Mot. at 32. The Administrative Record includes a January 2025 review, February 2025 NOFO memorandum, March 2025 component memorandum, a final NOFO final template, and May talking points regarding the NOFOs. *See generally* OVW AR. Moreover, the July 2025 Baran declaration (OVW AR at 278–298) may also properly be considered because it "accurately reflects the contemporaneous reasoning of the Department" and "illuminate[s] the reasons that are already

26

implicit in the internal materials." *Rhea Lana, Inc. v. United States*, 925 F.3d 521, 524 (D.C. Cir. 2019) (cleaned up). The declaration does exactly that: it explains the same OVW process reflected in the contemporaneous AR.

Nor are the terms unexplained simply because no memorandum separately addresses every term in isolation. That is not the standard. Rather, the relevant question is whether the agency's path can be discerned from the record as a whole. *See Fox Television*, 556 U.S. at 513–514. The record shows that OVW considered the relationship between the revised terms, VAWA's purposes, statutory nondiscrimination obligations, lawful services to underserved populations, immigration-related victim services, public-safety priorities, and ordinary grant monitoring.

Specifically, the record shows an individualized analysis of each challenged out-of-scope term:

- **Illegal DEI Term.** OVW's March 2025 memorandum explained that OVW grants support "coordinated community responses to domestic violence, sexual assault, dating violence, and stalking," OVW AR at 72 (Mar. 14, 2025 Memorandum), and concluded that OVW's statutory programs do not advance illegal DEI programs. *See id.* at 72–73. OVW also expressly considered programs serving culturally specific, underserved, LGBT-specific, HBCU, Tribal College, Hispanic-serving Institution, and disability-related populations. *Id.* at 73–74. It concluded that those programs fund victim services, training, and law-enforcement responses for populations Congress identified as underserved—not unlawful preferences that would violate civil rights laws. *Id.* Later talking points confirmed that OVW will not approve material that violates civil-rights laws. OVW AR at 300 (May 2025 Talking Points). Thus, OVW drew a reasoned line between unlawful discrimination and lawful, statutorily authorized services that further the purpose of VAWA: victim safety,

27

investigations, prosecutions, and offender accountability. *Id.*

- **Defending Women Term.** OVW also reasonably excluded activities that inculcate or promote gender ideology as defined in EO 14,168. OVW considered VAWA's nondiscrimination provision and recognized that recipients must serve victims regardless of how victims describe themselves. OVW AR at 28-30 (Jan. 31, 2025 Email). It also concluded that underserved and LGBT-specific services programs serve victims of domestic and sexual violence rather than promote ideology. *Id.* The Final NOFO Template included the term but clarified that nothing in the certification prohibits recipients from serving all eligible victims as required by statute, regulation, or award condition. *See* OVW AR at 212 (Final NOFO Template).

- **Immigration Law Violation and Prioritizing Illegal Aliens Terms.** OVW reasonably concluded that federal grant funds may not be used to promote or facilitate violations of federal immigration law. OVW AR at 64 (Feb. 12, 2025 Memorandum). Its May 2025 talking points explained that promoting or facilitating violations of law has never been an allowable use of OVW funds. OVW AR at 87 (May 2025 Talking Points). At the same time, OVW preserved lawful services to immigrant victims. The Baran declaration explains that VAWA prohibits excluding victims based on actual or perceived immigration status; that recipients may use funds to help victims access immigration benefits designed for abused immigrants and other immigrant crime victims, including VAWA self-petitioning, VAWA cancellation of removal, and T and U visas; and that OVW had received no directive to curtail lawful services to immigrant victims. OVW AR at 288 (Baran Decl. ¶¶ 20–21). OVW's record therefore distinguishes unlawful facilitation of immigration-law violations from lawful victim services.

- **Anti-Law Enforcement Term.** OVW reasonably excluded programs that discourage collaboration with law enforcement or oppose or limit the role of police, prosecutors, or immigration enforcement in addressing violence against women. Coordinated community response—including collaboration among victim-service providers, law enforcement, and prosecutors—is central to OVW's statutory mission and grant programs. OVW AR at 72–76 (Mar. 14, 2025 Memorandum). The record further reflects that OVW has long encouraged grantees to collaborate with law enforcement and prosecutors to keep victims safe and hold offenders accountable. OVW AR at 301 (May 2025 Talking Points). Plaintiffs may disagree with that policy judgment, but the APA does not permit the Court to substitute Plaintiffs' preferred approach for OVW's.

- **Systemic Social Justice Term.** OVW reasonably excluded activities that frame domestic violence or sexual assault as systemic social justice issues rather than criminal offenses. OVW found that its grants' purposes are to fund coordinated responses to VAWA crimes and provide training that combats violent crime and enhances services for victims. OVW AR at 72 (Mar. 14, 2025 Memorandum). OVW thus reasonably required grant funds to remain tied to victim safety and offender accountability rather than a generalized ideological advocacy disconnected from the grant program's statutory purposes. *See id.*

- **Campaigns without Improvements Term.** OVW also reasonably excluded awareness campaigns or media that do not lead to tangible improvements in prevention, victim safety, or offender accountability. This term is tied directly to OVW's performance-reporting regime, which is meant to ensure compliance with statutory purposes. OVW has long required performance reports for grant monitoring, and congressional reporting on performance. OVW AR at 106–107 (FY2025 Companion Guide). Requiring grant-funded

29

campaigns to have a plausible connection to measurable programmatic outcomes is rational grant administration and furthers efficient use of public funds.

- **EO Term.** OVW reasonably excluded any activity or program that unlawfully violates an Executive Order. OVW determined that unlawful violations of Executive Orders are outside the scope of federal grant funding because grant funds cannot be used for unlawful activities. OVW AR at 287 (Baran Decl. ¶ 18). Federal regulations provide that OVW may consider national policy requirements in setting terms for grants, including "statutory, *executive order*, other Presidential directive, or regulatory requirements" that apply. 2 C.F.R. § 200.211(c)(1)(ii) (emphasis added). The term here thus reasonably bars using federal funds for activities that unlawfully violate valid, applicable Executive Orders.

At bottom, Plaintiffs attempt to characterize the arbitrary and capricious standard as requiring the agency to consider every hypothetical application of a grant term. *See* Pls.' Mot. at 32–35. That would be impossible. It cannot be the applicable standard of arbitrary and capricious review, which requires only that terms must be "reasonable and reasonably explained," *Prometheus Radio Project*, 592 U.S. at 423, and a court must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Fox Television*, 556 U.S. 502 at 513–514. The record meets that standard.

Plaintiffs also argue that OVW failed to consider reliance interests and possible chilling effects. Pls.' Mot. at 35. But OVW did not terminate any existing statutory programs or bar lawful activities. The Final NOFO Template expressly states that recipients should serve all eligible victims as required by statute, regulation, or award condition. OVW AR at 212 (Final NOFO Template). OVW had no reason to provide detailed guidance to grantees and in fact revised the NOFO template to help grantees focus their work on the "highly specific statutes" governing

30

OVW's grant programs by removing "'guidance-like' language" from the template. OVW AR at 63-64 (February 12, 2025, Memorandum). OVW also explained that it works with recipients to resolve concerns and bring projects "back on track," rather than resorting immediately to punitive enforcement. OVW AR at 293 (Baran Decl. ¶ 32). Further, an agency need only consider and weigh valid, reasonable reliance interests—not "unreasonable" ones. *See Libby Welding Co. v. United States*, 444 F. Supp. 987, 992 (D.D.C. 1977), *aff'd*, 595 F.2d 887 (D.C. Cir. 1979). Here, it is entirely unreasonable for Plaintiffs to expect unchanged NOFO terms from one year to the next given the wide discretion OVW has under VAWA to establish appropriate terms and conditions to support its grant programs. *See Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 742 (1996) (requiring agencies to consider "legitimate reliance"). As explained above, a NOFO is simply a document describing a potential funding opportunity the Government is making available and setting out the application process for eligible applicants. It does not create any legal entitlement to projected funding levels or guarantee unchanged terms and conditions. Accordingly, there are no "legitimate reliance" interests that the agency was required to consider in this context. *Smiley*, 517 U.S. at 742.

In sum, Plaintiffs have not shown that the OVW Out-of-Scope Activities are arbitrary and capricious, and summary judgment should be granted to Defendants.

### 2.     *The Certification Requirements Are Not Arbitrary and Capricious*

The OJP and OVW Certification Requirements survive arbitrary and capricious review. There is nothing arbitrary about requiring federal grantees to comply with federal anti-discrimination laws or to certify that they are doing so. Existing federal law already requires such compliance. *See Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86, 104 (4th Cir. 2026).

Moreover, these requirements are not new. OVW has long required applicants to comply

31

with applicable non-discrimination and civil rights laws.[20] OVW has for years specified that award conditions and certifications are material, authorized remedies for noncompliance, and warned that materially false statements may result in criminal, civil, or administrative remedies, including under the False Claims Act. *See* OVW AR at 121 (FY 2025 General Terms & Conditions).[21] OVW understood the new certification as amplifying, not materially changing, preexisting conditions addressing remedies for noncompliance, materially false statements, and compliance with DOJ civil-rights and nondiscrimination law. *See* OVW AR at 290 (Baran Decl. ¶ 14).

OJP has also long had preexisting requirements that applicants and recipients must comply with applicable federal statutes, regulations, civil-rights laws, and nondiscrimination provisions. OJP AR-1 at 47–56 (2024 Civil Rights Requirements Associated with OJP Awards).[22] OJP also relied on its longstanding rule that programs violating applicable federal civil-rights or nondiscrimination laws are impermissible and will not be funded. OJP AR-1 at 49. Finally, OJP has also specified for years that materially false statements may result in criminal, civil, or administrative remedies, including under the False Claims Act.[23]

---

[20] *See* https://www.justice.gov/ovw/file/1312971/dl (OVW FY2023 General Terms) https://www.justice.gov/ovw/fy-2024-general-terms-and-conditions#12 (FY2024 General Terms); https://www.justice.gov/ovw/fy-2025-general-terms-and-conditions#14 (FY2025 General Terms).

[21] *See* https://www.justice.gov/d9/2023-09/2023_Award_Conditions.pdf (OVW FY2023 General Terms); https://www.justice.gov/ovw/fy-2024-general-terms-and-conditions#1 (FY 2024 General Terms and Conditions) (same); OVW AR at 121 (FY 2025 General Terms and Conditions).

[22] *See* www.ojp.gov/funding/explore/legaloverview2019/mandatorytermsconditions#21 (2019 OJP Terms); www.ojp.gov/funding/explore/legaloverview2020/mandatorytermsconditions#21 (2020 OJP Terms); www.ojp.gov/funding/explore/legaloverview2021/mandatorytermsconditions#21 (2021 Terms); www.ojp.gov/funding/explore/legaloverview2022/mandatorytermsconditions#21 (2022 Terms); www.ojp.gov/funding/explore/legaloverview2023/mandatorytermsconditions#21 (2023 Terms); www.ojp.gov/funding/explore/legaloverview2024/mandatorytermsconditions#21 (2024 Terms); www.ojp.gov/funding/explore/legaloverview2025/mandatorytermsconditions#21 (2025 Terms).

[23] *See* www.ojp.gov/funding/explore/legaloverview2019/mandatorytermsconditions#1

32

Like the other requirements, the new certification requirements do not impose an ideological ban; rather they require recipients to certify only that they do not operate programs, including DEI-related programs, that violate applicable federal civil-rights or nondiscrimination laws. *See* OVW AR at 212 (Final NOFO Template); OJP AR-2 at 61 (FY2025 General Terms). There is nothing arbitrary or capricious about an agency providing potential grant applicants with more specific and detailed notice about the type of unlawful conduct that would violate federal antidiscrimination laws.

The certifications track EO 14,173. That Order directed agencies to include in every award a term requiring recipients to agree that compliance with federal anti-discrimination laws is material to payment decisions and to certify that they do not operate DEI programs that violate applicable federal anti-discrimination laws. *See* EO 14,173. OVW and OJP implemented that directive through the terms and award conditions. That is a straightforward administrative response to a presidential directive requiring civil-rights compliance in federal awards.

Nor did the agencies fail to consider underserved populations. OVW expressly considered programs serving culturally specific and underserved populations, and concluded that those programs remain lawful when they fund victim services, training, and law-enforcement responses rather than unlawful preferences. *See* OVW AR at 73–74.

Plaintiffs identify no cognizable reliance interest in operating programs that violate federal

---

(2019                                    OJP                                    Terms); www.ojp.gov/funding/explore/legaloverview2020/mandatorytermsconditions#1    (2020   OJP Terms);   www.ojp.gov/funding/explore/legaloverview2021/mandatorytermsconditions#1   (2021 Terms);   www.ojp.gov/funding/explore/legaloverview2022/mandatorytermsconditions#1   (2022 Terms);   www.ojp.gov/funding/explore/legaloverview2023/mandatorytermsconditions#1   (2023 Terms);   www.ojp.gov/funding/explore/legaloverview2024/mandatorytermsconditions#1   (2024 Terms);   www.ojp.gov/funding/explore/legaloverview2025/mandatorytermsconditions#1   (2025 Terms).

civil rights or nondiscrimination laws. *See* Pls.' Mot. at 20–21. To the extent recipients relied on federal funding, that reliance has always been subject to civil-rights compliance, material certifications, and remedies for false statements. *See* Background, Parts B.5 and C.1. The certifications are consistent with existing law, the same as previous requirements, and adequately explained by the record.

  3.  *The OJP Unlawful Presence Provision Is Not Arbitrary and Capricious*

The OJP Unlawful Presence Provision is adequately explained. EO 14,332 directed agencies to strengthen oversight of discretionary grantmaking and ensure that federal funds advance American interests and do not fund or facilitate illegal immigration. 90 Fed. Reg. at 38929. Consistent with that directive, OJP decided to impose the provision on only two competitive discretionary programs: the Services Program and the PAWS Program.

The administrative record shows that OJP reviewed the relevant NOFOs, identified the statutory authorities for both programs, and determined that neither expressly requires services to removable aliens or aliens otherwise unlawfully present in the United States. OJP AR-2 at 82 (Jan. 23, 2026 Email). OJP then considered the "limited supply of federal discretionary grant program dollars" and concluded that those dollars should be directed to U.S. citizens and lawful residents. *Id.* That is a permissible allocation judgment, especially where domestic violence services and limited housing resources are insufficient to meet demand. *See Lincoln*, 508 U.S. at 193 (stating that fundings decision involve "a complicated balancing of a number of factors which are peculiarly within [an agency's] expertise," including "whether the agency has enough resources" to fund a program and "whether a particular program best fits the agency's overall policies" (citation omitted)). The PAWS Program in particular addresses housing with or for pets for up to two years—a resource for which demand is high and unmet need is acute. *See* 34 U.S.C. § 20127;

*see also* NNEDV, *Domestic Violence Counts: 19th Annual Report* (May 2025).[24] Accordingly, the agency acted well within its "broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities." *Massachusetts v. EPA*, 549 U.S. 497, 527 (2007); *see also Nat. Res. Def. Council v. SEC*, 606 F.2d 1031, 1055–56 (D.C. Cir. 1979). Prioritizing expenditure of federal funds to benefit Americans falls well within such discretion.

The Unlawful Presence Provision is also carefully limited. It applies only to award funds, and places no restrictions on recipients' use of non-federal funds. OJP AR-2 at 82 (Jan. 23, 2026 Email). Nor does it apply where the use of funds is expressly authorized by law, expressly allowable under the award, or where the prohibition would contravene an express requirement of law or judicial ruling. *Id.* Those limitations answer Plaintiffs' arguments that the condition requires grantees to violate other statutes. *See* Pls.' Mot. at 39–41.

Plaintiffs also argue that OJP failed to consider the difficulty of determining immigration status. *See id.* at 37–39. But the condition does not prescribe any particular verification process, require disclosure of confidential client information, require background checks, or require a victim to consent to disclosure as a condition of service. Plaintiffs' hypothetical conflicts with VAWA confidentiality provisions and the PAWS Act's background-check prohibition, *see id.* at 38, and rests on assumptions of implementation methods the condition does not mandate. The agency was not required to reject a funding condition based on speculative applications that the condition itself excludes as contrary to law.

Moreover, OJP expressly considered reliance interests and concluded that discretionary federal grant funding recipients do not have a cognizable reliance interest in receiving awards on their preferred terms. OJP AR-2 at 82 (Jan. 23, 2026 Email). OJP also explained that applicants

---

[24] https://perma.cc/82FZ-39QB (full report: https://perma.cc/GU66-R3C5).

35

applied with the awareness they might not receive any award and that award conditions could attach. *Id.* Even if any limited reliance interests existed, OJP determined that they were outweighed by the government's interest in proper stewardship of limited federal funds. *Id.*

In sum, OJP reviewed the authorizing statutes, limited the condition to two discretionary programs, carved out non-federal funds, considered reliance interests, and tied the condition to the real-world issues of limited federal resources high demand. *See generally* OJP AR-2. That is the hallmark of reasoned decisionmaking, and the OJP Unlawful Presence Provision survives arbitrary and capricious review.

## C.      The Challenged Terms Are Within Defendants' Statutory Authority and Are Consistent With Law

Plaintiffs' argument that OVW and OJP exceeded their authority in implementing grant terms fails. Plaintiffs cannot point to any statutory provisions that prohibit the agencies from implementing terms in their grant programs. Rather, the law shows the opposite: Congress granted OVW and OJP substantial discretion to administer the relevant grant programs and to impose conditions ensuring that federal funds are used consistently with statutory purposes. *See, e.g.,* 34 U.S.C. § 10444(8) (authorizing the OVW Director to "establish[] such rules, regulations, guidelines, and procedures as are necessary to carry out any function of the Office"); *see also id.* § 20111(c)(3) (authorizing the OVC Director to establish programs "on terms and conditions determined by the Director"). And it is long settled that "by contract, the Government may fix specific and precise conditions to implement federal objectives." *United States v. Orleans*, 425 U.S. 807, 816 (1976). The executive branch may lawfully implement federal objectives that are consistent with applicable federal statutes, and the challenged provisions do just that.

Grant programs funded through lump-sum appropriations necessarily require agencies to make difficult policy judgments about how best to allocate limited resources. As the Supreme

36

Court has explained, "the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln*, 508 U.S. at 192. There is nothing unlawful about a federal agency implementing terms that allocate those limited resources.

1.    *OVW's Out-of-Scope Activities Are Lawful*

**Illegal DEI Term.** The Illegal DEI term, in stating that a grantee cannot promote "discriminatory programs or ideology," directly furthers VAWA's requirement that recipients may not discriminate against individuals "on the basis of actual or perceived race, color, religion, national origin, sex, gender identity[,] . . . sexual orientation, or disability[.]" 34 U.S.C. § 12291(b)(13)(A). Nevertheless, Plaintiffs conted the Illegal DEI term exceeds Defendants' statutory authority and is contrary to law. *See* Pls.' Mot. at 42, 50. In so arguing, Plaintiffs improperly isolate phrases such as "discriminatory . . . ideology" and "diversity, equity, inclusion, and accessibility programs that do not advance the policy of equal dignity and respect," *id.* at 50, 65, while ignoring that the term limits DEI activities only to the extent that they are discriminatory or illegal, *see* 34 U.S.C. § 10441; *see also* OVW AR at 212 (Final NOFO Template). The term does not prohibit culturally specific services or underserved-population services. OVW AR at 212 (Final NOFO Template). OVW expressly recognized that VAWA authorizes such work, and the NOFO template confirms that recipients must serve all eligible victims as required by statute, regulation, or award condition. *Id.* In fact, the condition expressly clarifies it is "not intended to interfere with any of OVW's statutory obligations, such as funding for HBCUs, culturally specific services, and disability programs." *Id.* This forecloses Plaintiffs' contention that the term is contrary to law or prevents them from assisting minorities or underserved populations. *See* Pls.' Mot. at 50–51.

37

Plaintiffs next argue the Illegal DEI Term conflicts with VAWA's alleged "clear commitment to advancing DEI." *Id.* But VAWA never uses the term "DEI" or "DEIA." Rather, VAWA's purpose is to support services to victims of domestic violence, dating violence, stalking, or sexual assault, and to ensure funded programs do not discriminate in providing those services. *See* 34 U.S.C. § 10441; OVW AR at 279 (Baran Decl. ¶ 3). VAWA has an express nondiscrimination provision that this grant term furthers. *See* 34 U.S.C. § 12291(b)(13)(A).

**Defending Women Term.** Plaintiffs' attack on the Defending Women Term also fails. *See* Pls.' Mot. at 23-24. This term prohibits the "[i]nculcating or promoting gender ideology." OVW AR at 212 (Final NOFO Template). It does not prohibit serving certain victims of domestic violence, including those who are transgender. Rather, it furthers VAWA's express prohibition on grantees from excluding, denying benefits to, or discriminating against any person on the basis of sex, gender identity, and sexual orientation. 34 U.S.C. § 12291(b)(13)(A). Indeed, a note at the end of the list of out-of-scope activities states "[r]ecipients should serve all eligible victims as required by statute, regulation, or award condition." OVW AR at 212 (Final NOFO Template). Moreover, Plaintiffs' contention that enforcing sex-segregated spaces is discriminatory, *see* Pls.' Mot. at 49–50, is directly undercut by the Supreme Court's decision in *West Virginia v. B.P.J.*, 609 U.S. ----, 2026 WL 1868739 (June 30, 2026). At any rate, none of the hypothetical scenarios that Plaintiffs pose has occurred in this case because it involves a facial challenge. Plaintiffs have not met their burden to demonstrate that the term is contrary to any law.

**Immigration-related Terms.** Plaintiffs also object to the Violating Immigration Law term and Prioritizing Illegal Aliens terms, arguing they conflict with VAWA provisions regarding alienage status and immigration matters. Pls.' Mot. at 51–52. Plaintiffs seem to suggest that VAWA requires prioritizing services to illegal aliens over U.S. citizens in some instances. That cannot be

38

a permissible reading of the statute, because it would violate nondiscrimination law. Moreover, the Violating Immigration Law term simply prohibits using federal funds for conduct that would facilitate or promote immigration law violations. It does not prohibit otherwise lawful uses of grant funds to aid immigrant victims.  Indeed, it is well within the scope of VAWA's "allowable use" of funds for grant recipients to assist victims in complying with immigration law.  *See* 34 U.S.C. § 12291(a)(51), (a)(24).  OVW regulations stipulate that a victim's eligibility for services "is not dependent on the victim's immigration status." 28 C.F.R. § 90.4(c). Additionally, recipients may use grant funds to help victims access immigration benefits designed for abused immigrants and other immigrant victims of crime (*i.e.*, VAWA self-petitioning, VAWA cancellation of removal, and T and U visas).  *See, e.g.,* 34 U.S.C. § 10461(b)(5) (allowing grant funds under the ICJR Program to be used for strengthening assistance to victims in immigration matters); *Id.* § 12341(b)(2) (allowing funds under the Rural Program to be used to assist victims of domestic violence, dating violence, sexual assault, and stalking in immigration matters); *Id.* § 10441(b)(10) (allowing STOP Formula Grant Program funds to be used to provide assistance to victims of domestic violence and sexual assault in immigration matters). VAWA provisions plainly do not greenlight immigration law violations. Rather, VAWA's provisions show that grant funds should be used to assist victims in complying with the law.

**Systemic Social Justice Term.** Plaintiffs argue that the Systemic Social Justice Term, which prohibits framing "domestic violence or sexual assault as systemic social justice issues *rather than* criminal offenses," violates VAWA. Pls.' Mot. at 44 (emphasis added). Yet Plaintiffs cannot point to any provision of VAWA to support the contention that sexual assault or domestic violence crimes should not be treated as criminal offenses. Nor could they. VAWA's purpose is the exact opposite: its core goal is "to improve the criminal justice response to domestic violence,

dating violence, sexual assault, and stalking as *serious violations of criminal law*, and to seek safety and autonomy for victims." 34 U.S.C. § 10461(a) (emphasis added). To counter this, Plaintiffs cherry pick legislative history to read in a new statutory purpose. *See* Pls.' Mot. at 44. But the Systemic Social Justice Term aligns with the express textual purpose of VAWA that recurs throughout the statute—holding offenders accountably through the criminal justice system. *See, e.g.,* 34 U.S.C. § 10441(a) (stating a core purpose of Violence Against Women Act grants is to "strengthen effective law enforcement and prosecution strategies"). Moreover, the plain language of the term does not preclude discussion of systemic causes of these crimes; it only prohibits framing them as systemic social justice issues "rather than" criminal offenses. *See* OVW AR at 212 (Final NOFO Template). Plaintiffs' arguments cannot be squared with the term.

**Anti-Law Enforcement Term.** Similarly, Plaintiffs ignore that the Anti-Law Enforcement Term, which prohibits programs from limiting the role of law enforcement, furthers VAWA's core purpose to strengthen law enforcement involvement and responses to sexual assault and domestic violence crimes. *See, e.g., id.* § 12341(b)(1) ("The Attorney General . . . may award grants to . . . establish[] cooperative efforts and projects among law enforcement officers, prosecutors, victim service providers, and other related parties to investigate and prosecute incidents of domestic violence, dating violence, sexual assault, and stalking . . . [.]"); *Id.* § 20123(d) ("The Attorney General shall make grants . . . for the purpose of . . . working with Federal, State, tribal, territorial and local governments, agencies, and organizations to develop or enhance population specific services"). Plaintiffs identify no statutory provision that this term violates. Moreover, nothing in this provision limits serving certain victims, as Plaintiffs seemingly contend. *See* Pls.' Mot. at 44, 51.

**EO Term.** Plaintiffs' attack on the EO Term also fails. The term bars only "[a]ny activity

or program that unlawfully violates an Executive Order." OVW AR at 212, 222. If an Executive Order imposes no lawful obligation on a grantee, there is no violation for the term to reach. And if applying an Executive Order would be unlawful or contrary to VAWA, the term by its own text does not require compliance. Plaintiffs cite cases rejecting generic "consistent with law" language, *see* Pls.' Mot. at 43 (citation omitted), but this term applies only to unlawful violations of Executive Orders and operates as a grant-funding lawfulness condition. It does not expand Executive Orders beyond their lawful scope.

**Campaigns Without Improvements Term.** As an initial matter, Plaintiffs acknowledge that Defendants do not exceed their statutory authority to adopt the "Campaigns Without Improvements" Term, which simply prohibits grantees from using grant programs for funds that do not lead to tangible improvements in prevention, victim safety, or offender accountability. *See id.* at 45 n.17. OVW has long required recipients to submit performance reports used for monitoring, congressional reporting, identifying technical-assistance needs and best practices, and other performance-related purposes. OVW AR at 106 (FY 2025 Companion Guide). This term is lawful; nor is it arbitrary and capricious, for the reasons explained above, Argument, Part B.1.

2. *The OVW and OJP Certification Requirements Are Lawful*

Plaintiffs contend that OVW and OJP exceeded their statutory authority by flagging recipients' requirements to comply with federal civil rights and nondiscrimination laws, and by requiring grantees to certify compliance with those laws is material for purposes of the False Claims Act. *See* Pls.' Mot. at 46–48. These contentions are misplaced.

***First,*** the federal government routinely designates certain provisions as conditions of payment through express language in federal contracts and grant agreements to clarify which obligations are particularly important to the government's payment decisions. Courts routinely

41

consider express contractual language when evaluating materiality. Indeed, the First Circuit has recognized that "whether the government expressly identified compliance with particular requirements as a condition of payment" is a non-dispositive factor in the materiality assessment. *See, e.g., United States v. Town of Hingham*, 683 F. Supp. 3d 81, 89 (D. Mass. 2023) (citing *Universal Health Servs., Inc. v. United States ("Escobar I")*, 579 U.S. 176, 193 n.5 (2016)), *aff'd sub nom. U.S. ex rel. Zotos v. Town of Hingham*, 98 F.4th 339 (1st Cir. 2024). Flagging material terms therefore helps clarify expectations for grantees and does not exceed the government's authority. There is nothing remotely unlawful about requiring recipients of federal grants to affirm that that the government considers compliance with antidiscrimination laws material to its payment decisions.

Identifying compliance with a particular term as material does not "gut" the False Claims Act materiality standard, as Plaintiffs contend. Pls.' Mot. at 48. The Certification Requirement simply announces, and requires the funding recipient to acknowledge, that the government considers compliance to be a material condition on payment. The Supreme Court has held that materiality is a "demanding" and "rigorous" standard that cannot be satisfied merely because the government labels a requirement as a condition of payment. *Escobar I*, 579 U.S. at 192, 194; *see also Town of Hingham*, 683 F. Supp. at 90 (holding that "even if particular provisions had been expressly identified" as a condition of payment under a contract, "the alleged noncompliance" would not be material). Courts consider multiple factors in evaluating materiality, and express designation is only one of them. *See Escobar I*, 579 U.S. at 194 (explaining that the "Government's decision to expressly identify a provision as a condition of payment is relevant," though "not automatically dispositive[,]" as evidence of materiality).

Moreover, Plaintiffs' speculation that grantees could face False Claims Act liability based

on good faith misunderstandings of the law is misplaced. The False Claims Act is "a fraud statute" that requires proving a culpable mental state. *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749–52 (2023). It does not reach "an innocent, good-faith mistake about the meaning of an applicable rule," nor claims based on reasonable but erroneous interpretations of legal obligations. *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287–88 (D.C. Cir. 2015).

*Second,* Defendants acted within their authority in noting that certain DEI programs may violate nondiscrimination laws. The certification provision requires grantees to certify that they do not operate programs "that violate any applicable Federal civil rights or nondiscrimination laws," including programs "having components relating to diversity, equity, and inclusion." OJP, *General Conditions* (May 12, 2025).[25] The provision therefore prohibits only DEI-related practices that violate nondiscrimination laws—such as using race as a basis to make employment decisions or as the basis to allocate federal resources—not every DEI program across the board.

Nor does the provision require Plaintiffs to certify that they do not advocate for DEI. *See Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 96–97 (D.D.C. 2025); *S.F. A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1200 (N.D. Cal. 2025) (finding that the plaintiffs "have not demonstrated that they [are] likely to succeed in their challenge to the Certification Provision because they have not shown at this juncture that the provision goes beyond targeting DEI programs that violate federal antidiscrimination law"), *appeal filed*, No. 25-4988 (9th Cir. Aug. 7, 2025). Rather, it simply requires award recipients (in the case of VOCA Victim Assistance Grants at issue here, the state recipients) to certify compliance with existing legal obligations under "applicable" federal civil rights laws such as Title VI of the Civil Rights Act of 1964, which already applies to all recipients of federal assistance, 42 U.S.C. § 2000d-1. Accordingly, the legality of a

---

[25] https://perma.cc/D3NX-3W9R.

general certification of compliance with antidiscrimination laws cannot be disputed. And Plaintiffs never explain why such general certification somehow becomes unlawful when it simply adds more detail to highlight a certain category of programs—unlawful DEI—that violate antidiscrimination laws.

Certification requirements of this kind are longstanding. It has been true for decades that "[e]very application for Federal financial assistance must, 'as a *condition* to its approval and the extension of any Federal financial assistance,' contain assurances that the program will comply with Title VI *and* with all requirements imposed pursuant to the executive regulations issued under Title VI." *Guardians Ass'n v. Civ. Serv. Comm'n of N.Y.*, 463 U.S. 582, 629–30, 630 n.22 (1983) (Marshall, J., dissenting) (citing regulations from Departments of Agriculture, Commerce, Defense, Education, Energy, Health and Human Services, Housing and Urban Development, Interior, Justice, Labor, State, Transportation, and Treasury). These "assurance[s]" of compliance are "given in consideration of federal aid, and the federal government extends assistance in reliance on the assurance of compliance"—but the obligations of Title VI apply regardless of any certification. *Id.* at 630 (citation omitted). The requirement here is no different: although recipients must certify specifically that any DEI programs they run comply with federal antidiscrimination law, this certification "does not place upon a recipient [any] unanticipated burdens because any recipient must anticipate having to comply with the law." *Id.*

Plaintiffs also argue that the Certification Requirements conflict with "Congress's clear commitment to advancing DEI values through the administration of OVW grants, as reflected in those myriad provisions." Pls.' Mot. at 50. Plaintiffs then cite several provisions of VAWA that address grant programs directed to rural or underserved populations. *See id.* None of these provisions use the terms DEI, nor do they authorize unlawful discrimination or violation of

applicable civil rights laws, as Plaintiffs' argument implies. Indeed, such authorization cannot be possible, given that another provision of VAWA expressly bars such discrimination. *See* 34 U.S.C. § 12291(b)(13)(A).

Plaintiffs are incorrect that the certification requirements are contrary to law. The certification does not require Plaintiffs to certify that they oppose DEI, stop serving underserved communities, or abandon lawful nondiscrimination efforts. *See Nat'l Urb. League*, 783 F. Supp. 3d at 96–97; *S.F. A.I.D.S. Found.*, 786 F. Supp. 3d at 1200. It requires recipients to certify compliance with existing legal obligations under applicable federal civil-rights laws, including Title VI, which already applies to recipients of federal financial assistance. 42 U.S.C. § 2000d-1.

### 3. The OJP Unlawful Presence Provision Is Lawful

OJP implemented the Unlawful Presence Provision to allocate limited funding within these programs to individuals lawfully present in the United States. *See* OJP AR-2 at 82–83. That decision reflects a policy judgment regarding the administration of limited federal resources, which is precisely the type of decision entrusted to agencies administering discretionary grant programs with "limited resources and personnel to carry out its delegated responsibilities." *Massachusetts*, 549 U.S. at 527. Plaintiffs cannot identify any statute prohibiting such balancing of limited resources.

Plaintiffs nevertheless argue that defendants exceeded their statutory authority by implementing the Unlawful Presence Provision in PAWS Act grants specifically, arguing that the Act does not provide authority for the agencies to implement grant terms that are designed to balance limited grant resources. *See* Pls.' Mot. at 53. That is inaccurate. The relevant statute states that DOJ—which has a memorandum of understanding with the Secretary of Agriculture that allows it to administer the PAWS program—may require applicants, "at such time, in such manner,

45

and containing such information as the Secretary may reasonably require," to provide "such assurances as the Secretary determines to be necessary to ensure compliance by the entity with the requirements of this section[.]" *See* 34 U.S.C. § 20127(2)(A)(ii).

Moreover, Plaintiffs framing of the law is incorrect. Courts have always emphasized that in administering discretionary funding, an agency must have "the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln*, 508 U.S. at 192. Indeed, determining otherwise would prevent agencies from addressing new circumstances or decreased appropriations for a federal grant program, which would frustrate the reason for having agencies supervise and administer grant programs in the first place.

Plaintiffs also contend that the OJP Unlawful Presence Provision is contrary to law because grantees would need access to immigration databases or documentation that victims may not possess. Pls.' Mot. at 52. These arguments miss the mark, because they involve reading in additional information into the provision that it does not expressly require.

First, domestic violence service providers likely already conduct basic intake procedures when assisting victims, such as collecting names and other identifying information. *See, e.g.,* 34 U.S.C. § 20127(6) (PAWS Program's reporting requirements). Determining a victim's immigration status therefore does not impose a significant additional burden. Second, to comply with a grant provision, federal regulations provide that a grantee must "establish, document, and maintain effective internal control over the Federal award that provides reasonable assurance that the recipient or subrecipient is managing the Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the Federal award." 2 C.F.R. § 200.303(a). That requirement does not conflict with the statutory prohibition identified by Plaintiffs. *See* Pls.' Mot.

46

at 52–53. Third, the challenged provision includes an explicit savings clause ensuring that it does not apply where doing so would conflict with governing law. The provision also allows grantees the option to provide services using a non-Federal source of funds where a grantee cannot confirm that a victim is a U.S. citizen or is lawfully present.

***

In short, Plaintiffs' arguments regarding statutory violations depend on hypothetical events and Plaintiffs' own interpretation of the challenged terms. The OVW terms are lawful: they preserve service to eligible victims in the context of limited resources and identify activities that do not further VAWA's purposes. The OJP terms are likewise lawful. The Unlawful Presence Provision applies only to two discretionary programs, only to federal funds, and only where not contrary to governing law. And the OVW and OJP Certification Requirements merely require recipients to certify compliance with existing civil-rights law and acknowledge that the government considers that compliance material. None of those terms exceeds Defendants' authority or conflicts with the governing statutes. Plaintiffs have failed to show how the terms are in excess of statutory authority or contrary to law, and summary judgment should be granted to Defendants.

## D.    Plaintiffs' Constitutional Claims Fail

The "fundamental and longstanding principle of judicial restraint" instructs courts to "avoid reaching constitutional questions in advance of the necessity of deciding them." *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1123 (9th Cir. 2025) (citation omitted), *cert. granted sub. nom. Noem v. Al Otro Lado*, 146 S. Ct. 604 (2025); *see also City & Cnty. of S.F. v. U.S. Dep't of Just.*, 822 F. Supp. 3d 1056, 1066–67 (N.D. Cal. 2026).

That principle applies with particular force where, as here, Plaintiffs assert facial constitutional challenges. Plaintiffs contend that the challenged provisions "are unconstitutional

47

not as applied to [Plaintiffs'] own conduct, but rather, on their face, as they apply to the population generally." *Edgar v. Haines*, 2 F.4th 298, 313 (4th Cir. 2021) (emphasis omitted); *see* Pls.' Mot. at 54. But facial challenges are "the most difficult challenge to mount successfully," *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (citation omitted), and for "a host of good reasons," *Moody*, 603 U.S. at 723. "Claims of facial invalidity often rest on speculation about the law's coverage and its future enforcement"; they "threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways[,]" *id.* (citation modified); and they "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied," *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008) (citation modified). Therefore, to succeed on either of their facial challenges, Plaintiffs must "establish that no set of circumstances exists under which" the challenged terms "would be valid[,]" *Rahimi*, 602 U.S. at 693 (quoting *Salerno*, 481 U.S. at 745)—*i.e.*, that the terms are unconstitutional in all of their applications, *Wash. State Grange*, 552 U.S. at 449.

Here, Plaintiffs' facial challenge should fail, because it rests on several speculative hypotheticals that have not yet occurred.

### 1.    *Plaintiffs' Fifth Amendment Challenges Fail.*

Plaintiffs' Fifth Amendment vagueness claim fails at the threshold and on the merits. *See* Pls.' Mot. at 61. Plaintiffs bring a facial challenge to grant terms before any enforcement action applying those terms to their conduct. That posture matters. Plaintiffs "chose to litigate [their] case[] as [a] facial challenge[], and that decision comes at a cost." *Capen v. Campbell*, 134 F.4th 660, 674–75 (1st Cir. 2025) (citation omitted). To prevail facially, Plaintiffs must show that "no

48

set of circumstances exists under which the Act would be valid[,]" *id.* at 669 (citation omitted), and the government "need only demonstrate that [the challenged provision] is constitutional in some of its applications[,]" *id.* at 674–675. Therefore, a court may not invalidate grant terms by focusing on hypothetical edge cases rather than "the circumstances in which [the provision] was most likely to be constitutional[.]" *Id.* at 674 n.8 (citation omitted).

That principle is especially important in the grant context. The Supreme Court has recognized that when "the Government is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." *Finley*, 524 U.S. at 589. *Finley* rejected a vagueness challenge to grant criteria requiring consideration of "general standards of decency and respect for the diverse beliefs and values of the American public[,]" although those standards were "undeniably opaque" and might raise vagueness concerns in a criminal or regulatory scheme. *Id.* at 588–90 (Scalia, J., concurring) (citation omitted). The Fourth Circuit has likewise recognized "greater latitude for vagueness in funding decisions than [courts] would 'in a criminal statute or regulatory scheme.'" *Nat'l Ass'n of Diversity Officers in Higher Educ.*, 167 F.4th at 102 (rejecting Due Process vagueness challenges to DEI grant condition because "Plaintiffs can't wriggle out from under *Finley*'s weight.")

Plaintiffs' claim also fails because they have not identified a protected property or liberty interest. To establish a due process violation, Plaintiffs must show more than an "abstract need or desire" or "unilateral expectation"; they must show a "legitimate claim of entitlement." *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (citation omitted). The Supreme Court has recognized protected property interests in narrow entitlement-like benefits, but those protections do not extend to ordinary government contracts or hoped-for future awards. *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 88 (1st Cir. 2014) ("Dashed hopes of receiving future government

49

work, without more, cannot yield a constitutionally protected property interest." (citation modified)); *see New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014) ("The Supreme Court 'has never held that government contracts . . . create property interests protected by due process.'" (quoting 2 Richard J. Pierce Jr., *Administrative Law Treatise* 764 (5th ed. 2010))). The same reasoning applies with particular force to grant funds, which remain federal funds until the grant purpose is achieved. *See Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 669 (1985). Nor have Plaintiffs alleged the kind of government-imposed reputational stigma that could support a protected liberty interest.

In any event, the challenged terms are not vague. A provision is void for vagueness only if it fails to "provide a person of ordinary intelligence fair notice of what is prohibited" or is so standardless that it invites seriously discriminatory enforcement. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citation omitted). Here, the challenged OVW terms use ordinary words—such as "promote," "facilitate," "discourage," and "collaboration"—that are readily understandable in context. Even criminal statutes need not define every common term; undefined terms are read according to their ordinary meaning. *United States v. Brennick*, 908 F. Supp. 1004, 1012 (D. Mass. 1995). The standard is more forgiving for grant terms. *Finley*, 524 U.S. at 589.

Plaintiffs cannot show that the challenged terms are standardless or have no lawful applications. By contrast, in a facial challenge, the government need only show that the challenged terms would be lawful in at least *some* applications, *see Capen*, 134 F.4th at 674–675. Plainly, all the terms have lawful applications. Indeed, most of the terms merely require compliance with pre-existing federal law.

Plaintiffs' specific challenges to certain terms fail. Plaintiffs' challenge to the EO Term fails because the term does not create new substantive obligations. *See* Pls.' Mot. at 62. It bars only

"any activity or program that unlawfully violates an Executive Order." OVW AR at 212 (Final NOFO Template). If an Executive Order imposes no lawful obligation on a grantee, there is no violation for the term to reach. Plaintiffs therefore cannot convert speculation about possible Executive Order applications into facial invalidation of a grant term.

Third, the nondiscrimination certifications are not vague. They require recipients to comply with "applicable federal civil rights and nondiscrimination laws." OVW AR at 124 (FY 2025 General Terms and Conditions). That is a familiar legal standard for federal funding recipients. For years, OVW and OJP have required compliance with DOJ civil-rights and nondiscrimination regulations and that such requirements are material for False Claims Act purposes. See OVW AR at 280 (Baran Decl. ¶ 11); *see also*, Background, Parts B.5 & C.1.  And it has long been true that applications for federal financial assistance must include assurances that the program will comply with Title VI and related implementing regulations. *Guardians Ass'n*, 463 U.S. at 629–30 & n.22 (Marshall, J., dissenting). Plaintiffs do not challenge those underlying civil-rights statutes as vague. Requiring recipients to certify compliance with existing law therefore does not deny fair notice.[26]

Fourth, the OJP Unlawful Presence Provision is not vague. It incorporates established immigration-law concepts, including "removable alien," and contains express carveouts where use of funds is authorized by law, allowable under the award, or required by law or judicial ruling. Plaintiffs' concerns about verifying immigration status are speculative and implementation-

---

[26] On July 29, 2025, the Department of Justice issued a memorandum entitled *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination* that "identifies 'Best Practices' as non-binding suggestions to help entities comply with federal antidiscrimination laws and avoid legal pitfalls," while making it clear that its recommendations "are not mandatory requirements but rather practical recommendations to minimize the risk of violations." *See* www.justice.gov/ag/media/1409486/dl.

specific. They would be better addressed, if necessary, in a concrete as applied challenge, and do not justify facial invalidation.

In sum, Plaintiffs' vagueness theory asks the Court to assume that Defendants will interpret ordinary grant language unlawfully, apply terms contrary to statutory carveouts, and pursue enforcement in bad faith. That is improper framing for a constitutional challenge. Agency action is presumed valid. *Int'l Jr. Coll. of Bus. & Tech., Inc. v. Duncan*, 802 F.3d 99, 113 (1st Cir. 2015). And "[t]he mere possibility that some agency might make a legally suspect decision to award a contract or to deny funding for a project does not justify an injunction against enforcement of a policy that . . . is above suspicion in the ordinary course of administration." *Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002). Plaintiffs' facial vagueness claim should be rejected.

### 2.    *Plaintiffs' First Amendment Challenges Fail*

Plaintiffs bring First Amendment challenges to three terms: the OVW and OJP Certification Requirements and the OVW Defending Women Term. *See* Pls.' Mot. at 56–58. Plaintiffs' challenges fail. As an initial matter, Plaintiffs overlook the settled distinction between restricting speech and declining to subsidize it. Government spending is not subject to traditional First Amendment scrutiny merely because the government chooses not to fund certain speech or programmatic activities. *Rust v. Sullivan*, 500 U.S. 173, 193 (1991); *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.* ("*AID*"), 570 U.S. 205, 214 (2013). The government does not violate the First Amendment simply by deciding what activities it will fund. *Finley*, 524 U.S. at 589. That principle controls—Plaintiffs remain free to use non-federal funds to promote topics on gender identity, law enforcement, immigration, or any other subject. They may also continue to speak about DEI, as the certification requirements only require compliance with existing federal law.

52

Even putting aside that government spending is not subject to First Amendment scrutiny, Plaintiffs' First Amendment claims fails for three additional reasons. First, Plaintiffs bring facial challenges and cannot satisfy the rigorous standard for facial invalidation in the First Amendment context. Second, the Certification Requirements do not restrict protected speech; they require compliance with existing federal civil-rights and nondiscrimination law. Third, the Defending Women Term is a permissible funding limitation that defines what OVW will subsidize with grant funds and leaves Plaintiffs free to express their views outside the federally funded program.

Plaintiffs cannot satisfy the standard for facial First Amendment relief. As explained above, facial challenges are disfavored, including in the First Amendment context. *Moody,* 603 U.S. at 744 ; *United States v. Hansen*, 599 U.S. 762, 770 (2023). A plaintiff bringing a facial challenge in the First Amendment context must show that a substantial number of the challenged provision's applications are unconstitutional, judged in relation to its plainly legitimate sweep. *See Cent. Maine Power Co. v. Maine Comm'n on Governmental Ethics & Election Pracs*., 144 F.4th 9 (1st Cir. 2025). Put differently, a court may not strike down a provision based on speculative or marginal applications; Plaintiffs must show that unconstitutional applications substantially outweigh constitutional ones. And at the summary judgment stage, Plaintiffs must make this showing with competent evidence, not speculative allegations. *See Lujan*, 504 U.S. at 561.

Plaintiffs cannot make that showing. The Certification Requirements have numerous plainly lawful applications: they require recipients of federal funds to certify compliance with existing federal civil-rights and nondiscrimination laws. The Defending Women Term likewise has plainly lawful applications, including preventing OVW grant funds from being used to promote ideological views unrelated to victim services and ensuring that federally funded programming remains focused on victim safety, recovery, privacy, and program effectiveness. Plaintiffs' facial

claims therefore fail at the threshold.

**The Certification Requirements**. The Certification Requirements do not impose any new substantive restriction on Plaintiffs' speech. They require grant recipients to certify that they do not operate programs that violate applicable federal civil-rights or nondiscrimination laws, including programs with components relating to diversity, equity, and inclusion. They do not require Plaintiffs to certify that they oppose DEI, stop advocating for DEI, or refrain from expressing views about diversity, equity, or inclusion. *See Nat'l Ass'n of Diversity Officers in Higher Educ.*, 167 F.4th at 97–100; *Nat'l Urb. League*, 783 F. Supp. 3d at 102 ; *S.F. A.I.D.S. Found.*, 786 F. Supp. 3d at 1222.

As the Fourth Circuit recently explained, "the Provision requires only that plaintiffs certify compliance with federal antidiscrimination laws, which the First Amendment doesn't confer a right to violate." *Nat'l Ass'n of Diversity Officers in Higher Educ.*, 167 F.4th at 103. "Put another way, plaintiffs have no protectable speech interest in operating, and 'no constitutional right to operate, DEI programs that violate federal antidiscrimination law.'" *Id.* at 103–104 (citation omitted).

Plaintiffs' argument depends on reading unstated subtext into the certification. But the Court is bound by the text. The Certification Requirements do not declare all DEI unlawful. They do not adopt a new interpretation of federal civil-rights law. And they do not penalize advocacy regarding DEI. They require compliance with "applicable" federal civil-rights and nondiscrimination laws, including statutes such as Title VI, which apply to recipients of federal assistance regardless of any certification. *See* 42 U.S.C. § 2000d-1.

Plaintiffs' False Claims Act theory does not transform the certifications into speech restrictions. Since 2017, OVW awards have warned that materially false, fictitious, or fraudulent statements to the federal government may be subject to criminal prosecution or civil and

administrative remedies under the False Claims Act. OVW AR at 282 (Baran Decl. ¶ 31). Plaintiffs offer no persuasive reason why recognizing civil-rights compliance as material to federal funding decisions suddenly violates the First Amendment.

Nor does potential FCA enforcement create a present First Amendment injury. The FCA is "a fraud statute" requiring proof of a culpable mental state. *SuperValu Inc.*, 598 U.S. at 749–52. It does not impose liability for "an innocent, good-faith mistake about the meaning of an applicable rule" or for "reasonable but erroneous interpretations of a defendant's legal obligations." *MWI Corp.*, 807 F.3d at 287–288 (citation omitted). Plaintiffs' speculative concern that DOJ might someday bring an erroneous enforcement action cannot support facial invalidation. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *Hansen*, 599 U.S. at 782, 785.

Finally, *AID* does not help Plaintiffs. That case held that the government may not condition funding on a requirement that compels recipients to affirm a government-favored belief outside the funded program. *AID*, 570 U.S. at 218–19. The Certification Requirements do no such thing. They do not compel Plaintiffs to espouse any view about DEI. They require only that recipients comply with existing federal nondiscrimination law—something Plaintiffs have no First Amendment right to violate. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 389–90 (1992).

**The Defending Women Term.** Plaintiffs' First Amendment challenge to the Defending Women Term also fails. The term bars use of OVW grant funds to inculcate or promote gender ideology as defined in Executive Order 14168. It does not bar Plaintiffs from expressing their views about gender identity outside the federally funded program. Nor does it permit recipients to deny services to eligible victims. The NOFO template preserves recipients' obligation to serve all eligible victims as required by statute, regulation, or award condition. OVW AR at 288 (Baran Decl. ¶ 20).

55

OVW may lawfully decide that federal funds should support victim services offender accountability rather than the promotion of contested ideological views about sex and gender. The First Amendment does not require the government to fund such advocacy merely because Plaintiffs wish to engage in it.

The Defending Women Term also has plainly constitutional applications, which defeats Plaintiffs' facial challenge. *See* OVW AR at 212 (Final NOFO Template). For example, the provision would prohibit using grant funding meant to provide practical training to those responding to domestic violence victims to instead host a seminar on how gender is a social construct. And there are many other lawful applications of the rule. Plaintiffs therefore have not demonstrated any constitutional violation as to the Defending Women Term.

3.    *Plaintiffs' Separation of Powers and Spending Clause Claims Fail*

Plaintiffs' separation-of-powers argument is based on the incorrect premise that Defendants allegedly acted in excess of statutory authority because "Congress has not authorized" the challenged grant terms in this case. *See* Pls.' Mot. at 54–56. This claim, and its arguments regarding the Take Care and Presentment clauses, simply repackages their statutory APA claim in constitutional language. As the Supreme Court has confirmed, "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims[.]" *Dalton v. Specter*, 511 U.S. 462, 473 (1994). In *Dalton*, the Supreme Court rejected Plaintiffs' proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. Not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472 (citation modified). In reaching this conclusion, the Supreme Court carefully "distinguished between claims of constitutional violations and claims that an official has acted in

56

excess of his statutory authority." *Id.* (collecting cases). The Constitution is implicated only if executive officers rely on it as "[t]he only basis of authority" or if the officers rely on an unconstitutional statute. *Id.* at 473 & n.5 (citation omitted). Because Plaintiffs' separation-of-powers claims focus entirely on their contentions that OVW has not acted consistently with its statutory obligations, such claims are untenable under *Dalton*.

Importantly, however, Defendants have not acted in excess of their statutory authority. The terms are imposed pursuant to Defendants' statutory authority and implement VAWA's directives.  Plaintiffs contend that Congress "has not authorized Defendants to impose . . . the new [Funding] Conditions [on grants.]" Pls.' Mot. at 54. That is wrong. Congress expressly gave OVW and OJP discretion to set requirements designed to ensure that grants are used for statutorily authorized purposes. For example, the OVW Director "shall have final authority over *all* grants, cooperative agreements, and contracts awarded by the Office." 34 U.S.C. § 10442(b) (emphasis added).  Moreover, the OVW Director's duties include "the development and management of grant programs and other programs, and the provision of technical assistance under such programs[,]" "the award and termination of grants, cooperative agreements, and contracts[,]" and "establishing such rules, regulations, guidelines, and procedures as are necessary to carry out any function of the Office." *Id.* § 10444(5)(B)-(C), (8). The disputed terms also implement statutory directives, such as VAWA's nondiscrimination provision, *id.* § 12291(b)(13)(A).

Plaintiffs also invoke the Spending Clause to challenge out-of-scope activities that they characterize as funding "conditions." *See* Pls.' Mot. at 54–55. Again, the Spending Clause does not apply here at all. That Clause limits Congress' power to legislate; it has no application to Executive Branch decisions about how to expend funds Congress has appropriated. *See Bd. of Educ. for Silver Consol. Schs. v. McMahon*, 791 F. Supp. 3d 1272, 1288 (D.N.M. 2025) ("[T]he

Spending Clause is only implicated 'when Congress imposes a spending or funding condition.' And without alleging congressional action, Plaintiff 'cannot state a claim under the Spending Clause.'" (quoting *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*, 784 F.Supp.3d 127, 162-63 (D.D.C. 2025)). Even if the Spending Clause did apply to Executive Branch spending decisions, this case in no way resembles quintessential Spending Clause cases like *South Dakota v. Dole*, Congress conditioned federal highway funds on States raising the drinking age.  483 U.S. 203 (1987). Rather, the grant terms at issue here are requirements, consistent with Defendants' statutory authorities and responsibilities, designed to ensure that grant funds are used for authorized purposes under law.

Even accepting Plaintiffs' misplaced framing, their argument fails. As the Supreme Court has held, "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *Id.* at 206 (citations omitted). The *Dole* court outlined certain limitations including that "the exercise of the spending power must be in pursuit of 'the general welfare'" and that conditions on the receipt of federal funds must be stated "unambiguously" so that recipients can "exercise their choice knowingly, cognizant of the consequences of their participation." *Id.* at 207 (citation omitted). Nor does the Spending Clause doctrine require Congress to set out by statute every requirement of a grant program in order for the requirement to be enforceable. *See Biden v. Missouri*, 595 U.S. 87, 90, 94 (2022) (per curiam) (holding that a funding condition requiring staff to be vaccinated against COVID-19 was lawful and the HHS secretary's "authority extends beyond imposing a list of bureaucratic rules regarding technical administration"). The federal government may constitutionally create incentives for outside parties to act in accordance with federal law and

policies. *See Dole*, 483 U.S. at 210 (rejecting the argument that the Spending Clause imposes "a prohibition on the indirect achievement of objectives which Congress is not empowered to achieve directly"). Congress gave Defendants the authority to fund different grant programs, and by allowing Defendants to administer these programs, Congress has necessarily given the agency the authority to apply appropriate terms and conditions in line with policy and program goals. Plaintiffs do not argue that Congress has in any way prohibited the grant terms at issue. That Congress did not spell out every conceivable term or condition by statute is not a basis on which to declare terms unconstitutional and Plaintiffs' claims should fail.

### 4.    *Plaintiffs' Ultra Vires Claims Fail*

The Supreme Court has "strictly limited" the scope of ultra vires review, reasoning that "ultra vires review could become an easy end-run around the limitations of . . . judicial-review statutes" like the APA. *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025); *id*. at 681–682 (noting than an ultra vires claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds" ( citation omitted)).

To discourage such attempted "end runs," the Supreme Court has held that *ultra vires* claims must fit within "painstakingly delineated procedural boundaries," and ultra vires review is available "only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a specific prohibition' in a statute." *Id.* at 681 (quoting *Ry. Clerks v. Assoc. for Benefit of Non-contract Emps.*, 380 U.S. 650, 660 (1965)).

Plaintiffs devote a single paragraph to their *ultra vires* claim, acknowledging that it merely repackages one of their APA arguments. Pls.' Mot. at 53–54. In other words, Plaintiffs "basically dress up a typical statutory-authority argument as an ultra vires claim." *Nuclear Regul. Comm'n*, 605 U.S. at 682. "That is a fairly common maneuver" in trying to bring an ultra vires claim—a

59

maneuver that the Supreme Court has now squarely rejected. *Id.*

Ultra vires review is also unavailable where Congress has provided a meaningful avenue for judicial review—here, the APA. *See id.* at 681 (quoting *Bd. of Governors, FRS v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)). Congress enacted the APA to enable courts to review appropriate challenges to final agency actions. Given this "alternative path to judicial review," *id.* at 682, which Plaintiffs have invoked, an additional ultra vires claim is improper. Finally, even if ultra vires review were available here, Plaintiffs' ultra vires claim would fail on the merits for the same reason as their APA claim: Defendants have the discretion, pursuant to statutory authority, to adopt the challenged conditions, as explained above. *See* Argument, Part A.3.

E.      **Plaintiffs' Requested Relief Is Overbroad and Would Violate Article III**

If the Court grants any relief to Plaintiffs, it should be limited to remedying the specific agency action found unlawful under 5 U.S.C. § 706, only as to the parties before the Court. It should not additionally enter the sweeping permanent injunction Plaintiffs request, which would cover nonparties and any "substantially similar conditions in the future." *See* Pls.' Mot. at 68.

Such a request conflicts with bedrock principles regarding the scope of judicial power, that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Lewis v. Casey*, 518 U.S. 343, 360 (1996). Moreover, when a court identifies legal error in agency action, the ordinary remedy is to remand to the agency for further proceedings consistent with the corrected legal standard. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943); *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999). The APA authorizes courts to "hold unlawful and set aside agency action," 5 U.S.C. § 706(2); it does not give courts "jurisdiction to order specific relief." *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005); *see also Me. Med.*

*Ctr. v. Burwell*, 841 F.3d 10, 16 (1st Cir. 2016).

The ordinary remedy under Section 706 is especially warranted here, where Plaintiffs' facial challenge largely concerns alleged ambiguity or insufficient explanations. For instance, Plaintiffs argue that the Nondiscrimination Certification does not sufficiently explain which DEI-related activities may violate federal law, Pls.' Mot. at 59, that the Unlawful Presence Provision does not explain how grantees should determine immigration status, *id.* at 52–53, and that the Defending Women Term does not explain what constitutes promotion of gender ideology, *id.* at 49. If the Court agrees with those objections, the proper remedy is remand, allowing OVW or OJP to address any deficiency and decide how to structure the relevant grant programs consistent with their statutory authority. Plaintiffs have not shown that broader relief is necessary at the pre-enforcement stage.

### 1.    A Permanent Injunction is Improper

Plaintiffs ask the Court to bar Defendants from "imposing or enforcing the New Conditions or any substantially similar conditions in the future." *Id.* at 74. Such extraordinary relief would sow significant confusion for Defendants and is unwarranted.

An injunction is "a drastic and extraordinary remedy," not a remedy to be granted as a matter of course. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). *Monsanto* itself rejected a forward-looking injunction because vacatur was a "less drastic remedy" sufficient to address the agency error. *Id.* at 165. The same is true here. If the Court concludes that particular terms are unlawful, vacatur or remand of those terms would address the asserted injury without barring Defendants from exercising lawful grantmaking authority in the future.

Plaintiffs' request for permanent forward-looking injunctive relief would prevent Defendants from curing any defects through additional explanation, additional process, or revised

61

terms. That is not permissible. Courts routinely recognize that an injunction should not prevent agencies from making funding decisions within their lawful authority. *See New York v. Trump*, 133 F.4th 51, 70 n.16 (1st Cir. 2025). Any relief should preserve Defendants' ability to administer OVW and OJP programs, require compliance with civil-rights and nondiscrimination laws, and adopt lawful conditions in future awards.

The requested injunction is also impermissibly vague. Plaintiffs seek to enjoin not only the challenged terms, but also any "substantially similar" conditions. That formulation conflicts with the specificity requirements in Federal Rule of Civil Procedure 65 because it does not "describe in reasonable detail" the acts restrained and would invite collateral litigation over what counts as "similar." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 52 (2d Cir. 1996). It would, for example, create significant uncertainty about DOJ's longstanding practice of requiring compliance with civil-rights and nondiscrimination laws.

Plaintiffs' cited authorities do not support such relief. In *Texas v. Cardona*, the court entered an injunction only after repeated litigation over the same agency's similar interpretation and application of its guidance. 743 F. Supp. 3d 824, 897 (N.D. Tex. 2024), *appeal dismissed sub nom. Texas v. McMahon*, No. 24-10910, 2025 WL 2840825 (5th Cir. Apr. 23, 2025). That does not describe this case.

Plaintiffs' reliance on *Illinois v. FEMA*, No. 25-cv-206-WES-PAS (D.R.I.), is similarly misplaced. There, the agency adopted in new grants a contingency provision that would have allowed the previously implemented and enjoined terms to take effect only if the district court's order was stayed or vacated. *See* Defs.' Resp. in Opp'n to Pls.' Mot. to Enforce or to Clarify at 1–2 (Oct. 10, 2025) (ECF No. 74), *Illinois v. FEMA*, No. 25-cv-206-WES-PAS (D.R.I.). That case provides no support for enjoining defendants from including any similar, not yet implemented

62

terms in future grants.

Nor have Plaintiffs satisfied the equitable requirements for permanent injunctive relief. *See* Pls.' Mot at 70–71. Their alleged harms are largely speculative predictions about future funding decisions or economic consequences, and economic loss generally is not irreparable injury. *Id.* Plaintiffs also cannot show that the equities favor an injunction that would significantly interfere with the Executive Branch's administration of federal grant programs. "[A]ny time the Government is enjoined by a court from effectuating [laws], it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). Rather, the equities weigh against the sweeping forward-looking injunction Plaintiffs request.

2.      *Plaintiffs' Request for Forward-Looking Relief is Unripe and Exceeds the APA*

In addition, Plaintiffs' extraordinary request for forward looking relief should be denied because it conflicts with Article III. Pls.' Mot. at 69.

Article III limits federal courts to live cases and controversies and prevents courts from issuing advisory opinions. *See FDA. v. All. for Hippocratic Med.*, 602 U.S. 367, 378–379 (2024). Plaintiffs' request for relief against hypothetical future grant terms rests on several contingent future events: whether Defendants will adopt future terms, how they will adopt those terms, what those terms will say, what statutory authority will govern them, and how they will apply. There is no live dispute with respect to hypothetical terms, and such relief would exceed Article III's limits.

Future hypothetical terms are not just unripe—they are not yet even a planted seed. Ripeness prevents courts from "entangling themselves in abstract disagreements over administrative policies" and improperly interfering in agency decisionmaking. *City of Fall River v. FERC*, 507 F.3d 1, 6 (1st Cir. 2007) (citation omitted). A claim is not ripe if it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*

63

*v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). Plaintiffs bear the burden to prove ripeness, *Labor Relations Division of Construction Industries of Massachusetts., Incorporated v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016), and they have not done so for future grant terms not yet adopted.

Nor have Plaintiffs identified any final agency action for future grant terms. Final agency action requires both the "'consummation' of the agency's decisionmaking process" and a decision "by which rights or obligations have been determined,' or from which 'legal consequences will flow[.]" *Bennett*, 520 U.S. at 178 (citation omitted). Future NOFOs, future award conditions, and hypothetical "substantially similar" terms have not yet been adopted, much less finally applied to Plaintiffs (who may not even apply for or receive funds under certain grants). The APA does not permit Plaintiffs to seek "wholesale improvement" of agency management "by court decree." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Nor may courts review generalized complaints about ongoing agency behavior, because such a programmatic attack is not "in itself, a 'final agency action' under the APA[.]" *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006).

For these reasons, if the Court grants any relief, it should be limited to the specific final agency action found unlawful and the parties before the Court. The Court should deny Plaintiffs' request for a permanent injunction, nonparty relief, and forward-looking relief barring future "substantially similar" conditions. *See* Pls.' Mot. at 74.

### 3.    *Any Relief Should Be Limited to the Parties*

The Court should also reject Plaintiffs' request for relief extending to nonparties. *See id.* at 72. Several procedural mechanisms allow similarly situated nonparties to seek protection if they believe relief is warranted: class certification, joinder, intervention, or filing their own lawsuit. *See Florida. v. HHS,* 19 F.4th 1271, 1282 (11th Cir. 2021). A district court cannot bypass those

64

mechanisms by issuing relief primarily for nonparties' benefit. *See Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025). At most, a court "may administer complete relief between the parties" and should not go beyond that to enjoin action or implementation more broadly. *Id*. at 851 (emphasis omitted) (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928) (emphasis omitted)). As the Supreme Court recently reiterated, "[c]omplete relief is not a guarantee—it is the maximum a court can provide" and can be curtailed by considerations of "equity." *Id.* at 854; *accord Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. . . . [A] federal judge . . . is not mechanically obligated to grant an injunction for every violation of law." (citations omitted)).

These principles apply with special force in the grant context. "In the context of new and existing contracts, extending the injunction to nonparties is unnecessary to provide complete relief to the plaintiffs; a contract term may be enforceable in one agreement but dormant in another." *Georgia v. President of the U.S.*, 46 F.4th 1283, 1307 (11th Cir. 2022). Plaintiffs therefore cannot obtain broader relief merely by asserting that other grantees may be subject to the same or similar terms.

Plaintiffs assert two speculative ideas of harms that may affect them if the terms are not enjoined as to nonparties. Neither has merit. First, Plaintiffs' "interrelation" theory is speculative. *See* Pls.' Mot. at 72–73. They argue that programs are interconnected and that victims may avoid seeking help anywhere unless relief extends beyond the parties. *Id.* But Plaintiffs do not identify concrete evidence that such chilling has occurred here or would be likely to occur. *Freedom Network USA v. Trump* is distinguishable: that case involved evidence that nonparties had already declined to attend the Plaintiff's annual conference because of the risk of being associated with the

plaintiff network. 825 F.Supp.3d 638, 652, 673 (N.D. Ill. 2026). Here, Plaintiffs offer only speculation about what nonparties or victims might do in the future—their declarations allege no concrete repercussions. *See* Pls.' Mot. at 73–74.

Plaintiffs' next theory is that they may be put at a competitive disadvantage if the terms are enjoined in their grants while preserved in nonparty grants. *See id.* at 72–73. This misunderstands the challenged grant terms, and also has no factual basis. This case concerns terms included in FY2025 grant terms and award letters. These terms have never been used as competitive scoring criteria to determine whether one applicant is more qualified than another. There is nothing suggesting that the government will use the presence or absence of these terms to determine eligibility for grant awards.

Moreover, the case that Plaintiffs rely on in support of their competition theory is inapposite. *Id.* at 73 (citing *City of Los Angeles v. Sessions*, No. 18-cv-7347, 2019 WL 1957966, at *6 (C.D. Cal. Feb. 15, 2019)). That case predated the Supreme Court's more recent limitations on broad injunctive relief and the plaintiff had shown the challenged agency action gave rise to competitor standing by rendering the plaintiff "unable to fairly compete for some benefit." *City of Los Angeles*, 2019 WL 1957966, at *2. Plaintiffs have made no comparable showing of competitor standing here. Nor could they, as this case does not involve competitive scoring criteria that determine whether Plaintiffs are more or less qualified than nonparty applicants. *See Lujan*, 504 U.S. at 561 (at a summary judgment stage, Plaintiffs cannot rest on "'mere allegations', but must 'set forth' by affidavit or other evidence 'specific facts'" to demonstrate standing). The challenged grant terms are in contrast to certain measures that OVW determines will give certain recipients "priority" consideration for funding. *See, e.g.*, OVW AR at 64 (Feb. 12, 2025 Memorandum) (noting that victim services providers in Alaska Native villages and other under-resourced, remote

66

areas may receive priority for funding). Plaintiffs' asserted competitive-disadvantage theory, for which they have submitted no evidence, does not justify nonparty relief.

At most, any relief should be limited to the specific terms or portions of terms the Court finds unlawful, and only as applied to Plaintiffs. Plaintiffs have not demonstrated that any broader relief is necessary to remedy their alleged injuries.

**CONCLUSION**

For these reasons, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' motion for summary judgment.

Dated: July 8, 2026                     Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ANDREW WARDEN
Assistant Branch Director

*/s/ Kathryn Barragan*
KATHRYN BARRAGAN (BBO #714075)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7696
Fax: (202) 616-8460
Email: kathryn.e.barragan@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2026, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.


*/s/ Kathryn Barragan*

68